UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZUNUM AERO, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE BOEING COMPANY, et al., <br><br> Defendants. | CASE NO. C21-0896JLR <br><br> ORDER DENYING MOTION TO REMAND |

## I.  INTRODUCTION

Before the court is Plaintiff Zunum Aero, Inc.'s ("Zunum") motion to remand this matter. (Mot. (Dkt. # 26); Reply (Dkt. # 32).) Defendants The Boeing Company ("Boeing"); Boeing HorizonX Ventures, LLC ("HorizonX") (collectively with Boeing, the "Boeing Defendants"); Safran S.A. ("Safran"); Safran Corporate Ventures, S.A.S. ("SCV"); Safran Electrical & Power, S.A.S. ("SEP"); and Safran Helicopter Engines, SASU ("SHE") (collectively with other Safran entities, the "Safran Defendants") oppose the motion. (Resp. (Dkt. # 30).) The court has reviewed the motion, the submissions

ORDER - 1

filed in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court DENIES the motion.

## II.   BACKGROUND

This suit centers on hybrid-electric and electric aircraft technology that Defendants allegedly misappropriated from Zunum while falsely assuring Zunum that they would invest in its technology. (*See* FAC (Dkt. # 1-1) ¶¶ 1-21.) The court details the factual background, as alleged by Zunum, before reviewing the procedural background.

### A.   Factual Background

Zunum, founded in 2013, strived "to develop the word's [sic] first hybrid-electric and all-electric . . . regional aircraft for commercial service." (*Id.* ¶¶ 31-32.) To protect its first-mover advantage, Zunum operated in "stealth mode" from 2013 to 2017 as it executed the initial phases of its business plan. (*Id.* ¶ 79.) Afterwards, Zunum sought outside funding from a strategic partner. (*Id.* ¶ 91.) It "cautiously approached a few of the major aerospace companies to explore investments" and identified Boeing, a leader in the aircraft industry, as a "prospective investor and strategic partner." (*Id.* ¶¶ 48, 93-94.)

Boeing "quickly became interested," (*id.* ¶ 95), and as part of exploring the potential investment, Boeing "undertook extensive due diligence to evaluate Zunum's concepts, technologies, and business plans" and was accordingly "granted access to extensive details of Zunum's business plans; go-to-market strategy; patent pending

---

[1] Neither Zunum nor the Boeing Defendants or Safran Defendants (collectively, "Defendants") request oral argument (*see* Mot. at 1; Resp. at 1), and the court agrees that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

aircraft and propulsion technologies; and development, production, and certification plans," including propriety information such as "confidential whitepapers, technical reports, business plans, and provisional patent applications," (*id.* ¶¶ 105-06, 116-17). Boeing eventually invested $5 million, accompanied by the right to appoint members onto Zunum's Board of Directors and Advisory Board. (*See id.* ¶¶ 119, 125-26.) Pursuant to these appointments, Boeing continued to have "access to information . . . about 'significant business issues' and 'annual operating plans.'" (*Id.* ¶ 130.) Thereafter, the Safran Defendants, a French aerospace conglomerate that supplied electrical systems equipment to Boeing and other aircraft manufacturers, began to show interest in partnering with Zunum as well. (*See id.* ¶¶ 8, 144, 265, 268.)

The partnerships began unraveling in 2017 when Boeing allegedly showed signs of its intent to take Zunum's technology for itself. (*Id.* ¶¶ 98, 152-64.) In November 2017, Zunum learned that Boeing was developing its own hybrid-electric aircraft that mimicked Zunum's aircraft; Boeing was allegedly engaging its partners, including Safran, on developing propulsion for its own aircraft. (*Id.* ¶¶ 170-71, 174-93.) Zunum's partnership with the Safran Defendants similarly unraveled. Initially, Safran Defendants' officials expressed interest and accessed Zunum's proprietary information when performing their due diligence. (*Id.* ¶¶ 271, 273-75, 282-83, 292.) However, the Safran Defendants ultimately pulled out of the investment, allegedly because of Boeing's influence. (*Id.* ¶¶ 296, 299, 348-49.)

Instead of further investing in Zunum, the Safran Defendants and Boeing "deepened their close partnership" by "collu[ding] . . . to usurp Zunum's first-mover

1 advantage in hybrid-electric and all-electric propulsion aircraft market." (*Id.* ¶¶ 305-06.)

