1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

9   ZUNUM AERO, INC.,

10          Plaintiff,

11      v.

12   THE BOEING COMPANY; BOEING
     HORIZONX VENTURES, LLC; SAFRAN,
13   S.A.; SAFRAN CORPORATE VENTURES,
     S.A.S.; SAFRAN ELECTRICAL & POWER,
14   S.A.S.; SAFRAN HELICOPTER ENGINES,
     SASU,
15
16          Defendants.
17

NO. 2:21-cv-00896

**PLAINTIFF ZUNUM AERO, INC.'S
OPPOSITION TO THE BOEING
COMPANY'S AND BOEING HORIZONX
VENTURES, LLC'S MOTION FOR
PARTIAL JUDGMENT ON THE
PLEADINGS**

NOTE ON MOTION CALENDAR:
May 6, 2022

18
19
20
21
22
23
24
25

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## **TABLE OF CONTENTS**

INTRODUCTION...................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

AUTHORITY AND ARGUMENT ........................................................................... 4

   A.  LEGAL STANDARD ...................................................................................... 4

   B.  DUPLICATIVE MOTIONS ARE DISFAVORED ........................................ 5

   C.  ZUNUM HAS ADEQUATELY ALLEGED ANTITRUST VIOLATIONS ................ 7

      1.  Section 1 – Count IX – RCW 19.86.030....................................... 7

         a.  *Contract, Combination, or Conspiracy* .................................... 7

         b.  *Per Se Violation and Rule of Reason Analysis* ........................ 9

            i.  *Per Se* Violation .................................................................. 9

            ii.  Rule of Reason ................................................................ 10

                I.  *Relevant Market and Market Power* ......................... 10

                II.  *Intent and Unreasonable Restraint*........................... 14

      2.  Attempted Monopolization Under Section 2 – Count X – RCW 19.86.040................................................................................ 15

         a.  *Boeing Engaged in Predatory or Anticompetitive Conduct* ................... 15

            i.  Patent Infringement......................................................... 15

            ii.  Refusal to Deal ............................................................... 16

         b.  *Intent to Monopolize*................................................................ 17

         c.  *Dangerous Probability of Success*........................................... 17

   D.  ZUNUM'S SECURITIES ACT CLAIM IS ADEQUATELY PLEADED ................. 18

   E.  DEFENDANTS VIOLATED THE CONSUMER PROTECTION ACT.................... 21

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - i

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 497-7200

1

F. ZUNUM'S CLAIM FOR BREACH OF FIDUCIARY DUTY SURVIVES ................ 22

CONCLUSION .............................................................................................................. 24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - ii

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 497-7200

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                                        **Page**

3    *Am. Ad Mgmt., Inc. v. GTE Corp.*,

4        92 F.3d 781 (9th Cir. 1996)..................................................................................9

5    *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,

6        472 U.S. 585 (1985)...........................................................................................16

7    *Arizona v. California*,

8        460 U.S. 605 (1983).............................................................................................6

9    *Arizona v. Maricopa Cnty. Med. Soc'y*,

10       457 U.S. 332 (1982)..............................................................................................9

11   *B&G Foods North America, Inc. v. Embry*,

12       29 F.4th 527 (9th Cir. 2022)................................................................................5

13   *Ballo v. James S. Black Co.*,

14       39 Wash. App. 21 (1984).....................................................................................9

15   *Bell Atlantic Corp. v. Twombly*,

16       550 U.S. 544 (2007)..........................................................................................4, 8

17   *Beverly Hills Teddy Bear Co., Inc. v. GennComm, LLC*,

18       No. CV2002849CJCJEMX, 2020 WL 7049537 (C.D. Cal. Oct. 1, 2020).....................16

19   *Bhan v. NME Hosp., Inc.*,

20       929 F.2d 1404 (9th Cir. 1991)..............................................................................9

21   *Big Bear Lodging Ass'n v. Snow Summit, Inc.*,

22       182 F.3d 1096 (9th Cir. 1999)..............................................................................9

23   *Birkholm v. Washington Mut. Bank, F.A.*,

24       447 F. Supp. 2d 1158 (W.D. Wash. 2006)............................................................21

25

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - iii

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 497-7200

*Boeing Co. v. Sierracin Corp.*,

    738 P.2d 665 (Wash. 1987)........................................................................7, 15

*Broadcom Corp. v. Qualcomm Inc.*,

    501 F.3d 297 (3d Cir. 2007)............................................................................14

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,

    861 F.3d 1081 (10th Cir. 2017)....................................................................6, 7

*Burton v. Lehman*,

    153 Wash.2d 416 (2005)....................................................................................5

*Butner v. Neustadter*,

    324 F.2d 783 (1960)...........................................................................................5

*Carvalho v. Equifax Info. Servs., LLC*,

    629 F.3d 876 (9th Cir. 2010)............................................................................5

*Chapman v. N.Y. State Division for Youth*,

    546 F.3d 230 (2d Cir. 2008)...........................................................................10

*D & D Greek Rest., Inc. v. Great Greek Franchising, LLC*,

    No. CV 20-9770-MWF (KSX), 2021 WL 4464201 (C.D. Cal. Aug. 3, 2021).............16

*Eastman Kodak Co. v. Image Technical Servs., Inc.*,

    504 U.S. 451 (1992).......................................................................................10

*Etemadi v. Garland*,

    12 F.4th 1013 (9th Cir. 2021)...........................................................................6

*Fairbank v. Wunderman Cato Johnson*,

    212 F.3d 528 (9th Cir. 2000)............................................................................7

*FMC Corp. v. Manitowoc Co.*,

    835 F.2d 1411 (Fed. Cir. 1987)......................................................................16

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - iv

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 497-7200

1  *Frame-Wilson v. Amazon.com, Inc.*,

2      2022 WL 741878 (W.D. Wash. Mar. 11, 2022).............................................................10

3  *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70*
4  *of Alameda County*,

5      415 U.S. 423 (1974).............................................................................................................5

6  *Giuliano v. SanDisk Corp.*,

7      224 F. Supp. 3d 851 (N.D. Cal. 2016)..............................................................................16

8  *Haberman v. Washington Pub. Power Supply Sys.*,

9      109 Wn.2d 107 (1987)...................................................................................................19, 20

10 *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,

11     105 Wash. 2d 778 (1986)...................................................................................................22

12 *Hayden Publishing Co, Inc. v. Cox Broadcasting Corp.*,

13     730 F.2d 64 (2d Cir. 1984)................................................................................................18

14 *Helenius v. Chelius*,

15     131 Wn. App. 421 (2005)..................................................................................................20

16 *High Tech. Careers v. San Jose Mercury News*,

17     996 F.2d 987 (9th Cir. 1993).............................................................................................17

18 *Hoffer v. State*,

19     110 Wn.2d 415 (1988).......................................................................................................20

20 *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*,

21     627 F.2d 919 (9th Cir. 1980).................................................................................14, 15, 17

22 *In re Citric Acid Litig.*,

23     191 F.3d 1090 (9th Cir. 1999).............................................................................................8

24 *In re NCAA I-A Walk-On Football Players Litig.*,

25     398 F. Supp. 2d 1144 (W.D. Wash. 2005).................................................................13, 14

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - v

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 497-7200

*In re Toyota Motor Corp. Sec. Litig.*,

    No. CV 10-922 DSF AJWX, 2012 WL 3764903 (C.D. Cal. Feb. 21, 2012).................6

*In re Walt Disney Co. Derivative Litig.*,

    906 A.2d 27 (Del. 2006)................................................................22

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,

    No. MDL 551, 1988 WL 158948 (W.D. Wash. July 14, 1988)...................20

*In re WeWork Litig.*,

    No. CV 2020-0258-AGB, 2020 WL 6375438 (Del. Ch. Oct. 30, 2020).......................24

*Ito Int'l Corp. v. Prescott, Inc.*,

    83 Wash. App. 282 (1996)...............................................................18

*Kendall v. Visa U.S.A., Inc.*,

    518 F.3d 1042 (9th Cir. 2008)...........................................................7

*Kreidler v. Pixler*,

    482 F. App'x 204 (9th Cir. 2012).......................................................22

*Lundquist v. First Nat'l Ins. Co. of Am.*,

    No. 18-5301 RJB, 2020 WL 5847590 (W.D. Wash. Oct. 1, 2020)...............................21

