1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   ZUNUM AERO, INC.,                           CASE NO. C21-0896JLR

11                          Plaintiff,           ORDER DENYING PLAINTIFF'S
                                                 MOTION FOR
        v.                                       RECONSIDERATION
12

13   THE BOEING COMPANY, et al.,

14                          Defendants.

15                          **I.   INTRODUCTION**

16      Before the court is Plaintiff Zunum Aero, Inc.'s ("Zunum") motion for

17   reconsideration of the court's order granting Defendants The Boeing Company and

18   Boeing HorizonX Ventures, LLC's ("HorizonX") (collectively, "Boeing") motion for

19   partial judgment on the pleadings.  (MFR (Dkt. # 59); 6/13/22 Order (Dkt. # 58); MPJOP

20   //

21   //

22   //

1    (Dkt. # 50).)  The court has considered Zunum's motion, the balance of the record, and

2    the applicable law.  Being fully advised,[1] the court DENIES Zunum's motion.

3                              **II.    ANALYSIS[2]**

4           In this district, "[m]otions for reconsideration are disfavored."  Local Rules W.D.

5    Wash. LCR 7(h)(1).  The court "will ordinarily deny such motions" unless the moving

6    party shows (a) "manifest error in the prior ruling," or (b) "new facts or legal authority

7    which could not have been brought to [the] attention [of the court] earlier with reasonable

8    diligence."  *Id.*[3]  Zunum has not brought to the court's attention any new facts or legal

9    authority that it could not have brought to the court's attention earlier and so the court

10   concludes that Zunum's motion is premised on a showing of "manifest error."  *See id.*;

11   (*see generally* MFR).  As discussed below, Zunum fails to meet this standard.

12          Zunum argues that the court, in dismissing its Washington Consumer Protection

13   Act ("WCPA") unfair competition (FAC (Dkt. # 1-1) ¶¶ 570-76) and Washington State

14   Securities Act ("WSSA") (*id.* ¶¶ 543-69) claims with prejudice, "may have overlooked or

15   misperceived certain of its allegations."  (*See* MFR at 1.)  As such, Zunum asks the court

16

17

18          [1] Although Zunum requests oral argument on its motion (*see* MFR at 1), the court finds
     that oral argument would not be helpful to its disposition of the instant motion, *see* Local Rules
19   W.D. Wash. LCR 7(b)(4).

20          [2] Because the court set forth the factual and procedural background of this case in detail
     in its June 13, 2022 order, it does not repeat that background here.  (*See* 6/13/22 Order at 2-6.)

21          [3] Such motions must "be filed within fourteen days after the order to which it relates is
     filed."  *Id.* LCR 7(h)(2).  Zunum's motion is timely because it filed the instant motion on June
22   27, 2022, exactly 14 days after the court entered its June 13, 2022 order.  (*See generally* MFR;
     6/13/22 Order.)

1 │ to "(1) not dismiss those two claims; or (2) give Zunum leave to replead those claims."[4]

2 │ (*See id.*)

3 │ **A.    WCPA Unfair Competition Claim**

4 │     In its June 13, 2022 order, the court concluded that Zunum's allegations failed "to

5 │ support a public interest impact resulting from the private dispute that Zunum has

6 │ pleaded" because:  (1) "Boeing allegedly harmed Zunum in ways separate and distinct

7 │ from the ways it allegedly harmed or plausibly might harm the general public";

8 │ (2) Zunum failed to allege a "real and substantial potential for repetition" of Boeing's

9 │ alleged misconduct, given that "Zunum's allegations do not give rise to any plausible

10 │ inference that Boeing has or is likely to injur[e] others by, among other things,

11 │ misappropriating trade secrets or committing acts to block entry to an innovative, but

12 │ nonexistent product market."  (6/13/22 Order at 27-30 (citations omitted).)  With respect

13 │ to the second conclusion, the court first considered Zunum's argument that a terminated

14 │ Boeing-Embraer deal showed a pattern of similar conduct but was unable "to draw an

15 │ inference that Boeing misappropriated trade secrets from Embraer or took steps to block

16 │ Embraer's entry from an innovative, but nonexistent product market, as it allegedly did to

17 │ Zunum."  (*Id.* at 28 (citing FAC ¶¶ 48, 51-59).)  As the court observed, "[t]here must be a

18 │ 'likelihood that additional plaintiffs have been or will be injured in exactly the same

19 │ fashion' to transform a 'factual pattern from a private dispute to one that affects the

20 │

21 │     [4] Zunum does not seek reconsideration of the court's dismissal with prejudice of its breach of fiduciary duty claim, nor does it seek reconsideration of the court's dismissal without prejudice of its antitrust claims.  (*See generally* MFR.)

