1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

ZUNUM AERO, INC.,

Plaintiff,

v.

THE BOEING COMPANY; BOEING
HORIZONX VENTURES, LLC,

Defendants.

Civil Action No. 2:21-cv-00896-JLR

**DEFENDANTS THE BOEING
COMPANY AND BOEING HORIZONX
VENTURES, LLC'S PARTIAL
MOTION TO DISMISS THE SECOND
AMENDED COMPLAINT**

ORAL ARGUMENT REQUESTED

Noted on Motion Calendar: August 5, 2022

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ............................................................................... 1

BACKGROUND ................................................................................. 2

LEGAL STANDARD .......................................................................... 4

ARGUMENT ....................................................................................... 5

I.  Zunum's Antitrust Conspiracy and Monopolization Claims (Counts IX and X) Still Suffer from the Dispositive Flaws this Court Previously Identified ................... 5

    A.  Zunum Has Not Pled a *Per Se* Violation .......................................... 6

    B.  Zunum Failed to Cure the Flaws in its Market Definitions .................... 8

        1.  Zunum's First Alleged Market Fails for Numerous Reasons ............. 8

        2.  Zunum's Second and Third Alleged Markets Fail for Numerous Reasons ...... 12

II.  Zunum's Antitrust Conspiracy Claim (Count IX) Should Be Dismissed for Additional Reasons ............................................................................. 13

    A.  Zunum's Allegations of Market Power Remain Deficient ...................... 13

    B.  Zunum's Allegations of Substantial Anticompetitive Effect Remain Deficient ....... 15

    C.  Zunum Has Not Pled An Agreement ................................................. 16

III.  Zunum's Attempted Monopolization Claim (Count X) Should Be Dismissed for Additional Reasons ............................................................................. 18

    A.  Zunum Has Not Pled A Dangerous Probability Of Monopoly Power ......... 18

    B.  Zunum Has Not Pled Predatory or Anticompetitive Conduct .................. 21

    C.  Zunum Has Not Pled Antitrust Injury .............................................. 23

IV.  Zunum's Tortious Interference Claim Should Be Dismissed (Count VII) ........... 23

CONCLUSION .................................................................................... 24

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
836 F.3d 1171 (9th Cir. 2016) ...........................................................................22

*Anaheim v. S. Cal. Edison Co.*,
955 F.2d 1373 (9th Cir. 1992) ...........................................................................22

*Anschutz Corp. v. Merrill Lynch & Co.*,
785 F. Supp. 2d 799 (N.D. Cal. 2011) ................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................4

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
472 U.S. 585 (1985) ...........................................................................................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................4, 7, 20

*Birkenwald Distrib. Co. v. Heublein, Inc.*,
776 P.2d 721 (Wash. Ct. App. 1989) .................................................................24

*Bourns, Inc. v. Raychem Corp.*,
331 F.3d 704 (9th Cir. 2003) .............................................................................15

*Brantley v. NBC Universal Inc.*,
675 F.3d 1192 (9th Cir. 2012) ...........................................................................15

*CaptiveAire Sys., Inc. v. ITW Food Equip. Grp., LLC.*,
No. C09-244JLR, 2009 WL 10676075 (W.D. Wash. Sept. 28, 2009) ....................5

*Catlin v. Wash. Energy Co.*,
791 F.2d 1343 (9th Cir. 1986) .............................................................................5

*Cooper v. Simpson Strong-Tie Co.*,
460 F. Supp. 3d 894 (N.D. Cal. 2020) .................................................................6

*Delphix Corp. v. Actifo, Inc.*,
No. C 13-4613, 2014 WL 4628490 (N.D. Cal. Mar. 19, 2014) .............................7

*Distance Learning Co. v. Maynard*,
No. 19-CV-03801-KAW, 2020 WL 2995529 (N.D. Cal. June 4, 2020) ...............14

*Dougherty v. City of Covina*,
654 F.3d 892 (9th Cir. 2011) ...............................................................................5

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
504 U.S. 451 (1992) ...........................................................................................18

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

1

## TABLE OF AUTHORITIES

2

(continued)

**Page(s)**

3

*Eastman v. Quest Diagnostics Inc.*,
4      108 F. Supp. 3d 827 (N.D. Cal. 2015) ................................................................. 15

5

*Epic Games, Inc. v. Apple Inc.*,
       559 F. Supp. 3d 898 (N.D. Cal. 2021) ............................................................ 10, 11

6

*FMC Corp. v. Manitowoc Co.*,
7      835 F.2d 1411 (Fed. Cir. 1987) ........................................................................... 21

*Frost v. LG Elecs., Inc.*,
8      801 F. App'x 496 (9th Cir. 2020) ........................................................................ 16

9

*FTC v. Qualcomm Inc.*,
       969 F.3d 974 (9th Cir. 2020) ............................................................................ 8, 22

10

*Giuliano v. SanDisk Corp.*,
11     224 F. Supp. 3d 851 (N.D. Cal. 2016) ................................................................. 21

*Greensun Grp., LLC v. City of Bellevue*,
12     436 P.3d 397 (Wash. Ct. App. 2019) ................................................................... 24

13

*Habelt v. iRhythm Techs., Inc.*,
       No. 21-CV-00776-EMC, 2022 WL 971580 (N.D. Cal. Mar. 31, 2022) ................. 9

14

*Hicks v. PGA Tour, Inc.*,
15     897 F.3d 1109 (9th Cir. 2018) .............................................................................. 8

*High Tech. Careers v. San Jose Mercury News*,
16     996 F.2d 987 (9th Cir. 1993) .............................................................................. 11

17

*In re ATM Fee Antitrust Litig.*,
       768 F. Supp. 2d 984 (N.D. Cal. 2009) ................................................................. 11

18

*In re Cali. Bail Bond Antitrust Litig.*,
19     511 F. Supp. 3d 1031 (N.D. Cal. 2021) ............................................................... 17

20

*In re Cedar Shakes & Shingles Antitrust Litig.*,
       No. C19-288 MJP, 2020 WL 832324 (W.D. Wash. Feb. 20, 2020) ..................... 17

21

*In re Citric Acid Litig.*,
22     191 F.3d 1090 (9th Cir. 1999) ............................................................................ 16

23

*In re DRAM Indirect Purchaser Antitrust Litig.*,
       28 F.4th 42 (9th Cir. 2022) ................................................................................. 17

24

*In re DRAM Indirect Purchaser Litig.*,
       No. 4:18-CV-2518-JSW-KAW, --- F. Supp. ----,
25     2020 WL 8459279 (N.D. Cal. Nov. 24, 2020) ............................................... 16, 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*In re European Gov. Bonds Antitrust Litig.*,
No. 19 Civ. 2601, 2022 WL 768680 (S.D.N.Y. Mar. 14, 2022) ..............................................10

*In re German Auto. Man. Antitrust Litig.*,
392 F. Supp. 3d 1059 (N.D. Cal. 2019) ...............................................................................10

*In re German Auto. Mfgs. Antitrust Litig.*,
No. 20-17139, 2021 WL 4958987 (9th Cir. Oct. 26, 2021) ............................................11, 18

*In re German Auto. Mfrs. Antitrust Litig.*,
497 F. Supp. 3d 745 (N.D. Cal. 2020) ...................................................................................11

*In re Int. Rate Swaps Antitrust Litig.*,
261 F. Supp. 3d 430 (S.D.N.Y. 2017).....................................................................................17

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015) ....................................................................................16, 17, 18

*It's My Party, Inc. v. Live Nation, Inc.*,
811 F.3d 676 (4th Cir. 2016) ................................................................................................13

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*,
466 U.S. 2 (1984)....................................................................................................................13

*Khalid v. Microsoft Corp.*,
409 F. Supp. 3d 1023 (W.D. Wash. 2019).......................................................................18, 23

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*,
884 F.2d 504 (9th Cir. 1989) ................................................................................................15

*Lombardo v. Alhambra Police Dep't*,
No. 15-cv-6262, 2015 WL 9906167 (C.D. Cal. Dec. 15, 2015).............................................8

*McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*,
No. 08-00080, 2008 WL 2437739 (D. Haw. June 17, 2008)..................................................14

*Medimmune, Inc. v. Genentech, Inc.*,
427 F.3d 958 (Fed. Cir. 2005).................................................................................................21

*MetroNet Servs. Corp. v. Qwest Corp.*,
383 F.3d 1124 (9th Cir. 2004) ...............................................................................................23

*Murray Pub. Co. v. Malmquist*,
832 P.2d 493 (Wash. Ct. App. 1992).............................................................................5, 8, 23

