UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ZUNUM AERO, INC., | CASE NO. C21-0896JLR |
| Plaintiff, | ORDER |
| v. | **PROVISIONALLY FILED** |
| THE BOEING COMPANY, et al., | **UNDER SEAL** |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Defendants / Counterclaimants The Boeing Company and Boeing HorizonX Ventures, LLC's (together, "Boeing") motion for summary judgment. (Mot. (Dkt. ## 336 (sealed), 357 (redacted)); Reply (Dkt. ## 484 (sealed), 485 (redacted)).)  Plaintiff / Counter-Defendant Zunum Aero, Inc. ("Zunum") opposes the motion.  (Resp. (Dkt. ## 480 (redacted), 481 (sealed)).)  The court has considered the parties' submissions, the relevant portions of the record, and the governing law.  Being

//

1  fully advised,[1] the court GRANTS in part, DENIES in part, and RESERVES RULING in

2  part on Boeing's motion for summary judgment.

3  ## II.   BACKGROUND

4  This case arises out of a failed partnership between Zunum and Boeing.  Zunum,

5  an upstart entrant in the aerospace industry, developed proprietary technology that, it

6  asserts, could enable hybrid-electric or all-electric aircraft to be viable decades before the

7  aerospace industry had previously thought possible.  (2d Am. Compl. (Dkt. # 60) ¶ 2.)

8  Zunum alleges that its innovations include novel aircraft designs, propulsion systems, and

9  electronic systems that could make air travel greener, faster, and more affordable.  (*Id.*

10 ¶ 3.)

11 In 2016, Zunum identified Boeing as a potential investor.  (*Id.* ¶¶ 91, 93-94, 96.)

12 On August 16, 2016, the two companies entered into a proprietary information agreement

13 (the "2016 PIA") "to explore the feasibility of potential projects in the field of electric

14 based power systems for aviation use."  (1st 3/18/24 Danner Decl. (Dkt. # 463) ¶ 5, Ex. 5

15 (Dkt. ## 463-5 (cover page), 465-4 (sealed)) at 2.[2])  Under the 2016 PIA, Boeing agreed

16 to "preserve in confidence, not disclose to others, and not use (except for [certain limited

17 purposes]) any and all Proprietary Information."  (*Id.* at 3.)  After the 2016 PIA was

18 executed, Zunum shared dozens of confidential documents with Boeing.  (*See generally*

19 //

20    [1] Boeing requests oral argument (Mot. at 1), but Zunum does not (*see* Resp. at 1).  The
   court concludes that oral argument would not be helpful to its disposition of Boeing's motion.
21 *See* Local Rules W.D. Wash. LCR 7(b)(4).

22    [2] With the exception of deposition transcripts cited by page and line numbers, all
   citations to exhibits are to the CM/ECF page numbers.

1st 3/18/24 Danner Decl. ¶ 5, Ex. 7 (Dkt. ## 463-7 (cover page), 465-6 (sealed)) at 12-18

(listing documents and dates of transmission).)

On March 17, 2017, the parties executed a note purchase agreement (the "2017

IRL"), whereby Boeing loaned Zunum $5,000,000 in exchange for certain investor rights.

(*See generally* 1st 3/18/24 Danner Decl. ¶ 5, Ex. 14 (Dkt. ## 463-14 (cover page), 465-13

(sealed)).)  Pursuant to the 2017 IRL, Boeing agreed "to keep confidential and not

disclose, divulge, or use for any purpose (other than to manage its investment in [Zunum]

. . .) any confidential information obtained from [Zunum]."  (*Id.* at 26.)  After Boeing

made its investment, Zunum continued to share proprietary information with Boeing.

(*See* 1st 3/18/24 Danner Decl. Ex. 7 at 12-18; *see also* 1st 3/18/24 Danner Decl. ¶ 5, Ex.

15 (Dkt. ## 463-15 (cover page), 465-14 (sealed)) at 91:25-92:21 (discussing a Boeing

executive's attendance at Zunum board meetings).)

On May 1, 2018, the parties executed another note purchase agreement (the "2018

IRL"), whereby Boeing loaned Zunum an additional $4,000,000.  (*See generally* 1st

3/18/24 Danner Decl. ¶ 5, Ex. 16 (Dkt. ## 463-16 (cover page), 465-15 (sealed)).)  As it

did in the 2017 IRL, Boeing agreed "to keep confidential and not disclose, divulge, or use

for any purpose (other than to manage its investment in [Zunum] . . .) any confidential

information obtained from [Zunum]."  (*Id.* at 31.)

In addition to Boeing, Zunum was interested in partnering with other established

industry players.  Zunum discussed potential opportunities with, among others, UTC

Aerospace Systems ("UTAS") and Safran S.A. ("Safran").  (*See generally* 3d 3/18/24

Danner Decl. (Dkt. # 466) ¶ 4, Ex. 120 (Dkt. ## 466-41 (cover page), 470-40 (sealed))

(Safran); 4th 3/18/24 Danner Decl. (Dkt. # 468) ¶ 4, Ex. 122 (Dkt. ## 468-2 (cover page), 471-1 (sealed)) (UTAS). UTAS and Safran, however, did not invest. (*See* 4th 3/18/24 Danner Decl. ¶ 4, Ex. 149 (Dkt. ## 468-29 (cover page), 471-28 (sealed)) at 2 ("Sarfran [*sic*] was interested but chose not to invest . . . ."); *id.* ¶ 4, Ex. 127 (Dkt. ## 468-7 (cover page), 471-6 (sealed)) ("Looking at walking from the UTAS deal . . . .").)

Without funding, Zunum ran out of funds in September 2018. (*See* 2d Am. Compl. ¶ 335 ("The founders of Zunum stopped drawing a salary in September 2018 . . . .").) Like so many startups before it, Zunum "furloughed its employees, launched outreach . . . to find contract work to engage its engineers, and raised emergency loans to cover the limited operating costs that remained." (*Id.* ¶ 337.)

The story did not end there, however. According to Zunum, "almost immediately upon receiving Zunum's information, Boeing began using it for non-permitted purposes" in violation of the parties' agreements, "including to develop its own competing capabilities." (Resp. at 6; *see also* 2d Am. Compl. ¶ 460.) Zunum maintains that Boeing improperly used Zunum's confidential information in its own studies, including Boeing's 2017 "Thin Haul Study." (Resp. at 11-13; *see also* 2d Am. Compl. ¶ 352.) Zunum further avers that Boeing patented Zunum technology and sought partnerships with Safran and UTAS to develop the "same" components Zunum had sought to develop with those companies. (Resp. at 19-20, 26-27; *see also* 2d Am. Compl. ¶ 370.)

