1

2

3

4

5

6

7

THE HONORABLE JAMES L. ROBART

8          UNITED STATES DISTRICT COURT

9        WESTERN DISTRICT OF WASHINGTON

10                  AT SEATTLE

11 | ZUNUM AERO, INC.,                    | Case No. 2:21-cv-00896-JLR

12 |         Plaintiff,                    | **DEFENDANTS THE BOEING COMPANY AND BOEING HORIZONX VENTURES, LLC'S TRIAL BRIEF**

13 |     vs.

14 | THE BOEING COMPANY; BOEING HORIZONX VENTURES, LLC,

15 |         Defendants.                   | **Redacted Version**

16

17

18

19

20

21

22

23

24

25

26

---

Case No. 2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - i -

**Hueston Hennigan LLP**
523 West 6th St., Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION ........................................................................................ | 1 |
| II. | SUMMARY OF RELEVANT FACTS ......................................................... | 2 |
|  | A.  Zunum Struggles to Secure Funding as an Early-Stage Start-Up ........................ | 2 |
|  | B.  HorizonX and JetBlue Technology Ventures Invest in Zunum ............................ | 3 |
|  | C.  The Parties' Confidentiality Agreements ............................................................ | 3 |
|  | D.  Boeing's Thin Haul Study Is Unable to Validate Zunum's Claims .................... | 5 |
|  | E.  Boeing Issues a Bridge Loan While the Parties Explore a "More Strategic Partnership" ........................................................................................ | 5 |
|  | F.  Zunum's Leadership Becomes "Erratic," Gets "Stuck in Delusional State," and Suffers a "Crisis of [Its] Own Making" ............................................ | 6 |
|  | G.  This Lawsuit and Zunum's Alleged Trade Secrets ............................................. | 7 |
| III. | ZUNUM WILL NOT PREVAIL ON LIABILITY AS TO ANY OF ITS CLAIMS .................................................................................................. | 7 |
|  | A.  Zunum Will Not Be Able to Prove Any Element of Its Trade Secrets Claim ................................................................................................. | 7 |
|  | 1.  Zunum Will Not Be Able to Prove That Its Alleged Trade Secrets Were in Existence at the Time of the Alleged Misappropriation ................................................................. | 8 |
|  | 2.  Zunum Will Not Be Able to Prove That the Alleged Trade Secrets Constituted Protectible Trade Secrets ........................ | 10 |
|  | 3.  Zunum Will Not Be Able to Prove That Boeing or HorizonX Misappropriated Its Trade Secrets ......................... | 11 |
|  | B.  Zunum Will Not Be Able to Prove That Boeing Breached the 2016 PIA or 2017 IRL ............................................................................. | 12 |
|  | C.  Zunum Will Not Be Able to Prove That Boeing Interfered with Any Business Expectancy ................................................................... | 13 |
|  | 1.  Zunum Will Not Be Able to Prove Intentional Interference ................ | 13 |
|  | 2.  Zunum Will Not Establish That Any "Interference" Was by Improper Means or Motivated by an Improper Purpose ....................... | 13 |

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - ii -

Hueston Hennigan LLP
523 West 6th St., Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1

<u>TABLE OF CONTENTS (cont.)</u>

2

                                                                                      <u>Page</u>

3           3.      Zunum Cannot Establish That Boeing Proximately Harmed

4                   Zunum ................................................................................................ 15

IV.   EVEN IF ZUNUM PREVAILS ON LIABILITY, ZUNUM CANNOT
5     RECOVER DAMAGES ................................................................................... 15

6     A.      Zunum Cannot Recover the Value of Its Trade Secrets ..................................... 16

7     B.      Zunum Cannot Obtain Double (or Triple Recovery) Under
              Different Theories for the Same Harm ................................................................ 20

8

V.    CONCLUSION .................................................................................................. 22

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - iii -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1

TABLE OF AUTHORITIES

2

Page(s)

3
**Cases**

4
*Belo Mgmt. Servs., Inc. v. ClickA Network,*
5
    184 Wash. App. 649 (2014).................................................................................... 8, 10

6
*BladeRoom Grp. Ltd. v. Emerson Elec. Co.,*
    2018 WL 6242090 (N.D. Cal. Nov. 29, 2018) .............................................................. 11

7
*BladeRoom Grp. Ltd. v. Facebook Inc.,*
8
    2018 WL 452111 (N.D. Cal. Jan. 2, 2018)..................................................................... 16

9
*Bohnsack v. Varco, L.P.,*
10
    668 F.3d 262 (5th Cir. 2012) ......................................................................................... 20

11
*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.,*
    2020 WL 10460620 (C.D. Cal. Mar. 5, 2020)................................................................. 8

12
*Computer Scis. Corp. v. Computer Assocs. Int'l, Inc.,*
13
    1999 WL 675446 (C.D. Cal. Aug. 12, 1999).................................................................. 12

14
*Danjaq LLC v. Sony Corp.,*
    50 U.S.P.Q.2d 1638 (C.D. Cal. 1999)............................................................................ 12
15

16
*Eagle Grp., Inc. v. Pullen,*
    114 Wash. App. 409 (2002)...................................................................................... 19, 20

17
*Ed Nowogroski Ins., Inc. v. Rucker,*
18
    88 Wash. App. 350 (1997)........................................................................................ 21, 22

19
*Greensun Grp., LLC v. City of Bellevue,*
    7 Wash. App. 2d 754 (2019)..................................................................................... 13, 15
20

21
*Imax Corp. v. Cinema Techs, Inc.,*
    152 F.3d 1161 (9th Cir. 1998) ....................................................................................... 10

22
*In re Mandel,*
23
    578 F. App'x 376 (5th Cir. 2014) .................................................................................. 18

24
*Koch v. Mut. of Enumclaw Ins. Co.,*
    108 Wash. App. 500 (2001)............................................................................................ 14
25

26
*Lee v. Winborn,*
    2020 WL 1271572 (W.D. Wash. Mar. 17, 2020) .......................................................... 14

---

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - iv -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

1

TABLE OF AUTHORITIES (cont.)

