The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ZUNUM AERO, INC.,

          Plaintiff,

v.

THE BOEING COMPANY; BOEING
HORIZONX VENTURES, LLC,

          Defendants.

Case No. 2:21-cv-00896-JLR

**PLAINTIFF ZUNUM AERO, INC'S
TRIAL BRIEF**

**Filed Under Seal**

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1

# **TABLE OF CONTENTS**

2   I.    Zunum's Claims ................................................................................................ 1

3         A.    Zunum's Damages Expert May Opine on the Value of Zunum's Trade
4               Secrets. .............................................................................................. 1

5         B.    Whether The Trade Secrets Retain Trade Secret Status Today Is
                Irrelevant ........................................................................................... 5

6         C.    The "Improper Means" Prong of Zunum's Tortious Interference Claim
7               Is Not Preempted by WUTSA. ........................................................... 7

8   II.   Jury Instructions ............................................................................................ 10

9         A.    Boeing Takes Positions in Its Proposed Jury Instructions That Are
                Inconsistent with This Court's Ruling on Summary Judgment. ....... 10

10        B.    Boeing Newly and Inconsistently Seeks To Draw A Distinction
11              Between The Boeing Company and HorizonX Ventures, LLC ......... 13

12        C.    Boeing Seeks To Include An Improper Jury Instruction on Zunum's
                "Bad Faith." ..................................................................................... 15

13  III.  Evidentiary Issues ......................................................................................... 17

14        A.    Party-Opponent Admissions Are Not Hearsay and Do Not Require
15              Personal Knowledge ......................................................................... 17

16        B.    Irrelevant Documents Concerning Retention of Counsel and Litigation
                Funding ............................................................................................. 19

17        C.    Evidence Concerning Boeing's "Second Wave" Dissemination ........ 20

18

19

20

21

22

23

24

25

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A.H. Lundberg Assocs., Inc. v. TSI, Inc.*,
   2016 WL 9226998 (W.D. Wash. Feb. 18, 2016) ........................................................... 10

*Adams v. U.S.*,
   2009 WL 1884387 (D. Ida. June 28, 2009) ................................................................. 17

*Adams v. U.S.*,
   2009 WL 1922250 (D. Ida. June 30, 2009) ................................................................. 18

*Alexander & Baldwin, Inc. v. C&H Sugar Co.*,
   2010 WL 11508374 (C.D. Cal. Apr. 21, 2010) ............................................................ 11

*BDG Gotham Residential, LLC v. Western Waterproofing Co., Inc.*,
   631 F. Supp. 3d 76 (S.D.N.Y. Sept. 27, 2022) ............................................................ 18

*Boeing Co. v. Sierracin Corp.*,
   738 P.2d 665 (1987) ........................................................................................................ 8

*Bohnsack v. Varco, L.P.*,
   668 F.3d 262 (5th Cir. 2012) ..................................................................................... 3, 4

*Bombardier Inc. v. Mitsubishi Aircraft Corp.*,
   383 F. Supp. 1169 (W.D. Wash. 2019) ...................................................................... 8, 9

*Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*,
   2013 WL 890126 (N.D. Cal. Jan. 23, 2013) .................................................................. 5

*Contreras v. City of Los Angeles*,
   2012 WL 12886488 (C.D. Cal. June 22, 2012) .............................................................. 8

*Convoyant LLC v. DeepThink, LLC*,
   2021 WL 5810638 (W.D. Wash. Dec. 7, 2021) ............................................................. 9

*Copart, Inc. v. Sparta Consulting, Inc.*,
   339 F. Supp. 3d 959 (E.D. Cal. 2018) ........................................................................... 8

*Dave Johnson Ins., Inc. v. Wright*,
   167 Wash. App. 758 (2012) ............................................................................................ 8

*DHI Grp., Inc. v. Kent*,
   2022 WL 3755782 (5th Cir. Aug. 30, 2022) ............................................................... 3, 4

*Digital Development Corp. v. Intern. Memory Sys.*,
   1973 WL 19875 (S.D. Cal. Oct. 24, 1973) ..................................................................... 3

*PLAINTIFF'S TRIAL BRIEF- iii*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

*Duhn Oil Tool, Inc. v. Cooper Cameron Corp.*,
  818 F. Supp. 2d 1193 (E.D. Cal. 2011),
  *on reconsideration in part*, 2012 WL 13040409 (E.D. Cal. May 7, 2012) .............................. 14

*Durnford v. MusclePharm Corp.*,
  907 F.3d 595 (9th Cir. 2018) ............................................................................................ 7

*Fulton v. Foley*,
  2019 WL 6609298 (N.D. Ill. Dec. 5, 2019) .................................................................... 20

*Gordon v. Rowley*,
  2021 WL 5150073 (M.D. Ga. Nov. 4, 2021) .................................................................. 20

*Guidance Residential, LLC v. Mangrio*,
  2916 WL 6452421 (Wash. App. Dec. 18, 2017) ............................................................ 19

*In re Albert-Sheridan*,
  2024 WL 1401289 (9th Cir. Bank. App. Apr. 2, 2024) .................................................. 13

*Int'l Paper Co. v. Stuit*,
  2012 WL 3527932  (W.D. Wash. Aug. 15, 2012) ............................................................. 7

*Inteum Co., LLC v. Nat'l Univ. of Singapore*,
  371 F. Supp. 3d 864 (W.D. Wash. 2019) .......................................................................... 9

*Jones v. National American University*,
  2009 WL 2005306 (D.S.D. July 8, 2009) ....................................................................... 19

*Lexington Ins. Co. v. Western Pennsylvania Hosp.*,
  423 F.3d 318 (3d Cir. 2005) ........................................................................................... 18

*LexMac Energy, L.P. v. Macquarie Bank Ltd.*,
  2014 WL 12669718 (D.N.D. Feb. 19, 2014) .................................................................... 5

*Lusnak v. Bank of America, N.A.*,
  883 F.3d 1185 (9th Cir. 2018) .......................................................................................... 7

*Mahlandt v. Wild Canid Survival & Research Ctr., Inc.*,
  588 F.2d 626 (8th Cir. 1978) .......................................................................................... 18

*Matter of Mandel*,
  720 Fed. Appx. 186 (5th Cir. 2018) ............................................................................. 2, 3

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
  454 F. Supp. 2d 966 (C.D. Cal. Sept. 27, 2006) ............................................................ 17

*MGI Digital Tech., S.A. v. Duplo U.S.A. Corp.*,
  2024 WL 655481 (C.D. Cal. Jan. 26, 2024) ................................................................... 20

*Modumetal, Inc. v. Xtalic Corp.*,
  4 Wash. App. 2d 810 (Wash. Ct. App. 2018) ................................................................... 8

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1

*Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*,
   841 F.2d 918 (9th Cir. 1988) ............................................................................. 8

2

*Pace v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
3   2015 WL 11199154 (N.D. Ga. Feb. 3, 2015) ................................................... 20

4   *Paul Johnson Drywall Inc. v. Sterling Grp. LP*,
   2024 WL 1285629 (D. Ariz. Mar. 26, 2024) ..................................................... 3

5

*Pepper v. U.S.*,
6   562 U.S. 476 (2011) .................................................................................. 10, 13

7   *Phillips North Am. LLC v. Summit Imaging Inc.*,
   2021 WL 2118400 (W.D. Wash. May 25, 2021) ................................................ 1

8

*Rearden LLC v. Crystal Dynamics, Inc.*,
9   2019 WL 8275254 (N.D. Cal. July 12, 2019) .................................................. 18