2 The Defendants further filed patents for hybrid-electric propulsion technology that is

3 "directly inspired by confidential information that Zunum supplied." (*Id.* ¶¶ 380-83.)

4 For instance, Boeing's Thin Haul Hybrid Electric Propulsion System patent "borrows

5 heavily from Zunum's ZA10 architecture" and its Active Voltage Control for Hybrid

6 Electric Aircraft ("Active Voltage") patent "relates closely to issues addressed by the

7 control system in an international patent filed by Zunum," raising issues around

8 "inventorship." (*Id.* ¶¶ 381-82.)

**B. Procedural Background**

Zunum filed suit on November 23, 2020, in King County Superior Court alleging various claims. (*Id.* ¶¶ 405-576; Not. of Removal (Dkt. # 1) ¶ 1; Mot. at 2; State Rec. (Dkt. # 2) at 1-100.)[2] Zunum served the Boeing Defendants on November 24, 2020. (Harris Decl. (Dkt. # 27) ¶ 2, Ex. A at 2, 6.) The Boeing Defendants filed a partial motion to dismiss in state court on February 16, 2021. (State Rec. at 307-47.) The state court summarily denied this motion to dismiss on June 2, 2021. (*Id.* at 1159-60.)

Meanwhile, Zunum also attempted to serve SCV, SEP, and SHE but served instead Safran USA, Inc. and Safran Electrical & Power USA, LLC, both United States companies that are not legally affiliated with the Safran Defendants and cannot accept service on their behalf. (Harris Decl. ¶ 2, Ex. A at 3-5; Faÿsse Decl. (Dkt. # 30-1) ¶ 4.) Zunum proceeded to attempt service on the Safran Defendants through the Convention on

---

[2] The court cites to the bolded page number at the bottom center of the exhibit. (*See generally* State Rec.)

the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). (Harris Decl. ¶ 2, Exs. B-C; *see* Faÿsse Decl. ¶ 5.) Through the Hague Convention, Zunum served Safran and SCV on April 12, 2021, (Harris Decl. ¶ 2, Ex. B at 1-17), and it served SHE on May 20, 2021 (*id.* ¶ 2, Ex. C at 1).

On June 7, 2021, the parties filed a joint stipulation to set deadlines for the Safran Defendants to answer the FAC. (*See* State Rec. at 1165-67.) In the stipulation, the parties represented that:

> SEP has not been served, but as part of a compromise that will allow all four Safran Defendants to have the same deadline to respond to the FAC, SEP will accept service of the summons and FAC through its attorneys and forego the need for Zunum to complete service through the Hague [] Convention.

(*Id.* at 1166.) The parties further represented that one of the purposes of this stipulation was to "avoid a further (and potentially lengthy) delay in the service of SEP under the Hague [] Convention." (*Id.*) The state court granted the stipulation on June 14, 2021. (*Id.* at 1175-76.)

On July 2, 2021, after receiving various interrogatory answers from Zunum, Boeing filed a counterclaim seeking a declaratory judgment on the inventorship of the Active Voltage patent. (Not. of Removal ¶ 23, Ex. D at CC, ¶¶ 61-70.) Defendants removed the suit to federal court the same day. (*See generally* Not. of Removal.) Zunum subsequently filed the instant motion to remand. (*See* Mot.)

### III. ANALYSIS

Removal of a civil action to federal district court is proper where the federal court would have original jurisdiction over the state court action. *See* 28 U.S.C. § 1441(a). 28

ORDER - 5

1    U.S.C. § 1446(b) governs the timing of removal. 28 U.S.C. § 1446(b); *see also* 28 U.S.C.
2    § 1454 (requiring that removal "be made in accordance with section 1446"). If the case
3    stated by the initial pleading is "removable on its face," then a defendant has 30 days
4    from when it was served to remove the case. *Carvalho v. Equifax Info. Servs., LLC*, 629
5    F.3d 876, 885 (9th Cir. 2010). However, if no basis for removal is apparent in that
6    pleading, the requisite 30-day period does not begin until the defendant receives "a copy
7    of an amended pleading, motion, order or other paper" from which removability may first
8    be ascertained. *McLeod v. AMICA Gen. Agency*, No. C15-0839RAJ, 2015 WL
9    13145350, at *1 (W.D. Wash. Oct. 29, 2015) (quoting 28 U.S.C. § 1446(b)). The
10   removing party has the burden of establishing that removal is proper. *See Kroske v. U.S.*
11   *Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). The court must reject jurisdiction if there
12   is any doubt as to the right of removal, including if there are defects in removal
13   procedure, *see Hawaii ex rel. Louis v. HSBC Bank Nev., N.A.*, 761 F.3d 1027, 1034 (9th
14   Cir. 2014); *McLeod*, 2015 WL 13145350, at *1.