*Mathias v. Daily News, L.P.*,

    152 F. Supp. 2d 465 (S.D.N.Y. 2001).....................................................10-11

*McGlinchy v. Shell Chemical Co.*,

    845 F.2d 802 (9th Cir. 1988)...........................................................10

*McKessonHBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*,

    339 F.3d 1087 (9th Cir. 2003)...........................................................5

*Mendoza v. Zirkle Fruit Co.*,

    301 F.3d 1163 (9th Cir. 2002)..........................................................13

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - vi

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 497-7200

*Miller v. Thane Int'l, Inc.*,

    519 F.3d 879 (9th Cir. 2008)........................................................................................19

*Moritz v. Daniel N. Gordon, P.C.*,

    895 F. Supp. 2d 1097 (W.D. Wash. 2012)..................................................................21

*NCAA v. Univ. of Oklahoma*,

    468 U.S. 85 (1984)........................................................................................................13

*Obasi Inv. LTD v. Tibet Pharms., Inc.*,

    931 F.3d 179 (3d Cir. 2019).................................................................................23, 24

*PBTM LLC v. Football Nw., LLC*,

    No. C19-2081-RSL, 2022 WL 670920 (W.D. Wash. Mar. 7, 2022) ...........................7

*Pennsylvania Ave. Funds v. Borey*,

    569 F. Supp. 2d 1126 (W.D. Wash. 2008)..................................................................10

*Perkumpulan Investor Crisis Center Dressel-WBG v. Wong*,

    2014 WL 1047946 (W.D. Wash. Mar. 14, 2014).........................................................7

*Piper Jaffray, Inc. v. Estate of Rudow*,

    100 Wash. App. 1023 (2000)......................................................................................18

*Quest Integrity USA, LLC v. A.Hak Indus. Servs. US, LLC*,

    No. C14-1971RAJ, 2016 WL 4533067 (W.D. Wash. Apr. 8, 2016)...........................15

*Rebel Oil Co., Inc. v. Atlantic Richfield Co.*,

    51 F.3d 1421 (9th Cir. 1995)......................................................................................18

*Spectrum Sports v. McQuillan*,

    506 U.S. 447 (1993)....................................................................................................18

*St. Alphonsus Med. Ctr. – Nampa, Inc. v. St. Luke's Health Sys.*,

    778 F.3d 775 (9th Cir. 2015).......................................................................................12

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - vii

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 497-7200

*Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*,

875 F.2d 1369 (9th Cir. 1989)..................................................................10

*Todd v. Exxon Corp.*,

275 F.3d 191 (2d Cir. 2001)...................................................................10

*Triple H Family Limited Partnership v. Neal*,

2018 WL 3650242 (Del. Ch. July 31, 2018)..........................................23

*Tumelson Fam. Ltd. P'ship v. World Fin. News Network*,

No. C03-1340JLR, 2005 WL 8161864 (W.D. Wash. July 15, 2005)...........................20

*Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*,

540 U.S. 398 (2004)......................................................................16, 17

*Virtus Capital L.P. v. Eastman Chem. Co.*,

2015 WL 580553 (Del. Ch. Feb. 11, 2015)............................................23

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,

382 U.S. 172 (1965)............................................................................15

**Rules and Statutes**

28 U.S.C. § 1450.........................................................................................5

CR 12(b)(6)..............................................................................................5

Fed. R. Civ. P. 1.......................................................................................6

Fed. R. Civ. P. 8(a)(2).............................................................................4

Fed. R. Civ. P. 12(b)................................................................................5

Fed. R. Civ. P. 12(c)................................................................................5

Fed. R. Civ. P. 12(g)(2)........................................................................6, 7

RCW 19.86.030...................................................................................7, 15

RCW 19.86.040......................................................................................15

RCW 19.86.093......................................................................................21

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 497-7200

RCW 21.20.010(1)-(3)..............................................................................................................18

RCW 21.20.430.......................................................................................................................19

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - ix

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 497-7200

1

## **<u>INTRODUCTION</u>**

2

3     The Motion for Partial Judgment on the Pleadings brought by The Boeing Company

4 ("Boeing") and Boeing HorizonX Ventures, LLC ("HorizonX," and collectively with Boeing,

5 "Defendants") is entirely duplicative of their failed Partial Motion to Dismiss that was fully

6 briefed, argued, and denied in the King County Superior Court before this case was removed to

7 this Court.  Defendants should not be permitted to renew a failed dispositive motion on the

8 pleadings ten months after the prior motion was denied and nine months after the case was

9 removed to this Court.   This is especially so given that the renewed motion seeks primarily to re-

brief issues raised in the prior motion.

10     Plaintiff Zunum Aero, Inc.'s First Amended Complaint ("FAC") alleges that Defendants

11 colluded with Safran S.A., Safran Corporate Ventures ("SCV"), S.A.S., Safran Electrical & Power,

12 S.A.S. ("SEP"), and Safran Helicopter Engines, SASU ("SHE," and collectively with SCV and

13 SEP, the "Safran Entities"), in a coordinated campaign to usurp a unique opportunity that Zunum

14 had conceived and that would disrupt Boeing's primary market.  After receiving confidential

15 access to Zunum's ideas and designs, Defendants realized that Zunum had solved a longstanding

16 capacity/range/speed problem and identified a technological and market approach that made

17 hybrid- or all-electric propulsion viable far sooner than widely believed possible.  They sought to

18 eliminate Zunum and seize this opportunity for themselves.

19     After Boeing's initial Partial Motion to Dismiss was unsuccessful, Boeing now attempts to

20 take another bite at the apple by filing a Partial Motion for Judgment on the Pleadings which

21 recycles the failed arguments already considered and rejected by the King County Superior Court.

22 Defendants' motion is a disfavored motion for reconsideration and violates the law of the case

23 doctrine and Federal Rule of Civil Procedure 12(g)(2).  It should denied for these reasons.

24

25

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 1

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

In addition, the FAC plausibly alleges claims for: (i) violations of Washington state antitrust laws under RCW 19.86.030 and 19.86.040; (ii) breach of fiduciary duties; (iii) securities fraud; and (iv) violation of the Washington Consumer Protection Act, RCW 19.86.020.

## STATEMENT OF FACTS

The airline industry has been built around a "hub and spokes" model to accommodate enormous aircrafts, such as the Boeing 747 and Airbus A380 that serve long-haul flights, and the Boeing 737, which is designed for ranges of up to 4,400 miles, but often used for shorter flights driven by the economics of large jet engines. FAC ¶ 82. This model has led to "a less than fully competitive aerospace sector" with "outsize profits, higher prices for consumers and declining rates of investment and innovation." *Id.* ¶ 66. That is in addition to the jet engine's contribution to air and noise pollution. Zunum's plans posed an existential threat to Boeing's primary market.

Interest in alternative short-haul flights has exploded, leading Boeing to seek to acquire Embraer's commercial aircraft division to maintain its dominance. FAC ¶¶ 49-59. Boeing and the Safran Entities did not view hybrid or electric propulsion as technologically or economically viable until 2040 or later. *Id.* ¶¶ 75-90, 108. Zunum's breakthrough enables it far sooner through technological innovations to optimize the variables of capacity, speed, and range.

In mid-2016, Zunum engaged Boeing as a prospective investor and partner, given its work on aerostructures and its industry relationships. FAC ¶¶ 95-98. Zunum and Boeing executed a Proprietary Information Agreement ("PIA") to protect Zunum's trade secrets, and Boeing embarked on extensive due diligence to evaluate Zunum's technologies, design specifications, economic analyses, and business plans, including its initial aircraft, the ZA10. *Id.* ¶¶ 104-117. Boeing was also aware of Zunum's plan to scale to the ZA50, a 48-seat aircraft with a 1,000 mile range, by 2027, followed by a 100-seat airliner with a 1,500-mile range in the 2030s. *Id.* ¶ 35.

Boeing invested $5 million through a Convertible Promissory Note ("2017 CPN"), Note Purchase Agreement ("2017 NPA"), and Investor Rights Letter ("2017 IRL"). FAC ¶¶ 125-126.

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 2

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

The 2017 CPN was convertible to equity in Zunum reflecting a strategic partnership.  The 2017 IRL also gave Boeing a right of first refusal for further investment and a right of first negotiation to contract to supply components.  *Id.* ¶¶ 120-127, 132-136, 453.  Zunum soon learned that the same engineers from the Boeing Commercial Airplanes unit who conducted the pre-investment due diligence had created a copycat aircraft for Boeing – the BHE-11 – with Zunum's trade secrets.