22 │

1  public interest.'" (*Id.* at 26 (quoting *Hangman Ridge Training Stables, Inc. v. Safeco*

2  *Title Ins. Co.*, 719 P.2d 531 (Wash. 1986)).)

3        The court next determined that the factors set forth in *Hangman Ridge* indicating

4  public interest in the context of a private dispute—i.e., the likelihood that "additional

5  plaintiffs have been or will be injured in exactly the same fashion" as Zunum alleges it

6  has been, *Hangman Ridge*, 719 P.2d at 538—further supported its conclusion because:

7  (1) "nothing in the pleadings shows that Boeing either was advertising to the general

8  public or soliciting Zunum," but rather that Zunum "cautiously approached a few of the

9  major aerospace companies" and "identified Boeing as a prospective investor" (FAC

10  ¶¶ 93-94); and (2) the "FAC does not establish that Zunum and Boeing held the type of

11  unequal bargaining positions that are contemplated by the WCPA" because the

12  allegations show that Zunum has a "history of business experience" (*id.* ¶ 40), and thus, it

13  is "not representative of [the type] of bargainer[] subject to exploitation and unable to

14  protect [itself]," *Hangman Ridge*, 719 P.2d at 540.  (6/13/22 Order at 29-30.)

15        In its motion for reconsideration, Zunum first informs the court of the allegations

16  it intends to add that it argues would support a plausible inference that "Boeing's conduct

17  had the capacity to injure others in the same manner in which it harmed Zunum."  (MFR

18  at 2-3.)  The allegations are as follows:  (1) "HorizonX is reported to have had a pipeline

19  of 1,800 startups within the first ten months of its existence, and it closed investments in

20  ten of those startups.  It further closed approximately 40 investments in the four-year

21  period of 2017-2021"; (2) "prior to the formation of HorizonX in 2017, Boeing's Board

22  of Directors did not permit it to seek minority investments, such that Boeing was likely

ORDER - 4

1   not widely soliciting others prior to the investment in Zunum, but that changed once

2   Boeing invested in Zunum and formed HorizonX as a venture arm to invest in new

3   technology"; and (3) Zunum's history of "business experience was limited to one of its

4   founders who had experience in different sectors with a more robust history of

5   entrepreneurship, whereas the civil aviation industry has largely been closed to new

6   entrants." (*See id.* at 3.)

7        Zunum then explains why these allegations, in conjunction with those already in

8   the First Amended Complaint ("FAC"), plausibly establish a WCPA unfair competition

9   claim. (*See id.* at 3-4.) First, it contends that the "large quantity of potential investments

10   that Boeing and HorizonX considered, and Boeing's fundamentally deficient process for

11   treating and securing the proprietary information of others, creates a plausible inference

12   of a 'real and substantial potential for repetition' of exactly what happened to Zunum."[5]

13   (*Id.* (quoting *Michael v. Mosquera-Lacy*, 200 P.3d 695, 700 (Wash. 2009)).) The court,

14   however, disagrees. It is unable to plausibly infer from those facts "that Boeing has or is

15   likely to injury others by, among other things, misappropriating trade secrets or

16

17
18
19
20
21
22

[5] Zunum contends that courts have "similarly recognized that other common types of 'private agreements' have a capacity to affect the broader public." (MFR at 3 (first citing *State v. Kaiser*, 254 P.3d 850 (Wash. Ct. App. 2011); and then citing *Bain v. Metropolitan Mortgage Group*, 285 P.3d 34 (Wash. 2012)).) The cases it cites, however, are readily distinguishable from the case at hand because one did not even address the public interest impact element and the other involved deeds of trust issued as part of consumers efforts to secure financing to purchase or refinance homes, which clearly presents a situation where other members of the public were or would be harmed in the same manner as the plaintiff. *See, e.g.*, *Kaiser*, 254 P.3d at 858 (stating that only the unfair or deceptive act or practice element was at issue); *Bain*, 285 P.3d at 49-51 (stating "there is considerable evidence that MERS is involved with an enormous number of mortgages in the country (and our state), perhaps as many as half nationwide" and if "the language [in the deed of trust] is unfair or deceptive, it would have a broad impact"). Despite multiple chances to do so, Zunum has made no similar allegations.