*NCAA v. Bd. of Regents of Univ. of Oklahoma*,
468 U.S. 85 (1984)............................................................................................................13, 14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

1

**TABLE OF AUTHORITIES**

2

(continued)

**Page(s)**

3

*Nobelpharma AB v. Implant Innovations, Inc.*,
   141 F.3d 1059 (Fed. Cir. 1998).................................................................21

4

*O1 Commc'ns, Inc. v. MCI Commc'ns Servs., Inc.*,
   No. 18-cv-01950, 2019 WL 266253 (E.D. Cal. Jan. 18, 2019)......................6

5

6

*Ohio v. Am. Express Co.*,
   138 S. Ct. 2274 (2018).....................................................................8, 13, 15

7

*Optronic Techs, Inc. v. Ningo Sunny Elec. Co.*,
   No. 16-cv-06370-EJD, 2017 WL 4310767 (N.D. Cal. Sept. 2017)..............20

8

*Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009)...........................................................................22

9

10

*Pac. Nw. Shooting Park Ass'n v. City of Sequim*,
   144 P.3d 276 (Wash. 2006).................................................................23

11

*PBTM LLC v. Football Nw., LLC*,
   511 F. Supp. 3d 1158 (W.D. Wash. 2021)................................................5

12

13

*Premier Comp Sols. LLC v. UPMC*,
   377 F. Supp. 3d 506 (W.D. Pa. 2019).....................................................19

14

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) .................................................13, 14, 18, 19

15

*Rick-Mik Enters. v. Equilon Enters.*,
   532 F.3d 963 (9th Cir. 2008) ...............................................................19

16

17

*S&W Forest Prods. v. Cedar Shake & Shingle Bureau*,
   No. C19-202, 2019 WL 3716457 (W.D. Wa. Aug. 7, 2019).........................6

18

*Siegler v. Sorrento Therapeutics, Inc.*,
   No. 18-cv-1681, 2019 WL 581719 (S.D. Cal. Feb. 13, 2019).................7, 12

19

20

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................5

21

*St. Alphonsus Med. Ctr. – Nampa, Inc. v. St. Luke's Health Sys.*,
   778 F.3d 775 (9th Cir. 2015) ...............................................................11

22

*Staley v. Gilead Scis., Inc.*,
   446 F. Supp. 3d 578 (N.D. Cal. 2020)..................................................9, 12

23

24

*State Oil Co. v. Khan*,
   522 U.S. 3 (1997)...............................................................................6

25

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – v

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*,
   279 P.3d 487 (Wash. Ct. App. 2012)........................................................24

*Tampa Elec. Co. v. Nashville Coal Co.*,
   365 U.S. 320 (1961)...............................................................................15

*Tanaka v. Univ. of S. California*,
   252 F.3d 1059 (9th Cir. 2001) ................................................................8

*TransWeb, LLC v. 3M Innovative Props. Co.*,
   812 F.3d 1295 (Fed. Cir. 2016)..............................................................21

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004)...............................................................................22

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965)...............................................................................21

*Water, Inc. v. Everpure, Inc.*,
   No. 09-cv-3389, 2009 WL 10670419 (C.D. Cal. Oct. 28, 2009) ............19

OTHER AUTHORITIES

*Boeing/McDonnell Douglas*, No. IV/M.877 (July 30, 1997) ................................10, 11

Fed. R. Civ. P. 9....................................................................................................21

Fed. R. Civ. P. 12....................................................................................................4

Statement of John M. Nannes, Deputy Assistant Attorney General, Antitrust
   Division, before the Committee on Transportation & Infrastructure,
   U.S. House of Representatives (June 13, 2000).........................................9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

1

**INTRODUCTION**

Plaintiff Zunum Aero, Inc. ("Zunum") claims that Defendants The Boeing Company and Boeing HorizonX Ventures, LLC ("Boeing")—together with Boeing's supplier, Safran [1] — "misappropriated" certain "hybrid-electric and electric aircraft technology" from Zunum and unlawfully decided not to invest further in Zunum.  ECF No. 58 ("Order") at 2.  Proceeding on that general theory, Zunum filed a 576-paragraph First Amended Complaint ("FAC"), leveling a panoply of claims against Boeing.  Boeing answered, filed counterclaims that Zunum answered, and then moved for partial judgment on the pleadings.  The Court granted Boeing's motion, dismissing Zunum's breach of fiduciary duty, unfair competition, and securities fraud claims with prejudice.  *See* Order at 43.  The Court also dismissed Zunum's antitrust conspiracy and attempted monopolization claims because Zunum failed to plead a *per se* violation of the antitrust laws and "fail[ed] to plausibly establish" and define any viable geographic and product markets.  *Id.* at 18, 21, 22.  But the Court granted Zunum leave to amend as to those two claims, with the warning that Zunum "must take care to define the proposed market(s) 'with reference to the rule of reasonable interchangeability and cross-elasticity of demand.'"  *Id.* at 22, 43.

Zunum has now filed a Second Amended Complaint seeking to revive its antitrust claims.  *See* ECF No. 60 ("SAC").  Exhibit A attached hereto contains a redline comparing the FAC and SAC, which shows that Zunum has added just 10 paragraphs in an apparent attempt to cure the defects this Court identified.  But those new paragraphs do not change anything; Zunum does not come close to heeding the Court's admonition to address reasonable interchangeability of use and cross-elasticity of demand within the markets Zunum attempts to plead.  Dismissal, accordingly, is warranted for the same reasons as before.  Zunum still fails to plead a *per se* violation because Boeing and Safran are not competitors (among other reasons). And Zunum still fails to plead facts supporting a "rule of reason" theory because it still fails to plead cognizable markets.

[1] "Safran" refers specifically to the dismissed Defendants Safran, S.A.; Safran Corporate Ventures, S.A.S.; Safran Electrical & Power, S.A.S.; and Safran Helicopter Engines, SASU.

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

1    The first market Zunum identifies—"aircraft serving commercial air travel up to 1,500

2    miles"—is not meaningfully different from the "short-haul flights under 1,500 miles" market that

3    this Court previously considered and rejected.  Order at 20–21.  As before, "it is [] unclear whether

4    this alleged market encompasses products or services."  *Id.* at 20.  And the aircraft Zunum places

5    in that alleged market are nowhere close to reasonably interchangeable—a massive commercial

6    jet is nothing like a small turboprop, yet both can travel under 1,500 miles.  Further, that 1,500-

7    mile metric, like the aircraft Zunum claims belong or do not belong in this supposed market, is

8    entirely arbitrary, made up by Zunum with no connection to economic realities or customer

9    behavior and preferences.

10    The other two markets on which Zunum relies—"commercial hybrid and all-electric

11    aircraft" and "commercial hybrid and all-electric propulsion systems"—fail for the simple reason

12    that they *do not exist*.  As this Court previously recognized, a market is "facially unsustainable"

13    where it has "yet to be established."  Order at 20.  Zunum thus remains unable to identify a relevant

14    product market that could save its antitrust claims.

15    For these reasons and others that the Court previously had no occasion to reach (and need

16    not reach here), this is simply not an antitrust case.  Boeing did not engage in monopolistic

17    behavior; as the SAC acknowledges, it merely declined to invest further in a company that was not

18    delivering. The Court should dismiss Zunum's antitrust conspiracy and attempted monopolization

19    claims (Counts IX and X) once and for all.  In addition, because Zunum is unable to plead the

20    essential element that Boeing used improper means to interfere with a business expectancy (which

21    the SAC attempts to satisfy by reference to the antitrust claims or other claims that have been

22    dismissed), the tortious interference claim (Count VII) should be dismissed as well.

### BACKGROUND

24    Because the Court's June 13 Order sets out the factual and procedural background of this

25    case in detail, Boeing here focuses on the pertinent subsequent developments.

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

On June 27, Zunum filed the SAC, which—as Exhibit A shows—is materially identical to its predecessor.  Zunum again claims that it was founded in 2013 to develop "the world's first hybrid and all-electric" aircraft for "regional" "commercial service." ¶ 32.[2]  Zunum "faced limited options for financing" and approached Boeing to obtain "outside funding."  ¶¶ 91–92.  Although Boeing was "skeptical" (¶ 118) of Zunum's plans, Boeing initially invested several million dollars in Zunum.  ¶¶ 125–26, 246–47.  After due diligence, however, Boeing concluded that Zunum was "overpromising" (¶ 166), and declined to invest further.  ¶ 297.  Although Zunum courted others, including Safran (¶ 144), it failed to obtain any other significant investment (¶ 296) and so, in April 2019, "close[d] all of its centers" and laid off all of its employees.  ¶ 355.  The SAC closes with the same causes of action as the FAC, minus those dismissed with prejudice.  As relevant here, those causes of action include: Count VII (a tortious interference claim asserting that Boeing intentionally and wrongfully interfered with Zunum's investment opportunities); Count IX (an antitrust conspiracy claim asserting that Boeing agreed with Safran to exclude Zunum from certain markets); and Count X (an attempted monopolization claim asserting that Boeing attempted to monopolize those same markets).