Zunum initiated this lawsuit on November 23, 2020. (*See* Removal Not. (Dkt. # 1) at 2.) In the operative complaint, Zunum sues for (1) misappropriation of 19 trade secrets (the "Alleged Trade Secrets"), (2) breach of the 2016 PIA, 2017 IRL, and 2018 IRL,

1    (3) breach of the implied covenant of good faith and fair dealing, (4) declaratory

2    judgment concerning its obligations to repay the two promissory notes, and (5) tortious

3    interference with business expectancies.[3]  (2d Am. Compl. at 95-108.)

4         According to Boeing, "the actual evidence (or lack thereof) tells a vastly different

5    story."  (Mot. at 2.)  Boeing says that it "wanted Zunum to succeed," "never had any

6    program to build an aircraft to compete with Zunum," never "misappropriate[d] Zunum's

7    Alleged Trade Secrets for any purpose," and "did not interfere at all . . . with Zunum's

8    funding efforts."  (*Id.*)  Boeing asserts counterclaims for (1) breach of the 2017 and 2018

9    IRLs, (2) declaratory judgment that it did not breach the 2017 and 2018 IRLs, and

10   (3) patent inventorship of U.S. Patent Nos. 10,589,635 (the "'635 Patent") and

11   11,110,811 (the "'811 Patent").  (Answer (Dkt. # 118) at 70-81.)

### III.    ANALYSIS

13        Boeing moves for summary judgment on all claims.  (*See generally* Mot.)  The

14   court sets forth the relevant legal standard before addressing the parties' claims in turn.

15   **A.    Summary Judgment Legal Standard**

16        Summary judgment is appropriate if the evidence viewed in the light most

17   favorable to the non-moving party shows "that there is no genuine dispute as to any

18   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

19   56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is "material" if it

20   might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

21

22   _____

     [3]  The court dismissed Zunum's other claims.  (*See generally* 8/12/22 Order (Dkt. # 67).)

1    (1986).  A factual dispute is "'genuine' only if there is sufficient evidence for a

2    reasonable fact finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*,

3    247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

4         The moving party bears the initial burden of showing there is no genuine dispute

5    of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at

6    323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can

7    show the absence of such a dispute in two ways:  (1) by producing evidence negating an

8    essential element of the nonmoving party's case, or (2) by showing that the nonmoving

9    party lacks evidence of an essential element of its claim or defense.  *Nissan Fire &*

10   *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party

11   meets its burden of production, the burden then shifts to the nonmoving party to identify

12   specific facts from which a factfinder could reasonably find in the nonmoving party's

13   favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

14   **B.    Trade Secret Misappropriation**

15        Boeing argues that it is entitled to summary judgment on Zunum's trade secret

16   misappropriation claim for four reasons:  (1) Zunum lacks evidence that the Alleged

17   Trade Secrets were not "readily ascertainable" (Mot. at 14); (2) the Alleged Trade Secrets

18   "did not exist" at the time Boeing conducted the Thin Haul Study (*id.* at 16); (3) Zunum

19   cannot establish that Boeing "used" each Alleged Trade Secret (*id.* at 18); and (4) any use

20   of the Alleged Trade Secrets was "authorized under the parties' agreements" (*id.* at 17).

21   The court considers Boeing's arguments in turn.

22   *//*

1          1.    <u>Readily Ascertainable</u>

2          First, Boeing argues that it is entitled to summary judgment on Zunum's trade

3   secret misappropriation claim because Zunum "has no expert testimony establishing that

4   the Alleged Trade Secrets were not 'readily ascertainable by proper means.'" (*Id.* at 14.)

5   Zunum responds that its three technical experts—Mr. Tata, Mr. Andrade, and Mr.

6   Garvett—address "all the factors courts identify as relevant" to the "readily

7   ascertainable" inquiry and that Boeing improperly faults them for "insufficiently reciting

8   the 'magic words.'" (Resp. at 34.)  The court agrees with Zunum that a genuine dispute

9   of material fact exists as to whether the Alleged Trade Secrets were readily ascertainable.

10         The definition of a trade secret consists of three elements:  (1) "information"; (2)

11  that is valuable because it is not "generally known to" or "readily ascertainable by"

12  others; and (3) that the owner has taken reasonable efforts to keep secret.  RCW

13  19.108.010(4).  The parties do not cite, and this court is unable to find, any controlling

14  Washington case law establishing a list of factors or elements for the court to consider

15  when determining whether a trade secret is "readily ascertainable."  The court notes that

16  the Washington Pattern Instructions Committee "recommends that no instruction be

17  given on this subject."  WPI 351.06 ("Readily Ascertainable—Definition").

18         Ultimately, the question is whether the information is "novel."  *See Robbins Geller*

19  *Rudman & Dowd, LLP v. Off. of the Att'y Gen.*, 328 P.3d 905, 911 (Wash. Ct. App. 2014)

20  ("To be a trade secret, information must be 'novel' in the sense that the information must

21  not be readily ascertainable from another source" (quoting *Spokane Rsch. & Def. Fund v.*

22  *City of Spokane*, 983 P.2d 676, 682 (Wash. Ct. App. 1999))).  A "key factor" in this

1   inquiry "is the effort and expense that was expended into developing the information."

2   *Id.*; *see also Ed Nowogroski Ins., Inc. v. Rucker*, 971 P.2d 936, 943 (Wash. 1999)

3   (comparing "customer lists which are the result of effort and expense" with those "which

4   are readily ascertainable" (citing *Microbiological Rsch. Corp. v. Muna*, 625 P.2d 690,

5   700 (Utah 1981))).  The potential for reverse engineering and independent development

6   of the information are also relevant considerations.  *See Boeing Co. v. Sierracin Corp.*,

7   738 P.2d 665, 674 (Wash. 1987); *Petters v. Williamson & Assocs., Inc.*, 210 P.3d 1048,

8   1055 (Wash. Ct. App. 2009).  In the end, these factors are probative of the "factual

9   question" whether information constitutes a trade secret, and that question must be put to

10  the jury absent a situation in which the claimant has "failed to meet its burden of proof

11  for the purposes of a summary judgment motion."  *MP Med. Inc. v. Wegman*, 213 P.3d

12  931, 938 (Wash. Ct. App. 2009) (quoting *Scott v. Snelling & Snelling, Inc.*, 732 F. Supp.

13  1034, 1043 (N.D. Cal. 1990)).