2

Page(s)

3

*Libera v. City of Port Angeles,*
    178 Wash. App. 669 (2013).............................................................. 13, 15

4

5

*Lindy Pen Co. v. Bic Pen Corp.,*
    982 F.2d 1400 (9th Cir. 1993) ............................................................. 19

6

*LinkCo, Inc. v. Fujitsu Ltd.,*
    232 F. Supp. 2d 182 (S.D.N.Y. 2002)..................................................... 17

7

8

*Mason v. Okla. Turnpike Auth.,*
    115 F.3d 1442 (10th Cir. 1997) ............................................................ 21

9

*Mktg. Concepts, LLC v. Six Continents Hotels, Inc.,*
    2016 WL 9045621 (C.D. Cal. Jan. 28, 2016) ............................................. 21

10

11

*Moore v. Com. Aircraft Interiors, LLC,*
    168 Wash. App. 502 (2012)................................................................. 13

12

13

*Penalty Kick Mgmt. Ltd. v. Coca Cola Co.,*
    318 F.3d 1284 (11th Cir. 2003) ............................................................ 11

14

15

*Petters v. Williamson & Assocs., Inc.,*
    151 Wash. App. 154 (2009)................................................................. 16

16

*Resolute Forest Prod., Inc. v. Greenpeace Int'l,*
    302 F. Supp. 3d 1005 (N.D. Cal. 2017).................................................... 14

17

18

*Revolutionar, Inc. v. Gravity Jack, Inc.,*
    13 Wash. App. 2d 1044 (2020)............................................................. 19

19

*Robbins, Geller, Rudman & Dowd, LLP v. State,*
    179 Wash. App. 711 (2014)................................................................. 10

20

21

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.,*
    118 F.3d 955 (2d Cir. 1997)................................................................ 17

22

23

*Software Pricing Partners, LLC v. Geisman,*
    2022 WL 3971292 (W.D.N.C. Aug. 31, 2022)............................................ 17

24

*Speech Tech. Assocs. v. Adaptive Commc'n Sys., Inc.,*
    1994 WL 449032 (N.D. Cal. Aug. 16, 1994) ............................................. 20

25

26

*Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp.,*
    68 F.4th 792 (2d Cir. 2023) ................................................................ 20

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - v -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

1

TABLE OF AUTHORITIES (cont.)

2

Page(s)

3

*Torchstar Corp. v. Hyatech, Inc.*,

4

 2023 WL 137762 (E.D. Wash. Jan. 6, 2023)................................................................. 13

5

*Unelko Corp. v. Rooney*,

 912 F.2d 1049 (9th Cir. 1990) ....................................................................................... 14

6

*Union Oil Co. of California v. Hunt*,

7

 111 F.2d 269 (9th Cir. 1940) ......................................................................................... 19

8

*Univ. Computing Co. v. Lykes-Youngstown Corp.*,

 504 F.2d 518 (5th Cir. 1974) ......................................................................................... 17

9

10

*Wellogix, Inc. v. Accenture, L.L.P*,

 716 F.3d 867 (5th Cir. 2013) .................................................................................. 18, 19

11

*Westmark Dev. Corp. v. City of Burien*,

12

 140 Wash. App. 540 (2007)........................................................................................... 14

13

**Statutes**

14

Wash. Rev. Code Ann. § 19.108.010(4) ................................................................................ passim

15

Wash. Rev. Code Ann. § 19.108.030(1) ..................................................................................... 21, 22

16

**Rules**

17

Federal Rule of Civil Procedure 50 ....................................................................................... 22

18

**Other Authorities**

19

Restatement (Second) of Torts § 772 (1979).......................................................................... 14

20

Restatement (Third) of Unfair Competition § 40 (1995).......................................................... 11

21

Restatement (Third) of Unfair Competition § 45 .................................................................... 17

22

WPI 351.01 (7th ed.)..................................................................................................... 8, 21

23

24

25

26

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - vi -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

Pursuant to the Joint Proposed Pretrial Order, Dkt. 588 at 18, Defendants The Boeing Company and Boeing HorizonX Ventures LLC ("HorizonX," and collectively, "Boeing") respectfully submit this trial brief.

I.      **INTRODUCTION**

Zunum was once an ambitious start-up that sought to develop hybrid electric aircraft based on unproven and nonexistent technologies.  But in late 2018, Zunum met the fate of most startups: it ran out of cash, furloughed its employees, and scaled down its operations.  Now, Zunum accuses Boeing of causing Zunum to fail because it allegedly misused Zunum's information and tortiously interfered with its business expectancies with two third parties. Zunum's claims are baseless.

At trial, Boeing intends to vindicate its rights and establish that each of Zunum's remaining claims is baseless.  Moreover, as discussed further below, Zunum's core damages theory based on the value of Zunum's nineteen alleged trade secrets (the "Alleged Trade Secrets") is impermissible as a matter of law and should be precluded from trial.

Trade Secret Misappropriation.  Zunum claims that Boeing misappropriated the Alleged Trade Secrets in a "competing" airplane development program.  The evidence will show, however, that, among other things, (i) the information comprising Zunum's Alleged Trade Secrets did not exist at the time of Boeing's alleged misappropriation; (ii) Zunum's Alleged Trade Secrets did not qualify as protected secrets under Washington law; (iii) Boeing did not use any of Zunum's Alleged Trade Secrets; and (iv) the acts that Zunum attempts to recast as alleged "misappropriation" were specifically contemplated and authorized by the parties' contracts.

Breach of Contract.  Zunum asserts that Boeing breached two agreements by misusing its confidential information, which Zunum has confirmed is the same information comprising its nineteen Alleged Trade Secrets.  Zunum's breach of contract claims fails for several of the same reasons as its trade secret misappropriation claim, including because Boeing did not use Zunum's confidential information without authorization.

---

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 1 -

**Hueston Hennigan LLP**
523 West 6th St., Suite 400
Los Angeles, CA 90014
(213)788-4340

1    <u>Tortious Interference</u>.  Zunum claims that Boeing interfered with Zunum's "business
2    expectancies" with two companies—United Technologies Aerospace Systems ("UTAS") and
3    Safran, S.A. ("Safran").  The evidence will show that Boeing did not take any action to interfere
4    (let alone tortiously or improperly) with these alleged business expectancies, and Zunum did not
5    consummate any transactions with UTAS and Safran for reasons unrelated to Boeing.  Moreover,
6    as discussed further below, the alleged actions Zunum claims Boeing took to interfere with its
7    expectancies are protected and privileged under Washington law and the First Amendment, and
8    are therefore not improper.

9    <u>Zunum's Claimed Damages</u>.  Zunum's damages theories are deficient for many reasons
10   discussed in prior briefing.  *See generally* Dkt. 326.  But one of Zunum's core damages theories
11   is also legally impermissible and should be excluded from trial.  Specifically, as discussed
12   further below, Zunum may not recover the value of its Alleged Trade Secrets because it does not
13   (and cannot) allege that Boeing destroyed them.  In fact, Zunum has represented in verified
14   discovery responses that many of its Alleged Trade Secrets are in Zunum's possession and
15   continue to be protected secrets to this day (which, under Washington law, means they continue
16   to "derive independent economic value," Wash. Rev. Code Ann. § 19.108.010(4)).  Additionally,
17   Zunum is precluded from any double recovery.

18   **II.    SUMMARY OF RELEVANT FACTS[1]**

19       **A.    Zunum Struggles to Secure Funding as an Early-Stage Start-Up**

20       In 2013, two engineers, Matthew Knapp and Ashish Kumar, founded Zunum as a small
21   startup intended to build small hybrid electric airplanes to transport passengers over short and
22   medium distances.  For four years, the two founders struggled to secure any funding beyond
23   what they had personally contributed.  From 2013 to 2017, Zunum was ▮▮▮▮▮▮▮▮

24

25   [1] This summary of relevant facts is adapted from Boeing's Motion for Summary Judgment and
     supporting evidence cited therein, Dkt. 336 at 5–13, and includes evidence Boeing intends to
26   prove at trial.