10   *Rheinfrank v. Abbott Lab'ys, Inc.*,
   2015 WL 5258858 (S.D. Ohio Sept. 10, 2015) ............................................... 20

11

*RJB Wholesale, Inc. v. Castleberry*,
12   788 F. App'x 565 (9th Cir. 2019) .................................................................... 19

13   *SEIU Healthcare N.W. Training P'ship v. Evergreen Freedom Found.*,
   427 P.3d 688 (Wash. Ct. App. 2019) ................................................................ 8

14

*Sims v. Lakeside School*,
15   2007 WL 4219347 (W.D. Wash. Nov. 28, 2007) ............................................. 17

16   *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*,
   68 F.4th 792 (2d Cir. 2023) ............................................................................. 4

17

*Thola v. Henschell*,
18   140 Wash. App. 70 (Wash. Ct. App. 2007) ....................................................... 9

19   *Transbay Auto. Serv., Inc. v. Chevron USA Inc.*,
   807 F.3d 1113 (9th Cir. 2015) ........................................................................ 18

20

*U.S. v. Jingles*,
21   702 F.3d 494 (9th Cir. 2012) .......................................................................... 11

22   *U.S. v. Phillips*,
   367 F.3d 846 (9th Cir. 2004) .......................................................................... 11

23

*U.S v. First Nat. Bank of Circle*,
24   652 F.2d 882 (9th Cir. 1981) .......................................................................... 13

25   *U.S. v. Pac. Gas & Elec. Co.*,
   2016 WL 3903384 (N.D. Cal. July 19, 2016) ................................................... 18

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

*U.S. ex rel. Savage v. CH2M Hill Plateau Remediation Co.*,
2021 WL 802125 (E.D. Wash. Jan. 11, 2021) ........................................................... 16

*U.S. Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC*,
2019 WL 8504725 (C.D. Cal. Aug. 7, 2019) ............................................................. 17

*University Computing Co. v. Lykes-Youngstown Corp.*,
504 F.2d 518 (5th Cir. 1974) ...................................................................................... 4

*V5 Techs. v. Switch, Ltd.*,
334 F.R.D. 306 (D. Nev. 2019) .................................................................................. 20

*Vianet Grp. PLC v. Tap Acquisition, Inc.*,
2016 WL 4368302 (N.D. Tex. Aug. 16, 2016) ....................................................... 2, 3

*W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*,
2016 WL 165698 (D. Neb. Jan. 13, 2016) ................................................................. 2

*Wakefield v. ViSalus, Inc.*,
51 F.4th 1109 (9th Cir. 2022) ..................................................................................... 8

*Wellogix, Inc. v. Accenture, L.L.P.*,
716 F.3d 867 (5th Cir. 2013) ................................................................................ 1, 2, 3

*Wilson v. City of Los Angeles*,
2020 WL 7711836 (C.D. Cal. July 20, 2020) ........................................................... 18

**Rules**

Fed. R. Evidence 402 ....................................................................................................... 19

Fed. R. Evidence 602 ........................................................................................... 16, 17, 18

Fed. R. Evidence 801(d)(2) ................................................................................. 16, 17, 18

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    As the Court is aware, this case involves a failed business relationship between the

2  plaintiff, Zunum, and the defendant, Boeing.  The Court's order on summary judgment sets forth

3  the relevant factual background.  Trial is scheduled to commence on May 16, 2024.  The Court

4  has scheduled a hearing on May 15 to address outstanding pretrial issues.

5    We set forth herein various legal and evidentiary issues that may arise during the course

6  of the trial.  In accordance with the Court's order (Dkt. 284), Zunum does not move the Court for

7  any affirmative relief in this trial brief.

8  **I.    Zunum's Claims**

9    **A.    Zunum's Damages Expert May Opine on the Value of Zunum's Trade Secrets.**

10    Boeing's moved *in limine* to prevent Zunum's damages expert, Walter Bratic, from

11  presenting testimony regarding the value of Zunum's trade secrets, on the basis that the trade

12  secrets had not been made public; the Court denied that motion at the Pretrial Conference and,

13  regarding the appropriate measures of damages, noted that the parties "█████████████████

14  █████████" in their trial briefs.  Ex. 1 (Pretrial Conference Tr. ("PTC Tr.")) at 31:16–19.[1]

15  Zunum respectfully submits that the Court's decision denying Boeing's motion was correct,

16  because the value of Zunum's Trade Secrets is recoverable under three separate theories of trade

17  secret damages, none of which require destruction-by-publication.

18    As this Court explained, "[c]ourts have 'broad latitude in fashioning appropriate

19  remedies' in trade secrets cases, and thus, 'courts have considerable leeway in calculating a

20  damage award for trade secrets theft.'"  *Philips N. Am. LLC v. Summit Imaging Inc.*, 2021 WL

21  2118400, at *6 (W.D. Wash. May 25, 2021).  Under this flexible approach, "[i]t will be enough

22  if the evidence show[s] the extent of the damages as a matter of just and reasonable inference,

23  although the result be only approximate."  *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 879

24  (5th Cir. 2013) (citations omitted) (alterations in original).

25

---

[1] All "Ex." refer to exhibits to the Declaration of Charlotte Baigent ("Baigent Decl.") unless noted otherwise.

*PLAINTIFF'S TRIAL BRIEF- 1*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    ***Lost Business Value***.  Under the "'flexible' approach used to calculate damages," a trade

2    secrets plaintiff may recover as compensatory damages the value of a business, where that value

3    has significantly diminished or "drop[ped] to 'zero'" due to the defendant's misappropriation.

4    *Wellogix, Inc.*, 716 F.3d at 880; *Vianet Grp. PLC v. Tap Acquisition, Inc.*, 2016 WL 4368302, at

5    *22 (N.D. Tex. Aug. 16, 2016) ("Damages may also take the form of lost business value, which

6    'is an appropriate measure of damages when business value is completely or almost completely

7    destroyed.").  "Under *Wellogix*, . . . the correct inquiry is what the misappropriation did to the

8    market value of the company, not whether or not the trade secret was destroyed."  *Matter of*

9    *Mandel*, 720 Fed. App'x 186, 192 (5th Cir. 2018); *see also W. Plains, L.L.C. v. Retzlaff Grain*

10   *Co. Inc.*, 2016 WL 165698, at *2–3 (D. Neb. Jan. 13, 2016) (endorsing "loss-of-value" damages

11   for trade secret misappropriation).

12            Here, Zunum claims and intends to prove to the jury that Boeing's misconduct destroyed

13   Zunum's business as a whole.  Specifically, and as this Court acknowledged in its order granting

14   in part and denying in part Boeing's Motion for Summary Judgment ("Summary Judgment

15   Order"), a jury could find that Boeing's misappropriation allowed it to offer "a competing

16   aircraft system" to what Zunum was offering to potential partners and investors (including

17   UTAS and Safran), *see* Dkt. 560 at 16-17, driving those potential investors away, and causing

18   Zunum to fail.  If the jury accepts this theory, then it could reasonably conclude that Boeing's

19   misappropriation caused the destruction of Zunum's business, allowing Zunum to recover the

20   full value of its lost business.  *Wellogix, Inc.*, 716 F.3d at 880.