15        Zunum agues that the removal is both untimely and improper. (*See* Mot. at 6-13.)
16   The court addresses each argument in turn.

17   **A.    Timeliness of Removal**

18        Zunum contends that Defendants' removal is untimely under § 1446(b). (*See* Mot.
19   at 2 (citing 28 U.S.C. §§ 1446, 1454).) Defendants raise various arguments otherwise,
20   including that SEP removed only 25 days after waiving service on June 7, 2021. (*See*
21   Resp. at 5-10.) Zunum does not dispute that removal occurred within 30 days after SEP
22   //

waived service.[3] (*See* Mot.; Reply at 4-5 (conceding that SEP agreed to accept service and was only served through the Hague Convention later).) Instead, Zunum argues that SEP had actual notice of the suit by at least April 14, 2021, when SEP's parent company Safran and their counsel learned of the FAC. (Reply at 4-8.) Zunum contends that its substantial compliance by April 14, 2021, triggered the removal period and renders SEP's July 2, 2021, removal untimely. (*Id.* at 5.) The court disagrees.[4]

"In the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). The Supreme Court and the Ninth Circuit have been clear: "[A]ctual notice of the action is insufficient; rather, the defendant must be 'notified of the action, and brought under a court's authority, by formal process,' before the removal period begins to run." *Quality Loan Serv. Corp. v. 24702 Pallas Way, Mission Viejo, CA 92691*, 635 F.3d 1128, 1133 (9th Cir. 2011) (quoting *Murphy Bros.*, 526 U.S. at 347); *see also Camarata v. Dep't of Soc. and Health Servs.*, No. C17-5878RJB, 2018 WL 317029, at *1 (W.D. Wash. Jan. 8,

---

[3] Zunum's declaration of service states it served the registered agent for "Safran Electrical & Power USA, LLC," not SEP, on November 24, 2020, (Harris Decl. ¶ 2, Ex. A at 4), and Zunum represented to the state court that as of June 7, 2021, "SEP ha[d] not been served," (State Rec. at 1166). Undeterred by the record, Zunum still confusingly maintains in parts of its briefing that "SEP was initially served on November 24, 2020," because "Registered Agents typically refuse to accept service for an entity for which it is not the authorized agent" whereas "[h]ere, the Registered Agent did not refuse service." (Reply at 5.) Zunum provides no support, in the record or the law, for this contention, and thus, the court rejects this naked assertion.

[4] Because the court holds that SEP's removal is timely, it does not consider Defendants' remaining arguments regarding Boeing's counterclaim and when it first ascertained removability. (*See* Resp. at 10-18.) The court also does not consider Defendants' alternative argument that there exists cause for an extension of the removal deadline. (*See id.* at 18-21.)

2018) ("[A]ctual service of process is a prerequisite for the running of the 30-day removal period."). Thus, "mere receipt of the complaint" does not trigger the time to remove, as such a "receipt rule" could "operate with notable unfairness," especially to parties in foreign nations. *Murphy Bros.*, 526 U.S. at 348, 356.

Because actual notice is insufficient without formal service, having the same attorney represent both the properly and improperly served entities has no bearing. *Camarata* is particularly instructive. In that case, the same attorney represented all the defendants—one of whom was served in the fall of 2016, and two of whom were not served until the fall of 2017. *Id.* at *1. The defendants removed in October 2017, after an unfavorable ruling by the state court. *Id.* The plaintiff argued that all defendants had "received" the complaint when their attorney filed an answer after the first defendant was served. *Id.* at *2. The court rejected this argument as "an attempt to circumvent . . . *Murphy Bros.*" because "even if [d]efendants . . . knew of the [c]omplaint through their attorney . . . *Murphy Bros.* requires actual service of process, not an approximation thereof." *Id.* Thus, "[w]hether by accident or strategic calculation," the plaintiff's service at different times "create[ed] a gap between two sets of service of process," allowing the later-served defendants to remove at a date that would have been untimely for the earlier-served defendant. *Id.* at *3 (citing *Desfino v. Reiswig*, 630 F.3d 952, 955-56 (9th Cir. 2011)) (discussing later-served rule, which allows each defendant 30 days to remove after being served).