Boeing, and later HorizonX, began a coordinated campaign to starve Zunum and obtain its assets.  FAC ¶¶ 10-11, 307, 396-401.  After Boeing's initial investment, the main suppliers of Boeing's electrical systems, Safran, S.A., also known as the Safran Group ("Safran"), a French aerospace conglomerate, and United Technologies Aerospace Systems ("UTAS"), separately approached Zunum with proposed investments and partnerships.  *Id.* ¶ 8.  Meanwhile, Boeing was engaging with them to copy Zunum's aircraft.  *Id.* ¶¶ 12-13.  Boeing sabotaged Zunum's other relationships, including by pulling Boeing's stated support and commitment to invest further when it knew that the reversal would signal a lack of confidence in Zunum and tarnish its reputation.  *Id.* ¶¶ 124, 264.  Defendants used this pattern to trap Zunum with nowhere else to turn.  *Id.*

In early 2018, Defendants induced Zunum to abandon a funding round that had obtained interest for investments of up to $61 million in favor of a strategic process code-named "Project Catalyst," later referred to as a "More Strategic Relationship" ("MSR"), which would lead to Boeing becoming Zunum's sole investor.  FAC ¶¶ 204-212.  Defendants offered Zunum a bridge loan of $10 million, when Zunum only had ten weeks of operating funds remaining.  *Id.* ¶¶ 212-217.  However, HorizonX insisted on a valuation cap and abruptly reduced this commitment to $4 million, constraining Zunum's prospect to raise additional funds to cause financial distress for Zunum, after which Boeing sought to raid Zunum's assets.  *Id.* ¶¶ 225-226.  In April 2018, Boeing accidentally revealed that its engineers had documented information obtained from Zunum and were misusing the information to compete against Zunum in violation of the PIA and 2017 IRL.  *Id.* ¶¶ 227-231, 410-415.  The bridge loan was another Convertible Promissory Note ("2018

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

CPN"), Note Purchase Agreement ("2018 NPA"), and Investor Rights Letter ("2018 IRL"), this time with HorizonX.  *Id.* ¶¶ 246-247.  Zunum was in desperate need of continued investment, having been induced to stall its fundraising, but Defendants continued to string Zunum along, keeping Zunum locked up through rights of first refusal.  *Id.* ¶¶ 132-135, 244, 250-254.

Boeing exerted significant influence over Safran and UTAS to intercept any investment or supplier relationship.  FAC ¶¶ 264-322.  In parallel, Safran and UTAS followed the same bait-and-switch pattern, abruptly abandoning investments despite significant indications of interest, including a letter of intent from Safran's venture arm and targeted closing dates.  A contingent of Safran representatives from France even traveled to Seattle to close on the investment, only for Safran's venture arm and Defendants to cancel their investments abruptly at the same time.  Zunum had entered into a broad co-development agreement with Safran business units as a component of the expected investment, in particular for Safran to supply a turboshaft range extender for the ZA10.  *Id.* ¶¶ 269, 274, 284, and 289.  These collaborations were no longer possible due to the lack of funding.  Instead, Defendants moved forward with a partnership together with Safran.  *Id.* ¶¶ 303-306.  Meanwhile, Boeing units pursued hybrid aircraft programs, and several Boeing leaders with access to Zunum's proprietary information launched competing aircraft ventures.

## AUTHORITY AND ARGUMENT

### A.    LEGAL STANDARD.

Fed. R. Civ. P. 8(a)(2) requires only a short, plain statement of the claim showing the pleader is entitled to relief and giving the defendant fair notice of what the claim is.  Factual allegations must be enough to raise a right to relief above the speculative level.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.  "Plausibility" is not "probability."  *Id*.

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 4

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1    In addition, "[d]ismissal without leave to amend is improper unless it is clear . . . that the

2    complaint could not be saved by any amendment." *B&G Foods North America, Inc. v. Embry*, 29

3    F.4th 527, 541 (9th Cir. 2022); *see also McKessonHBOC, Inc. v. N.Y. State Common Ret. Fund,*

4    *Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003) ("Dismissal without leave to amend is proper only if 'it

5    is clear . . . that the complainant could not be saved by any amendment.'") (internal citation

6    omitted).  The FAC is adequately pleaded.  But if it were not, an amendment should be allowed.

7    **B.      DUPLICATIVE MOTIONS ARE DISFAVORED.[1]**

8    State court orders entered before a case is removed "remain in full force and effect until

9    dissolved or modified by the district court."  28 U.S.C. § 1450; *Granny Goose Foods, Inc. v.*

10   *Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S.

11   423, 435-36 (1974).  Upon removal, "[t]he federal court . . . treats everything that occurred in the

12   state court as if it had taken place in federal court."  *Butner v. Neustadter*, 324 F.2d 783, 785

13   (1960).  This approach serves judicial economy "by providing that proceedings had in state court

14   shall have force and effect in federal court, so that pleadings filed in state court, for example, need

15   not be duplicated in federal court."  *Granny Goose*, 415 U.S. at 435.

16   After the pleadings closed in the Superior Court, Defendants moved to dismiss the FAC

17   (the same pleading that is the subject of the present motion), arguing that Zunum failed to state a

18   claim for relief.  ECF No. 2 at 7 (citing CR 12(b)(6)).  Defendants argue that a duplicative motion

19   is permitted because the pleading standard is different under state law.  However, under both

20   Washington and federal law, dismissal is presumptively with leave to amend.  *See, e.g.*, *Burton v.*

21   *Lehman*, 153 Wash.2d 416, 422 (2005); *B&G Foods North Am., Inc. v. Embry*, 29 F.4th 527, 541

22   (9th Cir. 2022).  Given the presumption in favor of an opportunity to amend, a motion under Fed.

23   R. Civ. P. 12(c) is not substantially different.  *See also Carvalho v. Equifax Info. Servs., LLC*, 629

24

25

---

[1] Zunum reserves the right to seek its fees, including pursuant to 28 U.S.C. § 1927.

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 5

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

F.3d 876, 887 (9th Cir. 2010) (treating state court demurrer as "the equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b) in federal practice").  Defendants' motion is an "untimely request for reconsideration."  *In re Toyota Motor Corp. Sec. Litig*., No. CV 10-922 DSF AJWX, 2012 WL 3764903, at *1 (C.D. Cal. Feb. 21, 2012).

A renewed dispositive motion violates the law-of-the-case doctrine, which provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Arizona v. California*, 460 U.S. 605, 618 (1983).  A prior decision should be followed unless it is "clearly erroneous," is manifestly unjust, new controlling authority requires reconsideration, or  "substantially different evidence was adduced at a subsequent trial."  *Etemadi v. Garland*, 12 F.4th 1013, 1020 (9th Cir. 2021).  Defendants have identified no basis for reconsideration or for diverging from the law of the case.

The motion is also barred by Fed. R. Civ. P. 12(g)(2).  "Rule 12(g) is designed to avoid repetitive motion practice, delay, and ambush tactics."  824 F. Supp. 2d 1164, 1175 (C.D. Cal. 2011).  Repetitive litigation of the same issues is contrary to this goal and the mandate of Fed. R. Civ. P. 1.  *Id.*  Nor may Defendants raise new arguments that were available to them when they moved to dismiss in the Superior Court.  *Toyota Motor Corp.*, 2012 WL 3764903, at *1 ("Rule 12(g) and Rule 12(h)(2) . . . do not provide an unfettered grant to seek reconsideration of arguments already raised and lost in a previous Rule 12(b)(6) motion.").

The cases that Defendants cite in support of their successive motion reflect only that courts may consider such motions where there is some change, such as an amendment, or other circumstances not present here.  For example, Defendants cite *Brokers' Choice of Am., Inc. v. NBC Universal, Inc*., 861 F.3d 1081, 1102 (10th Cir. 2017).  There, the Tenth Circuit held that a second motion to dismiss was permissible because the plaintiff had revised its complaint to add additional evidence that was not available when defendant filed its first motion to dismiss.  Here, Boeing filed its first motion to dismiss on February 16, 2021, after Zunum filed its FAC on December 18,

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 6

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

2020, and Zunum has not amended its complaint since. *Brokers'* therefore has no application here. For the same reasons *Perkumpulan Investor Crisis Center Dressel-WBG v. Wong*, 2014 WL 1047946, at *6 (W.D. Wash. Mar. 14, 2014) is also inapplicable.