1    committing acts to block entry to an innovative, but nonexistent product market." (*See*

2    6/13/22 Order at 28.)

3        Second, Zunum argues that the *Hangman Ridge* factors also weigh in its favor in

4    light of its proposed amendments because:  (1) "the additional allegations proposed

5    would plausibly allege that Boeing and HorizonX were soliciting the public, in addition

6    to the allegations already on point" (*see* MFR at 3-4 (citing FAC ¶¶ 96, 392)); and

7    (2) Boeing and Zunum did have unequal bargaining power because of, among other

8    things, Zunum's limited business experience, the barriers to entry in the civil aviation

9    industry, Zunum's impeded efforts to obtain funding due to Boeing's influence in the

10   industry, and Zunum's desperate need for Boeing's investment and the power Boeing

11   obtained through the parties' contracts as a result (*see id.* (citing FAC ¶¶ 40, 79, 59, 92,

12   60-62, 93, 16, 208, 213-214, 242, 244, 288, 326, 368, 455, 525, 526, 551)).

13       The court again disagrees.  The allegations in the FAC and the proposed

14   amendments do not establish that Boeing "advertise[d] to the public," *Hangman Ridge*,

15   719 P.2d at 538.  (*See generally* FAC.)  Indeed, nothing in Zunum's proposed

16   amendments provides that Boeing "actively solicit[ed]" Zunum to invest in it, *Hangman*

17   *Ridge*, 719 P.2d at 538, and the FAC makes clear that it was Zunum that approached

18   Boeing.  (*See* FAC ¶¶ 93-94).[6]  Thus, there is no allegation from which the court might

19

20       [6] The FAC paragraphs that Zunum cites to support its argument that Boeing solicited
     Zunum do not, in fact, say anything regarding Boeing's solicitation of Zunum.  Rather, they
21   simply illustrate why investing in Zunum was allegedly a good opportunity for Boeing and was
     consistent with the type of technology Boeing wanted to be a part of.  (*See, e.g.*, FAC ¶¶ 96,
22   392.)  While Zunum also cites a portion of the FAC that alleges that Boeing solicited Zunum
     with respect to the Project Catalyst or "More Strategic Relationship" in January 2018 (*see id.*

ORDER - 6

1    infer that Boeing solicited Zunum, let alone any other companies.  *See Hangman Ridge*,

2    719 P.2d at 538 (finding that evidence a "defendant actively solicit[ed] this particular

3    plaintiff" to be "indicati[ve of] potential solicitation of others").

4            Finally, with respect to the unequal bargaining position element, cases involving

5    two business entities are generally treated as cases involving parties who are "not

6    representative of [the type] of bargainer[] subject to exploitation and unable to protect

7    [itself]."  *See, e.g.*, *Superwood Co. v. Slam Brands, Inc.*, No. C12-1109JLR, 2013 WL

8    4401830, at *10 (W.D. Wash. Aug. 15, 2013); *A & B Asphalt, Inc. v. Humbert Asphalt,*

9    *Inc.*, No. 2:13-CV-00104-SU, 2014 WL 3695480, at *4 (D. Or. May 8, 2014), *report and*

10   *recommendation adopted*, No. 2:13-CV-0104-SU, 2014 WL 3695474 (D. Or. July 24,

11   2014).  While the court acknowledges Boeing's influence in the aviation industry and

12   Zunum's need for funds, among other things, the court's conclusion that Zunum is "not

13   representative of [the type] of bargainer[] subject to exploitation and unable to protect

14   [itself]" remains unaltered even in light of Zunum's proposed amendment regarding the

15   experience of one of its founders.  *Hangman Ridge*, 719 P.2d at 540.  Thus, the court did

16   not manifestly err in determining that the *Hangman Ridge* factors, on balance, weighed

17   against a finding of public interest impact.[7]  *See Shugart v. GYPSY Off. No. 251715*, No.

18

19   ¶¶ 208-18), that solicitation was for a certain joint venture/project and occurred after the parties
     had already been engaged in an almost two-year business relationship.