The SAC contains 10 new substantive paragraphs in response to the Court's June 13 Order, and those paragraphs fall into three general categories.  *First*, Zunum has attempted to remedy its failure to plead facts sufficient to establish any relevant markets.  In particular, Zunum previously claimed that the relevant markets were "the national and international markets for hybrid-electric and all-electric aircraft, short-haul flights under 1,500 miles, and integrated door-to-door travel." Order at 11.  Now, Zunum claims that the "relevant geographic market is worldwide." ¶ 515.  And Zunum alleges that "[t]he relevant product markets are: (a) aircraft serving commercial air travel up to 1,500 miles; (b) commercial hybrid to all-electric aircraft; and (c) commercial hybrid to all-electric propulsion systems" (the "Alleged Markets").  ¶ 516.  Although Zunum does not expound

---

[2] Unless otherwise noted, all paragraph references are to the SAC.

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 3

1   on the latter two Alleged Markets (described as "still emerging," ¶ 535), Zunum claims that the

2   first Alleged Market—conveniently matching Zunum's stated goal of developing aircraft with a

3   1,500-mile range, by 2030, ¶ 35—"includes single-aisles, twin-aisles, regional jets, and

4   turboprops," but "exclude[s] business jets and smaller passenger aircraft." ¶ 516.

5          *Second*, with regard to its attempted monopolization claim, Zunum added a paragraph

6   alleging that "[l]imited access to capital has long been recognized to be a key barrier to entrants in

7   commercial aircraft or propulsion." ¶ 528. Zunum also alleges that "Boeing has deep access to

8   capital, which it denied to Zunum by repeatedly interfering in its painstaking efforts to break this

9   critical barrier." *Id.*

10          *Third*, in response to the Court's finding that there is no *per se* antitrust violation because

11   Boeing and Safran are not competitors, *see* Order at 14, Zunum added two paragraphs claiming on

12   "information and belief" that Boeing and Safran are competing in "the markets for hybrid-electric

13   and all-electric aircraft and propulsion" by filing "numerous patents" and "developing" technology

14   allegedly derived from Zunum. ¶ 380. Duplicating its misappropriation claim, Zunum also alleges

15   that Boeing and Safran are "misusing [Zunum's] proprietary information" to compete against each

16   other "in the market for commercial aircraft serving air travel up to 1,500 miles." ¶ 381.

17          On the same day it filed the SAC, Zunum also moved for reconsideration of the dismissal

18   with prejudice of Zunum's securities fraud and unfair competition claims. ECF No. 59. The Court

19   denied that motion on June 29, 2022. ECF No. 61.

20                                    **LEGAL STANDARD**

21          To survive a Rule 12(b)(6) motion, a complaint's "[f]actual allegations must be enough to

22   raise a right to relief above the speculative level" and contain "enough facts to state a claim to

23   relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 547 (2007).

24   "[N]aked assertion[s] devoid of further factual enhancement" do not suffice. *Ashcroft v. Iqbal*,

25   556 U.S. 662, 678 (2009) (cleaned up). "Mere legal conclusions 'are not entitled to the assumption

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 4

1    of truth,'" and the complaint must contain more than "a formulaic recitation of the elements of a

2    cause of action." *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011).  In addition, the

3    Court is not "required to accept as true allegations that are merely conclusory, unwarranted

4    deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979,

5    988 (9th Cir. 2001).

**ARGUMENT**

### I.    Zunum's Antitrust Conspiracy and Monopolization Claims (Counts IX and X) Still Suffer from the Dispositive Flaws this Court Previously Identified.

9    Zunum's first antitrust claim is that Boeing and Safran conspired to restrain trade by

10   agreeing not to invest in Zunum and denying it access to "key inputs," thereby "excluding" it from

11   the Alleged Markets.  ¶¶ 499–522.  Zunum brings this claim under RCW 19.86.030, which "is

12   essentially identical to section 1 of the Sherman Act." *Murray Pub. Co. v. Malmquist*, 832 P.2d

13   493, 497 (Wash. Ct. App. 1992); *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1178

14   (W.D. Wash. 2021) ("analysis of [the] federal antitrust claims extends to [the] state law claims").

15   Zunum's second antitrust claim is that Boeing is "attempting to monopolize" the Alleged Markets.

16   ¶ 525.  Zunum brings that claim under RCW 19.86.040, which is "equivalent" to Section 2 of the

17   Sherman Act. *Catlin v. Wash. Energy Co.*, 791 F.2d 1343, 1350 (9th Cir. 1986); *CaptiveAire Sys.,*

18   *Inc. v. ITW Food Equip. Grp., LLC.*, No. C09-244JLR, 2009 WL 10676075, at *5 (W.D. Wash.

19   Sept. 28, 2009) (Section 2 is "RCW 19.86.040's corresponding federal statute").

20   This Court previously dismissed both claims because they suffered from two fatal flaws:

21   Zunum did not plead a *per se* violation (knocking out one route to the conspiracy claim), and

22   Zunum did not plead facts establishing the markets it alleged (knocking out the other route to the

23   conspiracy claim and all routes to the monopolization claim). The SAC suffers from the same

24   flaws, so this Court can dismiss these claims for the same reasons—and this time should do so

25   with prejudice.

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 5

1    **A.      Zunum Has Not Pled a *Per Se* Violation.**

2          Like its predecessor, the SAC is "silent as to the specific type of established *per se* violation"

3    Zunum seeks to assert.  Order at 14.  Courts apply the *per se* rule only to restraints where they

4    have "predictable and pernicious anticompetitive effect," and they are reluctant to extend the *per*

5    *se* rule beyond established claims. *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997); *S&W Forest Prods.*

6    *v. Cedar Shake & Shingle Bureau*, No. C19-202, 2019 WL 3716457, at *6–7 (W.D. Wa. Aug. 7,

7    2019).  Although the Court generously characterized the FAC as attempting to make out a "group

8    boycott" claim, Order at 14, Zunum still does not use "boycott" language in the SAC.  Zunum,

9    therefore, has not alleged a restraint that is typically afforded *per se* treatment.

10         Moreover, the SAC does not cure the basic flaw that led the Court to conclude that "the

11   agreement alleged by Zunum in the FAC is simply not susceptible to *per se* treatment under the

12   controlling law." *Id.*  That is because "[t]ypically only 'horizontal' restraints—restraints 'imposed

13   by agreement between competitors'—qualify as unreasonable *per se*," and "the Safran Defendants

14   are suppliers to Boeing, not competitors." *Id.* (citation omitted).  Zunum largely ignores this part

15   of the Court's holding.  Because Zunum continues to allege that Safran is a "main supplier[] of

16   Boeing's electrical systems," its *per se* theory should be dismissed for the same reason as before.

17   ¶ 9; *see also* ¶ 507 (same).

18         Zunum nonetheless tries to revive a *per se* theory by alleging for the first time, on

19   "information and belief," that Safran and Boeing compete in the markets for "commercial hybrid

20   and all-electric propulsion systems" and "air taxis" by filing "numerous patents" and

21   "developing … technologies … based on information derived from Zunum."  ¶¶ 380, 381.  This

22   eleventh-hour attempt fails for at least three separate reasons.

23         *First*, "information and belief" allegations of this sort cannot "nudge [Zunum's] complaint

24   across the finish line of plausibility."  *Cooper v. Simpson Strong-Tie Co.*, 460 F. Supp. 3d 894,

25   907 (N.D. Cal. 2020); *see also O1 Commc'ns, Inc. v. MCI Commc'ns Servs., Inc.*, No. 18-cv-

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

01950, 2019 WL 266253, at *4 (E.D. Cal. Jan. 18, 2019) (holding that "information and belief" allegations regarding "allegedly collusive practices of telecommunications companies" were "conclusory and insufficient"); *Delphix Corp. v. Actifo, Inc.*, No. C 13-4613, 2014 WL 4628490, at *2 (N.D. Cal. Mar. 19, 2014) (where "some of the allegations are qualified with ['on information and belief'] and others are not," that "creates [an] inference that plaintiff likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree").