14          Zunum has met its burden to produce evidence that the Alleged Trade Secrets

15  were not readily ascertainable.  Mr. Tata's, Mr. Andrade's, and Mr. Garvett's expert

16  reports contain discussions about the efforts and expenses Zunum undertook to create the

17  Alleged Trade Secrets and whether Boeing could have independently developed the

18  Alleged Trade Secrets.  (*E.g.*, 2d 3/18/24 Danner Decl. (Dkt. # 464) ¶ 4, Ex. 62 (Dkt.

19  ## 464-22 (cover page), 467-21 (sealed)) (Tata) ¶¶ 170-71 (discussing "financial

20  investments Zunum made into the trade secrets" and "the effort it would take to develop

21  Zunum's [trade secret]"); *id.* ¶ 185 (discussing independent development); 3d 3/18/24

22  Danner Decl. ¶ 4, Ex. 96 (Dkt. ## 466-16 (cover page), 470-15 (sealed)) (Andrade)

¶¶ 185-86 (discussing "the time and investment Zunum expended" and "the investment [in staff weeks] that was made to develop the information"); *id.* ¶ 191 (discussing independent development); 4th 3/18/24 Danner Decl. ¶ 4, Ex. 150 (Dkt. ## 468-30 (cover page), 471-29 (sealed)) (Garvett) ¶ 92 (discussing Zunum's "considerable investments of time and effort"); *id.* ¶ 18 (discussing independent development).  These experts' analyses are sufficient to create a genuine dispute of material fact as to whether the Alleged Trade Secrets were readily ascertainable.

Boeing's cited cases are inapposite.  In *Trident Products & Services, LLC v. Canadian Soiless Wholesale, Ltd.*, 859 F. Supp. 2d 771, 776-77 (E.D. Va. 2012), for example, the plaintiff failed to "designate[] an expert witness" at all and attempted to rely instead on "common sense."  Similarly, in *Seshadri Raju, M.D., P.A. v. Medtronic, Inc.*, No. 3:17-CV-357-CWR-LGI, 2021 WL 1232102, at *9 (S.D. Miss. Mar. 31, 2021), the court struck the relevant expert reports, meaning the claimant had no expert testimony to establish whether the information was readily ascertainable.  Finally, in *Hill v. Best Medical International, Inc.*, Nos. 07-1709, 08-1404, 09-1194, 2011 WL 5082208, at *14 (W.D. Pa. Oct. 25, 2011), the court concluded that the proffered expert was not qualified to opine on whether the Alleged Trade Secrets "would be generally known to competent programmers, i.e., were 'readily ascertainable by proper means.'"

Here, Zunum's experts possess the necessary qualifications to opine on ascertainability, and they have indeed discussed the relevant factors in their reports.  Boeing complains that Zunum's experts did not use the phrase "readily ascertainable" enough times throughout their reports (*see* Mot. at 14-15), but an expert report need not

1    contain "the magic words" to establish a genuine issue of material fact.  *See TVIIM, LLC*

2    *v. McAfee, Inc.*, No. 13-cv-04545-HSG, 2015 WL 4148354, at *3 (N.D. Cal. July 9,

3    2015).  Because the substance of the experts' reports establishes a genuine dispute of

4    material fact as to whether the Alleged Trade Secrets were readily ascertainable, the court

5    denies this portion of Boeing's motion.[4]

6            2.    Existence of Alleged Trade Secrets

7            Second, Boeing argues that it is entitled to summary judgment on Zunum's trade

8    secret misappropriation claim because the Alleged Trade Secrets "did not exist" when

9    Boeing conducted the Thin Haul Study between June 2017 and November 2017.  (Mot. at

10   16-17.)  According to Boeing, Zunum "admits that it did not finish developing six of the

11   Alleged Trade Secrets until the end of 2018 and the remaining thirteen until the end of

12   2019 or 2020."  (*Id.* at 16 (citing 2/29/24 Fursevich Decl. (Dkt. ## 362 (redacted), 363

13   (sealed)) ¶ 5, Ex. 4 (Dkt. ## 346[5] (sealed))).)  Zunum responds that it "defined its Trade

14   Secrets exclusively by reference to information developed and disclosed to Boeing

15   between 2016 and 2018" and argues that Boeing's "apparent claim that a trade secret

16   only 'exists' when its creator 'finishes' all work is a fiction unsupported by authority."

17   (Resp. at 41.)  The court agrees with Zunum that a reasonable factfinder could conclude

18   that the Alleged Trade Secrets existed between 2016 and 2018.

19   _____

20       [4]  The court does not endeavor to resolve the parties' dispute about whether non-expert
     testimony may satisfy the "readily ascertainable" element.  (*See* Resp. at 32-34; Reply at 1-2.)
21   The parties have not identified, and the court could not find, any controlling case law on this
     issue.

22       [5]  Boeing filed its exhibits in batches; multiple exhibits therefore exist at this docket
     number and others the court cites.

Trade secret plaintiffs bear the burden of showing that their alleged trade secrets exist.  *See Boeing*, 738 P.2d at 674.  Plaintiffs must therefore describe their alleged trade secrets "with specificity."  *Robbins Geller*, 328 P.3d at 911; *accord Inteliclear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 660 (9th Cir. 2020) (requiring Defend Trade Secrets Act plaintiffs to identify their trade secrets with "sufficient particularity").  Summary judgment is warranted if the plaintiff fails to adequately describe the alleged trade secrets.  *See* Peter S. Menell, et al., *Trade Secret Case Management Judicial Guide* § 7.3.1.2 (2023).

Here, Zunum adequately identifies its trade secrets by reference to information developed and disclosed to Boeing between 2016 and 2018.  (*See generally* 2/29/24 Fursevich Decl. ¶ 21, Ex. 20 (Dkt. # 347 (sealed)); *see also* 3/18/24 Kumar Decl. (Dkt. # 477) ¶ 12 ("The complete set of information that Zunum claims as its Trade Secrets in this litigation is reflected in the documents sent, and the meetings held, with Boeing between 2016 and the end of 2018, as reflected in [Zunum's] interrogatory response.").)  Over approximately 120 pages in an interrogatory response, Zunum identifies and describes each of the Alleged Trade Secrets and, where applicable, breaks the Alleged Trade Secrets down into subparts.  (*E.g.*, 2/29/24 Fursevich Decl. Ex. 20 at 95-96 (listing the subparts for Alleged Trade Secret 1).)

Boeing does not identify a single subpart of any Alleged Trade Secret that Zunum invented only after 2018.  (*See generally* Mot.)  Instead, Boeing assumes that some element or component of each Alleged Trade Secret must have been missing because Zunum continued developing the Alleged Trade Secrets beyond 2018.  (*See id.* at 16-17.)

Boeing misses the point.  The question is not when Zunum finished developing the Alleged Trade Secrets but rather whether the Alleged Trade Secrets existed as trade secrets at the time of the alleged misappropriation.  For example, Coca-Cola's formula is a trade secret.  If PepsiCo stole Coca-Cola's formula in 2024, Coca-Cola would have a cause of action even if it added an additional ingredient to the formula in 2025.  This is because the formula existed as a trade secret in 2024 at the time of misappropriation, even if Coca-Cola's food scientists were still testing, developing, and improving upon it.  Consumer lists are another example of trade secrets continuously being updated and modified.  *See Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*, 893 F.3d 1176, 1180 (9th Cir. 2018).