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 2 -

Hueston Hennigan LLP
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1  ███████████████████████████████████████

2  ██████████████████. These ███████████ due, in part, to the highly uncertain, risky

3  nature of Zunum's concept for hybrid electric aircraft, which was based on unproven and

4  nonexistent technologies.

5  **B.**   **HorizonX and JetBlue Technology Ventures Invest in Zunum**

6  In March 2017, after four years of rejection, Zunum finally secured its first investors:

7  HorizonX and JetBlue Technology Ventures ("JTV").  HorizonX invested $5 million, and JTV

8  invested $1 million.  Boeing's investment was through a promissory note whose terms were

9  memorialized in a Convertible Promissory Note and Note Purchase Agreement (the "2017 Note

10  Agreement").  With the help of its new investments from HorizonX and JTV, Zunum hired █

11  employees, retained █ contractors, and opened new facilities across three states.  In just several

12  months, Zunum—with Boeing's help—transformed from a two-man shop with an unpaid intern

13  into a growing company.

14  **C.**   **The Parties' Confidentiality Agreements**

15  Throughout the parties' relationship, they entered into three agreements that expressly

16  authorized Boeing's use of the information Zunum provided:

17  • In August 2016, the parties signed the Proprietary Information Agreement ("2016

18  PIA").  The 2016 PIA authorized Boeing to use Zunum's proprietary information

19  "to explore the feasibility of potential projects in the field of electric based power

20  systems for aviation use."  2016 PIA (Dkt. 51, Ex. A) at Recital A.  The 2016 PIA

21  further provided that "nothing in this Section shall be deemed to restrict

22  inadvertent use of general ideas, concepts, processes and techniques retained in

23  the unaided memory of a Party's Representatives as a result of its review of

24  Proprietary Information under this Agreement" and that the 2016 PIA shall not

25  "be construed to preclude either Party from developing information or products

26  

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 3 -

Hueston Hennigan LLP
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

that may be similar to and/or compete with the products or services of the party party[.]" *Id.* § 3.

- In March 2017, the parties signed an Investment Rights Letter (the "2017 IRL") in connection with Boeing's first promissory note.  The 2017 IRL allowed Boeing to use Zunum's proprietary information "to manage [Boeing's] investment in [Zunum.]"  2017 IRL (Dkt. 51, Ex. D) § 2.  The 2017 IRL expressly provided that "ideas, information, and understandings retained in the unaided memory of [Boeing's] personnel as a result of their access to, review, evaluation, or use of Confidential Information for the Purpose" and that "the Investor [the Boeing Company] shall not be liable to [Zunum] under this Agreement for any claim arising out of, or based upon, actions taken by the Investor . . . to engage in any competitive operations, whether or not such action has a detrimental effect on the Company[.]" *Id.* § 5.

- In May 2018, the parties signed an Investment Rights Letter (the "2018 IRL") in connection with Boeing's second promissory note of $4 million.  The 2018 IRL also permitted Boeing to use the information Zunum provided "to manage [Boeing's] investment in [Zunum.]"  2018 IRL (Dkt. 51, Ex. G) § 2.  The 2018 IRL also expressly provided that "the Investor will have the right to use and exploit Residuals for any purpose" which "means ideas, information, and understandings retained in the unaided memory of the Investor's personnel as a result of their access to, review, evaluation, or use of Confidential Information for the Purpose." *Id.* § 5.  The 2018 IRL further provided that Zunum "agrees and acknowledges that the Investor (together with its affiliates) invests in numerous companies and has extensive commercial operations, some of which may now or in the future be deemed competitive with [Zunum's] business[.]" *Id.*

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 4 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

**D.   Boeing's Thin Haul Study Is Unable to Validate Zunum's Claims**

Following Boeing's 2017 investment, Boeing was considering how to best manage its investment in Zunum and whether it should pursue some form of partnership with Zunum to develop hybrid electric aircraft.  To evaluate a potential partnership, Boeing analyzed the claims Zunum had been making about the alleged advantages of its hybrid electric aircraft concept.  HorizonX thus commissioned a conceptual design project known as the "Thin Haul Study" or "BHE Study," which lasted from approximately June to November 2017.  As part of this project, Boeing's engineers designed a notional aircraft to meet the constraints provided by HorizonX, and the resulting work product was referred to as the BHE-9 or "Ahi" configuration.  After the team finished its work, Boeing conducted a technical deep dive analysis of the BHE-9 configuration to assess the validity of Zunum's claims.

In this action, Zunum alleges that Boeing used the Alleged Trade Secrets in the Thin Haul Study to create a hybrid electric aircraft of its own to compete with Zunum.  But as is further explained in Boeing's Motion for Summary Judgment, Boeing did not misuse any of Zunum's information in the Thin Haul Study.  Moreover, because the purpose of the Thin Haul Study was to explore the feasibility of Zunum's claims about electric based power systems for aviation use—and to help Boeing determine how to proceed with its investment—any use of Zunum's information in this Study was expressly authorized by the parties' agreements.

Ultimately, Boeing determined that it could not validate Zunum's claims and took no further action to develop the BHE design concept further.  To this day, it has not attempted to create, test, produce, or in any way commercialize any hybrid electric aircraft like Zunum's.

**E.   Boeing Issues a Bridge Loan While the Parties Explore a "More Strategic Partnership"**

By early 2018, Zunum had almost exhausted the money it had borrowed from Boeing and JTV in 2017.  Despite Boeing's inability to validate Zunum's claims, Boeing continued supporting Zunum and attempting to find a way to help Zunum succeed.  In May 2018, Boeing

---

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 5 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

1  gave Zunum a "bridge" loan of another $4 million to continue to keep Zunum afloat and explore

2  a potential strategic partnership with Zunum.  The terms of the bridge loan were memorialized in

3  another Convertible Promissory Note and Note Purchase Agreement (the "2018 Note

4  Agreement," and together with the 2017 Note Agreement, the "Note Agreements"), entered

5  alongside the 2018 IRL.

6       Around that time, Boeing and Zunum began exploring a "More Strategic Partnership" or

7  "MSR": a "partnership concept" based on the Zunum team's belief that targeted support from

8  Boeing engineers would help Zunum advance.  The parties discussed Boeing providing

9  engineering support to Zunum in exchange for future equity, which would have required

10 agreement on Zunum's value.  Zunum's proposed valuation was unreasonable, and Boeing

11 hoped that, by giving Zunum the bridge loan, it would give Zunum more time to "get more

12 realistic on valuation."

13      **F.    Zunum's Leadership Becomes "Erratic," Gets "Stuck in Delusional State,"**

14            **and Suffers a "Crisis of [Its] Own Making"**

15      Instead of becoming "realistic," Zunum's leadership doubled down.  Zunum's CEO, Dr.

16 Ashish Kumar, "openly talked about" his own "erratic behavior," and JTV executives noted that

17 Dr. Kumar was "stuck in a delusional state" and that "no investor will touch Zunum now because

18 all have lost faith in [Dr. Kumar] to be realistic."  Zunum personnel and other third parties shared

19 these sentiments.  Zunum's co-founder, Matthew Knapp, himself admitted to Dr. Kumar's

20 mismanagement of Zunum and even sought to remove him as CEO.