21            Indeed, Zunum provided "a [further] link between the alleged misappropriation and [the

22   proffered] damages" by circumscribing damages to the value of the business fairly attributable to

23   Zunum's Trade Secrets, *i.e.*, the portion of Zunum's Trade Secrets constituting Zunum's total

24   value. *See Vianet Grp. PLC*, 2016 WL 4368302, at *22; Dkt. 364, Ex. 109 (Bratic Report) ¶ 84–

25

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

90[2].  And just as in *Wellogix, Inc.*, Zunum asserts that "other companies viewed [Zunum's] technology as valuable," that "this value derived from [Zunum's Trade Secrets]," that "no other company had such technology from 20[16] to 20[18]," but that Boeing's misappropriation "caused [Zunum's] value to drop to 'zero.'"  716 F.3d at 879–80.  Thus, under *Wellogix* and its progeny, Zunum may recover at least the "portion of the value of Zunum that is attributed to the value of the Zunum Trade Secrets" based on Boeing's misappropriation.  Dkt. 364, Ex. 109 ¶ 85.

The value of Zunum's Trade Secrets is thus recoverable, and the Court correctly denied Boeing's Daubert motion to exclude Mr. Bratic's analysis, and Boeing's duplicative motion *in limine* seeking the same relief.  "[W]hether or not the trade secret was destroyed" has no bearing on this analysis.  *Matter of Mandel*, 720 Fed. App'x at 192.

***Value a Reasonably Prudent Investor Would Pay for the Trade Secret***.  A trade secrets plaintiff may also recover "the value a reasonably prudent investor would pay for the trade secret" if the trade secret's market value was lowered by the misappropriation.  *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 280 (5th Cir. 2012); *Paul Johnson Drywall Inc. v. Sterling Grp. LP*, 2024 WL 1285629, at *15 (D. Ariz. Mar. 26, 2024) (same); *Digital Development Corp. v. Intern. Memory Sys.*, 1973 WL 19875, at *8 (S.D. Cal. Oct. 24, 1973) (party "entitled to recover the reasonable value of the unauthorized appropriation of its ideas and design").  "[C]omplete destruction of a trade secret's value is not necessary under the reasonably prudent investor measure of damages."  *DHI Grp., Inc. v. Kent*, 2022 WL 3755782, at *5 (5th Cir. Aug. 30, 2022).

Zunum has claimed that its Trade Secrets were valuable in part because they equipped Zunum to be the first entrant in the untapped hybrid-electric regional market, and Boeing's misconduct foreclosed that possibility by running Zunum out of business while the industry began to catch up to Zunum's technology, thereby lowering the market value of its Trade Secrets

---

[2] As Bratic explains, this figure "reflects a very conservative estimate of that value" because "most of the value of Zunum derived from the Zunum Trade Secrets because Zunum was founded to develop HE aircraft and propulsion technology."  Dkt. 364, Ex. 109 ¶¶ 84-87.

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    and rendering valueless the first-mover advantage that Zunum had but lost by reason of Boeing's

2    misconduct.  Dkt. 347, Ex. 23 (Garvett Report) ¶¶ 70-86, 93–97.  Thus, Zunum is entitled to the

3    value of its Trade Secrets, reflected as "the value a reasonably prudent investor would pay for the

4    trade secret[s]." *Bohnsack*, 668 F.3d at 280.

5         Moreover, the value of Zunum as calculated by Bratic is derived from valuations

6    performed by Zunum's once-lead investor Boeing, Dkt. 364, Ex. 109 (Bratic Report) ¶¶ 72, 84–

7    86, and thus reasonably reflects the value a reasonably prudent investor would pay, *Bohnsack*,

8    668 F.3d at 280 (noting that "[a] jury need only have sufficient evidence to determine the value a

9    reasonably prudent investor would pay for the trade secret" and upholding figure based on what

10   defendant has previously been willing to pay for the trade secret.).  Courts have expressly

11   rejected the notion that the "complete destruction of a trade secret's value" is necessary to

12   recover such value.  *DHI Grp.*, 2022 WL 3755782, at *5.

13        ***Value of Trade Secret Following Destruction of Value***.  Outside of the damages theories

14   noted above, courts have indicated that the value of a [trade] secret is recoverable where "the

15   defendant has in some way destroyed the value of the trade secret."  *University Computing Co. v.*

16   *Lykes-Youngstown Corp.*, 504 F.2d 518, 535 (5th Cir. 1974).  *University Computing* went on to

17   explain that "[t]he most obvious way this is done is through publication, so that no secret

18   remains."  *Id.*  Relying on this case, Boeing argued in its motion *in limine* that "[t]he value of a

19   trade secret is an improper measure of damages unless the trade secret 'has been destroyed

20   through a public disclosure by the defendant.'"  Dkt. 495 at 16.  In its opposition, Zunum

21   explained that that is not what that case (or any other case) says.  Dkt. 540 at 17–18.

22        At the Pretrial Conference, the Court rejected Boeing's position, stating that Boeing's

23   cases do not "███████████████████████████████████████████████████████████

24   ███████████████████████████████████████████████████████████████

25   ███████."  Ex. 1 (PTC Tr.) at 31:4–9.  The caselaw supports the Court's conclusion.  *See, e.g.*,

     *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792, 812 (2d Cir.

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1   2023) (explaining destruction of trade secret value can occur through competition by defendant);

2   *LexMac Energy, L.P. v. Macquarie Bank Ltd.*, 2014 WL 12669718, at *32 (D.N.D. Feb. 19,

3   2014) ("the Plaintiffs suffered actual loss in the value of the trade secrets" because "[t]he actions

4   taken by [defendants] effectively precluded [plaintiffs] from" utilizing their trade secrets and

5   "consequently caused them to lose the value of the trade secrets."). Zunum alleges that Boeing

6   destroyed Zunum as a business entity, and thereby destroyed the value of its Trade Secrets by

7   precluding it from monetizing its Trade Secrets. *See* Dkt. 424 at 9. That theory of damages is

8   well supported in law. *E.g.*, *LexMac Energy, L.P.*, 2014 WL 12669718, at *32, *38–39

9   (allowing recovery for value of trade secrets both as "actual loss" and under a theory of unjust

10  enrichment).

11          **B.      Whether The Trade Secrets Retain Trade Secret Status Today Is Irrelevant**

12          Zunum claims that it developed 19 trade secrets before the end of 2018; disclosed these

13  trade secrets to Boeing between 2016 and 2018; and that Boeing misappropriated them between

14  2016 and 2018. Thus, for purposes of Zunum's liability case, it intends to prove that all 19 of

15  those trade secrets existed and qualified as "trade secrets" under WUTSA between 2016 and

16  2018, and that they were misappropriated. *See* Dkt. 560 at 10–12 (court ruling on summary

17  judgment rejecting Boeing arguments predicated on Zunum's purported continued development

18  of trade secrets). Boeing has continued to make conflicting arguments regarding the status of

19  Zunum's trade secrets today, based on responses to an interrogatory. *See supra* at 1–5; Ex. 1

20  (PTC Tr). at 22:4–9. As Boeing may continue to do so, Zunum wishes to place that question in

21  the proper context.