The same applies to Zunum's service of Defendants here. Zunum served the Boeing Defendants on November 24, 2020; Safran and SCV on April 12, 2021; and SHE

on May 20, 2021. (Harris Decl. ¶ 2, Exs. A-C.) SEP accepted service on June 7, 2021. (State Rec. at 1165-67.) This "gap between . . . service of process" allows the removal time for SEP to start later than the earlier-served defendants. *See Camarata*, 2018 WL 317029, at *3; *Desfino*, 630 F.3d at 955-56. That the attorney representing the other Safran Defendants also represents SEP, or that removal occurred after an unfavorable state court decision, does not alter the conclusion that SEP's removal period began when it was brought under the court's authority through formal process: June 7, 2021. *See Camarata*, 2018 WL 317029, at *1-2; *Quality Loan*, 635 F.3d at 1133; *Murphy Bros.*, 526 U.S. at 348. Thus, its removal 25 days later on July 2, 2021, was timely.

Zunum's arguments to the contrary are unavailing. First, Zunum emphasizes that many courts do not require service to be effective and that its "substantial compliance" is sufficient. (Reply at 5-6.) As a preliminary matter, the Ninth Circuit precedent provided by Zunum on this point occurred before *Murphy Bros.* and thus did not have the benefit of the Supreme Court's guidance on the issue. *See Chan v. Soc. Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994); *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Indeed, since *Murphy Bros.*, the Ninth Circuit has held that notice alone is insufficient. *See Quality Loan*, 635 F.3d at 1133. But more importantly, the "substantial compliance" that *Chan* spoke of involved "[t]echnical defects in a summons," not the wholesale failure to serve a defendant. *See* 39 F.3d at 1404. In *Chan*, the plaintiff served the owner and president of a foreign company in his individual capacity, not as the owner of that company. *Id.* On those "narrow facts," the court held the plaintiff had adequately served the foreign company

even though the affidavit of service did not list all of the relevant capacities. *Id.* Here, Zunum did not merely have a technical error; it served the entirely wrong entity. (*See* Harris Decl. ¶ 2, Ex. A at 3-5; Faÿsse Decl. ¶ 4.) Thus, Zunum cannot hide behind "substantial compliance." *See Chan*, 39 F.3d at 1404.

Zunum's second argument fares no better. It contends that "service on a parent corporation is sufficient notice to begin the deadline for removal" and because SEP's parent company Safran was served on April 12, 2021, SEP's removal deadline also began to run on that date. (Reply at 6.) But this exception to *Murphy Bros.* only applies when the case involves "a 'real party defendant in interest' or other closely affiliated 'intended defendant' that is mistakenly omitted from the initial complaint." *Delgado Pimentel v. Huntsman Int'l, LLC*, No. LA CV18-10355 JAK (KSx), 2019 WL 3073943, at *5 (C.D. Cal. July 15, 2019). Application of this doctrine is based on the presence of "certain factual issues," including whether the complaint identifies "a non-existent entity or a trade name" and whether removal "was filed by an entity not yet named to the complaint." *Id.* at *5-6. None of these circumstances are present here, nor does Zunum even attempt to argue that they are. (*See* Reply at 6 (conceding that Safran was "correctly named in the FAC").) Accordingly, the court does not find the service of SEP's parent company to have triggered the removal period for SEP.

For the first time on reply, Zunum requests that the court "remand the claims that do not fall within the supplemental jurisdiction of Boeing's declaratory judgment on patent inventorship." (Reply at 9-12.) As a general matter, "it is not acceptable legal practice to present . . . new argument in a reply brief." *Roth v. BASF Corp.*, No.