Finally, Defendants cite *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528 (9th Cir. 2000). In *Fairbank*, the Ninth Circuit affirmed reconsideration of a summary judgment order entered by the California Superior Court prior to removal. *Id.* at 532-533. The District Court held that the California summary judgment standard "differed in material respects from the federal standard and found those differences to present a cogent reason for reconsidering the Superior Court's earlier decision." *Id.* at 533. Here there is no material difference in the standards applied in reviewing the prior motion to dismiss and the decision to be made, if any, by this Court in light of the requirement that Zunum be given an opportunity to cure any deficiencies (if necessary).

Defendants' renewed motion is barred by the law of the case and Fed. R. Civ. P. 12(g)(2).

## C.    ZUNUM HAS ADEQUATELY ALLEGED ANTITRUST VIOLATIONS.

### 1.    Section 1 – Count IX – RCW 19.86.030

Section 1 of the Sherman Act and RCW 19.86.030 are "essentially identical[.]" Defendants argue that Zunum must plead an agreement. That is inaccurate, although Zunum has done so. A Section 1 claim must allege a contract, combination, or conspiracy, and an intent to restrain trade under a *per se* violation or a rule of reason analysis. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008). The FAC "'need only allege sufficient facts from which the court can discern the elements of an injury resulting from an act forbidden by the antitrust laws.'" *PBTM LLC v. Football Nw., LLC*, No. C19-2081-RSL, 2022 WL 670920, at *5 (W.D. Wash. Mar. 7, 2022).

#### a.  *Contract, Combination, or Conspiracy*

"An illegal combination in restraint of trade requires . . . : (1) two or more actors, and (2) concerted action." *Boeing Co. v. Sierracin Corp.*, 738 P.2d 665, 677 (Wash. 1987). Concerted action is evidenced by "parallel conduct, such as competitors adopting similar policies around the

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 7

Shlansky Law Group, LLP
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1   same time in response to similar market conditions . . . ." *Bell Atlantic Corp.* 550 U.S. at 553-54.

2   Courts look to "plus factors" to distinguish permissible and anticompetitive conduct.  *In re Citric*

3   *Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir. 1999).

4          Zunum pleads both direct evidence of a combination or conspiracy and circumstantial

5   evidence of the same.  Boeing inaccurately argues that Zunum alleges "only" that Safran was

6   "beholden to Boeing" and that it would not have declined to invest absent "encouragement or

7   instruction from Boeing."  FAC ¶ 349.  But this argument mischaracterizes Zunum's theory and

8   omits Zunum's other allegations.  It ignores that in October 2018, executives from SCV flew from

9   France to meet with Zunum and HorizonX and to consummate an investment, but the SCV

10  executives were informed just prior to the meeting that they were no longer authorized to close the

11  investment.  *Id.* ¶ 295-296.  Zunum was informed by an Executive Vice President at SHE that

12  Alain Sauret, president of SEP, blocked the investment.  *Id.* ¶ 299.

13         Zunum has sufficiently alleged that Defendants and the Safran Entities combined or

14  conspired to exclude Zunum from the relevant markets.  *See* FAC ¶¶ 10, 12, 20, 171, 193-194,

15  265-267, 277, 304-307, 310, 368, 398-403, 515-516, 520, 522-525.   For example, Boeing

16  approached Safran to provide electrical components for Boeing's aircraft design misappropriated

17  from Zunum to prevent Zunum from being able to enter the relevant markets.  *Id*. ¶¶ 10, 171.

18  Defendants and the Safran Entities also combined to squeeze Zunum out of the market with a

19  parallel and coordinated bait-and-switch approach to investment and support for Zunum.  *Id.* ¶ 20.[2]

20  This conduct was coordinated and anticompetitive.

21

22

23  _____

    [2] Boeing and Safran also deployed unfair and deceptive tactics to foreclose Zunum's access to capital and other inputs

24  necessary for it to compete.  Boeing used its right of first negotiation to step in front of third parties to supply
    components for the ZA10 and string Zunum along with promises of support that it never intended to provide.  FAC

25  ¶¶ 145, 151, 177, 454-456.  The Safran Entities also held out a broad partnership to collaborate on Zunum's propulsion
    system, while coordinating with Boeing to starve Zunum.  *Id.* ¶¶ 144, 279.  Boeing and Safran pulled their investment
    commitments in October 2018, after Boeing exerted influence over Safran.  *Id.* ¶¶ 295-301.

    OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
    PLEADINGS - 8

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1     Zunum has also pleaded concerted action among the Defendants and the Safran Entities to

2  usurp Zunum's business opportunities and exclude Zunum from the market opportunity that

3  Defendants and the Safran Entities had previously dismissed.  They became seriously interested

4  only after learning about Zunum's concept, which a Safran executive described as "a realistic

5  ambition, based on a sounded approach of the need, and a clever choice of the tryptic [sic] 'capacity

6  / speed / range' which is key to face such a challenge."  FAC ¶ 275; *see also id.* ¶¶ 75-77, 307, 377.

7  Boeing had launched a competing program and had already engaged the Safran Entities to provide

8  the propulsion system using Zunum's ideas.  *Id.* ¶¶ 170-171, 174, 193.  This conduct would only

9  be mutually beneficial if they worked together to block Zunum's ascent.  Absent an agreement

10  otherwise, there would be a race to support Zunum given Defendants' and the Safran Entities'

11  interest in Zunum's innovation.  That is evidence of an anticompetitive combination.

12        b.  *Per Se Violation and Rule of Reason Analysis*

13          i.  <u>*Per Se* Violation</u>

14     Certain combinations and conduct "are conclusively presumed illegal without further

15  examination . . . ."  *Ballo v. James S. Black Co.*, 39 Wash. App. 21, 26 (1984).  They are "unlawful

16  *per se*."  *Id.*  There is no requirement to plead market power or a market for restraints that are

17  illegal *per se*.  *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991).

18     Boycotts that block competitors' access to supplies and inputs are *per se* unlawful.  *Big*

19  *Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1103 (9th Cir. 1999); *Arizona v.*

20  *Maricopa Cnty. Med. Soc'y*, 457 U.S. 332 (1982); *Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781,

21  784 (9th Cir. 1996).  After stringing Zunum along with respect to monetary and in-kind

22  investments, Defendants refused to deal with Zunum as to funding or components for the ZA10,

23  leaving Zunum with no alternatives.  FAC ¶¶ 15, 19, 162, 171, 207, 226, 262, 264, 287, 294, 299,

24  301, 318-319, 324, 332, 344-345, 348, 365-367, 370, 399.  For example, Boeing reduced its $10

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 9

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

million investment commitment to $4 million, causing Zunum great financial distress.  *Id*. ¶ 226.
The collusion between Boeing and Safran was a *per se* violation.

ii.   Rule of Reason

Defendants, with the Safran Entities, also violated the rule of reason.  The rule of reason
analyzes whether, under the totality of the circumstances, there is: (1) an agreement, conspiracy,
or combination; (2) intent to harm or unreasonably restrain competition; and (3) an antitrust injury
– harm to competition, not isolated to Zunum.  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802,
811 (9th Cir. 1988).  As addressed above, a combination or conspiracy existed between Defendants
and the Safran Entities.  Zunum has also alleged the other two elements.

I.   *Relevant Market and Market Power*

Zunum has alleged relevant markets and market power.  An antitrust injury requires the
allegation of market power, which can be established "by direct or circumstantial evidence."
*Pennsylvania Ave. Funds v. Borey*, 569 F. Supp. 2d 1126, 1134 (W.D. Wash. 2008).

The relevant market need not "be pled with specificity."  *Frame-Wilson v. Amazon.com,
Inc.*, 2022 WL 741878, at *8 (W.D. Wash. Mar. 11, 2022).  Market definition "is a factual inquiry
for the jury[.]"  *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc*., 875 F.2d 1369, 1374 (9th Cir.
1989); *Eastman Kodak Co. v. Image Technical Servs., Inc*., 504 U.S. 451, 482 (1992) (market
definition requires "factual inquiry into the 'commercial realities' faced by consumers.");  *Todd v.
Exxon Corp*., 275 F.3d 191, 199-200 (2d Cir. 2001) (market definition is "deeply fact-intensive,"
and "courts hesitate to" dismiss for failure to plead a relevant market); *Chapman v. N.Y. State
Division for Youth*, 546 F.3d. 230, 238 (2d Cir. 2008).  Here, the markets include the national and
international markets for hybrid-electric and all-electric aircraft, short-haul flights under 1,500
miles, and integrated door-to-door travel.  FAC ¶¶ 1, 19, 515.  The markets are adequately pleaded.