20

21          [7] Even if the court were to conclude that the allegations Zunum cites, including its
     proposed allegations, establish unequal bargaining power, the court's conclusion would still
     remain that the *Hangman Ridge* factors, on balance, weigh against a finding of public interest
     impact.  *See Mosquera-Lacy*, 200 P.3d at 700 (concluding that, on balance, the *Hangman Ridge*

22   factors weighed against finding public interest impact where there was "no evidence Bright Now

C14-1923RSM, 2015 WL 1965375, at *3 (W.D. Wash. May 1, 2015) (declining to find

public interest impact with only the first factor present).

Therefore, Zunum has failed to carry its heavy burden to establish a manifest error

in the court's decision to dismiss Zunum's WCPA unfair competition claim with

prejudice.  Accordingly, Zunum's motion for reconsideration as to this claim is DENIED.

**B.    WSA Claim**

In dismissing Zunum's WSSA securities fraud claim, the court stated that the

language in the 2016 Proprietary Information Agreement ("PIA") and 2017 and 2018

Investor Rights Letters ("IRLs") "clearly put Zunum on notice that Boeing was not

precluded from developing products that may directly compete with Zunum and that

Boeing had "operations . . . which may be deemed competitive with [Zunum's]

business."  (6/13/22 Order at 33 (quoting Nordlund Decl. (Dkt. # 51) ¶ 5, Ex. D ("2017

IRL") § 5; *id.* ¶ 6, Ex. G ("2018 IRL") § 5; *id.* ¶ 2, Ex. A ("2016 PIA") § 3.).)  Thus, it

concluded that, "[i]n the face of such contractual representations, Zunum cannot

plausibly allege that Boeing misrepresented its intention to compete with Zunum by

failing to inform Zunum that it intended to 'develop a hybrid-electric aircraft.'"  (*Id.*

(quoting FAC ¶¶ 548, 555).)  The court went on to explain why Zunum could not use

"Boeing's April 2016 statement that its 'interest in electrification technology was focused

on drones and other military areas, and the parallel hybrid 'SUGAR' program . . . funded

by NASA for single-aisle aircraft'" to save its securities fraud claim.  (*Id.* at 34 (quoting

---

advertised to the public in general or that Bright Now actively solicited Michael in particular to

be a patient").

1    FAC ¶ 101) (citing FAC ¶ 546).)  It stated that:  (1) "that statement was made prior to

2    Zunum and Boeing entering into the 2016 PIA and 2017 and 2018 IRLs"; (2) "those

3    contracts clarify that Boeing's interest in electrification technology may, in fact, extend to

4    products that directly compete with Zunum"; "[r]evealing the allegedly omitted facts—

5    i.e., that Boeing intended to develop a hybrid-electric aircraft—would not have

6    significantly altered the total mix of facts already disclosed"; and (4) "[b]ecause no

7    further information was required to prevent Zunum from being misled about whether

8    Boeing intended to compete, Boeing's alleged omission was not material."[8]  (*Id.*

9    (quotation marks and citations omitted).)

10           Zunum argues that the court may have "misperceive[d] or overlook[ed]" Zunum's

11   allegations when it reached these conclusions.[9]  (*See* MFR at 4-6; *see also id.* at 2 (stating

12   that Zunum's theory is that "Boeing misrepresented that it was *not* competing against

13   Zunum and that its interest in electrification was solely with regard to other platforms").)

14   In support of its argument, Zunum cites to the portions of its FAC that discuss Boeing's

15   //

16

---

17           [8] The court went on to conclude that, even if the contracts did not foreclose Zunum's
     WSSA claim, such a claim also fails because it concerns what Boeing allegedly said or failed to
18   say regarding what it might do in the future with respect to competing against Zunum and
     "promises or statements about future conduct cannot support a misrepresentation or omission
19   claim, because they do not go 'to a presently existing fact.'"  (*Id.* at 35 (quoting *Havens v. C&D
     Plastics, Inc.*, 876 P.2d 435, 448 (Wash. 1994)) (citing FAC ¶¶ 548, 552-56).)  Zunum does not
20   address this alternative basis for the court's dismissal of Zunum's securities fraud claim in the
     instant motion.  (*See generally* MFR.)

21           [9] The court notes, as it did in its order, that Zunum did not address or attempt to rebut the
     language in these contracts in its response to Boeing's motion for partial judgment on the
22   pleadings.  (*See* 6/13/22 Order at 32 (citing MPJOP Resp. (Dkt. # 52) at 19).)