*Second*, Zunum bases this theory on markets that *do not exist*.  The Court previously "agree[d]" that there is no "hybrid-electric and all-electric aircraft" market.  Order at 20.  It also held that "Zunum has not established that … all-electric air taxies … currently exist[]." *Id.* at 21. And the SAC admits that "[t]he market [sic] for commercial hybrid or all-electric aircraft and propulsion systems is *still emerging*[.]"  ¶ 535 (emphasis added).  Boeing and Safran cannot be competitors in non-existent markets.  *See infra* at 12–13.  And in the same vein,  the timeline underlying Zunum's theory is self-defeating.  Zunum alleges that Boeing and Safran agreed to shut Zunum out of the Alleged Markets, and *then* became competitors through the use of Zunum's intellectual property.  But liability for an antitrust conspiracy requires an agreement between companies that are *already* competitors, not an agreement to *become* competitors in a future market. *See, e.g.*, *Siegler v. Sorrento Therapeutics, Inc.*, No. 18-cv-1681, 2019 WL 581719, at *12 (S.D. Cal. Feb. 13, 2019) (a viable antitrust claim "depend[s] on a defendant's anti-competitive actions vis-à-vis an established, clearly-defined market," not one that "has yet to be established").

*Third*, Zunum's theory is implausible on its face.  In Zunum's telling, Boeing and Safran *conspired together* to take down Zunum by investing (and losing) millions of dollars, but later parted ways to *compete against each other* with Zunum's proprietary information in an alleged "market for commercial aircraft serving air travel up to 1,500 miles." ¶¶ 380, 381.  Such irrational, self-sabotaging conduct fails a straightforward application of *Twombly*'s plausibility standard.  *See,*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

1    *e.g.*, *Lombardo v. Alhambra Police Dep't*, No. 15-cv-6262, 2015 WL 9906167, at *4 (C.D. Cal.
2    Dec. 15, 2015) (dismissing claim where "the allegations … are so irrational and implausible as to
3    be frivolous" (citing cases)).

4         The Court should therefore reaffirm its original holding: "[T]he agreement alleged by
5    Zunum … is simply not susceptible to *per se* treatment under the controlling law."  Order at 14.

6    **B.    Zunum Failed to Cure the Flaws in its Market Definitions.**

7         As this Court previously recognized, the absence of a viable market dooms both the
8    antitrust conspiracy and monopolization claims.  *See* Order at 24.  "A threshold step in any antitrust
9    case is to accurately define the relevant market[.]"  *FTC v. Qualcomm Inc.*, 969 F.3d 974, 992 (9th
10   Cir. 2020) (quoting *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018) ("*Amex*"); *see also*
11   *Tanaka v. Univ. of S. California*, 252 F.3d 1059, 1065 (9th Cir. 2001) (affirming dismissal for
12   "fail[ure] to identify a relevant market").  To define a market, a plaintiff must identify "the groups
13   of sellers or producers who have actual or potential ability to deprive each other of significant
14   levels of business," and "the product at issue as well as all economic substitutes" with "reasonable
15   interchangeability of use."  *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018); *Murray*,
16   832 P.2d at 497.

17        The SAC claims to have identified three worldwide Alleged Markets: (1) "aircraft serving
18   commercial air travel up to 1,500 miles"; (2) "commercial hybrid to all-electric aircraft"; and (3)
19   "commercial hybrid to all-electric propulsion systems."  ¶ 516.  These Alleged Markets are
20   virtually identical to the three that this Court already considered and rejected in the FAC.

21        **1.    Zunum's First Alleged Market Fails for Numerous Reasons.**

22        The first Alleged Market fails for many reasons.  *First*, it has the same flaw the Court
23   previously identified as to the FAC's alleged market for "short-haul flights under 1,500 miles"—
24   it is entirely "unclear whether this alleged market encompasses products or services," or perhaps
25   both.  Order at 20.  On the one hand, Zunum described the market as "a product market comprised

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

1   of those who make aircraft that can travel [up to 1,500 miles]." *Id.*  On the other hand, Zunum

2   focused on aircraft *serving* commercial air travel, suggesting that the alleged market is "a services

3   market comprised of those who operate flights up to 1,500 miles." *Id.*

4          The SAC retains this basic incoherence.  It focuses on "products … serving commercial

5   air travel," while also emphasizing "convenience to passengers" in this market, including more

6   "convenient [flight] schedules" and close proximity to "nearby airports."  ¶¶ 516-17.[3]  The

7   continued lack of clarity is, in part, unsurprising because Zunum barely altered the problematic

8   language the Court identified: "aircraft~~, short-haul flights under~~ serving commercial air travel up

9   to 1,500 miles."  *See* Ex. A, ¶ 389 (former ¶ 386).  It did so despite the fact that the Court clearly

10  warned Zunum that it had "fail[ed] to define the scope of this alleged market."  Order at 21 n.17.

11  Accordingly, Zunum's claim should again be dismissed because it still "is not clear … what exactly

12  the [] product market is."  *Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 617 (N.D. Cal. 2020).

13         *Second*, even if redefined and limited to aircraft manufacturers, the first Alleged Market

14  would still fail because it is arbitrary.  "Commercial flights up to 1,500 miles," ¶ 32 (or "under

15  1,500 miles," as Zunum elsewhere puts it, ¶ 6) can be flown by virtually any commercial aircraft.

16  This includes the aircraft Zunum places in this Alleged Market ("single-aisles, twin-aisles, regional

17  jets, and turboprops"), as well as the ones it arbitrarily excludes ("business jets and small passenger

18  aircraft").  ¶ 516.  The SAC offers no reason why "regional jets[] and turboprops" are *not*

19  interchangeable with "business jets" and "small passenger aircraft" (an entirely undefined term),

20  but *are* interchangeable with large jets (*i.e.*, "single-aisles[] and twin-aisles").  *Id.*  "A plaintiff

---

21         [3] Focusing on these air service features is inconsistent with Zunum's claim of a "worldwide" market

22  (*id.*), because the usual geographical unit for defining air service markets is not the whole world, but city
    pairs —*i.e.*, "airline service *between a point of origin and a point of destination*."  *See* Statement of John

23  M. Nannes, Deputy Assistant Attorney General, Antitrust Division, before the Committee on
    Transportation & Infrastructure, U.S. House of Representatives (June 13, 2000), *available at*

24  https://www.justice.gov/archive/atr/public/testimony/4955.pdf (emphasis added); *see also Habelt v.*
    *iRhythm Techs., Inc.*, No. 21-CV-00776-EMC, 2022 WL 971580, at *5 (N.D. Cal. Mar. 31, 2022)

25  ("[C]ourts in the Ninth Circuit routinely take judicial notice of … documents published by the government
    itself," including congressional hearing testimony) (citing *Anschutz Corp. v. Merrill Lynch & Co.*, 785
    F. Supp. 2d 799, 834 (N.D. Cal. 2011)).

    RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 9

cannot ignore economic reality and 'arbitrarily choose the product market relevant to its claims[.]'" *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1015 (N.D. Cal. 2021) (quotation omitted).

*Third*, Zunum failed to follow this Court's direction to address reasonable interchangeability of use, which "refers to whether consumers could use the products for the same purposes and depends on the products' 'price, use[,] and qualities.'" Order at 16 & n.14. That is presumably because there are obvious interchangeability problems with Zunum's theory. For example, in reviewing Boeing's merger with McDonnell Douglas, the European Commission determined that "[i]t is widely accepted that the regional jet market (including, for example, Fokker, Bombardier and British Aerospace models) is distinct from the large commercial jet aircraft market on which Boeing, MDC and Airbus are active." *Boeing/McDonnell Douglas*, No. IV/M.877, ¶ 15, (July 30, 1997), https://tinyurl.com/bjzx84km.[4] In the same decision, the Commission emphasized that, on the demand side, consumers generally approach purchasing decisions based on "operating requirements" (*e.g.*, routes to be flown, optimal seating or loading, flight frequency, and the availability of airport slots), "technical requirements" (*e.g.*, performance, reliability, and maintenance and service networks), and "economic and financial aspects" (*e.g.*, purchase price, forecasted operating revenues and costs, and residual value). *Id.* ¶ 14.

These customer considerations underscore the implausibility of how Zunum has attempted to gerrymander its first Alleged Market. The Alleged Market has nothing to do with things that consumers actually care about, such as routes to be flown, the availability of airport slots, maintenance and service networks, and purchase price. Indeed, Zunum's attempt to lump large jets and regional jets together is fundamentally wrong. As the Commission noted and common sense dictates, the two jet families—one carrying hundreds of passengers versus one carrying only

---

[4] The Court may take judicial notice of the European Commission's decision. *E.g.*, *In re European Gov. Bonds Antitrust Litig.*, No. 19 Civ. 2601, 2022 WL 768680, at *5 (S.D.N.Y. Mar. 14, 2022) (taking judicial notice of European Commission decision on motion to dismiss); *In re German Auto. Man. Antitrust Litig.*, 392 F. Supp. 3d 1059, 1063 n.2 (N.D. Cal. 2019) (taking judicial notice of European Commission press release on motion to dismiss).