Boeing's final argument concerns the number of employees Zunum had at certain times or the percentage of expenses Zunum had incurred while developing the Alleged Trade Secrets (Mot. at 16-17), but Boeing is just identifying additional disputes of material fact that the jury must consider.  No bright-line rule exists concerning the number of employees a company must hire or the percentage of expenses it must incur before information acquires trade secret status.  The court concludes that there is sufficient evidence, viewed in the light most favorable to Zunum, for a reasonable jury to find that the Alleged Trade Secrets existed as trade secrets at the time of the alleged misappropriation.  The court therefore denies this portion of Boeing's motion.

   3.   Use of Alleged Trade Secrets

Third, Boeing argues that it is entitled to summary judgment on Zunum's trade secret misappropriation claim because Zunum lacks evidence that Boeing "used" each

1   Alleged Trade Secret. (*Id.* at 18.)  Boeing addresses all 19 Alleged Trade Secrets,

2   arguing that Zunum fails to provide evidence that Boeing used every element of each

3   Alleged Trade Secret without authorization. (*See id.* at 16; *see also, e.g.*, *id.* at 19

4   (arguing that Zunum's evidence shows, "at most," Boeing's use of "just six of eleven

5   subparts of Alleged Trade Secret 1").)  Zunum responds that it need not provide evidence

6   that Boeing used "each and every element" of the Alleged Trade Secrets and that there is

7   "ample direct and circumstantial evidence" of Boeing's use for a reasonable jury to find

8   misappropriation.  (Resp. at 38, 42.)  The court agrees with Zunum's interpretation of the

9   law and concludes that a reasonable jury could find that Boeing misappropriated each of

10  the Alleged Trade Secrets.

11  The unauthorized use of a trade secret constitutes misappropriation.  RCW

12  19.108.010(2).  Misappropriation, however, "can be notoriously difficult to prove."

13  *Modumetal, Inc. v. Xtalic Corp.*, 425 P.3d 871, 879 (Wash. Ct. App. 2018).  To establish

14  misappropriation, trade secret plaintiffs must often "construct a web of perhaps

15  ambiguous circumstantial evidence from which the trier of fact may draw inferences

16  which convince him that it is more probable than not that what plaintiffs allege happened

17  did in fact take place." *Id.* (quoting *Monovis, Inc. v. Aquino*, 905 F. Supp. 1205, 1231

18  (W.D.N.Y. 1994)).  Such circumstantial evidence may include testimony concerning "the

19  speed by which the defendant developed a competing product," "the defendant's access

20  to the trade secret combined with the similarity of the defendant's competing product,"

21  "the defendant's 'derivation' of a product using the secret," and "the defendant's intent to

22  misappropriate the secret."  Menell, *supra*, § 7.3.2.3.  Proof of slavish copying is not

1    necessary; rather, accused misappropriators may be liable for "knowingly using the [trade

2    secret] technology in another application derived therefrom." *Petters*, 210 P.3d at 1056;

3    *see also Mangren Rsch. & Dev. Corp. v. Nat'l Chem. Co.*, 87 F.3d 937, 944 (7th Cir.

4    1996) (jury instruction that "you do not have to find that defendants copied or used each

5    and every element of the trade secret" was "consistent with traditional trade secret law");

6    *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 386 (6th Cir.

7    2022) (applying Kentucky's Uniform Trade Secrets Act and rejecting "the purported

8    requirement that a combination-trade-secrets plaintiff show use of the entire

9    combination").

10           The court agrees with Zunum that it need not, to prove its case, provide evidence

11   that Boeing used each and every element of the Alleged Trade Secrets.  (*See* Resp. at

12   39-40.)  Such a requirement is inconsistent with Washington precedent allowing for a

13   finding of misappropriation based on unauthorized derivative uses.  *See Petters*, 210 P.3d

14   at 1056.  Moreover, the court is persuaded by the Sixth Circuit's reasoning in *Caudill*,

15   cited by Zunum (*see* Resp. at 39-40), that a contrary holding "would produce bizarre

16   outcomes," as "a trade-secret thief could misappropriate a research process, design a

17   competing product in far less time than it would have otherwise taken, and avoid liability

18   because it did not debut the same product as its victim-competitor."  53 F.4th at 386.

19   Boeing does not cite *Caudill* in its reply but nevertheless criticizes Zunum for "[l]argely

20   ignoring Boeing's authorities."  (Reply at 10.)  Boeing fails to appreciate that *Caudill*

21   discusses all three of Boeing's cited cases before rejecting the same "each and every

22   element" argument Boeing makes here.  *See Caudill*, 53 F.4th at 385 (first citing *Vital*

1    *State Can., Ltd. v. DreamPak, LLC*, 303 F. Supp. 2d 516, 529 (D.N.J. 2003); then citing

2    *GSI Tech., Inc. v. United Memories, Inc.*, No. 5:13-cv-01081, 2016 WL 3035699, at *6

3    (N.D. Cal. May 26, 2016); and then citing *Am. Airlines, Inc. v. KLM Royal Dutch*

4    *Airlines, Inc.*, 114 F.3d 108, 111-12 (8th Cir. 1997)); (*see also* Mot. at 16 (citing *Vital*

5    *State*, *GSI Technology*, and *American Airlines*)).

6        In its reply, Boeing argues that "the differences between the parties' proffered

7    standards are largely academic because Zunum's evidence of 'use' pertains at most to

8    small fractions of the Alleged Trade Secrets."  (Reply at 11.)  The extent of Boeing's use,

9    however, is a fact-intensive inquiry not well suited for summary judgment, *see* Menell,

10   *supra*, § 7.3.2.3 ("[T]he prevalence of circumstantial evidence of misuse makes summary

11   judgment difficult on these issues.").  The court has reviewed the direct and

12   circumstantial evidence proffered by Zunum (*see* Resp. at 43-50) and concludes that

13   there is sufficient evidence in the record for a reasonable jury to find that Boeing used

14   each of the Alleged Trade Secrets.  The court therefore denies this portion of Boeing's

15   motion.