21      In November 2018, Zunum ran out of funds, scaled down its operations, and furloughed

22 its employees.  At the time, Mr. Knapp blamed Zunum's failure on ▮▮▮▮▮▮▮▮▮▮▮

23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  As Mr. Knapp

24 noted in a contemporaneous email, ▮▮▮▮▮▮▮▮▮▮▮▮

25

26

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 6 -

Hueston Hennigan LLP
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1      **G.      This Lawsuit and Zunum's Alleged Trade Secrets**

2          Over two years later, in November 2020, Zunum brought this lawsuit blaming its "crisis"

3   on Boeing.  At the core of Zunum's claims are its Alleged Trade Secrets.  Despite their

4   centrality, Zunum failed to identify them until January 2023, when the Court ordered it to do so.

5   Zunum submitted a list of nineteen Alleged Trade Secrets, grouped into three categories:

6   ████████████████████████████████████████████████████████████████████

7   ███████████████████████████████████████[2]

8          The Alleged Trade Secrets are compilations of discrete items of information contained in

9   ███████████████ subparts, many of which are not contained in any document, that are

10  independent from (and sometimes unrelated to) one another.  Zunum does not claim that any one

11  subpart is protected information, but only that the combination of those subparts constitutes a

12  "trade secret."

13         By Zunum's own admissions, the Alleged Trade Secrets were not in existence until years

14  after Boeing's alleged misappropriation (which, according to Zunum, ended in November 2018

15  at the latest).  For six of the nineteen Alleged Trade Secrets, Zunum did not finish creating them

16  until the end of 2018.  For the remaining thirteen Alleged Trade Secrets, Zunum did not finish

17  creating them until the end of 2019 or 2020.

18  **III.    ZUNUM WILL NOT PREVAIL ON LIABILITY AS TO ANY OF ITS CLAIMS**

19         **A.      Zunum Will Not Be Able to Prove Any Element of Its Trade Secrets Claim**

20         Zunum bears the burden of proving the following elements of its trade secret

21  misappropriation claim as to each Alleged Trade Secret it has put at issue in this action:  (i) that

22  the specific information comprising the Alleged Trade Secret was in existence at the time of

23  Boeing's alleged misappropriation; (ii) that the Alleged Trade Secret qualified as a protected

24

25  ────────────────────────
[2] Although Zunum numbers the Alleged Trade Secrets 1 to 20, it skips number 14.  Only 19
26  Alleged Trade Secrets are at issue in this action.

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 7 -

Hueston Hennigan LLP
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1  trade secret under Washington law; (iii) that Boeing misappropriated the Alleged Trade Secret;
2  and (iv) that the misappropriation was a proximate cause of damages to Zunum.[3]  *See Cedars*
3  *Sinai Med. Ctr. v. Quest Diagnostic Inc.*, 2020 WL 10460620, at *4 (C.D. Cal. Mar. 5, 2020)
4  (plaintiff must prove that the alleged trade secrets actually existed at the time of the alleged
5  misappropriation); *Belo Mgmt. Servs., Inc. v. ClickA Network,* 184 Wash. App. 649, 657 (2014)
6  (describing elements of a trade secrets claim); Wash. Pattern Jury Instr. Civ. WPI 351.01 (7th
7  ed.).

8     Zunum will not be able to establish any one of these elements at trial.

9      1. <u>Zunum Will Not Be Able to Prove That Its Alleged Trade Secrets Were in</u>
10       <u>Existence at the Time of the Alleged Misappropriation</u>

11     Zunum will not be able to establish a foundational element of its case at trial: that the
12  specific information comprising each of its Alleged Trade Secrets was in existence at the time of
13  Boeing's alleged misappropriation.  *See Cedars Sinai Med. Ctr.*, 2020 WL 10460620, at *4.
14  That is because, as shown in Boeing's Motion for Summary Judgment, Zunum has conceded in
15  verified discovery responses and deposition testimony that it had not created the information it
16  claims Boeing misappropriated until after the alleged misappropriation.  Specifically, in an
17  interrogatory response verified in April 2023 by Zunum's co-founder, Dr. Kumar, Zunum
18  confirmed that most of the Alleged Trade Secrets (as Zunum defined them) were not finished
19  being created before the end of 2019 or 2020, and the others did not exist until the end of 2018.
20  Zunum's other co-founder, Mr. Knapp, confirmed these facts at his deposition.

21     Indeed, by Zunum's own admissions, it had not expended the vast majority of the
22  resources it claims to have used on creating the Alleged Trade Secrets until ***well after*** Boeing's
23  alleged misappropriation.  When Boeing began the Thin Haul Study in June 2017, Zunum had
24  not hired █ employees and contractors it claims to have contributed to the creation of the
25

26  [3] Damages are discussed below in Section IV.

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 8 -

Hueston Hennigan LLP
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1   information it claims Boeing misappropriated and had not incurred ████ of the labor costs on the

2   creation of the Alleged Trade Secrets.  When Boeing ended the Thin Haul Study in November

3   2017, Zunum still had not hired ██████ employees and contractors, nor incurred ██ of

4   the claimed development labor costs.

5          In response, Zunum has asserted that, even if the Alleged Trade Secrets did not exist at

6   the time of Boeing's misappropriation, some other version of the Alleged Trade Secrets did exist.

7   But as a trade secrets plaintiff, it is Zunum's burden to identify the specific information it claims

8   Boeing misappropriated (and establish that this information constitutes protectible trade secrets).

9   Indeed, this Court, when ordering Zunum to identify the alleged trade secrets at issue in this

10  action, ordered it to identify the information "*allegedly misappropriated by Boeing[.]*"  Dkt. 116

11  at 14 (emphasis added).  In response to that Order, Zunum identified the information set forth in

12  the Alleged Trade Secrets—which, by Zunum's own admission, did not exist until *after*

13  Boeing's alleged misappropriation—as opposed to some other version of the Alleged Trade

14  Secrets that did exist.  Indeed, even to this day, Zunum has not identified what specific

15  information existed at the time of the alleged misappropriation (which it is Zunum's burden to

16  do).  Consequently, because the only information Zunum has put at issue in this action

17  indisputably did not exist at the time of Boeing's misappropriation, it cannot prevail on its claim.

18         The deficiency in Zunum's claim can be illustrated with the example of Coca-Cola's

19  formula that Zunum uses in its Proposed Jury Instruction No. 37, which Boeing disputes.  If

20  PepsiCo steals Coca-Cola's formula in 2024, Coca-Cola would have a cause of action for

21  misappropriation of the formula as it existed in 2024—assuming it can prove that the 2024

22  version of the formula constituted a protected trade secret—even if it added an additional

23  ingredient to the formula in 2025.  Critically, however, Coca-Cola would not have a cause of

24  action for misappropriation of the version of its formula as it existed *in 2025* (nor would it be

25  able to recover the costs in further developing the formula in 2025).  Yet, this is precisely the

26  problem with Zunum's claim:  Zunum has alleged that Boeing misappropriated the version of the

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 9 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

1    Alleged Trade Secrets that did not come into existence *until after* Boeing's alleged

2    misappropriation.  But what Zunum failed to do is allege and identify the information that

3    existed *at the time* of Boeing's alleged misappropriation (much less show that that information

4    constituted protected trade secrets).  Accordingly, Zunum's claim fails for this reason on its own.