22          Given Zunum's claim, no element of Zunum's liability case depends on whether *any* of

23  those retain "trade secret status" at the time of trial. "[A] jury's determination that [a defendant]

24  misappropriated [the plaintiff's] trade secrets . . . require[s] only a finding that the trade secrets

25  were in fact secret at the moment when they were misappropriated." *Brocade Comms. Sys., Inc.*

    *v. A10 Networks, Inc.*, 2013 WL 890126, at *2 (N.D. Cal. Jan. 23, 2013). Zunum alleges that it

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

had 19 trade secrets between 2016 and 2018, which it disclosed to Boeing during this time frame.
Dkt. 429 ¶ 3–11; Dkt. 477 ¶ 12; Dkt. 560 at 11 ("Zunum adequately identifies its trade secrets by
reference to information developed and disclosed to Boeing between 2016 and 2018").  Zunum
alleges that Boeing misappropriated Zunum's Trade Secrets during the same time frame, leading
to the destruction of Zunum's business by the end of 2018.  Dkt. 481 at 11.  "Zunum's requested
damages likewise stop at 2018."  Dkt. 421 at 11.  The Court "agree[d] with Zunum that a
reasonable factfinder could conclude that the Alleged Trade Secrets existed between 2016 and
2018".  Dkt. 560 at 10.  Because Zunum's entire trade secret misappropriation case is limited to
the close of 2018, the status of Zunum's Trade Secrets *today* is not relevant.  *Brocade Comms.*
*Sys., Inc.*, 2013 WL 890126, at *2; *cf.* Dkt. 560 at 12 (noting relevant inquiry for existence of
trade secrets is "whether the Alleged Trade Secrets existed as trade secrets at the time of the
alleged misappropriation"); *see also supra* at 1–5 (explaining that Zunum's recovery does not
depend on the status of Zunum's Trade Secrets today).

    Moreover, in this litigation, contrary to what Boeing says, Zunum has taken no position
on that question.  Boeing's Interrogatory No. 17 asked whether Zunum "contend[s] that the
alleged trade secret[s are] *currently* a trade secret as defined by the Washington Trade Secrets
Act."  Ex. 2 at 3 (emphasis added).  In its Supplemental Responses and Objections to Boeing's
Interrogatory No. 17, Zunum explained that it "does not 'contend,' or otherwise advance the
legal conclusion, that any of Trade Secrets 1–20 currently meets the elements of a 'trade secret'
under the Washington Uniform Trade Secrets Act," and that "[b]ecause Zunum does not intend
to support its claims against Boeing or its defenses with that legal contention, Zunum takes no
position on the legal question of whether each of the Trade Secrets continues to retain 'trade
secret status' today."  *Id.* at 5.  Nevertheless, and in compliance with the Court's order, Zunum
identified factual circumstances known to Zunum that may have led to one or more of its Trade
Secrets not being secret today, including Boeing's disclosure of Zunum's information to
"participants in the supply chain for HE aircraft and propulsion," "government agencies in the

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

US and beyond," "participants in academic community or consultancies," and "Boeing

employees who then left Boeing to participate in HE aerospace ventures."  *Id.*, Exhibit A.

Despite the irrelevance to Zunum's case whether its Trade Secrets retain that status today,

Boeing again stated at the pretrial conference that "███████████████████████████

███████████████████████████████████████" and "███████████████████████

███████████"  Ex. 1 (PTC Tr.) at 22:7–11.   It is not clear why Boeing expresses "███████

███████" as trade secret status today does not affect any legal or evidentiary issue in the case.

## C.    The "Improper Means" Prong of Zunum's Tortious Interference Claim Is Not
## Preempted by WUTSA.

In its Summary Judgment Order, the Court noted "a possible preemption issue" regarding

the "improper means" sub-element of Zunum's tortious interference claim, namely that it may be

preempted by Zunum's trade secret misappropriation claim under WUTSA.  Dkt. 560 at 23 n.7

(citing *Int'l Paper Co. v. Stuit*, 2012 WL 3527932, at *3 (W.D. Wash. Aug. 15, 2012)).[3]  Zunum

respectfully submits that Boeing has waived any preemption defense, and that even if it has not,

UTSA preemption is inapplicable to the claims in this case.

*First*, Boeing has waived any preemption defense by failing to assert it as an affirmative

defense in either its Answer or as part of its pretrial statement.  *See* Dkts. 118, 588.  The Ninth

Circuit has explained that preemption is an affirmative defense.  *Lusnak v. Bank of America,*

*N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018) ("Ordinarily, affirmative defenses such as

preemption may not be raised on a motion to dismiss except when the defense raises no disputed

issues of fact"); *cf. Durnford v. MusclePharm Corp.*, 907 F.3d 595, 603 n.8 (9th Cir. 2018)

---

[3] As the Court has recognized in its Summary Judgment Order and *Int'l Paper Co.*, the "possible preemption issue" does not extend to other elements of Zunum's tortious interference claim, including the "improper purpose" sub-element.  *See* Dkt. 560 at 23 n.7 (noting that "Zunum may sustain its tortious interference claim by establishing that Boeing acted with an 'improper purpose'" notwithstanding the "possible preemption issue"); *compare Int'l Paper Co.*, 2012 WL 3527932, at *3 (denying motion to dismiss tortious interference claim where plaintiff "alleges that the fourth element is satisfied by the improper purpose of acting 'maliciously,' that is, with an intent to harm") *with* Dkt. 481 at 58 ("A jury could find that Boeing acted to drive Zunum out of business to avoid an innovative challenge to Boeing's core market and gain a competitive advantage with Zunum's Trade Secrets.").

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1   ("[A]ll federal preemption[] is an affirmative defense"). A "defendant's failure to raise an

2   'affirmative defense' in his answer effects a waiver of that defense," *Wakefield v. ViSalus, Inc.*,

3   51 F.4th 1109, 1118–19 (9th Cir. 2022), as is the case if it is "not raised in the pretrial order or

4   prior to trial," *Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*, 841 F.2d 918, 924 (9th

5   Cir. 1988).

6         Here, Boeing failed to raise the defense as part of its Answer or in its pretrial statement,

7   which was filed *after* the Court issued its Summary Judgment Order identifying this "possible

8   preemption issue." Dkt. 560 at 23 n.7. If Boeing was not aware of the preemption provision

9   based on the statute the parties have been litigating since the inception of this case, then it

10  certainly was on notice following the Court's Order. Boeing thus affirmatively waived the

11  preemption defense by "intentional[ly] relinquish[ing] or abandon[ing] [] a known right."

12  *Contreras v. City of Los Angeles*, 2012 WL 12886488, at *2 (C.D. Cal. June 22, 2012).

13        ***Second***, waiver aside, UTSA does not preempt any part of Zunum's tortious interference

14  claim here. As this Court has recognized, Washington applies the "elements analysis for

15  preemption," under which "a common law claim is not preempted if the elements require some

16  allegation or factual showing beyond those required under UTSA." *Bombardier Inc. v.*

17  *Mitsubishi Aircraft Corp.*, 383 F. Supp. 1169, 1195–96 (W.D. Wash. 2019) (citing *SEIU*

18  *Healthcare N.W. Training P'ship v. Evergreen Freedom Found.*, 427 P.3d 688, 694–95 (Wash.

19  Ct. App. 2018), *review denied sub nom.* 192 Wash.2d 1025, 435 P.3d 275 (2019)); *Boeing Co. v.*

20  *Sierracin Corp.,* 738 P.2d 665, 674 (1987) (no preemption under UTSA, because the

21  requirements of claims under UTSA and for breach of confidentiality, not the facts underlying

22  the claims, are different); *Modumetal, Inc. v. Xtalic Corp.*, 4 Wash. App. 2d 810, 830–31 (Wash.

23  Ct. App. 2018) (applying the element analysis for preemption under UTSA based on *Boeing*).

24        Here, no element of tortious interference overlaps with the elements of UTSA, nor is

25  tortious interference "founded on a law 'regarding civil liability for misappropriation." *SEIU*

    *Healthcare*, 427 P.3d at 508 (quoting *Boeing*, 738 P.3d at 673 ("[UTSA] merely displaces

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    conflicting tort, restitutionary and other law regarding civil liability for misappropriation.")).