C07-0106MJP, 2008 WL 2148803, at *3 (W.D. Wash. May 21, 2008); *see also Bridgham-Morrison v. Nat'l Gen. Assembly Co.*, No. C15-0927RAJ, 2015 WL 12712762, at *2 (W.D. Wash. Nov. 16, 2015) ("For obvious reasons, new arguments . . . presented for the first time on Reply . . . are generally waived or ignored."). Exacerbating the inappropriateness of this request, Zunum offers only authority considering jurisdictional challenges. *See, e.g., Honeywell Int'l Inc. v. Maltseff*, No. C14-0283JLR, 2014 WL 1400993, at *1 (W.D. Wash. Apr. 10, 2014) (considering motion to dismiss for lack of subject matter jurisdiction). Zunum has not filed a jurisdictional motion to dismiss (*see* Dkt.),[5] and it proffers no case law extending this analysis to the remand context (*see* Reply). Accordingly, the court rejects Zunum's invitation to remand certain claims.

At base, SEP accepted service on June 7, 2021. (State Rec. at 1165-67.) It removed this suit 25 days later on July 2, 2021, with the consent of all other Defendants. (*See* Not. of Removal ¶ 34.); *see* 28 U.S.C. § 1446(b)(2)(C). The court concludes that this removal is timely.

**B.     Propriety of Removal**

Zunum next contends that even if removal were timely, "this case must still be remanded because it does not implicate federal law." (Mot. at 9.) Not so. Boeing's patent counterclaim directly implicates federal patent law and 28 U.S.C. § 1454, which

//

---

[5] Zunum mentions in passing that "SEP . . . intends to seek dismissal on jurisdictional grounds." (Reply at 2.) No such challenge is presently pending before the court (*see* Dkt.), and this fact does not require remand.

permits the removal of an action in which "any party asserts a claim for relief . . . relating to patents." 28 U.S.C. § 1454(a); *see Preston v. Nagel*, 166 F. Supp. 3d 92, 98 (D. Mass. 2016). Indeed, Congress intentionally enacted § 1454 as part of a legislative response to "provide federal courts . . . with a broader range of jurisdiction . . . over claims arising under the patent laws even when asserted in counterclaims." *Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 635, 644 (Fed. Cir. 2015); *see also Busch v. Jakov Dulcich & Sons LLC*, No. 15-CV-00384-LHK, 2015 WL 3792898, at *5 (N.D. Cal. June 17, 2015) ("Congress passed § 1454 to ensure that state courts would not 'adjudicat[e] federal patent and copyright claims presented in counterclaims.'" (quoting *Van Steenburg v. Hageman*, No. 14-cv-976, 2014 WL 1509940, at *5 (W.D. Tex. Mar. 31, 2015))).

In truth, Zunum's challenge to federal question jurisdiction is another veiled attempt to contest the timeliness of removal. (*See* Mot. at 9-11.) Zunum resorts back to discussing § 1446 and how "a counterclaim does not extend the deadline" for Boeing to remove. (*Id.*) But as the court discussed above, regardless of the timeliness of Boeing's removal, SEP's removal was timely. *See supra* § III.A. Zunum does not provide any argument for why Boeing's counterclaim could not provide the federal question jurisdiction for SEP's timely removal. (*See* Mot.; Reply.) To that end, Zunum's case law is inapposite, as they deal with a different situation in which the party bringing the belated counterclaim is the same party attempting to remove. *See, e.g., NematicITO, Inc. v. Spectrum Five LLC*, No. 16-cv-01859-RS, 2016 WL 3167181, at *3 (N.D. Cal. June 6, 2016). In those situations, the court agrees with Zunum that the key question becomes

//

whether that party had notice of the action's removability from the face of the complaint. *See id.* But that is not the scenario presented here.

Finally, Zunum maintains that the Boeing Defendants waived their right to remove because they had participated in the case before the state court. (Mot. at 12-13.) But, as Defendants note, Zunum provides no reasoning for how the Boeing Defendants could waive the Safran Defendants' removal rights. (Resp. at 22-23; *see* Mot.; Reply.) Indeed, § 1454 does not require all the defendants to consent to removal and instead allows any one party to remove. *See Preston*, 166 F. Supp. 3d at 98. Thus, even if the Boeing Defendants had waived their right to remove, that does not alter SEP's removal rights or the propriety of removal here.

Because the court finds that SEP's removal is both timely and proper, the court denies Zunum's motion to remand.[6]

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Zunum's motion to remand (Dkt. # 26).

Dated this 17 day of August, 2021.

JAMES L. ROBART
United States District Judge

---

[6] Because the court denies Zunum's motion to remand, it also denies its request that Defendants pay Zunum's fees and costs associated with this motion. (*See* Mot. at 13.)

ORDER - 13