The reference to a national and international market is not, as Boeing argues,
"contradictory *and* vague."  Motion at 9.  They are different markets.  In *Mathias v. Daily News,*

Shlansky Law Group, LLP
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1    *L.P.*, which Boeing cites, the Southern District of New York held that a market defined as the "tri-

2    state area" contradicted the other definition of a "national domestic market."  152 F. Supp. 2d 465,

3    483 (S.D.N.Y. 2001).  That contradiction does not exist here.  Boeing does business domestically

4    and internationally.  One market does not encompass the other.

5          Defendants also argue that Zunum does not identify a product market because the market

6    for "hybrid-electric and all-electric aircraft" does not exist.  Motion at 9.  That is a factual argument

7    better suited for summary judgment or trial.  And if that is so because Boeing has colluded to

8    squelch that market for fear that it will undercut its mainstay business model, that would support

9    Zunum's pleaded theory.  *See, e.g.,* FAC ¶¶ 10, 12, 20, 171, 193-194, 265-267, 277, 304-307, 310,

10   368, 398-403, 515-516, 520-525.  Boeing cannot claim the benefit of the supposed absence of a

11   market that it has destroyed to protect its existing business.[3]  In July 2019, the investment bank

12   UBS issued a report identifying Zunum as one of the leading aircraft programs addressing the

13   hybrid-electric market, which hybrid-electric aircraft are specifically being developed to serve the

14   market for short-haul flights under 1,500 miles, which does exist.  *Id.* ¶ 45.  Boeing further argues

15   that such a market would encompass small delivery vehicles or single-person air taxis that, it

16   argues, are not substitutes for Boeing's passenger planes.  Zunum alleges that Boeing was seeking

17   to enter this market, through its creation of the Boeing NeXt division, which focused on smaller

18   personal-taxi-like aircraft using proprietary information obtained from Zunum.  *Id.* ¶¶ 255, 438.

19         Boeing next argues that the market for hybrid-electric and all-electric aircraft is too broad

20   because it would encompass products that are not economic substitutes for Boeing's products.

21   This misses the point.  The business model that Zunum conceived is that smaller, lighter aircraft

22   that use less fuel, require shorter runways, and create less noise are precisely a substitute for the

23   Boeing aircraft that, although designed for longer flights, are primarily used for flights under 1,500

24

25   _____

[3] Notably, in discovery Boeing refuses to identify the markets in which it participates.  Boeing should not be
permitted to claim that a pleading fails when the parties are in the throes of discovery and while Boeing flatly
refuses to produce relevant information.

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 11

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

miles.  In fact, in response to recent economic pressures and increases in the cost of jet fuel, airlines have actually begun to replace shorter flights with buses and, in response to pressure to reduce air emissions, airlines have begun placing orders for smaller electric aircraft.[4]  This highlights the need that Zunum's aircraft would help to fill because Boeing's aircraft are too large and expensive to fill this need.  This also highlights why the issue of market definition is a fact issue.   Boeing's argument that this market definition would include personal aircraft, business jets, and helicopters is also a classic "straw man."  However, Zunum specifically alleges that it was formed with a focus to develop regional aircraft for commercial aviation, which is understood to exclude the small aircraft that Boeing cites.  *Id.* ¶ 32.

Boeing further argues that the market for "short-haul flights under 1,500 miles" is not clear (to Boeing) whether that is a services market or a product market.  On the contrary, the FAC makes abundantly clear that the reference to flights under 1,500 miles refers to the market for flights in that range.  Approximately 80% of the flights of its mainstay aircraft model, the Boeing 737, are for flights in this range.  FAC ¶ 51.  Boeing cites *St. Alphonsus Med. Ctr. – Nampa, Inc. v. St. Luke's Health Sys.*, but that case appears to have been appealed after judgment, not dismissed at the pleading stage.  778 F.3d 775, 785 (9th Cir. 2015).  Thus, the "prospective analysis" of "consumer response to a hypothetical price increase" (which addresses geographic market definition), is best done after the development of a record, which Boeing so far refuses to participate in through discovery on topics germane to this precise issue.  Boeing argues the hypothetical that consumers would not respond to a price change in 737s by purchasing a prop plane, but the market is, in fact, responding to economic pressures by substituting buses and environmental pressures by substituting all-electric aircraft, demonstrating that Zunum's aircraft is a viable substitute to Boeing's primary product.

---

[4] *See* https://www.masstransitmag.com/bus/news/21263445/usa-american-airlines-is-getting-into-the-bus-business.

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 12

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1    Boeing alternatively argues that Zunum's proposed market is hyper-specific and that there

2    is no relevant consumer choice category for "aircraft incapable of flying more than 1,500 miles,"

3    the straw man that Boeing hopes to argue against.  Of course, that is not Zunum's theory.  Zunum

4    has alleged that there is a vastly underserved demand by the hub-and-spokes model of the present

5    airline industry, including overbuilt large aircraft.  Boeing seeks to avoid erosion of that market,

6    and its predominant market share in that market, by preventing the emergence of aircraft that

7    would fill the gap and provide a substitute to Boeing's 1968-vintage airliners.

8    Finally, with respect to an integrated door-to-door travel market, Boeing seeks to deride

9    this as merely a marketing slogan.  In reality, major airlines are already investing in all-electric air

10   taxies precisely to address the door-to-door travel needs of their passengers.  Boeing recently

11   invested a further $450 million in its Wisk joint venture for this purpose.  Airbus and Embraer are

12   similarly developing CityAirbus, and Eve, respectively.  Uber, and now Joby, have already been

13   developing booking platforms for this purpose.  *See* International Publication No. WO

14   2021/195377 A1 (published September 30, 2021).

15   Market power need not be alleged with specificity.  *See, e.g.*, *Mendoza v. Zirkle Fruit Co*.,

16   301 F.3d 1163, 1171 (9th Cir. 2002) (plaintiff "must not be put to the test to prove this allegation

17   at the pleading stage.").  Market power is an ability to affect prices.  *NCAA v. Univ. of Oklahoma*,

18   468 U.S. 85, 109 (1984).  Zunum has alleged sufficient market share.  FAC ¶¶ 48, 399, 498, 535-

19   536.  Boeing maintains a worldwide market share of 40% in the markets for the large-body aircraft

20   that are its mainstay and closer to 60% market share in North America.  *Id.* ¶¶ 51, 535.  With

21   respect to domestic flights of up to 1,500 miles, Boeing has approximately 50% market share.

22   Boeing is also leveraging its existing duopoly to achieve monopoly power in the market for hybrid

23   electric propulsion aircraft and the markets for short-haul flights under 1,500 miles.  *Id.* ¶¶ 48, 534.

24   Boeing formed its NeXt division to compete in the integrated door-to-door travel market, hybrid

25

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 13

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1    electric propulsion, future urban, regional and global air mobility.  *Id*. ¶¶ 255, 438.  Boeing

2    concedes that such market share is sufficient to reflect market power.  Motion at 11.

3           However, market share is only one indicium of monopoly power, and courts have

4    discouraged "[b]lind reliance upon market share, divorced from commercial reality . . . ."  *Hunt-*

5    *Wesson Foods*, 627 F.2d at 924.  Here, the commercial reality is that Boeing exerts dominance in

6    the market for short-haul aircraft and flights under 1,500 miles.  Such dominance in a related

7    market is evidence of sufficient monopoly power.  *Broadcom Corp. v. Qualcomm Inc*., 501 F.3d

8    297, 318 (3d Cir. 2007) ("rapid growth" in emerging market and replication of prior

9    anticompetitive conduct sufficiently alleged dangerous probability).