1  2016 statement regarding its interest in electrification technology.[10]  As discussed above,

2  however, the court specifically considered that statement in its order and explained why

3  that statement did not plausibly establish that Zunum was misled by Boeing's alleged

4  omission regarding its intention to directly compete with Zunum.  (*See* 6/13/22 Order at

5  32-33.)  Whether phrased as a misrepresentation that Boeing was not competing against

6  Zunum or an omission of its intent to compete, the same reasoning holds true:  the

7  contracts, which were signed after the 2016 statement was made, put Zunum on notice

8  that Boeing may have competitive business operations or that it may develop products or

9  services that compete with Zunum in the future.  Additionally, as noted in the court's

10  order, Zunum does not point the court to any other statements that Boeing made in

11  connection with the 2016 PIA or 2017 and 2018 IRLs, or after the parties entered into

12  those contracts, that would expressly contradict the relevant representations in those

13  contracts.[11]  (6/13/22 Order at 33 & n.27.)

14  //

15

16      [10] Zunum does not plausibly allege that such a statement was untrue at the time it was
17  made and as stated above, misrepresentation or omission claims can only be based on a presently
existing fact.  (*See generally* FAC; 6/13/22 Order at 35.)  So, the possibility that Boeing may
18  have changed its mind and decided to compete in the future does not render the statement
regarding its interest in electrification technology untrue.  Additionally, this statement was made
19  almost a year before the parties' entered into the first securities agreement, and there is no
liability under the securities laws for a statement made "outside the context of a securities
20  transaction."  *Fed. Home Loan Bank of Seattle v. Credit Suisse Sec. (USA) LLC*, 449 P.3d 1019,
1023 (Wash. 2019).

21      [11] The court's conclusion is not altered by the portions of Zunum's FAC in which it
alleges that, prior to meeting Zunum, "Boeing was negative on the technological and financial
22  feasibility of electric flight prior to 2040 or beyond."  (MFR at 5 (citing FAC ¶¶ 75-76, 79, 94,
108, 177, 198, 232, 370, 434, 457, 502).)

1    Zunum also argues that the holding of *Stewart v. Estate of Steiner*, 93 P.3d 919,

2    924 (Wash. Ct. App. 2004) is inapplicable here and thus does not support the conclusion

3    that the 2016 PIA or 2017 and 2018 IRLs foreclose Zunum's securities fraud claim.  (*See*

4    MFR at 5-6.)  The court cited *Stewart* and *Hammond v. Everett Clinic, PLLC*, 16 Wash.

5    App. 2d 1072 (Table), 2021 WL 961130, at *5-6 (Wash. Ct. App. Mar. 15, 2021) when it

6    concluded that Zunum could not disavow the contractual acknowledgments and contend

7    that it was misled about whether Boeing intended to compete.  (*See* 6/13/22 Order at 33.)

8    While quoting that decision, the court acknowledged that *Stewart* involved a non-reliance

9    clause, rather than the type of contractual acknowledgements at issue here.[12]  (*See id.*)

10   The court's conclusion was not based solely on that case, but rather on the lack of any

11   plausible claim that Boeing misled Zunum regarding its intention to compete in light of

12   the contractual acknowledgments.[13]  (*See id.* at 33-34.)

13   In sum, Zunum has failed to carry its heavy burden to establish a manifest error in

14   the court's decision to dismiss Zunum's WSSA claim with prejudice.  Accordingly,

15   Zunum's motion for reconsideration as to this claim is DENIED.

16

17      [12] Additionally, that decision was issued before the Washington State Supreme Court
18   held that reliance is not required to establish a securities fraud claim under the WSSA.  *See Fed.
     Home Loan*, 449 P.3d at 1022-23.  Thus, although Zunum cites to the factors listed in Stewart as
19   affecting reasonable reliance to support its securities fraud claim, those factors are inapplicable
     because reliance is not an element of a Washington securities fraud claim.  (*See* MFR at 5-6 &
     n.1.)  It is also unclear, following *Federal Home Loan*, what impact a non-reliance clause would
20   have on the misrepresentation analysis.

21      [13] The court does not address Zunum's final point about the presence of an integration
     clause in the 2016 PIA and the 2018 IRL and whether those clauses express any non-reliance
22   (*see* MFR at 6) because those clauses did not impact the court's conclusion and as stated above,
     reliance is not an element of this claim.

### III.   CONCLUSION

For the foregoing reasons, the court DENIES Zunum's motion for reconsideration (Dkt. # 59) of the court's order granting Boeing's motion for partial judgment on the pleadings.

Dated this 29th day of June, 2022.

JAMES L. ROBART
United States District Judge