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 10

1    a few—"[f]or the most part . . . are incompatible." *Boeing/McDonnell Douglas*, ¶ 15.  And the

2    Alleged Market's lone line in the sand at 1,500 miles plainly is driven by *Zunum's* goal of flying

3    an aircraft with that range by 2030, *see* ¶ 35, not the myriad factors that play into *customers'*

4    decisions.  There is no reason (in the SAC or otherwise) to suspect customers would depend on

5    that random, arbitrary number when making a purchasing decision—which is fatal given that any

6    well-pleaded market must comport with the "commercial realities" faced by customers. *High Tech.*

7    *Careers v. San Jose Mercury News*, 996 F.2d 987, 990 (9th Cir. 1993); *Epic Games*, 559 F. Supp.

8    3d at 1015.  There is no reasonable interchangeability in the first Alleged Market.

9        *Fourth*, Zunum failed to heed this Court's admonition to plead facts supporting cross-

10   elasticity of demand, *i.e.*, "'the extent to which consumers will change their consumption of one

11   product in response to a price change in another.'"  Order at 16 & n.14.  The SAC contains no

12   facts to suggest that a consumer would respond to a price change in one of the aircraft in the first

13   Alleged Market (*e.g.*, a large twin-aisle jet) by purchasing another (*e.g.*, a turboprop), or vice-

14   versa.[5]  *See St. Alphonsus Med. Ctr. – Nampa, Inc. v. St. Luke's Health Sys.*, 778 F.3d 775, 785

15   (9th Cir. 2015) ("market definition involves prospective analysis" of "consumer response to a

16   hypothetical price increase"); *In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 995 (N.D. Cal.

17   2009) ("that multiple products may do the same thing does not mean they are 'reasonably

18   interchangeable.'").  The SAC itself concedes that interchangeability depends on "the ability of an

19   aircraft to serve a route economically, [] which requires sizing the aircraft to match demand on

20   that route." ¶ 517.  For example, a large jet may make no economic sense for a 30-minute route

21   to a little-traveled destination that could be easily handled by a small turboprop—which is to say,

22   the two are not reasonably interchangeable, and do not have cross-elasticity of demand.  The

23

24        [5] In evaluating the plausibility of Zunum's market definition, the Court is entitled to make this
     "commonsense inference" regarding the way products do or do not "compete with other" products. *In re*
25   *German Auto. Mfrs. Antitrust Litig.*, 497 F. Supp. 3d 745, 759 (N.D. Cal. 2020), *aff'd* No. 20-17139, 2021
     WL 4958987 (9th Cir. Oct. 26, 2021).

     RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 11

aircraft in the first Alleged Market are different products, with different uses, for different kinds of customers.  For all of these reasons, Zunum's first Alleged Market fails.

### 2. Zunum's Second and Third Alleged Markets Fail for Numerous Reasons.

Zunum's second and third Alleged Markets—for "commercial hybrid to all-electric aircraft" and "commercial hybrid to all-electric propulsion systems"—are, if anything, even weaker than the first.  As noted above, this Court has already held that a "hybrid-electric and all-electric aircraft" market does not "currently exist"—and that was enough to require dismissal. Order at 19–20. Rather than dispute that point, the SAC *admits* that these two Alleged Markets are "still emerging." ¶ 535; *see also* ¶ 277 (same).  Indeed, Zunum never claims that any product in these Alleged Markets has *ever* been marketed, sold, or purchased.  As a result, Zunum's reliance on these markets is "facially unsustainable because such [] market[s] ha[ve] yet to be established."  Order at 20; *see also Siegler*, 2019 WL 581719, at *12 ("If there is no extant product market, then it necessarily follows that there is no viable anti-trust claim.").[6]

Moreover, and contrary to this Court's instructions, Zunum does not attempt to articulate any reasonable interchangeability and cross-elasticity of demand within these Alleged Markets; Zunum never even mentions either issue.  Perhaps for good reason:  It would be plainly speculative to compare and contrast products and demand that do not exist.  That is especially so given that the second and third Alleged Markets have no discernable boundaries and it is unclear what they cover.  For example, what constitutes a "hybrid" aircraft or propulsion system—one that draws 50% of its power from electric batteries?  10%?  The SAC does not say.  Why are hybrid and all-electric technologies treated as a single market, when they are obviously different hypothetical products?  The SAC is silent, and again, dismissal is warranted where (as here) "it is not clear … what exactly the [] product market is."  *Staley*, 446 F. Supp. 3d at 617.

---

[6] Zunum's first Alleged Market fails for this reason as well.  As discussed above, it is plain from the SAC that Zunum's 1,500-mile metric was merely a technical goal Zunum hoped to achieve by 2030 (*see* ¶ 35), not a factor influencing any actual customer behavior, much less the basis for an entire market. *See supra* at 9–11.

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 12

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

1    All this demonstrates that Zunum's flawed Alleged Markets are really just descriptions of

2    the product Zunum hoped to build, not an "area of effective competition" among real-world,

3    existing goods and/or services. *Amex*, 138 S. Ct. at 2285. "No party can expect to gerrymander

4    its way to an antitrust victory," but that is precisely what the SAC attempts to do here—purporting

5    to define a market that is nothing more than a rephrasing of Zunum's business plan to build a

6    1,500-mile-range aircraft by 2030. *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 683 (4th

7    Cir. 2016).   Courts generally do not "accept uncritically … market definitions … that

8    coincidentally fit plaintiff's precise circumstances," and the Court should decline to do so here. *Id.*

9    **II.   Zunum's Antitrust Conspiracy Claim (Count IX) Should Be Dismissed for Additional**

10    **Reasons.**

11    The Court need go no further to dismiss Zunum's antitrust conspiracy claim.  But that claim

12    suffers from several additional flaws: Zunum's allegations of market power and substantial

13    anticompetitive effect remain deficient, and Zunum still fails to plead facts showing an agreement.

14    Each of these is an independent reason why Zunum's antitrust conspiracy claim cannot proceed.

15    **A.   Zunum's Allegations of Market Power Remain Deficient.**

16    "Market power is the ability to raise prices above those that would be charged in a

17    competitive market." *NCAA v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 109 n.38 (1984).

18    The Supreme Court has held that a company must have more than 30% of the market, at minimum,

19    to exercise market power. *See Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 26–29, 45–

20    46 & n.43 (1984); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1438 (9th Cir. 1995) ("30

21    percent is presumptively insufficient").

22    Zunum, however, has not adequately established that either Boeing or Safran has any share

23    *at all* in the Alleged Markets.  The SAC says nothing about Safran's purported market share.  As

24    for Boeing, Zunum does not try to identify Boeing's market share in the Alleged Markets for

25    "commercial hybrid and all-electric aircraft" and "commercial hybrid and all-electric propulsion

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 13

systems"—because those markets (and any corresponding market shares) concededly do not exist. *See* ¶ 535 (admitting that these alleged markets are "still emerging").  That leaves only the first Alleged Market, the worldwide market for "aircraft serving commercial air travel up to 1,500 miles."  Yet, as to that market, Zunum offers only a single sentence, stating that "Boeing's share of this market equaled 50.3% in 2018," ¶ 518, without identifying any supporting "facts demonstrating adequate market share." *See, e.g.*, *Distance Learning Co. v. Maynard*, No. 19-CV-03801-KAW, 2020 WL 2995529, at *8 (N.D. Cal. June 4, 2020); *McCabe Hamilton & Renny, Co. v. Matson Terminals, Inc.*, No. 08-00080, 2008 WL 2437739, at *8 (D. Haw. June 17, 2008) (dismissing claim for plaintiff's failure to establish "some factual predicate to support its assertion that Defendant enjoys market power in the relevant market") (citing cases)).

The SAC, moreover, is devoid of allegations that Boeing has market *power*—"the ability to raise prices above those that would be charged in a competitive market," *NCAA*, 468 U.S. at 109 n.38.  To the contrary, Zunum's allegations elsewhere suggest that Boeing and Safran *lack* market power in the Alleged Markets.  Zunum claims that Boeing was not "meaningfully engaged" in electric aircraft markets "prior to 2017." ¶ 506.  Zunum's pleadings suggest that the "short-haul flights" market concerns carrier service, not aircraft (¶ 64), and Zunum does not and cannot allege that Boeing participates in carrier service.  ¶¶ 1, 48.  Even if the market were limited to aircraft, Zunum states that "Boeing has historically not been active in the market for smaller aircraft tailored for short-haul flights," and that it tried to enter that market through a proposed acquisition that *failed to close*.  ¶¶ 52, 57.  And as to Safran, Zunum acknowledges that Safran does not produce aircraft or offer flights; Safran supplies parts.  ¶¶ 9, 265, 507.