16        4.    Authorization to Use Alleged Trade Secrets

17        Fourth, Boeing argues that it is entitled to summary judgment on Zunum's trade

18   secret misappropriation claim because "even if Boeing had used any Alleged Trade

19   Secrets in the Thin Haul Study, such use would have been authorized under the parties'

20   agreements."  (Mot. at 17.)  Zunum responds that a reasonable jury could conclude that

21   "one of the purposes of the Thin Haul study—indeed, the main purpose—was to advance

22   Boeing['s] internal R&D programs and potentially compete with Zunum, which was not

a purpose allowed" by the 2016 PIA, 2017 IRL, or 2018 IRL.  (Resp. at 50-51.)  The court agrees with Zunum that a reasonable jury could conclude that Boeing's use of the Alleged Trade Secrets in the Thin Haul Study was unauthorized.

The parties agree that Boeing was permitted under the agreements to "assess[]" or "validate" Zunum's claims.  (*See* Reply at 19; Resp. at 51; *see also* 1st 3/18/24 Danner Decl. Ex. 5 at 2 (2016 PIA) (allowing Boeing to use Zunum's confidential materials "for the purpose of executive level discussions to explore the feasibility of potential projects in the field of electric based power systems for aviation use"); *id.* Ex. 14 at 26 (2017 IRL) (prohibiting Boeing from using Zunum's confidential information "for any purpose" "other than to manage its investment in [Zunum]"); *id.* Ex. 16 at 31 (2018 IRL) (same as 2017 IRL).)  The parties' dispute, however, centers on Boeing's intent in using Zunum's confidential information.  As Zunum notes, "Boeing does not argue that using Zunum's information to develop a competing plane was permitted."  (Resp. at 51.  *See generally* Mot.)  Boeing argues in its reply brief that none of Zunum's evidence "shows any purpose for the Thin Haul Study other than assessing Zunum's claims."  (Reply at 19.)

A genuine dispute of material fact exists as to whether Boeing's alleged use of Zunum's trade secrets was authorized under the parties' agreements.  The Thin Haul Study ran from June 2017 to November 2017, but Boeing acknowledges that Zunum did not "learn[] of" the study until December 2017.  (Mot. at 17.)  On April 17, 2017, Pradeep Fernandes at Boeing wrote that "[w]e will be more transparent with [Zunum] soon" but "[i]n the meantime, let's focus on Boeing needs."  (1st 3/18/24 Danner Decl. ¶ 5, Ex. 29 (Dkt. ## 463-30 (cover page), 465-29 (sealed)) at 2.)  Approximately two

weeks later, Steve Shumate at Boeing circulated a slide deck titled "Electric Thin-Haul Regional Aircraft Business Opportunity." (*Id.* ¶ 5, Ex. 30 (Dkt. ## 463-31 (cover page), 465-30 (sealed)) at 4.) That presentation discussed the "Value Proposition for Boeing" as "Counter[ing] potential erosion of Boeing core markets from others entering this market" and "Position[ing] Boeing as technology and market leader." (*Id.* at 11.) The "Next Steps" involved "Develop[ing] internal R&D plan," including "prototyping." (*Id.* at 14.) Zunum is only mentioned once in the presentation, as part of the "Develop partnership strategy" "Next Step[]," alongside collaboration with universities and NASA. (*Id.*) The following month, in May 2017, Mr. Fernandes wrote that Boeing was "evaluating a configuration and engaging with customers" but had not yet told Zunum or decided whether Zunum would "focus on propulsion system only or . . . configure an aircraft as well." (1st 3/18/24 Danner Decl. ¶ 5, Ex. 32 (Dkt. ## 463-33 (cover page), 465-32 (sealed)) at 2.) In light of evidence that Boeing was developing an "internal R&D plan" without Zunum's knowledge to maintain Boeing's competitive market position just before the Thin Haul Study commenced, a reasonable jury could find that one purpose of the Thin Haul Study was to design a competing aircraft system rather than to simply assess Zunum's claims.

Boeing does not address this evidence but rather cites self-serving deposition testimony and additional exhibits suggesting that "Boeing was considering other ways— separate from the Thin Haul Study—to enter the hybrid-electric aircraft market." (Reply at 18.) The jury must decide whom to believe, which evidence to give weight to, and the amount of weight that is due. The court therefore denies this portion of Boeing's motion.

1    **C.    Breach of Contract**

2        Boeing argues that it is entitled to summary judgment on Zunum's breach of

3    contract claims for the following reasons:  (1) the 2016 PIA claim "fails for the same

4    reasons" as Zunum's trade secret misappropriation claim (Mot. at 40); (2) the 2017 IRL

5    claim also "fails for the same reasons" (*id.* at 41); and (3) the 2018 IRL claim fails

6    because Zunum has not provided evidence that Boeing used "any component of the

7    Alleged Trade Secrets in an 'attempt to poach [Zunum's] employees'" (*id.* at 41 (quoting

8    2d Am. Compl. ¶ 451)).  Zunum argues its trade secret misappropriation claims are

9    distinct from its breach of contract claims because "[t]he contract-law questions are only

10   whether Zunum designated the information confidential, and whether Boeing used the

11   information for any purpose not permitted under the NDAs."  (Resp. at 52.)  The court

12   concludes that Boeing is entitled to summary judgment on the 2018 IRL claim but not on

13   the other two.

14       Because Zunum's trade secret misappropriation claim survives, so do its claims

15   under the 2016 PIA and 2017 IRL.  Moreover, the court agrees with Zunum that Boeing

16   could have breached these contracts even if the jury finds that the Alleged Trade Secrets

17   are not in fact trade secrets.  *See Rent Info. Tech., Inc. v. Home Depot U.S.A., Inc.*, 268 F.

18   App'x 555, 557-58 (9th Cir. 2008) (concluding that certain "business requirements" were

19   not trade secrets but that a genuine dispute of material fact existed "regarding whether

20   The Home Depot violated the [contract] by disclosing the business requirements to third

21   parties or using the business requirements to upgrade its existing software").

22   //

1       The court agrees with Boeing, however, that Zunum has failed to produce

2   evidence that Boeing breached the 2018 IRL.  Zunum's sole allegation regarding

3   Boeing's alleged breach of the 2018 IRL concerns Boeing's use of "Confidential

4   Information obtained from Zunum to attempt to poach its employees, which was not a

5   permitted use." (2d Am. Compl. ¶ 451.)  As Boeing recognizes, its argument concerning

6   Zunum's failure to produce evidence to support this claim has gone unanswered. (*See*

7   Reply at 19 ("Zunum also ignores, and thereby concedes, Boeing's argument that it did

8   not breach the 2018 IRL.").  *See generally* Resp.)

9       The court therefore grants Boeing's motion for summary judgment on Zunum's

10  claim for breach of contract based on the 2018 IRL but denies Boeing's motion with

11  respect to Zunum's claims based on the 2016 PIA and 2017 IRL.