5              2.     Zunum Will Not Be Able to Prove That the Alleged Trade Secrets

6                     Constituted Protectible Trade Secrets

7         To establish that information constituted protected trade secrets, a trade secrets plaintiff

8    must show that the information (i) derives independent economic value (ii) "from not being

9    generally known" and (iii) "not being readily ascertainable by proper means" (iv) by those "who

10   can obtain economic value from its disclosure or use" and (v) "[i]s the subject of efforts that are

11   reasonable under the circumstances to maintain its secrecy."  Wash. Rev. Code Ann. §

12   19.108.010(4); *see also Belo Mgmt. Servs., Inc. v. ClickA Network,* 184 Wash. App. 649, 657

13   (2014).  Zunum must "describe the . . . trade secret[s] with *sufficient particularity* to separate it

14   from matters of general knowledge in the trade or of special knowledge of those persons . . .

15   skilled in the trade."  *Imax Corp. v. Cinema Techs, Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998)

16   (emphasis in original); *Robbins, Geller, Rudman & Dowd, LLP v. State*, 179 Wash. App. 711,

17   722 (2014) ("The alleged unique, innovative, or novel information must be described with

18   specificity and, therefore, 'conclusory' declarations that fail to 'provide concrete examples' are

19   insufficient to support the existence of a trade secret.").

20        Zunum cannot establish any of these elements.  As Boeing will show at trial, Zunum

21   cannot meet its burden of proving that each of the Alleged Trade Secrets was not generally

22   known, was not readily ascertainable, derived independent value from its secrecy, and was

23   adequately protected.

24

25

26

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 10 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

3.     Zunum Will Not Be Able to Prove That Boeing or HorizonX

Misappropriated Its Trade Secrets

Zunum also bears the burden of showing that Boeing used, at a minimum, a "substantial portion" of each Alleged Trade Secret without authorization.  *See* Restatement (Third) of Unfair Competition § 40 (1995); *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1293 (11th Cir. 2003) ("[U]nder the Restatement, a defendant is liable for the misappropriation of a trade secret only if the plaintiff can show that the defendant . . . used a 'substantial portion' of the plaintiff's trade secret to create an improvement or modification that is "substantially derived" from the plaintiff's trade secret."); *BladeRoom Grp. Ltd. v. Emerson Elec. Co.*, 2018 WL 6242090, at *3 (N.D. Cal. Nov. 29, 2018) (stating that use of a "substantial portion" of a trade secret is necessary to establish misappropriation).

As explained in Boeing's Motion for Summary Judgment, Zunum's purported "evidence" of misappropriation is insufficient to establish any "use" of a "substantial portion" of each Alleged Trade Secret.  Dkt. 336 at 15–40.  For this reason, Zunum will not be able to establish liability on its misappropriation claim.

Regardless, even if Boeing did use a "substantial portion" of each Alleged Trade Secret, such use would have been authorized.  As noted above, the parties' agreements authorized Boeing to use Zunum's confidential information (i) "to explore the feasibility of potential projects in the field of electric based power systems for aviation use[,]" or (ii) "to manage [Boeing's] investment in [Zunum.]" 2016 PIA, Recital A, § 3; 2017 IRL, § 2.  As Boeing will show at trial, any use of Zunum's information was solely for either or both of these two permitted purposes.

Moreover, to the extent Zunum argues that Boeing should be held liable because Boeing employees who accessed Zunum's information would inevitably use it in their work, such an argument is precluded by the law and the parties' agreements.  Zunum may not prove misappropriation with evidence that Boeing or HorizonX employees knew of Zunum's Alleged

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 11 -

Hueston Hennigan LLP
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

Trade Secrets and that they would inevitably use the Alleged Trade Secrets in their related work (the so-called "inevitable disclosure doctrine"). Instead, Zunum must provide evidence that Boeing or HorizonX actually did use each of Zunum's trade secrets. *Computer Scis. Corp. v. Computer Assocs. Int'l, Inc.*, 1999 WL 675446, at *16 (C.D. Cal. Aug. 12, 1999) ("[T]he inevitable disclosure doctrine 'is not the law of the . . . Ninth Circuit'" quoting *Danjaq LLC v. Sony Corp.*, 50 U.S.P.Q.2d 1638, 1640 n.1 (C.D. Cal. 1999)).

Similarly, the agreements between the parties allow use of any confidential "ideas, information, and understandings retained in the unaided memory of [Boeing's] personnel as a result of their access to, review, evaluation, or use of Confidential Information for the Purpose." Dkt. 51, Ex. D § 5; *see also* Dkt. 51, Ex. A § 3. And the agreements state that they shall not "be construed to preclude either Party from developing information or products that may be similar to and/or compete with the products or services of the other party[.]" Dkt. 51, Ex. A § 3.

**B.**    <u>Zunum Will Not Be Able to Prove That Boeing Breached the 2016 PIA or 2017 IRL</u>

Zunum asserts that Boeing breached the 2016 PIA and 2017 IRL by misusing its confidential information. Zunum has confirmed that its breach of contract claims cover the same information as its claims for trade secret misappropriation. Dkt. 363 ¶ 92 & Ex. 90.

The evidence will show that Zunum disclosed Alleged Trade Secrets 1–8, 10–11, 13, and 15–20 to Boeing under the terms of the 2016 PIA between August 2016 and February 2017. But during this period, Zunum was comprised of two co-founders and an unpaid intern and was nowhere close to creating the Alleged Trade Secrets. Moreover, Boeing's use was specifically authorized under the 2016 PIA. Zunum's breach claim thus fails for the same reasons discussed above: Zunum cannot show that Boeing used without authorization the information comprising the Alleged Trade Secrets shared under the 2016 PIA.

Similarly, Zunum will be unable to prove that Boeing used any information obtained under the 2017 IRL for a non-permitted use.

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 12 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

**C.** **Zunum Will Not Be Able to Prove That Boeing Interfered with Any Business Expectancy**

To succeed on its claim for tortious interference with a business expectancy, Zunum must prove that: (i) a valid business expectancy existed; (ii) Boeing knew of that expectancy; (iii) Boeing intentionally interfered by inducing or causing a breach or termination of that relationship or expectancy; (iv) Boeing interfered with an improper purpose or by improper means; and (v) resultant damage to Zunum (proximate cause).[4] *Libera v. City of Port Angeles*, 178 Wash. App. 669, 676 (2013).