2    Thus, UTSA does not preempt the tortious interference claim under Washington law.  *Id.*

3           This case is unlike *Convoyant LLC v. DeepThink, LLC*, which "involve[d] claims brought

4    under both Washington and Utah law, and [defendant] argue[d] for preemption of the

5    Washington claims under the WUTSA and the Utah claims under the UUTSA."  2021 WL

6    5810638, at \*6–8 (W.D. Wash. Dec. 7, 2021).  Because Utah courts apply a fact-based approach

7    to preemption, an approach expressly rejected by Washington appellate courts, the Court had to

8    wrestle with the prospect of "[a]pplying two different tests to determine [preemption]," "tests

9    that may very well yield different results."  *Id.* at \*7.  Here, Zunum has only brought an UTSA

10   claim under Washington law, from which its tortious interference claim also derives.  Thus, the

11   preemption analysis is akin to "*Bombardier and Inteum* [which] involved only Washington

12   claims and preemption under WUTSA," *id.*, both of which applied the elements analysis.

13   *Bombardier*, 383 F. Supp 3d at 1196; *Inteum Co., LLC v. Nat'l Univ. of Singapore*, 371 F. Supp.

14   3d 864, 871–72 (W.D. Wash. 2019).  As Washington courts reject the fact-based approach, there

15   is no applicable preemption defense.

16          ***Third***, even under the fact-based approach to preemption endorsed by other states,

17   Zunum's factual basis for alleging "improper means" is different from its UTSA claim—and

18   thus not preempted.  Under a fact-based preemption approach, courts "(1) assess the facts that

19   support the plaintiff's civil claim; (2) ask whether those facts are the same as those that support

20   the plaintiff's UTSA claim; and (3) hold that the UTSA preempts liability on the civil claim

21   unless the common law claim is factually independent from the UTSA claim."  *Thola v.*

22   *Henschell*, 140 Wash. App. 70, 82 (Wash. Ct. App. 2007).

23          The main thrust of Zunum's "improper means" argument is premised on Boeing holding

24   itself out as a potential competitor to Zunum in the HE market to Zunum's potential investors

25   and business partners, while simultaneously wearing a façade of a supportive lead investor, thus

     sending conflicting signals about its investment interest.  *See* Dkt. 481 at 26–28, 58.  While "[a]t

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1  least some of [Zunum's] allegations regarding an improper [means] overlap with the facts 'that

2  support the plaintiff's UTSA claim" (namely, because Zunum claims Boeing "us[ed] Zunum's

3  proprietary information" to support these improper efforts, Dkt. 58), the bulk of Zunum's factual

4  underpinnings—that Boeing misused its status as a lead investor in Zunum to furtively apply

5  financial and market pressure to Zunum's business expectancies, thereby preventing the

6  consummation of any beneficial relationship with Zunum, Dkt. 381 at 26–28, 58—provides "a

7  set of facts [Zunum] could [plausibly] rely on to prove its tortious interference claim that is

8  wholly independent of those it will rely on to prove trade secret misappropriation." *A.H.*

9  *Lundberg Assocs., Inc. v. TSI, Inc.*, 2016 WL 9226998, at *6 (W.D. Wash. Feb. 18, 2016)

10 (citations omitted and alterations other than "Zunum" in original).

11 **II.    Jury Instructions**

12     **A.    Boeing Takes Positions in Its Proposed Jury Instructions That Are Inconsistent**

13         **with This Court's Ruling on Summary Judgment.**

14     In its proposed jury instructions, Boeing has taken positions inconsistent with this Court's

15 Summary Judgment Order, in which the Court considered the parties' contentions and set forth

16 certain legal principles that will guide the case.  *See generally* Dkt. 560.  Boeing's positions are

17 contrary to the law of the case and, given the possibility these will become disputed issues for the

18 Court during trial, are outlined below.  *See*, *e.g.*, Dkt. 540 at 2.  Although Boeing may simply be

19 trying to preserve issues for appeal, Boeing's approach suggests that it will continue to make

20 arguments to the jury that deviate from the law, highlighting the need for the Court to instruct the

21 jury with respect to these matters, in a manner that is consistent with this Court's Summary

22 Judgment Order.

23     The law of the case doctrine "posits that when a court decides upon a rule of law, that

24 decision should continue to govern the same issues in subsequent stages in the same case."

25 *Pepper v. U.S.*, 562 U.S. 476, 506 (2011).  Thus, "a court is ordinarily precluded from

reexamining an issue previously decided by the same court, or a higher court, in the same case,"

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

and applies when "the issue in question . . .was 'decided explicitly or by necessary implication in [the] previous disposition.'" *U.S. v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012); *U.S. v. Phillips*, 367 F.3d 846, 856 (9th Cir. May 6, 2004) ("Issues that a district court determines during pretrial motions become law of the case."). The doctrine exists to "aid the efficient operation of court affairs and maintain consistency during the course of a single lawsuit," *Alexander & Baldwin, Inc. v. C&H Sugar Co.*, 2010 WL 11508374, at *7 (C.D. Cal. Apr. 21, 2010) (cleaned up).

Given the legal and factual arguments Boeing has made in this case, Zunum has proposed certain jury instructions that adhere to the Court's ruling on summary judgment, including Jury Instruction Nos. 36, 53 and 54. The below table depicts side-by-side the relevant portions of Zunum's proposed jury instructions at issue, on the one hand, and the statement of law from the Court's Summary Judgment Order, on the other:

| Zunum's Proposed Jury Instructions | Court's Summary Judgment Order |
|---|---|
| No. 36: "To establish misappropriation, trade secret plaintiffs must often rely on circumstantial evidence. Such circumstantial evidence may include testimony or evidence concerning: (1) the speed by which the defendant developed a competing product; (2) the defendant's access to the trade secret combined with the similarity of the defendant's competing product; (3) the defendant's 'derivation' of a product using the secret; (4) the defendant's intent to misappropriate the secret; . . ." Dkt. 610 at 29. | Court's Order: "To establish misappropriation, trade secret plaintiffs must often 'construct a web of perhaps ambiguous circumstantial evidence from which the trier of fact may draw inferences which convince him that it is more probable than not that what plaintiffs allege happened did in fact take place.' Such circumstantial evidence may include testimony concerning 'the speed by which the defendant developed a competing product,' "the defendant's access to the trade secret combined with the similarity of the defendant's competing product,' 'the defendant's 'derivation' of a product using the secret," and "the defendant's intent to misappropriate the secret.'" Dkt. 560 at 13–14 (citations omitted). |

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

| Zunum's Proposed Jury Instructions | Court's Summary Judgment Order |
|---|---|
| <u>No. 53</u>:  "Interference with a business expectancy is intentional if the actor desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.<br><br>This element concerns only whether the defendant had the intent to do the interfering act. It does not matter whether or not the defendant interfered in good faith." Dkt. 610 at 86. | <u>Court's Order</u>:  "'A party intentionally interferes with a business expectancy if it 'desires to bring it about or if he knows that the interference is certain or substantially certain to occur as a result of his action.' This element 'concerns only whether the defendant had the intent to do the interfering act.' *Id.* The defendant's 'good faith' 'does not matter.' *Id.*" Dkt. 560 at 22 (citations omitted). |
| <u>No. 54</u>:  "[Interference alone is not enough. Zunum must also show that Boeing acted with an improper purpose or through improper means, but both are not required.]<br><br>'Interference for improper purpose' is interference with an intent to harm Zunum.  [A defendant acts with an improper purpose by harming, competing with, or diverting funds from the plaintiff.  By way of example, if you find that Boeing acted to deprive Zunum of business opportunities with its competitors or to gain a competitive advantage in the marketplace with exclusive access to Zunum's proprietary technology, then you must find that Boeing acted with an improper purpose. Evidence that Boeing was not forthright about its motives may also support a finding of improper purpose.]<br><br>'Interference by improper means' is interference that violates a statute, a regulation, a recognized rule of common law, or an established standard of the trade or profession. [Improper means may include trade secret | <u>Court's Order</u>:  "'Interference alone is not enough.' The plaintiff must show that the defendant acted with an 'improper purpose' or via 'improper means.' The defendant acts with an 'improper purpose' by 'harm[ing],' 'competi[ng]' with, or 'divert[ing]' funds from the plaintiff. *Id.* 'Improper means,' however, 'requires a violation of a 'statute, regulation, common law rule, or professional standard.'" *Id.*<br><br>Zunum has produced sufficient evidence that Boeing acted with an improper purpose to survive summary judgment. A reasonable juror could find that Boeing acted to deprive Zunum of business opportunities with its competitors or to gain a competitive advantage in the marketplace with exclusive access to Zunum's proprietary technology." Dkt. 560 at 24 (citations omitted). |