10          Zunum has also alleged that Defendants' conduct negatively affects consumers.

11   FAC ¶¶ 33, 36, 40, 42, 50, 65, 527-529.  "Generally, the test for harm to competition is whether

12   consumer welfare has been harmed such that there has been a decrease in allocative efficiency and

13   an increase in price."  *In re NCAA I-A Walk-On Football Players Litig*., 398 F. Supp. 2d 1144,

14   1151 (W.D. Wash. 2005).  Free competition would allow for increased efficiency, reduce

15   emissions, reduce noise, and drive down prices for air travelers.  FAC ¶¶ 33, 36.  Improvements

16   in air travel have otherwise stagnated.  *Id.* ¶¶ 65, 83.  Recently, concerns over air emissions have

17   led European countries to ban or transition away from short-haul flights due to the lack of cleaner

18   alternatives like the ZA10.  https://www.bloomberg.com/news/articles/2021-04-13/france-short-

19   haul-flight-ban-points-way-toward-cleaner-aviation;  https://apnews.com/article/travel-air-travel-

20   germany-travel-airlines-2af6ca40712b05917ed572463f1f3025.   Defendants'   frustration   of

21   Zunum's success and market innovations has caused clear harm to consumers.

22              *II.    Intent and Unreasonable Restraint*

23          Defendants attempted to establish control of the market for hybrid electric aircraft at an

24   early stage and foreclose competition, including competition by Zunum, the innovative first-

25   mover.  FAC ¶¶ 370, 519-520.  Boeing strung Zunum along with assurances of support, seeking

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 14

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1    ever-more confidential information under the guise of increasing due diligence, locked Zunum up

2    with rights of first refusal and negotiation, and interfered with Zunum's other investor

3    relationships.  *Id.* ¶¶ 18, 20, 170-171, 399, 403.  This included foreclosing Zunum's opportunity

4    to partner with others, such as Safran or UTAS.  These actions have significantly delayed Zunum's

5    path to market and first-mover advantage.  This illustrates an intent to restrain competition, not

6    permissible parallel action.

7          Zunum has sufficiently alleged an antitrust violation under RCW 19.86.030.

8          2.   Attempted Monopolization Under Section 2 – Count X – RCW 19.86.040

9          Zunum has pleaded a valid claim for attempted monopolization.  A Section 2 attempted

10   monopolization claim must allege: "(1) specific intent to monopolize; (2) predatory or

11   anticompetitive conduct directed to accomplishing an unlawful purpose; and (3) causal antitrust

12   injury."  *Boeing*, 738 P.2d at 679 (citation omitted); RCW 19.86.040.   The Washington Supreme

13   Court has declined to adopt an element of "'dangerous probability of success[.]'"  *Boeing*, 738

14   P.2d at 679.  An attempt theory allows a "flexible approach" because the goal "is to discourage

15   unilateral activity that poses a threat to competition . . . ."  *Hunt-Wesson Foods, Inc. v. Ragu Foods,*

16   *Inc.*, 627 F.2d 919, 925 (9th Cir. 1980).   Boeing's arguments are more suited for summary

17   judgment but fail in any event.

18          a.   *Boeing Engaged in Predatory or Anticompetitive Conduct.*

19              i.   Patent Infringement

20          Misuse of patent rights to squelch competition is anticompetitive conduct.  In *Walker*

21   *Process Equip., Inc. v. Food Mach. & Chem. Corp.*, the Supreme Court allowed an antitrust claim

22   where a defendant had wrongfully patented an invention and then sought to enforce the patent

23   against the antitrust plaintiff.  382 U.S. 172, 177 (1965); *see also Quest Integrity USA, LLC v.*

24   *A.Hak Indus. Servs. US, LLC*, No. C14-1971RAJ, 2016 WL 4533067, at *5 (W.D. Wash. Apr. 8,

25   2016).  Boeing, which had access to Zunum's non-public, provisional patents, has obtained patents

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 15

1    based on information that Defendants and the Safran Entities misappropriated from Zunum.  FAC

2    ¶¶ 106, 148, 346, 370.  It has also filed a patent for a Thin Haul Hybrid Electric Propulsion System,

3    premised on the ideas underlying Zunum's ZA10.  *Id.* ¶¶ 381-384.  Defendants argue that Zunum

4    has failed to allege any "enforcement."  Enforcement by Boeing was not necessary because it

5    disabled Zunum's ability to compete.  In any event, Boeing is asserting the patents against Zunum

6    in this litigation by seeking to confirm its inventorship (which has happened since Zunum filed the

7    FAC) and is sufficient to demonstrate that Boeing is asserting the patent against Zunum.  *See*

8    *Beverly Hills Teddy Bear Co., Inc. v. GennComm, LLC*, No. CV2002849CJCJEMX, 2020 WL

9    7049537, at *2 (C.D. Cal. Oct. 1, 2020) (any "affirmative steps" suffice); *D & D Greek Rest., Inc.*

10   *v. Great Greek Franchising, LLC*, No. CV 20-9770-MWF (KSX), 2021 WL 4464201, at *6 (C.D.

11   Cal. Aug. 3, 2021) (filing "Assignee Showing Ownership per 37 CFR 3.73 form relating to the

12   plaintiff's patent" was an "affirmative act of patent enforcement").  Defendants also cite *Giuliano*

13   *v. SanDisk Corp.*, for the proposition that the patent deception must be "material" and shown by

14   clear and convincing evidence.  224 F. Supp. 3d 851, 856 (N.D. Cal. 2016).  *Giuliano* is a summary

15   judgment case and says nothing about what must be *pleaded*.    Meanwhile, Boeing seeks to

16   frustrate the development of a record by refusing to produce discovery on its patent activities.

17   Similarly, *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1412 (Fed. Cir. 1987), found that "mere

18   procurement" by fraud is not enough, was a case on appeal after trial, and thus is also inapplicable.

19                              ii.    Refusal to Deal

20       An impermissible refusal to deal exists where the conduct is not "justified by any normal

21   business purpose." *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 608 (1985).

22   A decision to forego short-term benefits may reflect an anticompetitive motive.  *Id.*  A plaintiff

23   must only plead that the defendant did not have "valid business reasons" for the refusal.   A

24   "profitable history" is not required, as Boeing suggests; in fact, no prior course of dealing is

25   required.  *Id.* at 605; *Verizon Communications, Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 16

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1  U.S. 398, 409 (2004).  Further, the existence of valid business motivations is a question of fact.

2  *High Tech. Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993).

3      Boeing's and HorizonX's conduct was not motivated by any "valid business reasons."

4  FAC ¶¶ 33, 36, 40, 42, 50, 65, 301, 528-529, 573-574.  There was no valid or permissible reason

5  for stealing trade secrets under the guise of investigating an investment or partnership.  Nor was

6  there any valid reason to string Zunum along with false assurances.  Defendants also gave up

7  valuable opportunities to supply components for the ZA10, for which Zunum has launch orders

8  for up to 155 aircraft, valued at up to $800 million.  *Id.* ¶¶ 47, 301.  This is the type of "forsak[ing]

9  short-term profits for some long-term, possibly anticompetitive gain," that Defendants admit may

10  qualify as a Section 2 violation.  *Verizon*, 540 U.S. at 399.  Defendants also argue that investment

11  capital is not a scarce resource and, therefore, could not be the subject of a refusal to deal in the

12  first place.  However, capital on the order of magnitude necessary to fund the development of the

13  ZA10 and follow-on aircraft was scarce, and Boeing's interferences undermined Zunum's

14  reputation and impaired its ability to attract further investment, further increasing that scarcity.  *Id.*

15  ¶ 124.  The FAC also pleads that other inputs such as a turboshaft were also necessary, but Boeing

16  used its influence to cause other potential collaborators to refuse to do business with Zunum.

17      b.  *Intent to Monopolize*

18      "Specific intent to monopolize will normally be proved by inference from conduct."  *Hunt-*

19  *Wesson Foods, Inc.*, 627 F.2d at 925.  Boeing's anticompetitive conduct, as described above,

20  includes excluding competition, eliminating customer choice, and intentionally acquiring or

21  attempting to acquire monopoly power in the relevant markets.

22      c.  *Dangerous Probability of Success*

23      Washington does not appear to have adopted this element, but Zunum has pleaded it in any

24  event.  A dangerous probability that the defendant will accomplish a successful monopoly is

25

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 17

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

generally shown by economic power in a specific product and geographic market. *Spectrum Sports v. McQuillan*, 506 U.S. 447, 459 (1993).

In an attempt theory, only probable market share of 30% is required. *Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995) (the required showing of market share in an attempt case is a "lower quantum" than in "an actual monopolization case."); *Hayden Publishing Co, Inc. v. Cox Broadcasting Corp.*, 730 F.2d 64, 68 (2d Cir. 1984) (monopoly power may exist even where "market share is less than 50%"). The market share and market power described above also illustrate the dangerous probability of success.