Moreover, "[a] mere showing of substantial or even dominant market share alone cannot establish market power" sufficient for antitrust liability; a plaintiff also "must show that new rivals are barred from entering the market" and "existing competitors lack the capacity to expand their output to challenge the [defendants'] high price." *Rebel Oil Co.*, 51 F.3d at 1439; *id.* ("[E]ntry

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

1    barriers must be significant[.]").  Zunum makes no allegation in Count IX that Boeing and Safran's

2    purported rivals are barred from entering the Alleged Markets, or lack the ability to compete with

3    them.  Zunum thus fails to plead market power.

4    **B.      Zunum's Allegations of Substantial Anticompetitive Effect Remain Deficient.**

5           Even if Zunum had alleged cognizable markets and market power, its claim would fail

6    because it does not plead a "substantial anticompetitive effect" in the Alleged Markets.  *Amex*, 138

7    S. Ct. at 2284.  "Plaintiffs may not substitute allegations of injury to the claimants for allegations

8    of injury to competition."  *Brantley v. NBC Universal Inc.*, 675 F.3d 1192, 1200 (9th Cir. 2012).

9    But that is what Zunum does, conflating its own alleged injury with an injury to competition.

10   "[R]emoval of one or a few competitors," however, "need not equate with injury to competition,"

11   *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508 (9th Cir. 1989), and the SAC

12   indicates that competition remains robust due to "powerful competitors" who are active in the "still

13   emerging" Alleged Markets.  *See, e.g.*, ¶¶ 370, 378–79, 535 (alleging market participation by

14   United Technologies Aerospace Systems, Daher, and Sabrewing).

15          Nor could the loss of Zunum have a "substantial" effect on the market.  *Amex*, 138 S. Ct.

16   at 2283.  Zunum alleges it was a small startup hoping to operate in allegedly "worldwide market[s]"

17   set to be worth "$3 trillion."  ¶¶ 32, 96, 107, 515.  Against that backdrop, the loss of a company

18   with only $3.5 million (¶ 89) invested in an unrealized idea is insubstantial.  *E.g.*, *Tampa Elec. Co.*

19   *v. Nashville Coal Co.*, 365 U.S. 320, 333 (1961) (contract affecting 1% of the market was not a

20   "substantial … lessening of competition"); *Eastman v. Quest Diagnostics Inc.*, 108 F. Supp. 3d

21   827, 837 (N.D. Cal. 2015) (acquisition affecting 3% of market "insubstantial").  "Only an actual

22   competitor or one ready to be a competitor" in the alleged market can affect competition in that

23   market.  *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 711 (9th Cir. 2003).  Because Zunum lacked

24   "the intent and preparedness to be a competitor"—and, indeed, did not expect to begin to

25

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 15

1    competing in the Alleged Markets for years (¶¶ 34–35)—its failure could not substantially affect

2    competition as a matter of law.  *Id.*

3    **C.    Zunum Has Not Pled An Agreement.**

4            Even assuming Zunum had cured its pleading defects with respect to unreasonable restraint,

5    Zunum has still failed to adequately plead an agreement, and its antitrust conspiracy claim fails for

6    that reason independently.

7            A plaintiff may plead the agreement element in two ways: by alleging "direct evidence" of

8    an agreement or by alleging circumstantial evidence in the form of "parallel conduct" combined

9    with multiple "plus factors" that suggest intentional and consciously coordinated behavior.  *Frost*

10   *v. LG Elecs., Inc.*, 801 F. App'x 496, 497 (9th Cir. 2020).  Zunum has done neither.

11           "Direct evidence … is explicit and requires no inferences."  *In re Citric Acid Litig.*, 191

12   F.3d 1090, 1093–94 (9th Cir. 1999).  It must "establish 'who, did what, to whom (or with whom),

13   where, and when?'"  *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 n.6

14   (9th Cir. 2015).  Zunum alleges no direct evidence that answers those questions.  Instead, it merely

15   claims that Safran "was beholden to Boeing and *would only*" have declined to invest in Zunum

16   "with encouragement or instruction from Boeing."  ¶ 349 (emphasis added).  That is exactly the

17   sort of inference that does not suffice.  Zunum also does not allege any circumstantial evidence—

18   *i.e.*, both parallel conduct and plus factors—sufficient to support a plausible inference of

19   agreement.  Parallel conduct occurs when companies undertake "some action simultaneously."  *In*

20   *re DRAM Indirect Purchaser Litig.*, No. 4:18-CV-2518-JSW-KAW, --- F. Supp. ----, 2020 WL

21   8459279, at *5 (N.D. Cal. Nov. 24, 2020).  The SAC's theory of parallel conduct is that Boeing

22   and Safran did not proactively fund Zunum.  ¶¶ 349, 502.  But "*inaction*" or failure "to have taken

23

24

25

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 16

1   steps to support" does not constitute parallel conduct.  *See In re Int. Rate Swaps Antitrust Litig.*,

2   261 F. Supp. 3d 430, 463–64 (S.D.N.Y. 2017).

3        Even if Zunum adequately pled parallel conduct (and it has not),  Zunum has not pled any

4   plus factors.  "Plus factors are 'economic actions … largely inconsistent with unilateral conduct

5   but largely consistent with explicitly coordinated action.'"  *In re DRAM Indirect Purchaser*

6   *Antitrust Litig.*, 28 F.4th 42, 47 (9th Cir. 2022) (quoting *Musical Instruments*, 798 F.3d at 1194).

7   They are actions that would be "perilous in the absence of advance agreement" that "no reasonable

8   firm" would take unilaterally.  *Id.* at 49.  Plus factors can include actions like "complex,

9   simultaneous, [and] historically unprecedented supply reductions" or "perilous supply cuts that

10  would be irrational absent agreement."  *In re DRAM*, 2020 WL 8459279, at *6.  Plus factors also

11  can include actions like "public statements by Defendants that could be construed as 'invitations

12  to agree.'"  *In re Cali. Bail Bond Antitrust Litig.*, 511 F. Supp. 3d 1031, 1045–46 (N.D. Cal. 2021).

13  They can similarly include defendants' "price signaling," *In re DRAM*, 28 F.4th at 47, as well as

14  the simultaneous adoption of similar policies against self-interest, *Musical Instruments*, 798 F.3d

15  at 1194–95.  Importantly, a single "plus factor" is not enough; the "case law is clear in its

16  requirement of *multiple* 'plus' factors to support evidence of parallel conduct before the pleadings

17  can be deemed adequate."  *In re Cedar Shakes & Shingles Antitrust Litig.*, No. C19-288 MJP, 2020

18  WL 832324, at *9 (W.D. Wash. Feb. 20, 2020).

19       Zunum does not allege a single plus factor.  Boeing and Safran are not alleged to have

20  engaged in irrational supply cuts, publicly invited each other to agree to some unlawful conspiracy,

21  engaged in price signaling, or happened to simultaneously adopt similar policies against self-

22  interest.  In short, Zunum does not have a single plus factor, much less multiple plus factors as

23  required by the case law.

24       Instead, the SAC's overarching theme is that Boeing and Safran refused to invest in, or

25  provide technical support to, Zunum.  Yet "the complaint itself … provides ample independent

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 17

1    business reasons why" Boeing and Safran each decided not to continue their relationships with

2    Zunum.  *See Musical Instruments*, 798 F.3d at 1195.  Zunum admits that Boeing was "skeptical"

3    of Zunum's models (¶ 118) and concluded Zunum was "overpromising" (¶ 166), and that Zunum

4    spent Boeing's investment without finishing even a prototype of its electric engine (¶ 39).  Zunum

5    also admits Safran's estimates on hybrid-electric technology's viability departed substantially

6    from Zunum's, amply justifying Safran's wariness and reluctance to invest.  ¶ 292.

7    In sum, Zunum's allegations "could just as easily suggest rational, legal business

8    behavior … as they could suggest an illegal conspiracy."  *Musical Instruments*, 798 F.3d at 1194.

9    Such facts are "insufficient to plead" the first element of Zunum's conspiracy claim: an agreement

10   between Boeing and Safran.  *Id.* at 1197 n.13; *In re German Auto. Mfgs. Antitrust Litig.*, No. 20-

11   17139, 2021 WL 4958987, at *2 (9th Cir. Oct. 26, 2021) (affirming dismissal of claim "premised

12   on an alleged agreement to not develop electric vehicles" in light of "benign explanation" for

13   parallelism).  Because the SAC does not remedy this defect, Count IX must be dismissed.