12  **D.   Breach of the Implied Covenant of Good Faith**

13      Boeing argues that it is entitled to summary judgment on Zunum's claim for

14  breach of the implied covenant of good faith and fair dealing because "[a]ll of Zunum's

15  pleaded breaches of the implied covenant are complaints about Boeing's exercise of

16  express contractual rights." (Mot. at 41.)  Zunum responds that Boeing abused its

17  "discretionary rights" under the parties' agreements by exercising them "for the purpose

18  of driving Zunum out of business to neutralize a competitive threat." (Resp. at 54.)  The

19  court agrees with Boeing that Zunum has failed to raise a genuine dispute of material fact

20  as to whether Boeing breached the implied covenant of good faith and fair dealing.

21      "The implied covenant of good faith and fair dealing inheres in every contract and

22  requires a party in a contractual relationship to refrain from arbitrary or unreasonable

1   conduct which has the effect of preventing the other party to the contract from receiving

2   the fruits of the bargain." *Kuroda v. SPJS Holdings, L.L.C*, 971 A.2d 872, 888 (Del. Ch.

3   2009) (internal quotations omitted) (quoting *Dunlap v. State Farm Fire & Cas. Co.*, 878

4   A.2d 434, 442 (Del. 2005)).[6] "The implied covenant cannot be invoked to override the

5   express terms of the contract." *Id.* In Delaware, the implied covenant is not "a free

6   floating duty imposed on a contracting party" but rather "can only be used conservatively

7   to ensure the parties' reasonable expectations are fulfilled." *Id.* (internal quotations

8   omitted) (quoting *Dunlap*, 878 A.2d at 442). To establish the elements of the claim, the

9   plaintiff must identify "a specific implied contractual obligation, a breach of that

10  obligation by the defendant, and resulting damage to the plaintiff." *Id.* (quoting *Cantor*

11  *Fitzgerald, L.P. v. Cantor*, No. C.A. 16297-NC, 1998 WL 842316, at *1 (Del. Ch. Nov.

12  10, 1998)). "Consistent with its narrow purpose, the implied covenant is only rarely

13  invoked successfully." *Id.*

14      As Boeing acknowledges, Zunum fails to "identify a specific implied obligation"

15  in its brief. (Reply at 19.) Instead, Zunum makes conclusory assertions about Boeing's

16  alleged breach of the implied covenant of good faith and fair dealing without citing a

17  single contractual provision that gave rise to such a duty. (*See* Resp. at 53-54.) Indeed,

18  Zunum does not cite any evidence in this portion of its brief. (*See id.*) Both Zunum's

19  brief and its complaint reference Boeing's right to "call" the promissory notes (Resp. at

20  54; 2d Am. Compl. ¶ 461), but neither contain citations directing the court toward any

21

22      [6] The parties agree that the contracts are governed by Delaware law. (*See* Mot. at 4;
    Resp. at 55.)

1  specific language in the contracts giving rise to Boeing's duty to act in good faith.  The

2  court will not comb through loan agreements to uncover a genuine dispute on Zunum's

3  behalf.  *See Keenan v. Allan*, 91 F.3d 1275, 1278-79 (9th Cir. 1996) ("We rely on the

4  nonmoving party to identify with reasonable particularity the evidence that precludes

5  summary judgment." (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.

6  1995))).  Zunum's failure to direct the court toward evidence in support of its claim is

7  dispositive.  The court therefore grants Boeing's motion for summary judgment on

8  Zunum's claim for breach of the implied covenant of good faith and fair dealing.

9  **E.    Declaratory Judgment**

10  The court has requested additional briefing on this issue (*see generally* 4/17/24

11  Order (Dkt. # 552)) and therefore reserves ruling on this portion of Boeing's motion.

12  **F.    Tortious Interference with Business Expectancy**

13  Boeing argues that it is entitled to summary judgment on Zunum's claim for

14  tortious interference with business expectancies because Zunum cannot establish several

15  elements of the claim with respect to its possible investment partners.  (Mot. at 43.)

16  Zunum responds that a reasonable jury could find that Boeing interfered with its business

17  expectancies relating to Safran and UTAS.  (Resp. at 56-59.)  The court agrees with

18  Zunum as to Safran and UTAS but concludes that Zunum has failed to establish a

19  genuine dispute of material fact as to its other possible investment partners.

20  To prove tortious interference, the plaintiff must establish "(1) the existence of a

21  valid . . . business expectancy; (2) that the defendant had knowledge of that expectancy;

22  (3) an intentional interference inducing or causing a breach of termination of the

relationship or expectancy; (4) that the defendant interfered for an improper purpose or

used improper means; and (5) resulting damage." *Newton Ins. Agency & Brokerage, Inc.*

*v. Caledonian Ins. Grp., Inc.*, 52 P.3d 30, 33 (Wash. Ct. App. 2002).  Boeing does not

dispute the first two elements but argues that Zunum cannot establish the third, fourth,

and fifth elements.  (Mot. at 43.)  The court considers those elements in turn.

      1.    Intentional Interference

      Boeing argues that there is "no evidence" suggesting Boeing "intentionally

interfered with any of Zunum's business expectancies." (*Id.*)  Zunum responds that "a

jury could find that Boeing intended to deter Zunum's investors, given its stated fear of

Zunum partnering with . . . Safran or UTAS, and its stated intentions . . . to block

competition." (Resp. at 57.)  The court agrees with Zunum as to Safran and UTAS.

      "A party intentionally interferes with a business expectancy if it 'desires to bring it

about or if he knows that the interference is certain or substantially certain to occur as a

result of his action.'" *Greensun Grp., LLC v. City of Bellevue*, 436 P.3d 397, 407 (Wash.

Ct. App. 2019) (quoting *Newton*, 52 P.3d at 34).  This element "concerns only whether

the defendant had the intent to do the interfering act." *Id.*  The defendant's "good faith"

"does not matter." *Id.*  Circumstantial evidence that the defendant "may have knowingly

and intentionally interfered with [the plaintiff's] business expectancy" is sufficient to

survive summary judgment. *A.G. Design & Assocs., LLC v. Trainman Lantern Co.*, No.

C07-5158RBL, 2009 WL 230083, at *5 (W.D. Wash. Jan. 30, 2009).

      Zunum has provided sufficient evidence that Boeing intentionally interfered with

its business expectancies regarding UTAS and Safran to survive summary judgment.

1    Boeing knew UTAS and Safran were interested in partnering with Zunum (*see* 4th

2    3/18/24 Danner Decl. ¶ 4, Ex. 123 (Dkt. ## 468-3 (cover page), 471-2 (sealed)) at 3), and

3    Zunum provides evidence that Boeing sought to "block the competitors" (*id.* ¶ 4, Ex. 124

4    (Dkt. ## 468-4 (cover page), 471-3 (sealed)) at 2).  Indeed, a January 11, 2018 email

5    from Boeing lists "Prevent Zunum from partnering with Boeing competitors" as an

6    "Objective[] for Boeing investment in Zunum."  (1st 3/18/24 Danner Decl. ¶ 5, Ex. 25

7    (Dkt. ## 463-25 (cover page), 465-24 (sealed)) at 2.)  With respect to UTAS, Boeing

8    executives discussed a "bridge strategy . . . to alleviate short-term pressures that ha[ve]

9    been pushing Zunum to accelerate a relationship with UTAS."  (4th 3/18/24 Danner Decl.