**1.** Zunum Will Not Be Able to Prove Intentional Interference

Intentional interference occurs when a party takes an action while "desir[ing] to bring [] about [the interference] or if he knows that the interference is certain or substantially certain to occur as a result of his action." *Greensun Grp., LLC v. City of Bellevue*, 7 Wash. App. 2d 754, 772 (2019). Zunum claims that Boeing has intentionally interfered with "expectancies" with UTAS and Safran. With respect to UTAS, the evidence will show that UTAS made an internal and independent decision not to invest in Zunum because it would not be a "wise investment." The evidence will also show that Zunum was unwilling to accept any terms proposed by UTAS. Similarly, Safran was deeply skeptical of Zunum's valuation and was unwilling to invest on terms proposed by Zunum. Boeing was not the cause of Zunum's inability to secure the alleged expectancies with UTAS and Safran.

**2.** Zunum Will Not Establish That Any "Interference" Was by Improper Means or Motivated by an Improper Purpose

Even if Zunum could establish interference by Boeing, "[i]nterference alone is not enough." *Moore v. Com. Aircraft Interiors, LLC*, 168 Wash. App. 502, 509 (2012). Zunum must also show the interference was "purposefully improper." *Torchstar Corp. v. Hyatech, Inc.*,

---

[4] Damages are discussed below in Section IV.

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 13 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

2023 WL 137762, at *1 (E.D. Wash. Jan. 6, 2023).  To do so, Zunum must establish that Boeing

interfered either (i) by "improper means" or (ii) for an "improper purpose" ("with an intent to

harm" Zunum).  *See Westmark Dev. Corp. v. City of Burien*, 140 Wash. App. 540, 556-58

(2007).  Zunum cannot meet these requirements.  Zunum will be unable to prove that Boeing

interfered with any of Zunum's expectancies, let alone by "improper means" or "with an intent to

harm." *See Lee v. Winborn*, 2020 WL 1271572, at *16 (W.D. Wash. Mar. 17, 2020) (granting

summary judgment where plaintiff had not shown that defendants' conduct was improper).

      Moreover, while Zunum is yet to identify any specific action Boeing took to interfere

with Zunum's purported business expectancies, its claim appears to be based on alleged

statements by Boeing to UTAS and Safran concerning Zunum and its leadership.  Any such

statements are not actionable under both Washington law and the First Amendment.  As

Washington courts have explained, tortious interference claims are not actionable if they are

based on statements conveying "(a) truthful information, or (b) honest advice within the scope of

a request for the advice." *Koch v. Mut. of Enumclaw Ins. Co.*, 108 Wash. App. 500, 506 (2001);

Restatement (Second) of Torts § 772 (1979) ("There is of course no liability for interference with

a contract or with a prospective contractual relation on the part of one who merely gives truthful

information to another.").  Likewise, under the First Amendment, "opinion . . . statements that do

not imply facts capable of being proved true or false" also cannot constitute the basis of an

interference claim. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 n.2, 1058 (9th Cir. 1990)

(cleaned up) ("[C]laims for . . . tortious interference with business relationships . . . . are subject

to the same first amendment requirements that govern actions for defamation."); *Resolute Forest

Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1016 (N.D. Cal. 2017) ("Therefore, claims

which are similar to defamation, such as tortious interference with contractual or prospective

relationships 'are subject to the same first amendment requirements that govern actions for

defamation.'" (quoting *Unelko*, 912 F.2d at 1058)).  At trial, Zunum will not be able to prove that

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 14 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1  any of Boeing's communications with third parties were either false or not protected opinion

2  statements.

3       But even if Zunum is able to prove that Boeing's alleged statements about Zunum were

4  neither truthful nor statements of opinion, its claim would still fail because such statements

5  would be protected under Washington's "good faith privilege." *Greensun Grp., LLC*, 7 Wash.

6  App. 2d at 777. "An interferor may assert the good faith privilege based on an honest but

7  incorrect belief." *Id*. As Boeing will show at trial, it acted in good faith and believed any and all

8  alleged statements it made regarding Zunum to be truthful and accurate.

9                    3.    <u>Zunum Cannot Establish That Boeing Proximately Harmed Zunum</u>

10       Zunum will be unable to prove that Boeing's alleged conduct was a "proximate cause" of

11  Zunum's harm. *See Libera*, 178 Wash. App. at 676. The evidence will show that many factors

12  unrelated to Boeing caused Zunum's late-2018 funding crisis, including (i) Zunum's failure to

13  align with potential investors on key deal terms; (ii) Zunum's leadership's insistence on a

14  valuation that was rejected by potential investors; (iii) potential investors' loss of faith in

15  Zunum's leadership; and (iv) potential investors' concerns about technological risk.

16  **IV.   <u>EVEN IF ZUNUM PREVAILS ON LIABILITY, ZUNUM CANNOT RECOVER</u>**

17       **<u>DAMAGES</u>**

18       Zunum seeks to recover the following categories of damages in this action: (i)

19       for Zunum's breach of contract or tortious interference claims, representing Zunum's

20  purported company value, and (ii) either       (representing the purported value of

21  Zunum's Alleged Trade Secrets) or       (representing Boeing's purported avoided costs

22  in developing the Alleged Trade Secrets) for Zunum's trade secret misappropriation claim. The

23  evidence will show that Zunum is not entitled to recovery.

24       As the Court recently noted, these damages figures "are extremely shaky[.]" Dkt. 493

25  (3/25/2024 Tr.) at 74:9–10. For instance, Zunum has no evidence that (i) Zunum's company

26  value was ever       (or that its Alleged Trade Secrets comprised    of that value),

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 15 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1  (ii) that Zunum's value, including the value of its Alleged Trade Secrets, was ever "destroyed,"

2  or (iii) that Boeing's alleged misconduct caused that purported destruction.  Dkt. 326 at 7–10,

3  10–11, 3–7.  Similarly, as to the ███ million avoided costs figure, that figure is not only based

4  on Zunum's purported value of ███ million (for which there is no evidence), but also on

5  unreliable, unverified, and created-for-litigation "estimates" of resources Zunum supposedly

6  spent on developing the Alleged Trade Secrets in the months and years both before and *after*

7  Boeing's alleged misappropriation.

8        A.    **Zunum Cannot Recover the Value of Its Trade Secrets**

9        While all these issues will be addressed at trial and Boeing's anticipated motion for

10  judgment as a matter of law, one of Zunum's damages theories is legally deficient and should be

11  excluded from trial altogether.  Specifically, in deferring its ruling on Boeing's Motion *in Limine*

12  No. 6, the Court invited the parties to further brief the issue of whether Zunum may recover the

13  alleged value of its Alleged Trade Secrets in their trial briefs.  Dkt. 594 (5/1/2024 Tr.) at 31–32.

14  As is shown below, Zunum may not recover the value of the Alleged Trade Secrets because it

15  does not claim that Boeing destroyed them.