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

| Zunum's Proposed Jury Instructions | Court's Summary Judgment Order |
|---|---|
| misappropriation and/or breach of contract.']" Dkt. 610 at 88. | |

Zunum's proposed instructions should be included because they track the legal principles this Court stated in denying summary judgment to Boeing.[4]

Boeing objects to these instructions that track the Court's decision on summary judgment, including because, for example, "Zunum's proposal . . . improperly lists 'circumstantial evidence'" (No. 36) or it "does not cite any authority for its proposition that 'good faith' 'does not matter'" (No. 53).  But Boeing fails to appreciate that these are "not only [] correct statement[s] of law; [they are] law of the case."  *In re Albert-Sheridan*, 2024 WL 1401289, at *18 (9th Cir. Bank. App. Apr. 2, 2024).  Because the "court decide[d] upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Pepper v. U.S.*, 562 U.S. 476, 506 (2011).

## B.    Boeing Newly and Inconsistently Seeks To Draw A Distinction Between The Boeing Company and HorizonX Ventures, LLC

Boeing's jury instruction and verdict sheet also appear to draw distinctions between The Boeing Company and Boeing HorizonX Ventures, LLC ("HorizonX").  The Court should reject Boeing's new attempt to distinguish between the two defendants for the first time on the eve of trial.

***First***, distinguishing between The Boeing Company and HorizonX would impermissibly conflict with the claims and defenses stipulated by the parties' Pretrial Order.  *U.S. v. First Nat. Bank of Circle*, 652 F.2d 882, 886 (9th Cir. 1981) ("[Parties may not] offer evidence or advance

---

[4] There are additional examples that, though less stark, appear at odds with this Court's order on summary judgment. *Compare* Dkt. 610 at 52 (Instruction No. 42 (Proximate Cause)), *with* Dkt. 560 at 25 (rejecting Boeing's position that Zunum "cannot show that Boeing's alleged conduct was a 'proximate cause' of Zunum's harm because many factors unrelated to Boeing caused Zunum's late-2018 funding crisis") (cleaned up); *compare* Dkt. 610 at 72 (Instruction No. 49 (Contractual Duties)), *with* Dkt. 560 at 2 ("Under the 2016 PIA, Boeing agreed to 'preserve in confidence, not disclose to others, and not use (except for [certain limited purposes]) any and all Proprietary Information.'"), 16 (describing the relevant contractual duties under the 2016 PIA, 2017 IRL, and 2018 IRL).

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    theories at the trial which are not included in the order or which contradict its terms.  Disregard

2    of these principles would bring back the days of trial by ambush and discourage timely

3    preparation by the parties for trial.").  In the parties' Pretrial Order, Boeing clarified that the

4    Order was jointly submitted by "Defendant the Boeing Company and Boeing HorizonX

5    Ventures, LLC (together, 'Boeing,' and with Zunum, the 'Parties')."  Dkt 588 at 1.  Notably,

6    Boeing chose to litigate as one "Defendant", not "Defendant**s**".  Moreover, in the "Claims and

7    Defenses" section of the Pretrial Order, Boeing referred only to "Boeing", and never to

8    "HorizonX".  *Id.* at 2–6.  Specifically, Boeing stated: "Boeing claims that under the 2018 Loan

9    Agreements, Boeing loaned Zunum $4 million and Zunum gave Boeing a convertible promissory

10   note for that amount…." *Id.* at 6.  But it was technically only HorizonX, not "Boeing" (which, is

11   defined as Boeing *and* HorizonX), who loaned Zunum that money.  The Pretrial Order is

12   binding, and "Boeing"—that is, per Boeing's own definition, The Boeing Company and

13   HorizonX together—must, together, defend against Zunum's claims.  *See Duhn Oil Tool, Inc. v.*

14   *Cooper Cameron Corp.*, 818 F. Supp. 2d 1193, 1207 (E.D. Cal. 2011), *on reconsideration in*

15   *part*, 2012 WL 13040409 (E.D. Cal. May 7, 2012) ("A final pretrial order supersedes all prior

16   pleadings and controls the subsequent course and scope of the action.  Claims, issues, defenses,

17   or theories of damages not included in the pretrial order are waived even if they appeared in the

18   complaint, and conversely, the inclusion of a claim in the pretrial order is deemed to amend any

19   previous pleadings which did not include that claim.").

20        ***Second***, consistent with its binding position in the Pretrial Order, Boeing has litigated as

21   one defendant throughout this litigation, from its Answer (Dkt. 118 (answering throughout as

22   "Boeing")) onwards.  Indeed, multiple times during discovery, Zunum noted Boeing's decision

23   to litigate as one entity, and Boeing's prior counsel recommitted to that decision, responding that

24   it represented only "Boeing."[5]  Moreover, during the parties' May 3, 2024 meet-and-confer,

25   
---
[5] *See, e.g.* Dkt. 221 (Letter from Heidlage to Healey) (December 12, 2022) ("Finally, we note that Boeing's
discovery correspondence has been specified as 'on behalf of The Boeing Company.' Please confirm that your
document productions and discovery responses and correspondence to date has been on behalf of both Boeing and

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1  counsel for Zunum sought clarity as to whether Boeing's position had changed and whether there

2  is any meaningful distinction between the entities.  *See* Baigent Decl. ¶ 4.  In response, counsel

3  for Boeing acknowledged that there is "no meaningful difference" between the entities to be

4  newly disclosed.  *See id*.

5         ***Third***, Boeing's witnesses, including the "███████████" of HorizonX and those

6  "███████████" likewise indicated repeatedly that The Boeing Company and HorizonX

7  operated as a single entity. Ex. 4 (Fernandes Tr.) at 14:19–23, 16:16–17:13 ("██████████

8  ██████████"); Ex. 5 (Norlund Tr.) at 37:23–38:24 (██████████████████████

9  ████████████████████████████████████████████

10  ██████); Ex. 6 (Jones Tr.) at 16:14–17:9 (████████████████████████

11  ██████).

12         Thus, Boeing's late attempt to introduce different verdict form questions and jury

13  instructions as to The Boeing Company and HorizonX is legally improper and would inevitably

14  confuse the jury by introducing a distinction among the defendants that was never previously

15  introduced at any point in the proceedings.  Moreover, such a last-minute reframing of the case

16  would prejudice Zunum, which could have pursued discovery and deposition questions to isolate

17  distinctions and attributions of action and authority among the two defendants if Boeing had not

18  represented, expressly and through its actions, that it was defending the case on a unified basis.