**D.   ZUNUM'S SECURITIES ACT CLAIM IS ADEQUATELY PLEADED.**

It is a violation of the Securities Act of Washington "in connection with the offer, sale or purchase of any security, directly or indirectly," to "make any untrue statement of a material fact or to omit to state a material fact . . . ." RCW 21.20.010(1)-(3).

*First*, Boeing argues that Delaware law, not Washington law, applies. Boeing appears to make this argument based on the forum-selection clause, but "Washington courts will not implement a choice of law provision if it conflicts with a fundamental state policy or if the state has a materially greater interest than the other jurisdiction in the resolution of the issue." *Ito Int'l Corp. v. Prescott, Inc.*, 83 Wash. App. 282, 288 (1996) (refusing to uphold choice-of-law provision because "the State has a strong interest in applying its securities act to a partnership involving several Washington defendants, Washington plaintiffs, and property located in Washington."). Washington uses the most significant relationship test for choice of law questions. *Piper Jaffray, Inc. v. Estate of Rudow*, 100 Wash. App. 1023 (2000) (Washington law applied to contract specifying Minnesota law). Here, all parties are Delaware corporations, but are headquartered in Washington, and the conduct alleged took place in Washington. FAC ¶¶ 22, 24-26. Washington has the most significant relationship with this claim and its law applies.

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

*Second*, the agreements signed by Zunum do not foreclose its claim.  Defendants used their offers to purchase securities from Zunum – the 2017 CPN, 2017 NPA, 2018 CPN, and 2018 NPA – as a means to obtain valuable and exclusive information from Zunum to use in competition against Zunum and to exclude it from the market.  Boeing initially invested in Zunum via the 2017 NPA, which was convertible to equity.  FAC ¶¶ 16, 125.  Boeing represented that it was interested in supplying the aerostructure components for the ZA10, requiring a right of first negotiation to provide such work, and pledging to provide other support.  *Id.* ¶¶ 131-135, 545.  Boeing represented that its interest in electric aircraft was in unrelated areas, which induced Zunum to share its proprietary information to support investment due diligence.  *Id.* ¶¶ 101, 545-46.  Boeing then immediately launched a secret program using the same engineers who had performed due diligence on Zunum, and thus had a vast body of Zunum's confidential information, to pursue Zunum's business plan.  *Id.* ¶¶ 6, 174-181, 183-190, 193, 550, 547.  Boeing made an untrue statement of material fact to induce Zunum to accept Boeing's investment.  If Zunum had known that Boeing intended to compete against it, including by misuse of information that Boeing acquired solely to support its due diligence in Zunum, it would not have entered into the 2017 NPA or 2017 CPN or shared its confidential information.[5]

*Third*, Zunum has satisfied its pleading standard.  "RCW 21.20.430 parallels section 410 of the Uniform Securities Act, which in turn is modeled after section 12(2) of the federal Securities Act of 1933."  *Haberman v. Washington Pub. Power Supply Sys.*, 109 Wn.2d 107, 125 (1987).  Like RCW 21.20.430, "Section 12(a)(2) [formerly sec. 12(2)] is a virtually absolute liability provision that does not require an allegation that defendants possessed scienter."  *Miller v. Thane*

---

[5] Later, Defendants induced Zunum to abandon a fundraising effort that had already led to substantial investment commitments to pursue Project Catalyst and the MSR, which they had no genuine intent to pursue.  FAC ¶¶ 552-554.  Unbeknownst to Zunum, Defendants had abandoned Project Catalyst and the MSR after investing $4 million, but strung Zunum along and kept it beholden to Boeing while it sought to absorb Zunum's employees and assets and purported to call the notes.  *Id.* ¶¶ 335, 338, 341-342, 362, 458.  They falsely held out an exclusive relationship with Boeing, ultimately including an acquisition, to induce Zunum to take on more debt.

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 19

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1  *Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008).   Zunum has alleged an omission, as described above.

2  At the pleading stage, the allegation of an omission is sufficient.  *Id.* at *5.

3  In any event, it is well settled that a "statement" can be made through nonverbal conduct.

4  *Helenius v. Chelius*, 131 Wn. App. 421, 452-53 (2005) (liability arises from "fraudulent

5  misrepresentations or conduct in connection with an agreement to buy or sell securities . . . .").  It

6  is also well settled that silence, in the face of a duty to disclose, constitutes a representation of the

7  nonexistence of the matter not disclosed.  *Haberman,* 109 Wn.2d at 168 (quotation omitted).

8  Boeing argues that a precise misrepresentation was required.  This position is directly at odds with

9  controlling law.  *Hoffer v. State,* 110 Wn.2d 415, 423-31 (1988).

10  *Fourth*, Boeing's omissions and misrepresentations were made "in connection with" the

11  sale of securities, which is "liberally construed to encompass practices 'touching' the sale of

12  securities."  *In re Washington Pub. Power Supply Sys. Sec. Litig.*, No. MDL 551, 1988 WL

13  158948, at *14 (W.D. Wash. July 14, 1988) (collecting cases); *Tumelson Fam. Ltd. P'ship v. World

14  *Fin. News Network*, No. C03-1340JLR, 2005 WL 8161864, at *3 (W.D. Wash. July 15, 2005)

15  ("[i]t has been held to apply to any '[d]eception related to the value or merit of the securities in

16  question,' to any assertion 'reasonably calculated to influence the investing public, and to any

17  representation that 'somehow touches upon or has some nexus with any securities transaction.'")

18  (internal citations omitted).  Here, Zunum's WSSA claim is based on conduct directly before and

19  after the sale of the securities.  FAC ¶¶ 6, 101, 131-135, 174-181, 183-190, 193, 545-546, 550.

20  *Fifth*, Defendants' conduct has damaged Zunum.  Zunum would not have incurred debt

21  (convertible to equity) or granted Boeing priority rights of first refusal or first negotiation.

22  Defendants argue that Zunum has incurred no harm because it has not repaid the notes.

23  Meanwhile, Defendants are actively pursuing a declaration that repayment is due in this same

24  litigation.  Thus, Zunum remains subject to liability on the notes, and they are live financial

25  liabilities from an accounting perspective, such that they constitute present harm.

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1    *Finally*, this Court has the authority to award Zunum the relief that it seeks.  Rescission is

2    only required where the securities can be recovered and it is a practical remedy.  Here, the

3    securities were in the form of convertible notes that cannot be "recovered" other than by negating

4    any right of Defendants to convert the debt to equity or calling the notes.  Rescission is not a

5    practical or possible remedy because what Zunum received was money for its operations that was

6    spent while Boeing and HorizonX were stringing it along and bleeding it.  FAC ¶¶ 264, 287, 353.

7    Where rescission is not possible, damages or injunctive relief are available.

8        Zunum has adequately pleaded its Securities Act claim.

9    **E.    DEFENDANTS VIOLATED THE CONSUMER PROTECTION ACT.**

10       To plead a violation of the Consumer Protection Act, a plaintiff must plead: "(1) unfair or

11   deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury

12   to plaintiff in his or her business or property; (5) causation." *Lundquist v. First Nat'l Ins. Co. of

13   Am.*, No. 18-5301 RJB, 2020 WL 5847590, at *5 (W.D. Wash. Oct. 1, 2020).  Injury to the public

14   interest occurs when a defendant's actions "(1) violate[ ] a statute that incorporates [RCW

15   19.86.093]; (2) violate[ ] a statute that contains a specific legislative declaration of public interest

16   impact; or (3)(a) injured other persons, (b) had the capacity to injure other persons, or (c) has the

17   capacity to injure other persons."  RCW 19.86.093.  Despite Defendants' arguments otherwise, "a

18   private dispute *can* affect the public interest if it is likely that additional plaintiffs have been or

19   will be injured in exactly the same fashion." *Birkholm v. Washington Mut. Bank, F.A.*, 447 F.

20   Supp. 2d 1158, 1165 (W.D. Wash. 2006) (emphasis added); *Moritz v. Daniel N. Gordon, P.C.*,

21   895 F. Supp. 2d 1097, 1114 (W.D. Wash. 2012) (triable issues regarding violation of the consumer

22   protection act based on single instance of violation of law).