14   **III.   Zunum's Attempted Monopolization Claim (Count X) Should Be Dismissed for**

15   **Additional Reasons.**

16   As with the antitrust conspiracy claim, the Court need tread no new ground to dismiss the

17   attempted monopolization claim—Zunum's failure to plead a plausible market is dispositive.  But

18   this claim also fails for additional independent reasons.   "To state a claim for attempted

19   monopolization, a plaintiff must allege," *inter alia*, "a dangerous probability of achieving

20   'monopoly power,'" plus "predatory or anticompetitive conduct" and "causal antitrust injury."

21   *Khalid v. Microsoft Corp.*, 409 F. Supp. 3d 1023, 1032 (W.D. Wash. 2019) (citing *Rebel Oil*, 51

22   F.3d at 1432–33).  Zunum pleads none of these elements.

23   **A.   Zunum Has Not Pled A Dangerous Probability Of Monopoly Power.**

24   "Monopoly power … requires, of course, something greater than market power."  *Eastman*

25   *Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 481 (1992).  As already explained, Zunum

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 18

1   has failed to plead that Boeing has market power in any Alleged Market.  *See supra* at 13–15.

2   Zunum thus has failed to plead a dangerous probability of monopoly power.  *See Premier Comp*

3   *Sols. LLC v. UPMC*, 377 F. Supp. 3d 506, 534 (W.D. Pa. 2019) ("market power" is a "prerequisite

4   to … a dangerous probability").

5       Nor do Zunum's allegations about a supposed Boeing-Airbus "duopoly … in the market

6   for larger aircraft" and Boeing's share "in the market for production and integration of large-body

7   aircraft" suffice.  ¶¶ 48, 527, 529.  Because Zunum does not base its claims on any such markets—

8   indeed, it alleges its designs were "necessarily unlike current aircraft" (¶ 69)—they are irrelevant

9   to this case.  It is not enough to say a defendant is "number one" in some other market; what

10  matters is "power in the relevant market."  *Rick-Mik Enters. v. Equilon Enters.*, 532 F.3d 963, 971

11  (9th Cir. 2008); *Water, Inc. v. Everpure, Inc.*, No. 09-cv-3389, 2009 WL 10670419, at *8 (C.D.

12  Cal. Oct. 28, 2009) ("size of … parent corporation in the abstract says nothing about … market

13  power in the relevant market").  Zunum's "duopoly" claim misses the mark as well: "To pose a

14  threat of monopolization, one firm *alone* must have the power to control" the market.  *Rebel Oil*,

15  51 F.3d at 1443.

16      In all events, the market share threshold for "dangerous probability" is more than 30% at

17  minimum.  *Rebel Oil*, 51 F.3d at 1438.  In addition to meeting that threshold, there also must be

18  "barriers to entry and barriers to expansion."  *Id.*  For three separate reasons, Zunum again fails to

19  establish a dangerous probability.

20      *First*, a dangerous probability must exist in a relevant market.  As explained above,

21  however, Zunum has not adequately pled any valid markets.  *See supra* Section I.B.

22      *Second*, a dangerous probability requires market share above 30% in a relevant market, yet

23  again, Zunum has not adequately pled as much.  Zunum summarily claims that "Boeing's share of

24  [the first Alleged Market] equaled 50.3% in 2018," ¶ 517.  But, in the absence of supporting facts

25  this is not enough to establish that Boeing has the ability to raise prices above those that would be

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 19

charged in a competitive market.  *See supra* at 13–14.  Moreover, Zunum does not even try to identify Boeing's market share in the Alleged Markets for "commercial hybrid and all-electric aircraft" and "commercial hybrid and all-electric propulsion systems."  And Zunum's claim that Boeing has "a worldwide market share upwards of 40% in the market for production and integration of large-body aircraft" is irrelevant because that is not an Alleged Market.  ¶ 529.

*Third*, Zunum has not identified any alleged barriers to entry to, or expansion of, the Alleged Markets.  Zunum offers the conclusory claim that "sectors such as aviation" (not an Alleged Market) contain unspecified "barriers," but it pleads no facts supporting that assertion.  ¶ 66.  In the sole new paragraph in Count X, Zunum claims that "[l]imited access to capital" is "a key barrier to new entrants" in "the commercial aircraft or propulsion market."  ¶ 528.  But "the commercial aircraft or propulsion market" is not an Alleged Market.  And Zunum never explains how access to capital could be a barrier given the numerous avenues in the marketplace for obtaining financing.

So, all Zunum really has is a conclusory reference to "the barriers to entry in the markets for aircraft serving commercial air travel up to 1,500 miles, commercial hybrid and all-electric aircraft, and commercial hybrid and all-electric propulsion systems" and a gesture at "[l]imited access to capital."  ¶ 527, 528.  Those are textbook legal conclusions that fail *Twombly*.  *See, e.g.*, *Optronic Techs, Inc. v. Ningo Sunny Elec. Co.*, No. 16-cv-06370-EJD, 2017 WL 4310767, at *9 (N.D. Cal. Sept. 2017) (granting motion to dismiss in part because broad allegations such as "high capital investment costs" do "not plausibly allege significant barriers to entry" and "are too conclusory to be entitled to an assumption of truth").  And even *those* conclusory statements are belied by Zunum's own boasts that it could navigate the regulatory framework as well as Boeing (¶ 187), that it could follow the path of Tesla from startup to heavyweight (¶ 70), and that it had significant investor interest (¶ 205).  Accordingly, Zunum has failed to plead a dangerous probability of monopoly power.

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

**B.      Zunum Has Not Pled Predatory or Anticompetitive Conduct.**

Zunum also attempts to satisfy the "conduct" element with the same two theories Zunum pressed before: that Boeing's "improper patenting of Zunum's trade secrets and proprietary information imposes artificial impediments to competition," and that Boeing "foreclosed Zunum's access" to capital, "forcing it to seek investments on far less favorable terms." ¶¶ 533–34.  Each theory remains legally insufficient.

Patents represent "an exception to the general rule against monopolies," and thus patent prosecution is nearly always immune from the antitrust laws.  *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965).  The sole exception—a so-called *Walker Process* claim—has exacting requirements.  The plaintiff must show the patent was procured "by fraud on the patent office" with "a clear intent to deceive the examiner" (shown by more than "the simple fact of [an] omission"), and that such deception was so "material" that it "would have required the examiner to reject the application."  *Giuliano v. SanDisk Corp.*, 224 F. Supp. 3d 851, 861–62 (N.D. Cal. 2016) (quoting *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070 (Fed. Cir. 1998)).  "Materiality must be shown by clear and convincing evidence," *id.* at 865, and the allegations must satisfy Rule 9(b).  *Medimmune, Inc. v. Genentech, Inc.*, 427 F.3d 958, 967 (Fed. Cir. 2005), *rev'd on other grounds*, 549 U.S. 118 (2007).  Even then, "[m]ere procurement" by fraud is not enough.  *FMC Corp. v. Manitowoc Co.*, 835 F.2d 1411, 1418 n.16 (Fed. Cir. 1987).  There is no liability unless the defendant *both* "enforce[s] the patent," *and* does so in a way that meets "all the other elements" of a "monopolization claim."  *Giuliano*, 224 F. Supp. 3d at 861 (quoting *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016)).

Zunum has again failed to meet these pleading requirements.  Specifically, Zunum says nothing about patent office proceedings, Boeing's patent enforcement, or the relationship between any patent and competition in any Alleged Market.  There is no viable *Walker Process* claim here.

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 21

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

1    That leaves the alternative theory that Boeing "foreclosed Zunum's access" to capital.

2    ¶ 534; ¶ 528.  Boeing, of course, is not a monopolist in "capital" and had no power to "starve[]"

3    Zunum of it.  *Id.*  There are countless sources of capital and investors who could have funded

4    Zunum if its proposals held promise, and Zunum repeatedly insists that it had those investors'

5    attention.  *E.g.*, ¶¶ 79, 204–206.  Zunum nonetheless claims that by "abandon[ing] support for

6    Zunum after previously investing," Boeing "signal[ed] a lack of confidence in Zunum" that

7    "damag[ed] its ability to attract further investment."  ¶ 124.  But the law does not require investors

8    to "signal confidence" where they have none, nor renew a fruitless investment on pain of antitrust

9    liability; to the contrary, the antitrust laws exist to ensure that firms are "free to choose the parties

10   with whom they will deal."  *Pac. Bell Tel. Co. v. LinkLine Commc'ns, Inc.*, 555 U.S. 438, 448

11   (2009); *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1184 (9th Cir. 2016)

12   (competitors need not "engage in a lovefest"; even an "act of pure malice" would not state a claim).