10   ¶ 4, Ex. 125 (Dkt. ## 468-5 (cover page), 471-4 (sealed)) at 2.)  With respect to Safran,

11   Boeing "continue[d] to have discussions with them around the 500KW motor/inverter

12   with plans to bring them to Boeing Electric Propulsion lab" (*id.* ¶ 4, Ex. 131 (Dkt.

13   ## 468-11 (cover page), 471-10 (sealed)) at 3) while Zunum was simultaneously meeting

14   with Safran (*see* 3/18/24 Knapp Decl. ¶ 8).  Zunum's evidence is sufficient to establish a

15   genuine dispute of material fact with respect to this element.

16          2.    Improper Purpose or Means

17          Boeing argues that there is "no evidence" any alleged interference was improper.

18   (Resp. at 47.)  Zunum responds that "the jury could find improper means or improper

19   purpose (or both)."  (Resp. at 57 (capitalization altered).)  The court agrees with Zunum

20   that a reasonable juror could find that Boeing acted with an improper purpose.[7]

21

22          [7] The "improper means" Zunum discusses are the same as those "underlying" its trade
     secret misappropriation claim.  (Resp. at 58.)  This raises a possible preemption issue that Boeing

1   "Interference alone is not enough." *Moore v. Com. Aircraft Interiors, LLC*, 278

2   P.3d 197, 200 (Wash. Ct. App. 2012).  The plaintiff must show that the defendant acted

3   with an "improper purpose" or via "improper means." *United Fed'n of Churches, LLC v.*

4   *Johnson*, 598 F. Supp. 3d 1084, 1099 (W.D. Wash. 2022).  The defendant acts with an

5   "improper purpose" by "harm[ing]," "competi[ng]" with, or "divert[ing]" funds from the

6   plaintiff.  *Id.*  "Improper means," however, "requires a violation of a 'statute, regulation,

7   common law rule, or professional standard.'"  *Id.*

8        Zunum has produced sufficient evidence that Boeing acted with an improper

9   purpose to survive summary judgment.  A reasonable juror could find that Boeing acted

10  to deprive Zunum of business opportunities with its competitors or to gain a competitive

11  advantage in the marketplace with exclusive access to Zunum's proprietary technology.

12  *See supra* § III.F.1; (*see also, e.g.*, 1st 3/18/24 Danner Decl. Ex. 25 at 2 (listing "Ensure

13  Boeing has access to IP . . . developed by Zunum in the future" and "Prevent Zunum

14  from partnering with Boeing competitors" as "Objectives for Boeing investment in

15  Zunum")).

16       3.   <u>Damages</u>

17       Boeing argues that Zunum "cannot show that Boeing's alleged conduct was a

18  'proximate cause' of Zunum's harm" because "many factors unrelated to Boeing caused

19  Zunum's late-2018 funding crisis," including the "loss of faith in Zunum's leadership"

20

21  does not discuss.  *See Int'l Paper Co. v. Stuit*, No. C11-2139JLR, 2012 WL 3527932, at *3
    (W.D. Wash. Aug. 15, 2012).  Because Zunum may sustain its tortious interference claim by
    establishing that Boeing acted with an "improper purpose," the court does not consider whether

22  Boeing acted via "improper means."

1   and investor concerns about "technological risk." (Mot. at 47.) Zunum responds that a

2   jury could reasonably disagree with Boeing's "theory as to why Zunum's investors

3   walked" and find that "Boeing's tortious conduct put economic and competitive pressure

4   on potential investors, like Safran and UTAS, preventing Zunum from obtaining funding

5   it required to survive." (Resp. at 59.) The court agrees with Zunum.

6       Zunum cites evidence sufficient to support a narrative contrary to Boeing's. For

7   example, an internal Boeing email from October 2018 regarding "Thin Haul Passenger

8   CTOL (Zunum)," stated that "Safran Ventures [was] unlikely to close round due to

9   concerns that its investment would be seen as a negative to Boeing." (4th 3/18/24 Danner

10  Decl. ¶ 4, Ex. 146 (Dkt. ## 468-26 (cover page), 471-25 (sealed)) at 2.) Later, in June

11  2019, another Boeing email recounted that "Safran was interested but chose not to invest

12  after we elected not to participate and not to endorse Zunum." (*Id.* ¶ 4, Ex. 149 (Dkt.

13  ## 468-29 (cover page), 471-28 (sealed)) at 2.) With respect to UTAS, Boeing reported

14  that its "bridge strategy" successfully alleviated pressures that had been "pushing"

15  Zunum toward UTAS. (4th 3/18/24 Danner Decl. Ex. 125 at 2.) Boeing officials also

16  strategized in an email that Zunum "should be more open to a discussion on a valuation"

17  if it failed to "hold it all together" with UTAS and ran "dry." (4th 3/18/24 Danner Decl.

18  Ex. 128 (Dkt. ## 468-8 (cover page), 471-7 (sealed)) at 2.) Viewing this evidence in the

19  light most favorable to Zunum, the court concludes that a reasonable jury could find that

20  Boeing proximately harmed Zunum by interfering with its business expectancies.

21  //

22  //

1    The court therefore denies this portion of Boeing's motion with respect to

2    Zunum's business expectancies with Safran and UTAS but grants Boeing's motion as it

3    pertains to all other potential investment partners.

4    **G.    Boeing Counterclaims**

5        1.    Breach of Contract

6        Because Boeing's breach of contract counterclaims cover the same subject matter

7    as Zunum's declaratory judgment claim, the court reserves ruling on this portion of

8    Boeing's motion.  *See supra* § III.E.

9        2.    Declaratory Judgment (Note Agreements)

10       Boeing argues that it is entitled to summary judgment on its declaratory judgment

11   counterclaim because there is no genuine dispute of material fact that Boeing "is not

12   liable under the Note Agreements, and specifically the 2017 and 2018 IRLs."  (Mot. at

13   48.)  For the reasons set forth above, the court agrees with Boeing concerning the 2018

14   IRL but not the 2017 IRL.[8]  *See supra* § III.C.  The court therefore grants this portion of

15   Boeing's motion as it pertains to the 2018 IRL but not the 2016 PIA and 2017 IRL.

16       3.    Declaratory Judgment (Patent Inventorship)

17       Boeing argues that it is entitled to summary judgment on its counterclaims for

18   declaratory judgment of patent inventorship because Zunum has failed to provide

19   evidence that any of its engineers were co-inventors of the '635 and '811 Patents.  (Mot.