16        Under both Washington law and the Uniform Trade Secrets Act, a trade secret is an

17  intellectual property asset that derives "independent economic value, actual or potential, from not

18  being generally known to, and not being readily ascertainable by, other persons [who can obtain

19  value from it]."  Wash. Rev. Code Ann. § 19.108.010(4).  In other words, "the value of a trade

20  secret arises from its secrecy and the ability to control whether, how and to whom it is

21  disclosed."  *BladeRoom Grp. Ltd. v. Facebook Inc.*, 2018 WL 452111, at *3 (N.D. Cal. Jan. 2,

22  2018).  As Washington courts have explained, that value—and the trade secret itself—"ceases to

23  exist [once the trade secret stops being secret]."  *Petters v. Williamson & Assocs., Inc.*, 151

24  Wash. App. 154, 168 (2009).

25        Based on these foundational principles, a trade secret plaintiff may not recover the value

26  of a trade secret unless the trade secret ceases to exist.  That is because, if information continues

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 16 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

to be a trade secret, it must necessarily have "independent economic value" (or else it would not be a trade secret), Wash. Rev. Code Ann. § 19.108.010(4), and so any recovery of that value as damages would create a windfall for the trade secret owner who continues to possess the secret. For this reason, comments to the Restatement (Third) of Unfair Competition explain that a plaintiff may recover "the value of the trade secret *if it has been destroyed through a public disclosure by the defendant*." Restatement (Third) of Unfair Competition § 45 cmt. d (1995) (emphasis added).

While neither Washington courts nor the Ninth Circuit has expressly reiterated this proposition, it is not controversial. Numerous courts, including circuit courts, analyzing statutes identical or almost identical to the Washington Trade Secrets Act have held that a trade secret plaintiff may not recover the value of a trade secret if it continues to retain and possess the trade secret. *See, e.g.*, *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 969 (2d Cir. 1997) (damages equating to the value of the trade secret were "appropriate only where the defendant had destroyed the value of the secret. Here, [the defendant] did not publish [the plaintiff's] secrets, and therefore did not destroy their value to [the plaintiff], other than to the extent that [the defendant] itself used them."); *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974) ("Where the plaintiff retains the use of the secret, as here, and where there has been no effective disclosure of the secret through publication[,] the total value of the secret to the plaintiff is an inappropriate measure [of damages]."); *LinkCo, Inc. v. Fujitsu Ltd.*, 232 F. Supp. 2d 182, 187 n.8 (S.D.N.Y. 2002) ("If the jury finds that LinkCo retains its trade secret, despite Fujitsu's misappropriation, then LinkCo cannot be awarded the total value of the trade secret."); *Software Pricing Partners, LLC v. Geisman*, 2022 WL 3971292, at *9 (W.D.N.C. Aug. 31, 2022) (where "[t]here is no evidence that [the defendant] published [the] trade secrets or that [the] trade secrets are destroyed" and "it appears the relevant trade secrets continue to be a secret," "a calculation based on the value of all of its trade secrets at the time of misappropriation is inappropriate").

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 17 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1    Here, Zunum does not allege that Boeing destroyed its Alleged Trade Secrets or that it no

2   longer retains possession of its Alleged Trade Secrets. ███████████████████████

3   ██████████████████████████████████████████████████████████

4   ██████████████████████████████████████████████████████████

5   ████████████████ Dkt. 364, Ex. 113 at Ex. A.  In other words, Zunum has ████████

6   ███████████████████████████████████████████████████████

7   Wash. Rev. Code Ann. § 19.108.010(4).  Consequently, as the authorities cited above explain,

8   Zunum may not recover the value of those assets as damages in this litigation because doing so

9   would result in a windfall to Zunum (███████████████████████████).

10    The Fifth Circuit's factual findings in *Wellogix, Inc. v. Accenture, L.L.P*, 716 F.3d 867,

11   879 (5th Cir. 2013)—referenced at the Court's pretrial conference on May 1, 2024—is consistent

12   with all these principles.  In *Wellogix*, the panel did not consider or address the misappropriation

13   damages theory Zunum advances here—i.e., recovery of the value of the alleged trade secrets.

14   Indeed, the plaintiff in *Wellogix* did not seek such damages, the parties did not address whether

15   the plaintiff's trade secrets had lost trade secret status and under what circumstances, and the

16   Fifth Circuit thus did not consider the issues or any legal authority discussed above.  Instead, the

17   plaintiff in *Wellogix* alleged that the defendant's misappropriation drove it out of business by

18   stealing a major client and by developing a competing product using the plaintiff's trade secrets.

19   *Wellogix*, 716 F.3d at 873-74, 879-80.  According to the plaintiff, "this misappropriation created

20   a competitive disadvantage [that] caused [its] value to drop to 'zero.'"  *Id.* at 880.  Consequently,

21   the plaintiff sought damages for destruction of the value of its ***business*** (not its trade secrets).

22   *See In re Mandel*, 578 F. App'x 376, 390 (5th Cir. 2014) (recognizing that in *Wellogix* "the

23   amount awarded was the amount that the plaintiff's damages expert had testified ***the company***

24   was worth," (emphasis added) not the value of its trade secrets).

25

26

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 18 -

Hueston Hennigan LLP
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1    Unlike in *Wellogix*, Zunum does not seek misappropriation damages based on the

2    destruction of value of its business (it only seeks such damages for its breach of contract and

3    tortious interference claims). Rather, Zunum seeks damages based on the alleged destruction of

4    value of its Alleged Trade Secrets. But as shown above, because Zunum has represented █████

5    ████████████████████████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████████████████████████

7    █████████████████████████ it may not recover the value of the Alleged Trade Secrets as

8    damages in this action.

9    Furthermore, *Wellogix* adopted a "'flexible' approach used to calculate damages."

10   *Wellogix*, 716 F.3d at 880. Yet courts in Washington and the Ninth Circuit have not adopted the

11   "flexible" approach; instead, damages and their cause must be proved with "reasonable

12   certainty." *Eagle Grp., Inc. v. Pullen*, 114 Wash. App. 409, 420, 418 (2002) (finding that proof

13   of actual losses allowed lost profits but must be proven with "reasonable certainty");

14   *Revolutionar, Inc. v. Gravity Jack, Inc.*, 13 Wash. App. 2d 1044 (2020) ("Washington law

15   requires that damages be proved with reasonable certainty. . . . and it must not subject the trier of

16   fact to mere speculation or conjecture."); *See also Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d

17   1400, 1407 (9th Cir. 1993), *abrogated on other grounds by SunEarth, Inc. v. Sun Earth Solar

18   Power Co.*, 839 F.3d 1179 (9th Cir. 2016) ("As a general rule, damages which result from a tort

19   must be established with reasonable certainty."); *Union Oil Co. of California v. Hunt*, 111 F.2d

20   269, 277 (9th Cir. 1940) ("The damages recovered in any case must be shown with reasonable

21   certainty both as to their nature and in respect of the cause from which they proceed. . . . Hence,

22   no recovery can be had where resort must be had to speculation or conjecture for the purpose of

23   determining whether the damages resulted from the act of which complaint is made or from

24   some other cause"). Here, where Zunum maintains that numerous ████████████████████

25   ████████████████████████████████████████████████████████████████████████████

26

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 19 -

Hueston Hennigan LLP
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1 ████████████████████), Dkt. 364, Ex. 113 at Ex. A, Zunum cannot establish it lost the

2 "value of its trade secrets" due to Boeing's actions under the "reasonable certainty" standard.