19         **C.    Boeing Seeks To Include An Improper Jury Instruction on Zunum's "Bad Faith."**

20         Boeing has also requested a jury instruction on Zunum's "bad faith" in bringing its trade

21  secrets misappropriation claims under WUTSA.  Dkt. 610 at 91 (Instruction No. 55; citing RCW

22  19.109.040).  The Court should reject the instruction, which purports to provide an instruction

23  ───────────────────

   its co-defendant, Boeing HorizonX Ventures, LLC ("HorizonX"), and that neither defendant has withheld

24  information or documents within its possession, custody or control on the basis that the information is known or the
   documents are held by individuals affiliated with defendants' subsidiaries or business divisions…"); *see also* Ex. 3
   Letter from Healey to Heidlage (January 18, 2023) ("I write on behalf of The Boeing Company ("Boeing") to

25  respond to your January 9, 2023 letter….As we informed Zunum's prior counsel, Boeing has not withheld
   documents or discovery responses on the basis that HorizonX is a separately organized entity.").

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1   for an issue that the jury should not be tasked with deciding.

2          The applicable WUTSA provision—which permits recovery of attorney's fees by "the

3   prevailing party" "[i]f a claim of misappropriation is made in bad faith," RCW 19.109.040—

4   kicks in only if Boeing "prevail[s] on [the] trade secret claims," at which point "the *trial court* is

5   entitled to award attorney fees under the UTSA." *See Guidance Residential, LLC v. Mangrio*,

6   2916 WL 6452421, at *10 (Wash. App. Dec. 18, 2017) (emphasis added); *Thola*, 140 Wash. App

7   at 89 ("[U]nder the UTSA, the *trial court* has authority to award damages and attorney fees.")

8   (emphasis added); *RJB Wholesale, Inc. v. Castleberry*, 788 F. App'x 565, 566 (9th Cir. 2019) ("If

9   a claim of misappropriation is made in bad faith, *the court* may award reasonable attorney's fees

10  to the prevailing party.") (emphasis added); *see also Dave Johnson Ins., Inc. v. Wright*, 167

11  Wash. App. 758, 784 (2012) ("bad faith" is an "equitable ground[] for awards of attorney's

12  fees").

13         Thus, Boeing's proposed jury instruction is irrelevant.  If Boeing prevails on the

14  misappropriation claims, it may properly bring the claim for the Court's consideration in a Rule

15  54(d)(2) motion.  *Copart, Inc. v. Sparta Consulting, Inc.*, 339 F. Supp. 3d 959 (E.D. Cal. 2018)

16  (noting award of fees for bringing misappropriation claims in bad faith under CUTSA "is not an

17  element of damages that must be proven at trial, but rather is a sanction that may be used in the

18  discretion of trial courts to deter parties who have brought bad faith misappropriation claims.

19  Hence, the claim must be brought by a motion pursuant to Rule 54(d)(2).").  However, the jury

20  instruction on Zunum's bad faith, or any evidence regarding the basis for Zunum's claims at

21  various points in trial, will serve as nothing but a distracting side show regarding an issue that is

22  not for the jury to decide.  *Cf. U.S. ex rel. Savage v. CH2M Hill Plateau Remediation Co.,* 2021

23  WL 802125, at *2 (E.D. Wash. Jan. 11, 2021) (precluding defendant "from informing the jury

24  that the FCA provides for civil penalties, damage multipliers, and payment by [defendant] of

25  [plaintiff's] reasonable expenses, attorney's fees and costs" because "[t]he award of attorneys'

    fees is a matter of law for the Court, and not the jury to decide.").

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    III.    **Evidentiary Issues**

2        A.    **Party-Opponent Admissions Are Not Hearsay and Do Not Require Personal**

3            **Knowledge**

4        Zunum plans to introduce at trial several pieces of evidence constituting Boeing's party-

5    opponent statements; these are admissible under Federal Rule of Evidence 801(d)(2).  Based on

6    objections made by Boeing to trial exhibits and (since withdrawn) deposition designations, it

7    appears Boeing does not agree.  Zunum thus submits in advance of trial certain legal principles

8    that govern opposing party statements, namely that such statements are neither hearsay nor

9    subject to the personal knowledge requirement of Federal Rule of Evidence 602.

10        The Advisory Committee's notes to 1972 amendment to the Federal Rule of Evidence

11    801 explains:

12            Admissions by a party-opponent are excluded from the category of
              hearsay on the theory that their admissibility in evidence is the
13            result of the adversary system rather than satisfaction of the
              conditions of the hearsay rule. No guarantee of trustworthiness is
14            required in the case of an admission. The freedom which
              admissions have enjoyed from technical demands of searching for
15            an assurance of trustworthiness in some against-interest
              circumstance, and from the restrictive influences of the opinion
16            rule and the rule requiring firsthand knowledge, when taken with
              the apparently prevalent satisfaction with the results, calls for
17            generous treatment of this avenue to admissibility.

18        Under this generous treatment, Courts have held that "[d]ocuments that bear [a party's]

19    trade names, logos, and trademarks are statements by [the party] itself" that are not subject to the

20    hearsay rule when used against that party, as are emails sent from "corporate email addresses" or

21    sent by "individuals serv[ing] as its corporate officers or employees during the relevant time

22    period."  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 973-74

23    (C.D. Cal. Sept. 27, 2006); *Sims v. Lakeside School*, 2007 WL 4219347, at *2–3 (W.D. Wash.

24    Nov. 28, 2007); *Adams v. U.S.*, 2009 WL 1884387, at *1 (D. Ida. June 28, 2009).  The party-

25    admission exception to the hearsay rule likewise applies to vicarious statements under FRE

      801(d)(2), including "emails that are forwarded or incorporated into an email chain."  *U.S.*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1  *Wholesale Outlet & Distrib., Inc. v. Innovation Ventures, LLC,* 2019 WL 8504725, at *2 (C.D.

2  Cal. Aug. 7, 2019); *Transbay Auto. Serv., Inc. v. Chevron USA Inc.*, 807 F.3d 1113, 1120–21

3  (9th Cir. 2015) (Ninth Circuit adopts "'possession plus' standard as it pertains to documents—we

4  do not look to whether the party has affirmatively reviewed the document, but whether 'the

5  surrounding circumstances tie the possessor and the document together in some meaningful

6  way'").

7        Courts have also reiterated that party-opponent statements "enjoy freedom from the rule

8  requiring firsthand knowledge," *United States v. Pac. Gas & Elec. Co.*, 2016 WL 3903384, at

9  *5–6 (N.D. Cal. July 19, 2016) (cleaned up); *Wilson v. City of Los Angeles*, 2020 WL 7711836,

10  at *9 (C.D. Cal. July 20, 2020) (admissibility for party admissions under 801(D)(2) "is not

11  restricted by either the personal-knowledge requirement of Fed. R. Evid. 602 or the opinion rule

12  of Fed. R. Evid. 701"); *see also Rearden LLC v. Crystal Dynamics, Inc.*, 2019 WL 8275254, at

13  *5 (N.D. Cal. July 12, 2019) (witness's "stated lack of personal knowledge would not bar

14  [plaintiff] from introducing these statements at trial …"); *Mahlandt v. Wild Canid Survival &*

15  *Research Ctr., Inc.*, 588 F.2d 626, 630-31 (8th Cir. 1978) (no "implied requirement that the

16  declarant have personal knowledge of the facts underlying [the party-opponent] statement");

17  *BDG Gotham Residential, LLC v. Western Waterproofing Co., Inc.*, 631 F. Supp. 3d 76, 85–86

18  (S.D.N.Y. Sept. 27, 2022) ("Western argues that it did not have direct knowledge of the

19  investigation's findings, and so could not have admitted them. . . Western's argument that it

20  could not have adopted these statements because it lacked first-hand knowledge of them can be

21  quickly dismissed.  Party admissions generally do not require firsthand knowledge").