23       Boeing's conduct harms the public by reducing competition, which will have the effect of

24   increasing the cost of air travel or avoiding or delaying reductions in the cost of air travel while

25   limiting consumer choice and convenience in air travel, and by eliminating the deployment of

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 21

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1   technology and market systems that reduce emissions associated with air travel, noise, and other

2   externalities.  FAC ¶¶ 573, 574.  The current model for air travel is over-consolidated, such that

3   door-to-door air travel times have stagnated or increased over 50 years and numerous smaller

4   communities have become disconnected.  *Id.* ¶¶ 82-83.  Zunum's plan promised to broaden air

5   travel's reach, and unlock routes to unserved or underserved destinations, while reducing costs

6   and emissions.  *Id.* ¶ 84.  The consumer preference for "hybrid-electric planes" over conventional

7   aircraft or other modes of travel illustrates the harm to consumers by delaying or denying Zunum's

8   entry to the market.  *Id.* ¶¶ 42, 574.  Defendants' violations have had a vast negative impact on

9   connectivity, mobility, and economic development, devastating to the public interest.  Defendants'

10  misuse of Zunum's intellectual property and trade secrets will also confuse the market about the

11  true owner of this technology.  *Kreidler v. Pixler*, 482 F. App'x 204, 208 (9th Cir. 2012).

12      Defendants cite *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., arguing

13  that Zunum has not shown that Boeing's actions "impacts the public interest."  105 Wash. 2d 778,

14  790 (1986).  Zunum has expressly alleged that Boeing's actions to attempt to establish a monopoly

15  in the nascent relevant market is based on a pattern that it has attempted before.  FAC ¶¶ 48, 51-

16  59.  There is nothing to stop repeated or ongoing conduct, especially given the extensive efforts

17  that Boeing and HorizonX undertook to block Zunum's first-mover advantage.  Finally, the delay

18  of Zunum's actualization of its plan, or its inability to pursue it now, has broad implications for

19  the public interest.  *Id*. ¶¶ 33, 36, 40, 42, 50, 65, 528.  Zunum has properly alleged a violation.

20  **F.   ZUNUM'S CLAIM FOR BREACH OF FIDUCIARY DUTY SURVIVES.**

21      Under Delaware law, someone acting as a *de facto* officer may owe fiduciary duties to the

22  company. *In re Walt Disney Co. Derivative Litig*., 906 A.2d 27, 48 (Del. 2006) ("a *de facto* officer

23  is one who actually assumes possession of an office under the claim and color of an election or

24  appointment and is actually discharging the duties of that office, but for some legal reason lacks *de*

25  *jure* legal title to that office.").  Delaware law looks "to who wields control in substance and have

imposed the risk of fiduciary liability on the actual controllers." *Virtus Capital L.P. v. Eastman Chem. Co.,* 2015 WL 580553, at *17 (Del. Ch. Feb. 11, 2015). This occurs where a third party exerts actual control over an entity through a relationship where the third party dominates the company's business affairs. *Triple H Family Limited Partnership v. Neal*, 2018 WL 3650242, at *14 (Del. Ch. July 31, 2018) (*de facto* officer owing fiduciary duties had "unfettered access" to confidential information, helped plan the company's business dealings with outside parties on "important issues," and assisted in updating the company's lenders).

Here, Logan Jones sat on Zunum's Board as an agent of Defendants. FAC ¶ 464. He wielded significant control and influence over Zunum, including as a gatekeeper to support from HorizonX. *Id.* ¶¶ 146, 156, 359. He had broad access to Zunum's confidential information (subject to confidentiality obligations), received access to presentations only provided to Board Members, and was actively involved in planning Zunum's business dealings. *Id.* ¶¶ 346, 381, 439, 457, 466, 486, 495-496. Mr. Jones directed Zunum's investor relations and attended Zunum's meetings with targeted investors. He was also kept apprised at all times of Zunum's investor pipeline, assisted with investor diligence (or purported to), spoke at length with potential investors, and tried to direct Zunum on whom it should partner with, including by using knowledge that only a Board Member would have to induce Zunum to pause its engagement with other investors in favor of a "More Strategic Relationship" with Boeing. *Id.* ¶¶ 203, 205, 208, 319, and 364.[6]

Boeing argues that Mr. Jones did not have the responsibility to manage Zunum and lacked "legal control" over its operations. Motion at 22. Boeing cites *Obasi Inv. LTD v. Tibet Pharms., Inc.*, 931 F.3d 179 (3d Cir. 2019) to argue that observers do not perform "similar functions" to

---

[6] In addition, Mr. Jones purported to manage Zunum's C-Suite executives, attempting to determine who should serve in Zunum's executive leadership, and seeking to oust Zunum's CEO. He used his influence to pressure Zunum to host a workshop with Boeing to quell its alleged concerns about inability to achieve the technical specifications and economics of the ZA10. He later used the same influence to stop Zunum's CEO from pursuing issues related to Boeing's blatant misuse of Zunum's intellectual property, while consistently reassuring Zunum and its other investor, JetBlue, that it had the support of Boeing's executive leadership. FAC ¶¶ 164, 168, 169, 195, 200.

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 23

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

directors and therefore cannot assert legal control.  But *Obasi* supports Zunum's argument that Mr. Jones was *in fact* controlling Zunum.  The Third Circuit held that while the observer in *Obasi* did not have control and only had "influence," control would be found if an observer made high-level corporate policy; delegated administrative authority; selected senior officers; decided financing and capital allocation; and supervised the "welfare of the whole enterprise."  *Id*. at 185. Mr. Jones engaged in precisely these types of activities and others on behalf of Defendants.  FAC ¶¶ 146, 156, 169, 195, 205, 235, 465.

Zunum's breach of fiduciary duty claim is not duplicative of its breach of contract claims. "Where there is an independent basis for the fiduciary duty claims apart from the contractual claims, even if both are related to the same or similar conduct . . . the fiduciary duty claims will survive." *In re WeWork Litig*., No. CV 2020-0258-AGB, 2020 WL 6375438, at *12 (Del. Ch. Oct. 30, 2020).  Zunum's "fiduciary duty claims depend on additional facts . . . are broader in scope, and involve different considerations in terms of a potential remedy." *Id.*  While Zunum's contract claims concern Defendants' misappropriation, use, and disclosure of Zunum's trade secrets and certain intellectual property, its breach of fiduciary duty claim concerns the misuse of information about Zunum's financial status and operations to seek to eliminate Zunum.  FAC ¶ 164, 207-208, 338-346, 364, 466.  None of these allegations are the subject of any contract.

Because Zunum's breach of fiduciary duty claim survives dismissal, HorizonX is accountable for aiding and abetting Boeing's breach of fiduciary duty because Mr. Jones's actions are attributable to Boeing or HorizonX.  FAC ¶ 475.  Defendants had knowledge of Mr. Jones's conduct and breaches because he served as their agent and reported to them.  *Id*. ¶¶ 475-476.

Zunum has adequately pleaded a claim for breach of fiduciary duty.

## CONCLUSION

As set forth above, the Court should deny Defendants' Motion and award Zunum its attorneys' fees associated with this motion.

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 24

DATED this 2nd day of May, 2022.

/s/ Colin R. Hagan
Colin R. Hagan*
David J. Shlansky*
**SHLANSKY LAW GROUP, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
Tel:    (617) 370-8321
Fax:    (866) 257-9530
Email: Colin.Hagan@slglawfirm.com
        David.Shlansky@slglawfirm.com


/s/ Eliot M. Harris
Eliot M. Harris, WSBA #36590
**WILLIAMS, KASTNER & GIBBS PLLC**
601 Union Street, Suite 4100
Seattle, WA 98101-2380
Tel:    (206) 628-6600
Fax:    (206) 628-6611
Email: eharris@williamskastner.com

*Admitted pro hac vice*

**Attorneys for Plaintiff**
**Zunum Aero, Inc.**

OPPOSITION TO MOTION FOR PARTIAL JUDGMENT ON THE
PLEADINGS - 25

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF SERVICE</u>

I certify under penalty of perjury that on May 2, 2022, I caused to be electronically filed the forgoing document using CM/ECF, which will send notification of this filing to all counsel of record via electronic mail.

DATED this 2nd day of May, 2022.

*/s/ Colin R. Hagan*
Colin R. Hagan

CERTIFICATE OF SERVICE

**Shlansky Law Group, LLP**
1 Winnisimmet Street
Chelsea, MA 02150
(617) 492-7200