13   The only theory Zunum's "access to capital" claim remotely resembles is a "refusal to deal"

14   claim.  Because forced dealing more often prevents rather than promotes competition, this theory

15   lies "at or near the outer boundary of § 2 liability."  *Verizon Commc'ns Inc. v. Law Offices of*

16   *Curtis V. Trinko, LLP*, 540 U.S. 398, 409 (2004).  And Zunum's claim does not approach even

17   this expansive view of § 2.  To start, pleading a "refusal to deal" requires allegations of a scarce

18   resource or unique access point that was denied.  *See, e.g.*, *Aspen Skiing Co. v. Aspen Highlands*

19   *Skiing Corp.*, 472 U.S. 585, 597 (1985); *Anaheim v. S. Cal. Edison Co.*, 955 F.2d 1373, 1380 &

20   n.5 (9th Cir. 1992).  Investment capital is not a scarce resource, especially in "worldwide markets."

21   ¶ 525.  And even if it were, a refusal to deal *might* be unlawful only if (1) the defendant terminates

22   a "profitable course of dealing," (2) "the only conceivable rationale or purpose is to sacrifice short-

23   term benefits in order to obtain higher profits in the long run from the exclusion of competition,"

24   and (3) "the refusal to deal involves products that the defendant already sells in the existing market

25   to other similarly situated customers."  *Qualcomm*, 969 F.3d at 994.

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 22

The SAC does not satisfy these requirements, and the facts Zunum does plead show it cannot. Boeing did not have a profitable history with Zunum—it made two discrete loans, which Zunum failed to pay back. ECF No. 49 ¶¶ 37, 46 (Zunum's answer to counterclaims); *see also* ¶ 468. Declining further investment in a startup that was unable to secure funding from any other investor hardly supports a conclusion that Boeing did so to sacrifice short-term benefits to eliminate long-term competition. Boeing's further investment would not have involved *any* short-term benefits, and Zunum's hope to become competitive in the long-run was pure speculation. Finally, Zunum does not plead that Boeing was selling the same products to similarly situated customers—not least because investment capital is not a "product," and investment opportunities are not "customers." *See, e.g.*, *MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1132 (9th Cir. 2004) (if defendant does not already sell the same products to others, courts are "ill-suited" to "act as central planners" and should not set "terms of dealing"). Zunum has failed to plead predatory or anticompetitive conduct, and its attempted monopolization claim should be dismissed.

**C.    Zunum Has Not Pled Antitrust Injury.**

Finally, as explained, *supra* at 15–16, Zunum did not plead an "injury to competition under RCW 19.86.030," and accordingly, its claim under RCW 19.86.040 fails for the same reason. *Murray*, 832 P.2d at 500; *Khalid*, 409 F. Supp. 3d at 1032 ("antitrust injury" is a necessary element).

**IV.    Zunum's Tortious Interference Claim Should Be Dismissed (Count VII)**

Zunum's tortious interference claim should also be dismissed. Zunum has not sufficiently alleged—and certainly will not be able to prove—any of the tortious interference elements. But for present purposes, its failure to plead that Boeing used "improper means" to interfere with a valid business expectancy and cause "resultant damage[s]" is dispositive. *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 280 (Wash. 2006).

Zunum's tortious interference theory appears to be that Boeing used "improper means" to interfere with Zunum's "business expectancies with several investors and business partners,

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 23

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Tel: (206) 359-8000
Fax:  (206) 359-9000

1    including [Safran] and [United Technologies Aerospace Systems ('UTAS')." ¶¶ 470, 475.  Zunum

2    offers only two sentences, however, attempting to describe the allegedly improper means, which

3    merely call back to and re-allege *other* counts in the SAC.  ¶ 476.  That is insufficient.

4        *First*, Zunum cannot establish "improper means" based on claims that have been dismissed

5    (*i.e.*, breach of fiduciary duty) or should now be dismissed with prejudiced (*i.e.*, antitrust).

6        *Second*, to the extent Zunum alleges that Boeing's lawful—and prudent—decision not to

7    invest further in Zunum somehow was improper, Washington law forecloses that theory.  *See*

8    *Tacoma Auto Mall, Inc. v. Nissan N. Am., Inc.*, 279 P.3d 487, 498 (Wash. Ct. App. 2012)

9    ("Exercising one's legal interests in good faith is not improper interference."); *Birkenwald Distrib.*

10   *Co. v. Heublein, Inc.*, 776 P.2d 721, 726 (Wash. Ct. App. 1989) ("A defendant who in good faith

11   asserts a legally protected interest of his own which he believes may be impaired by the

12   performance of a proposed transaction is not guilty of tortious interference.").

13       And *third*, to the extent Zunum alleges that Boeing's supposed "misappropriation" of

14   confidential information constituted improper means, Washington law forecloses that theory as

15   well.  An improper means must "*in fact cause injury* to [the] plaintiff's … business relationships"

16   or lead to "resultant damage."  *Greensun Grp., LLC v. City of Bellevue*, 436 P.3d 397, 408, 405

17   (Wash. Ct. App. 2019) (emphasis added).   But there are no allegations tying an alleged

18   misappropriation (an issue only between Boeing and Zunum) to purported injury to Zunum's

19   claimed business expectancies with Safran and UTAS.  That is likely because Boeing could not

20   have caused any such injuries: *Zunum* shared its own confidential information with Safran and

21   UTAS in the hope of securing investments.  ¶¶ 282, 314.  Zunum cannot now claim that it was

22   *Boeing* that "in fact cause[d] injury" or "resultant damage."  *Greensun*, 436 P.3d at 408, 405.

## CONCLUSION

24       Boeing respectfully requests that the Court dismiss Counts VII, IX, and X of Zunum's

25   Second Amended Complaint with prejudice.

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR – 24

| | |
|---|---|
| 1 | Dated: July 11, 2022 |

Respectfully submitted,

/s/ David Perez
Susan Foster, WSBA #18030
David Perez, WSBA #43959
Ian Rogers, WSBA #46584
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Tel:   (206) 359-8000
Fax:  (206) 359-9000
Email: sfoster@perkinscoie.com
          dperez@perkinscoie.com
          irogers@perkinscoie.com

JONES DAY
Matthew A. Kairis
(admitted *pro hac vice*)
2727 North Harwood Street, Suite 500
Dallas, TX 75201
Tel:  (214) 220-3939
Fax:  (214) 969-5100
Email: makairis@jonesday.com

Aaron M. Healey
(admitted *pro hac vice*)
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939
Fax: (212) 755-7306
Email: ahealey@jonesday.com

Dustin M. Koenig
(admitted *pro hac vice*)
325 John H. McConnell Boulevard, Suite 600
Columbus, OH 43215
Tel: (614) 469-3939
Fax: (614) 461-4198
Email: dkoenig@jonesday.com

Attorneys for Defendants
THE BOEING COMPANY and
BOEING HORIZONX VENTURES, LLC

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that I caused to be served upon counsel of record at the address and in the

3

manner described below a copy of the document to which this certificate I attached for delivery

4

to the following:

5

| | |
|---|---|
| Eliot M. Harris<br>WILLIAMS, KASTNER & GIBBS PLLC<br>601 Union Street, Suite 4100<br>Seattle, WA 98101-2380<br>Tel: (206) 628-6600<br>Email:  eharris@williamskastner.com<br><br>*Attorneys for Plaintiff*<br>*Zunum Aero,  Inc.* | Via ECF |
| Colin R. Hagan<br>David J. Shlansky<br>SHLANSKY LAW GROUP, LLP<br>1 Winnisimmet Street<br>Chelsea,  MA 02150<br>Tel:  (617) 492-7200<br>Email:  colin.hagan@slglawfirm.com<br>        david.shlansky@slglawfirm.com<br><br>*Attorneys for Plaintiff*<br>*Zunum Aero,  Inc.* | Via ECF |

17

DATED this 11th day of July 2022.

18

*/s/ David Perez*

19
Susan Foster, WSBA #18030
David Perez, WSBA #43959

20
Ian Rogers, WSBA #46584
PERKINS COIE LLP

21
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099

22
Tel:   (206) 359-8000
Fax:  (206) 359-9000

23
Email: sfoster@perkinscoie.com
        dperez@perkinscoie.com

24
        irogers@perkinscoie.com

25

RULE 12(b)(6) MOTION; No. 2:21-cv-00896-JLR