20   at 48.)  Zunum responds that a jury could find that Zunum's powertrain CTO, Dr. Waleed

21

22   _____

     [8]  Boeing did not file a counterclaim for declaratory judgment based on the 2016 PIA.
     (*See generally* Answer.)

ORDER - 26

Said, is a joint inventor of "some of the claims . . . based on his (and his colleague's) testimony, and [Mr.] Andrade's Rebuttal Report." (Resp. at 61.) The court agrees with Boeing that no reasonable jury could find that Dr. Said or any other Zunum employee was a co-inventor of the '635 and '811 Patents.

To show co-inventorship, "the alleged co-inventor or co-inventors must prove their contribution to the conception of the claims by clear and convincing evidence." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998). This is a "heavy burden," *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004), and the alleged co-inventor's testimony, standing alone, cannot rise to the level of clear and convincing proof of inventorship, *see Ethicon*, 135 F.3d at 1461. Corroborating evidence is therefore a "must." *Ethicon*, 135 F.3d at 1461. Such evidence may include "contemporaneous documents prepared by a putative inventor," "oral testimony of someone other than the alleged inventor," and other circumstantial evidence. *Id.* Inventorship is determined "on a claim-by-claim basis." *Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1302 (Fed. Cir. 2002).

No reasonable jury could find that Zunum has met its burden. To begin, Zunum fails to identify the claims Dr. Said (or any of its other employees) allegedly contributed to. (*See* Resp. at 60-61.) Zunum simply argues that a jury could find that Dr. Said is a joint inventor of "some of the claims." (*Id.* at 60.) Moreover, Zunum mischaracterizes the three exhibits it cites. First, Zunum points the court toward a portion of Dr. Said's deposition testimony in which he states that the DC voltage in claims 8 and 9 of the '635 Patent are "close to the Zunum system controller," but Zunum fails to cite testimony on

1   that same page in which Dr. Said admits that he "ha[s] no reason to believe that claims 8

2   and 9 were invented by Zunum." (*Id.*; 1st 3/18/24 Danner Decl. ¶ 5, Ex. 18 (Dkt.

3   ## 463-18 (cover page), 465-17 (sealed)) at 128:2-6, 22-24.)  Second, Zunum's 10-page

4   citation to Matthew Feddersen's deposition transcript fails to identify any claim of the

5   '811 Patent that Mr. Feddersen believes Zunum invented or the person who allegedly

6   invented it.  (*See, e.g.*, 4th 3/18/24 Danner Decl. ¶ 4, Ex. 159 (Dkt. ## 468-39 (cover

7   page), 471-38 (sealed)) at 236:22-25 (stating that four people, including Dr. Said, "come

8   to mind" when thinking about "who created . . . Zunum's architecture").  Third, the pages

9   of Mr. Andrade's report Zunum cites do not mention Dr. Said or any claim of either

10  patent; instead, Mr. Andrade opines that the '635 patent "has certain similarities with

11  Zunum's technology" and that Boeing "filed the '635 Patent after being exposed to

12  Zunum's Trade Secrets."  (3d 3/18/24 Danner Decl. ¶ 4, Ex. 97 (Dkt. ## 466-17 (cover

13  page), 470-16 (sealed)) at 7-8, 19-20.)

14        Based on the court's review of Zunum's cited evidence, no Zunum engineer

15  claims to be the inventor of one or more claims of either patent.  Indeed, Dr. Said testified

16  to the opposite.  Zunum cites no contemporaneous documents, and Dr. Andrade's

17  after-the-fact assessment of the similarities between Boeing's patents and Zunum's

18  technology is insufficient for a reasonable jury to conclude that any of Zunum's

19  engineers co-invented any claims of the '635 or '811 Patents.  The court therefore grants

20  this portion of Boeing's motion.

21  //

22  //

ORDER - 28

1

## IV.    SEALING

2          Because this order relies on sealed materials, the court DIRECTS the Clerk to

3    provisionally file this order under seal.  The court ORDERS the parties to meet and

4    confer regarding which, if any, portions of this order they seek to redact.  Counsel must

5    then submit one joint statement or, if they cannot agree on a joint statement, competing

6    statements indicating the portions of the order they seek to have redacted and on what

7    basis.  *See Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir.

8    2006).  The statement or statements must attach a proposed redacted order that

9    incorporates the redactions requested in the corresponding statement.  The parties must

10   file any such statement by no later than **May 1, 2024**.  The court will consider the parties'

11   redaction requests, if any, and then file the order on the docket with any necessary

12   redactions.

## V.    CONCLUSION

13

14         For the foregoing reasons, the court GRANTS in part, DENIES in part, and

15   RESERVES RULING in part on Boeing's motion for summary judgment (Dkt. # 336).

16   In particular, the court rules as follows:

17         1.    The court DENIES Boeing's motion for summary judgment on Zunum's

18               claim for trade secret misappropriation;

19         2.    The court DENIES Boeing's motion for summary judgment on Zunum's

20               breach of contract claims based on the 2016 PIA and 2017 IRL;

21         3.    The court GRANTS Boeing's motion for summary judgment on Zunum's

22               breach of contract claim based on the 2018 IRL;

4.      The court GRANTS Boeing's motion for summary judgment on Zunum's claim for breach of the implied covenant of good faith and fair dealing;

5.      The court RESERVES RULING on Zunum's claim for declaratory judgment;

6.      The court DENIES Boeing's motion for summary judgment on Zunum's claim for tortious interference with a business expectancy as the claim pertains to Safran and UTAS but GRANTS the motion as to all other potential investment partners;

7.      The court RESERVES RULING on Boeing's motion for summary judgment on its breach of contract counterclaims;

8.      The court GRANTS Boeing's motion for summary judgment on its counterclaim for declaratory judgment of no breach of contract as it pertains to the 2018 IRL but DENIES the motion as it pertains to the 2017 IRL.

9.      The court GRANTS Boeing's motion for summary judgment on its counterclaim for declaratory judgment of patent inventorship.

//

//

//

//

//

//

ORDER - 30

1    The parties must file either a joint statement or competing statements concerning

2  redactions to this order as described above no later than **May 1, 2024**.  The court

3  DIRECTS the Clerk to provisionally file this order under seal.  Because the court

4  reserves ruling in part, the court further DIRECTS the Clerk to re-note Boeing's motion

5  (Dkt. # 336) for April 22, 2024.

6    Dated this 22nd day of April, 2024.

7

8  JAMES L. ROBART
   United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22