3      Notably, Zunum has not cited a single case—from any jurisdiction—permitting a trade

4 secret plaintiff to recover the value of trade secrets that it continues to possess as protected trade

5 secrets. For example, Zunum has relied on the Fifth Circuit decision in *Bohnsack v. Varco, L.P.*,

6 668 F.3d 262, 279-80 (5th Cir. 2012), where the panel held that the plaintiff could recover "the

7 value a reasonably prudent investor would pay for the trade secret." But as the court explained,

8 this recovery was available because the defendant filed a patent application for the trade secret

9 (thus publishing it), which "lower[ed] the market value of [the trade secret]." *Id.* at 280. Here,

10 on the other hand, Zunum has ***retained*** its Alleged Trade Secrets, and nothing that Boeing did

11 caused their destruction in value. As another example, Zunum has cited the Second Circuit

12 decision in *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp*., 68 F.4th 792, 812 (2d

13 Cir. 2023). But that case did not address the issue at all, and instead considered only the

14 propriety of damages based on lost profits and defendant's revenue derived from trade secret use.

15 *Id.* Nothing in *Syntel* supports the notion that a plaintiff may recover the value of a trade secret

16 that continues to derive independent economic value.

17     **B.**    **Zunum Cannot Obtain Double (or Triple) Recovery Under Different**

18          **Theories for the Same Harm**

19      Zunum's trade secret misappropriation and breach of contract claims cover Zunum's

20 theory of use of the exact same information. As such, it would be improper to "combine

21 [Zunum's damages for trade secret misappropriation and breach of contract] in a manner that

22 results in a double recovery." *Eagle Grp., Inc. v. Pullen*, 114 Wash. App. 409, 421 (2002)

23 (affirming trial court's use of jury instructions regarding double recovery); *Speech Tech. Assocs.*

24 *v. Adaptive Commc'n Sys., Inc.*, 1994 WL 449032, at *13 (N.D. Cal. Aug. 16, 1994) ("[The

25 plaintiff] is not entitled to double recovery [where] its actual contractual damages are already

26 fully recoverable from defendants under the misappropriation of trade secrets claim[.]"); *Hosp.*

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 20 -

Hueston Hennigan LLP
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1    *Mktg. Concepts, LLC v. Six Continents Hotels, Inc.*, 2016 WL 9045621, at *6 (C.D. Cal. Jan. 28,

2    2016) ("It is well established that double recovery is precluded when alternative theories seeking

3    the same relief are pled and tried together." (quoting *Mason v. Okla. Turnpike Auth.*, 115 F.3d

4    1442, 1459 (10th Cir. 1997)).

5            Zunum also claims two theories of recovery for its trade secrets claim: (i) actual loss and

6    (ii) unjust enrichment.  Combining these two theories would be impermissible as well.  A

7    plaintiff may recover unjust enrichment in addition to any actual loss only when "unjust

8    enrichment caused by misappropriation [] is not taken into account in computing damages for

9    actual loss."  Wash. Rev. Code Ann. § 19.108.030(1); *see also Ed Nowogroski Ins., Inc. v.*

10   *Rucker*, 88 Wash. App. 350, 360 (1997), *aff'd*, 137 Wash. 2d 427 (1999) ("[W]e conclude that

11   [the plaintiff] was not entitled to recover for unjust enrichment because there was no evidentiary

12   basis upon which the trial court could have determined any damages apart from [the plaintiff's]

13   actual losses.").  The Washington Pattern Instructions require that "[i]f both forms of damages

14   are being presented to the jury, the instruction will ***need to be modified*** to clearly express this

15   limitation."  Wash. Pattern Jury Instr. Civ. WPI 351.01 (7th ed.) (emphasis added) ("For

16   example: 'The law does not permit a plaintiff to recover twice for the same damages.  Thus, you

17   may include as damages both plaintiff's lost profits and defendant's gain only if and to the extent

18   that they do not overlap in this way.'").

19           Zunum does not claim that Boeing used Zunum's trade secrets to sell or market any

20   products; its theory is that Boeing allegedly used Zunum's Alleged Trade Secrets internally and

21   that Boeing avoided incurring Zunum's own development costs.  But Boeing did not use

22   Zunum's trade secrets to compete, and even if Boeing would never have invested in Zunum,

23   there is no evidence that Boeing would have incurred its own expenses to develop Zunum's non-

24   existent technology.  Without any evidence that Boeing was benefitted or unjustly enriched by

25   avoiding incurring Zunum's development costs (for example, selling a product based on the

26   Alleged Trade Secrets), "there is no basis . . . to determine an unjust enrichment award in

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 21 -

**Hueston Hennigan LLP**
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104

1 addition to the compensatory damage award." *Ed Nowogroski Ins., Inc.*, 88 Wash. App. at 360;

2 *see also* Wash. Rev. Code Ann. § 19.108.030(1).

3 **V.      CONCLUSION**

4          Zunum cannot and will not meet its burden of proof for its claims for trade secret

5 misappropriation, breach of contract, or tortious interference.  As such, Boeing intends to move

6 for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 at the close of

7 Zunum's case-in-chief.

8

9          Dated: May 10, 2024                                     Respectfully submitted,

10                                                                 */s/ Yegor Fursevich*

11                                                                 John C. Hueston (Admitted *Pro Hac Vice*)
                                                                   Email: jhueston@hueston.com
12                                                                 Moez M. Kaba (Admitted *Pro Hac Vice*)
                                                                   Email: mkaba@hueston.com
13                                                                 Yegor Fursevich (Admitted *Pro Hac Vice*)
                                                                   Email: yfursevich@hueston.com
14                                                                 Justin M. Greer (Admitted *Pro Hac Vice*)
                                                                   Email: jgreer@hueston.com
15                                                                 Cassidy O'Sullivan (Admitted *Pro Hac Vice*)
                                                                   Email: cosullivan@hueston.com
16
17                                                                 **HUESTON HENNIGAN LLP**
                                                                   523 West 6th Street, Suite 400
                                                                   Los Angeles, CA 90014
18                                                                 Telephone:      (213) 788-4340
                                                                   Facsimile:      (888) 866-4825
19
                                                                    */s/ David A. Perez*
20                                                                 David A. Perez, WSBA No. 43959
                                                                   Susan E. Foster, WSBA No. 18030
21                                                                 Madeline D. Swan, WSBA No.  56355
                                                                   **PERKINS COIE LLP**
22                                                                 1201 Third Avenue, Suite 4900
                                                                   Seattle, WA 98101
23                                                                 (206)359-8000
24
                                                                   **Attorneys for Defendants**
25                                                                 **THE BOEING COMPANY. and**
                                                                   **BOEING HORIZONX VENTURES,**
26                                                                 **LLC**

Case No.  2:21-cv-00896
DEFENDANTS' TRIAL BRIEF - 22 -

Hueston Hennigan LLP
523 West 6th St, Suite 400
Los Angeles, CA 90014
(213)788-4340

6618104