22        This is especially so in the context of corporate parties, because party-opponent

23  statements are "offered to show the institutional knowledge of the [party]," not an agent's

24  personal knowledge.  *Adams v. U.S.*, 2009 WL 1922250, at *3–4 (D. Ida. June 30, 2009); *see*

25  *also Lexington Ins. Co. v. Western Pennsylvania Hosp.*, 423 F.3d 318, 330 n.7 (3d Cir. 2005)

("Although we do not know how this employee gathered the information reflected on the HPL

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1 Create Sheet, or whether he or she had personal knowledge supporting the information, *see* Fed.

2 R. Evid. 602, these are not requirements for admissibility under Rule 801(d)(2)(D).”); *Jones v.*

3 *National American University*, 2009 WL 2005306, at *3 (D.S.D. July 8, 2009) (“Here, trial

4 exhibit 2 is admissible as an admission by a party opponent, because the job posting was a

5 statement made by NAU. It is immaterial that no NAU employee or agent testified that trial

6 exhibit 2 was the actual job posting for the Director of Admissions position because the

7 requirements of foundation, trustworthiness, and personal knowledge are inapplicable to

8 admissions.”).

9        Thus, Zunum is free to enter Boeing statements, including statements reflected in Boeing

10 emails, as party admissions, regardless of the personal knowledge of the email’s author.

11        **B.**    **Irrelevant Documents Concerning Retention of Counsel and Litigation Funding**

12        After the deadline for motions *in limine* passed (on April 4, 2024), Boeing served its

13 exhibit list (on April 5).  Boeing’s exhibit list contains several documents that seem to concern

14 only Zunum’s financing of this litigation, or its retention of counsel to prosecute this case.[6]  The

15 inclusion of these documents and jury instruction suggest that Boeing intends to introduce

16 evidence concerning Zunum’s efforts to retain counsel and prosecute this case, as well as the

17 economic terms of any such retention or related finance.[7]  Zunum is mindful of the Court’s

18 direction that a trial brief should not include motions; we provide below legal context for

19 objections we anticipate making at trial should Boeing try offer any evidence—through

20 documents or questioning of witnesses—concerning Zunum’s efforts to fund and prosecute this

21 case.

22        Evidence concerning Zunum’s counsel-retention and litigation funding efforts is

23 irrelevant to the case and are thus inadmissible under Fed. R. Evidence 402.  “[C]ourts across the

24 country that have addressed the issue have held that litigation funding information is generally

25

[6] *E.g.*, Exhibits A-1415; A-1418; A-1420; and A-1437.
[7] Boeing’s intent to introduce this evidence is further confirmed by its proposed jury instructions on Zunum’s “bad faith” in bringing its misappropriation claims.  *See supra* at 15-16.

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    irrelevant to proving the claims and defenses in a case." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D.

2    306, 312 (D. Nev. 2019) (quoting *Fulton v. Foley*, 2019 WL 6609298, at *2 (N.D. Ill. Dec. 5,

3    2019)).  Further, "[e]vidence about how [a] Plaintiff retained counsel is irrelevant and therefore

4    inadmissible." *Rheinfrank v. Abbott Lab'ys, Inc.*, 2015 WL 5258858, at *11 (S.D. Ohio Sept. 10,

5    2015).  Moreover, any "probative and impeachment value" of such irrelevant evidence "is

6    substantially outweighed by the danger of unfair prejudice and confusion of the issues," and

7    should be independently "excluded under Federal Rule of Evidence 403." *Gordon v. Rowley*,

8    2021 WL 5150073, at *2 (M.D. Ga. Nov. 4, 2021); *MGI Digital Tech., S.A. v. Duplo U.S.A.*

9    *Corp.*, 2024 WL 655481, at *8 (C.D. Cal. Jan. 26, 2024).

10           Should Boeing seek to admit either evidence, questioning, or argument on these subjects,

11   Zunum intends to object, relying on the authorities set forth herein.  *Pace v. Nat'l Union Fire*

12   *Ins. Co. of Pittsburgh,* 2015 WL 11199154, at *3 (N.D. Ga. Feb. 3, 2015) (granting plaintiffs'

13   motion to exclude reference as to when, why, or how plaintiff retained counsel to represent him

14   as irrelevant and inadmissible under Rule 402).

15           **C.    Evidence Concerning Boeing's "Second Wave" Dissemination**

16           Finally, Zunum will seek to introduce evidence of Boeing's dissemination of Zunum's

17   confidential information beyond a "first wave" of recipients.  As the Court will recall, Zunum

18   moved to compel Boeing to supplement certain of its interrogatory responses to identify all

19   employees who accessed Zunum's confidential documents. Dkt. 145.  In "an attempt to reach a

20   middle ground," the Court ordered on November 13, 2023—"[i]n light of evidence that Boeing

21   employees internally disseminated Zunum's proprietary information in potential violation of an

22   NDA"—that Boeing had to identify, out of a list of five individuals and twenty documents

23   selected by Zunum, "which of the five employees, if any, had access to one or more of the 20

24   documents, and which documents they had access to."  Dkt. 187 at 12.  As this Court made clear,

25   "[i]f the results show that Boeing did in fact disseminate Zunum's confidential information

     beyond a 'first wave' of recipients, Zunum may be permitted to present that fact at trial."  *Id.*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1     Boeing confirmed on January 11, 2023 that one of the five individuals selected by Zunum

2 received one of the twenty documents selected by Zunum.  *See* Ex. 7 at 1–2.  In accordance with

3 the Court's November 2023 Order, Zunum seeks to "present that fact at trial."  Dkt. 187 at 12.

4 However, Boeing has so far refused to agree to any stipulation concerning this fact; nor has it

5 thus far agreed to supplement its interrogatory response to account for this second-wave

6 dissemination.  To the extent Boeing continues to resist Zunum's presentation of this fact at trial,

7 Zunum expects it will move the Court to enforce Boeing's compliance with its Order.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

DATED this 10th day of May, 2024

/s/ Scott M. Danner
Scott Danner, NY Bar #4853016
(admitted *pro hac vice*)
Brian T. Goldman, NY Bar #5616891
(admitted *pro hac vice*)
Charlotte Baigent, NY Bar #5979224
(admitted *pro hac vice*)
**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue
New York, NY 10017
(646) 837-5151
Email: sdanner@hsgllp.com
bgoldman@hsgllp.com
cbaigent@hsgllp.com

/s/ Steven W. Fogg
Steven W. Fogg, WSBA #23528
**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, WA 98104
(206) 625-8600
Email: sfogg@corrcronin.com

***Attorneys for Plaintiff***
***Zunum Aero, Inc.***

*PLAINTIFF'S TRIAL BRIEF- 22*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2024 I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

DATED: May 10, 2024

/s/ Scott M. Danner

Scott Danner, NY Bar #4853016
(admitted *pro hac vice*)
Brian T. Goldman, NY Bar #5616891
(admitted *pro hac vice*)
Charlotte Baigent, NY Bar #5979224
(admitted *pro hac vice*)
**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151
Email: sdanner@hsgllp.com

/s/ Steven W. Fogg

Steven W. Fogg, WSBA #23528
**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, WA 98104
(206) 625-8600
Email: sfogg@corrcronin.com

***Attorneys for Plaintiff***
***Zunum Aero, Inc.***

*PLAINTIFF'S TRIAL BRIEF- 23*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151