1

2

3

4

5

6

7

8

The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   ZUNUM AERO, INC.,

10            Plaintiff,

11  v.

12  THE BOEING COMPANY; BOEING
    HORIZONX VENTURES, LLC,

13            Defendants.

14

Case No. 2:21-cv-00896-JLR

**PLAINTIFF ZUNUM AERO, INC'S
MOTION FOR POST-TRIAL RELIEF**

**NOTE ON MOTION CALENDAR**

**July 5, 2024**

**Oral Argument Requested**

15

16

17

18

19

20

21

22

23

24

25

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1
2

**TABLE OF CONTENTS**

I.    Introduction & Background .................................................................................. 1

II.   Boeing Should Be Ordered to Pay $92.79 million in Ordinary Damages ............................. 2

III.  The Court Should Award Zunum Prejudgment Interest On The IRL Claim ......................... 4

IV.   The Court Should Award Zunum Exemplary Damages Under WUTSA ............................. 7

V.    The Court Should Award Zunum Attorneys' Fees ............................................. 15

   A.   Reasonable Hours. ................................................................................ 16

   B.   Reasonable Rate. ................................................................................. 18

   C.   Multiplier for HSG Fees .......................................................................... 21

VI.   The Court Should Award Zunum's Costs ........................................................ 22

VII.  The Court Should Award Postjudgment Interest ................................................. 24

VIII.   Conclusion ...................................................................................... 25

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1

2

**TABLE OF AUTHORITIES**

**Cases**

*A.H. Lundberg Assocs., Inc. v. TSI, Inc.*,
    Case No. C14-1160JLR (W.D. Wash. March 9, 2017) ........................................ passim

*ADA Motors, Inc. v. Butler*,
    7 Wash. App. 2d 53 (2018) .......................................................................... 22

*Alabama Aircraft Indus., Inc. v. Boeing Co.*,
    2022 WL 433457 (11th Cir. Feb. 14, 2022) ...................................................... 11

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    2014 WL 4745933 (N.D. Cal., Sept. 19, 2014) .................................................. 23

*Bloor v. Fritz*,
    143 Wash. App. 718 (Wash. Ct. App. 2008) ..................................................... 17

*Boeing Co. v. Sierracin Corp.*,
    108 Wash. 2d 38 (1987) ............................................................................. passim

*Bowers v. Transamerica Title Co.*,
    100 Wash.2d 581 (Wash. 1983) .......................................................... 16, 18, 21

*Brand v. Dep't of Labor & Indus.*,
    139 Wash. 2d 659 (Wash. 1999) ................................................................... 17

*Brandywine Smyrna, Inc. v. Millennium Builders, LLC*,
    34 A.3d 482 (Del. 2011) ........................................................................... 4, 5

*Broyles v. Thurston Cnty.*,
    147 Wash. App. 409 (2008) ......................................................................... 20

*Cerbert v. Kennedy*,
    2020 WL 3533364 (Wash. Ct. App. June 30, 2020) ............................................ 22

*CertiSign Holding, Inc. v. Kulikovsky*,
    2018 WL 2938311 (Del. Ch. June 7, 2018) ......................................................... 7

*Chuong Van Pham v. Seattle City Light*,
    159 Wash. 2d 527 (2007) ............................................................................ 17

*Clausen v. Icicle Seafoods, Inc.*,
    174 Wash. 2d 70 (2012) .............................................................................. 15

*Corbis v. InfoFlows and Steve Stone*,
    2009 WL 3866136 (Wash. Super. Nov. 02, 2009) ............................................... 15

*Corbrus, LLC v. 8th Bridge Cap., Inc.*,
    2022 WL 4239055 (C.D. Cal. Sept. 13, 2022) ..................................................... 5

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - iii*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

*Crawford Fitting Co. v. J.T. Gibbons, Inc.*,
  482 U.S. 437 (1987) ................................................................................................ 23

*Crest Inc. v. Costco Wholesale Corp.*,
  128 Wash. App. 760 (2005) ..................................................................................... 19

*Custom Choice Door LLC v. Compton*,
  2018 WL 8335431 (Wash. Super. Ct. Dec. 20, 2018 ............................................... 15

*Davis v. Cty. & Cnty. of San Francisco*,
  976 F.2d 1536 (9th Cir. 1992), *vacated in part on other grounds*,
  984 F.2d 345 (9th Cir. 1993) ................................................................................... 23

*Davis v. Mason Cnty.*,
  927 F.2d 1473 (9th Cir. 1991) ................................................................................. 23

*Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.*,
  177 A.3d 610 (Del. 2017) ........................................................................................... 5

*Dennings v. Clearwire Corp.*,
  2013 WL 1858797 (W.D. Wash. May 3, 2013), *aff'd* (9th Cir., Sept. 9, 2013) ....... 15

*DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*,
  2016 WL 631574 (W.D. Wash. Feb. 16, 2016) .......................................................... 3

*Eagle Grp., Inc. v. Pullen*,
  114 Wash. App. 409 (Wash. Ct. App. 2002) ........................................................... 23

*Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*,
  2023 WL 7002665, at *5 (D.D.C. Oct. 24, 2023) .................................................... 16

*Fiore v. PPG Indus., Inc.*,
  169 Wash. App. 325 (Wash. Ct. App. 2012) ........................................................... 17

*Fox v. Vice*,
  563 U.S. 826 (2011) ................................................................................................. 17

*Gordon v. Virtumundo, Inc.*,
  2007 WL 2253296 (W.D. Wash. Aug. 1, 2007) ...................................................... 23

*Grove v. Wells Fargo Fin. Cal.*,
  606 F.3d 577 (9th Cir. 2010) ................................................................................... 22

*Guidance Residential, LLC v. Mangrio*,
  1 Wash. App. 2d 1048 (2017) ............................................................................... 7, 8

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ....................................................................................... 23

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    *Hume v. Am. Disposal Co.*,
        124 Wash. 2d 656 (Wash. 1994)......................................................................... 17
2
3    *In re Heritage Bond Litig.*,
        2005 WL 1594389 (C.D. Cal. June 10, 2005) ................................................... 18
4    *In re Ikon Office Solutions, Inc., Securities Litig.*,
        194 F.R.D. 166 (E.D. Pa. 2000) ........................................................................ 18
5
6    *In re Nortel Networks Corp. Securities Litig.*,
        539 F.3d 129 (2d Cir. 2008)............................................................................... 18
7    *In re Worldcom, Inc. ERISA Litig.*,
        2005 WL 3107725 (S.D.N.Y. Nov. 21, 2005) .................................................. 18
8
9    *JW Gaming Dev., LLC v. James*,
        2020 WL 1667423 (N.D. Cal. Apr. 3, 2020) ..................................................... 5
10   *Kassa Ins. Servs.. v. Pugh*,
        180 Wash. App. 1051 (2014) ................................................................... 3, 14, 22
11
12   *Kingston v. IBM*,
        2021 WL 2662219 (W.D. Wash. June 29, 2021)............................................... 21
13   *Kreidler v. Pixler*,
        2011 WL 39054 (W.D. Wash. Jan. 3, 2011)..................................................... 21
14
15   *Lakoda, Inc. v. OMH Proscreen USA, Inc.*,
        2016 WL 4727421 (Wash. Ct. App. Sept. 8, 2016) .......................................... 17
16   *Martinez v. City of Tacoma*,
        81 Wash. App. 228(Wash. Ct. App. 1996) ....................................................... 17
17
18   *Mauss v. Nuvasive, Inc.*,
        2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)..................................................... 23
19   *McCormack & Dodge Corp. v. ABC Mgmt. Sys.*,
        1983 WL 51859 (Wash. Super. Dec. 22, 1983)............................................ 8, 10
20
21   *Md Cote Med. Laser & Spa v. Massey*,
        Case No. 17-2-12187-8 KNT, LEXIS 18711 (Wash. Super. Ct. Aug. 30, 2017).................... 14
22   *MKB Constructors v. American Zurich Ins. Co.*,
        83 F.Supp.3d 1078 (2015) ................................................................................. 16
23
24   *Monster Energy Co. v. Vital Pharmaceuticals, Inc.*,
        18-cv-01882-JGB-SHK (C.D. Cal.)................................................................... 20
25   *Moreno v. City of Sacramento*,
        534 F.3d 1106 (9th Cir. 2008) .......................................................................... 16

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

*Moskowitz v. Mayor and Council of Wilmington*,
   391 A.2d 209 (Del. 1978) ......................................................................... 5

*MP Medical Inc. v. Wegman*,
   151 Wash. App. 409 (Wash. Ct. App. 2009) ........................................... 17

*Murhard Est. Co. v. Portland & Seattle Ry. Co.*,
   163 F. 194 (9th Cir. 1908) ....................................................................... 2

*Noramco LLC v. Dishman USA, Inc.*,
   2023 WL 1765566 (D. Del. Feb. 3, 2023) ........................................... 5, 7

*Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*,
   2023 WL 3269759 (W.D. Wash. May 5, 2023) ...................................... 24

*Philips Oral Healthcare, Inc. v. Fed. Ins. Co.*,
   2005 WL 3020014 (W.D. Wash. Nov. 10, 2005) .................................... 19

*Polychain Cap. LP v. Pantera Venture Fund II LP*,
   2022 WL 2467778 (Del. Ch. July 6, 2022) .............................................. 6

*Pub. Util. Dist. No. 2 of Pac. Cnty. v. Comcast of Washington IV, Inc.*,
   184 Wash. App. 24, 77 (2014), *as amended on reconsideration* (Feb. 10, 2015) ..................... 3

*ReCor Med., Inc. v. Warnking*,
   2015 WL 535626 (Del. Ch. Jan. 30, 2015) .............................................. 7

*Revolutionar, Inc. v. Gravity Jack, Inc.*,
   13 Wash. App. 2d 1044 (2020) ................................................................. 3

*Save our Valley v. Sound Transit*,
   335 F.3d 932 (9th Cir. 2003) .................................................................. 22

*Scott Fetzer Co. v. Weeks*,
   122 Wash. 2d 141 (1993) ................................................................. 16, 19

*Selective Ins. Co. of America v. Heritage Construction Companies, LLC*,
   2024 WL 1886124 (D. Minn. Apr. 30, 2024) ......................................... 5

*Span Alaska Enterprises, Inc. v. Spurr*,
   97 Wash. App. 1012 (Wash. Ct. App. 1999) ......................................... 14

*Sunland Invs., Inc. v. Graham*,
   54 Wash. App. 361 (1989) ........................................................................ 4

*Sunstone Behavioral Health, Inc. v. Alameda Cnty. Med. Ctr.*,
   646 F. Supp. 2d 1206 (E.D. Cal. 2009) ................................................. 23

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group*,
   2024 WL 1116090 (S.D.N.Y. Mar. 13, 2024) ....................................... 18

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

*TranSched Sys. Ltd. v. Versyss Transit Sols.*,
  2012 WL 1415466 (Del. Super. Ct. Mar. 29, 2012) ................................................ 5, 6

**Other Authorities**

Restatement (Second) of Torts § 908(1) & comment a (Am. Law Institute 1979) ....................... 7

Unif. Trade Secrets Act § 4, cmt. (2005) ........................................................ 7

**Rules**

Fed. R. Civ. P. 54 ............................................................................ 1, 21

Fed. R. Civ. P. 59(e) ........................................................................... 1

RCW 19.108.030 ............................................................................ 1, 3, 8

RCW 19.108.040 ............................................................................ 1, 15

6 Del. C. § 2301 ................................................................................. 6

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1

2

### I.    Introduction & Background

Following an eight-day trial, a nine-person jury unanimously found that Boeing misappropriated eleven of Zunum's trade secrets, breached a 2017 Investor Rights Letter (or IRL) between the parties, and tortiously interfered with Zunum's business expectancies with Safran.  Dkt. 685.  The jury awarded Zunum $81.23 million in damages on the trade-secret claim, $67.08 million in damages on the IRL claim (which damages duplicate a portion of the trade-secret damages), and $11.56 million in non-duplicative damages on the tortious-interference claim.  The jury also found that Zunum failed to mitigate damages in the amount of $20.82 million.  And the jury found that Boeing's misappropriation was "willful and malicious."

Zunum now respectfully moves under Rules 54 and 59(e) of the Federal Rules of Civil Procedure, as well as RCW 19.108.030(2) and 19.108.040, for entry of an amended judgment: (a) ordering Boeing to pay $92.79 million in ordinary damages; (b) ordering Boeing to pay mandatory prejudgment interest of $26.01 million on the IRL breach under Delaware law; (c) ordering Boeing to pay exemplary damages of $162.46 million, in addition to ordinary damages, under Washington law; (d) ordering Boeing to pay Zunum's attorney's fees and allowable costs, in the amount of $25,711,523.52; and (e) ordering Boeing to pay post-judgment interest from the date of the amended judgment.

As explained herein, Washington law disallows a mitigation defense and supports awards of exemplary damages and attorneys' fees and costs where, as here, there is a factual finding of "willful and malicious" trade-secret misappropriation.  That finding was made by the jury, and it is amply supported by substantial evidence adduced at trial, including at least the following:

➢ Boeing invested in Zunum for the internal and undisclosed purpose of, among other things, obtaining "low-cost R&D"[1] and "leverag[ing]" its investment to obtain knowledge benefiting its own programs,[2] despite at the same time entering agreements

---

[1] Ex. I at 10; Ex. B (Fernandes) 248:16-18.
[2] Ex. W at 15; Ex. C (Fernandes) 65:10-15.

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 1*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

expressly limiting its ability to use Zunum information solely to manage its investment.[3]

➢ Boeing executives admitted they knew they could not use Zunum's information for competing programs,[4] but did so anyway.[5]  They also concealed that fact from Zunum.[6]

➢ Boeing senior executives covertly used meetings with Zunum (ostensibly scheduled to assist Zunum) to gather information for competing programs, such as exploring the market for Boeing entering the thin-haul market itself,[7] conducting research on hybrid-electric propulsion for the Electric Lab[8] (a continuation of the thin-haul initiative[9]), and conducting a competitive assessment of Zunum (alongside Airbus).[10]

➢ Hugh Wong, a Boeing engineer, expressed discomfort inviting the Boeing engineer tasked with conducting the competitive assessment of Zunum to a meeting ostensibly scheduled to assist Zunum, but went along because more senior executives and engineers had approved the subterfuge.[11]

The issue of Boeing's "willful and malicious" misappropriation having been tendered to the jury for determination, and its finding being well supported by substantial evidence and based on a proper instruction, it should not be re-examined.  That finding, in turn, supports entry of much of the relief requested herein, with the balance of the relief requested supported as a matter of Delaware and Washington law.

**II.    Boeing Should Be Ordered to Pay $92.79 million in Ordinary Damages.**

To begin, the Court should enter an amended final judgment setting the ordinary damages due to Zunum under the Court's final judgment at $92.79 million.

---

[3] Ex. X ¶ 5.
[4] Ex. B (Fernandes) 231:19-21; Ex. C (Shumate) 209:15-19.
[5] Ex. P; Ex. C (Shumate) 217:17-22 (Thin Haul); *id.*, 210:15-18 (same); Ex. D (Karimi) 186:12-14 (Electric Lab); Ex. D (Wong) 89:2-90:10 (EAST0); *id.* at 83:14-21 (SECA); Ex. L (same).
[6] Ex. O; Ex. D (Karimi) 189:6-20 (Electric Lab); Exs. J, K (Thin Haul).
[7] Exs. J; K; S; T; V at 182, 184, 194; W at 4; Ex. C (Shumate) 226:17-24.
[8] Exs. N, V at 175-177.
[9] Ex. D (Karimi) 186:8-14.
[10] Ex. Y; Ex. Z at 5, 33, 35.
[11] Ex. D (Wong) 99:12-100:13; Ex. Y.

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 2*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    The jury awarded Zunum $81.23 million in damages on its trade-secret claim, $67.08

2    million (duplicative) damages on the IRL claim, and another $11.56 million (non-duplicative)

3    damages on its tortious-interference claim.  Dkt. 685 at 5, 9.  The jury also found that Zunum

4    failed to mitigate its damages by $20.82 million, *id.* at 10, but that finding applies ***only*** to

5    Zunum's breach of contract damages, and does not reduce damages either for trade-secret

6    misappropriation or tortious interference.  As a result, Zunum should be awarded $92.79 million

7    in ordinary damages.

8        "Under Washington law, a plaintiff has no duty to mitigate damages in cases of

9    intentional tort."  *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency,*

10   *Inc.*, 2016 WL 631574, at *23 (W.D. Wash. Feb. 16, 2016) (citing cases) (Robart, J.); *see also*

11   *Pub. Util. Dist. No. 2 of Pac. Cnty. v. Comcast of Washington IV, Inc.*, 184 Wash. App. 24, 77

12   (2014), *as amended on reconsideration* (Feb. 10, 2015).  Applying that principle here, the

13   amount of ordinary damages for the trade-secret claim should be set at $81.23 million (the value

14   of Boeing's unjust enrichment plus Zunum's losses, as found by the jury), and that number

15   should not be reduced for failure to mitigate.  Consistent with the tenet that "misappropriation of

16   trade secrets is an intentional tort," *Revolutionar, Inc. v. Gravity Jack, Inc.*, 13 Wash. App. 2d

17   1044, *16 (2020) (unpublished), the Washington Court of Appeals has held that "[t]he doctrine

18   of avoidable consequences, also called mitigation of damages," is "unavailable" in the event a

19   "misappropriation [i]s willful and malicious."  *Kassa Ins. Servs. v. Pugh*, 180 Wash. App. 1051,

20   at *8 (2014) (unpublished).  In line with *Kassa*, and given the well-supported jury finding that

21   Boeing's misappropriation was "willful and malicious," the Court should hold that there was no

22   duty to mitigate on that claim, and it should not reduce Zunum's trade-secret damages by the

23   mitigation amount.

24       Similarly, the tortious-interference damages of $11.56 million, which (unlike the contract

25   damages) are not duplicative of the trade-secret damages, also should not be reduced for failure

     to mitigate, because tortious interference with a business expectancy is likewise an intentional

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 3*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

tort that extinguishes any duty to mitigate.  Washington courts have held that "a plaintiff has no duty to mitigate damages in cases of intentional tort"; that "[i]nterference with a business relationship is an intentional tort"; and that, therefore, "no duty to mitigate exist[s]" for such torts.  *Sunland Invs., Inc. v. Graham*, 54 Wash. App. 361, 365 (1989) ("As no duty to mitigate existed, the court's finding of a duty to mitigate was erroneous.").

On the other hand, Zunum did have a duty to mitigate its contract damages, and those damages should be reduced, including for purposes of calculating pre-judgment *interest*, as explained below at Point III.  Nevertheless, this reduction does not affect the total ordinary *damages* owed, given that the full amount of damages ($92.79 million) is due on account of intentional torts ($81.23 million trade-secret claim + $11.56 million tortious interference claim).

In sum, because Zunum had no duty to mitigate damages arising from Boeing's willful and malicious misappropriation of trade secrets or its tortious interference, the Court should enter an amended final judgment ordering Boeing to pay the full amount of damages found by the jury on those two claims—i.e., $92.79 million—with HorizonX jointly and severally responsible for $81.23 million of this amount (the trade-secret damages).

## III.    The Court Should Award Zunum Prejudgment Interest On The IRL Claim

The Court should award Zunum prejudgment interest on its successful claim that Boeing breached the 2017 Investor Rights Letter ("2017 IRL").  The damages found by the jury on that claim was $67.08 million, less $20.82 million for failure to mitigate, or $46.26 million.  These damages are duplicative of the trade-secret damages, but an order requiring payment of prejudgment interest (which is mandatory under Delaware law) would not be duplicative, because prejudgment interest is not available on the trade-secret claim.  Therefore, the Court should order prejudgment interest on the contract damages.

***First***, Zunum is entitled to prejudgment interest as a matter of law given the jury's finding of a breach of the IRL.  The IRL is governed by Delaware law, and Delaware law awards prejudgment interest on contract claims "as a matter of right," when requested.  *Brandywine*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1  *Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 485 (Del. 2011) (citing *Moskowitz v.*

2  *Mayor and Council of Wilmington*, 391 A.2d 209, 210 (Del. 1978)).  Zunum requested

3  prejudgment interest, so the Court should award it "as a matter of right."  *Id.*; Dkt. 60 (Second

4  Am. Compl.) at 115 (requesting "prejudgment interest").

5         ***Second***, although an award of compensatory damages on the contract claim would be

6  duplicative of an award of damages on the trade-secret claim, an award of prejudgment interest

7  on the contract damages would not be duplicative.  Zunum is not requesting interest on its trade-

8  secret damages, so there is nothing duplicative about an order awarding prejudgment interest on

9  the contract claim.  *See Corbrus, LLC v. 8th Bridge Cap., Inc.*, 2022 WL 4239055, at *11, 22

10  (C.D. Cal. Sept. 13, 2022) (permitting plaintiff to recover prejudgment interest on contract claim

11  and also recover punitive damages based on (otherwise duplicative) fraud claims); *Selective Ins.*

12  *Co. of America v. Heritage Construction Companies, LLC*, 2024 WL 1886124 (D. Minn. Apr.

13  30, 2024) (permitting plaintiff to recover prejudgment interest on fraud claim even though court

14  found fraud damages duplicative of contract damages); *cf. JW Gaming Dev., LLC v. James*, 2020

15  WL 1667423, at *3 (N.D. Cal. Apr. 3, 2020) ("[A] jury's finding of liability and an *entitlement*

16  to compensatory damages could provide the basis for a punitive damages award even if

17  [plaintiff] does not in fact recover the compensatory damages [on that claim]" on the ground that

18  awarding the damages would be duplicative).

19         ***Third***, interest should run from December 31, 2017.  Under Delaware law, prejudgment

20  interest begins to accumulate from the date of the first breach or when the plaintiff first suffered

21  a loss, even if further losses are later suffered, and even if the precise amount of damage is not

22  fixed until the damages award is rendered.  *Noramco LLC v. Dishman USA, Inc.*, 2023 WL

23  1765566, at *6 (D. Del. Feb. 3, 2023); *Delphi Petroleum, Inc. v. Magellan Terminal Holdings,*

24  *L.P.*, 177 A.3d 610, *2 (Del. 2017); *Brandywine*, 34 A.3d at 487; *see also TranSched Sys. Ltd. v.*

25  *Versyss Transit Sols.*, 2012 WL 1415466, *5 (Del. Super. Ct. Mar. 29, 2012) (court found

"unpersuasive" defendant's argument that "interest should not begin until all the damage of ...

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 5*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

breach had been done," asserting that the court should choose the date when the plaintiff "**first** suffered a loss at the hands of the defendant") (emphasis added).  For purposes of calculating pre-judgment interest, the Court should use December 31, 2017, given that this is the month of Boeing's covert information-gathering for CAPE (Ex. 404), and that, early the following month, Boeing employees recognized that its words and actions already injured Zunum with Safran, given the misuse and mis-disclosure of Zunum confidential information, Ex. 445.  Alternatively, the Court should use November 30, 2018, the end of the month during which Zunum had to furlough its employees.  Ex. A (Knapp) 195:2-6 (testimony of Matt Knapp).

*Fourth*, the Court should use an interest rate of 7% for the period December 31, 2017 through the judgment (or, alternatively, 7.75% if interest runs from November 30, 2018).  In the absence of a specific contract rate, Delaware law sets the pre-judgment interest rate at 5% above the Federal Reserve discount rate at the time when interest liability attaches.  *TranSched , LLC*, 2012 WL 1415466, *6 (abrogated by statute as to *post*-judgment interest); 6 Del. C. § 2301(a) ("Where there is no expressed contract rate, the legal rate of interest shall be 5% over the Federal Reserve discount rate including any surcharge as of the time from which interest is due…."); *see also, e.g.*, *Fairholme Funds, Inc. v. Fed. Hous. Fin. Agency*, 2023 WL 7002665, at *5 (D.D.C. Oct. 24, 2023) (Delaware law).  Here, there is no interest rate in the 2017 IRL, *see* Ex. X, and this Court previously held that the NPA (which does contain an interest rate) and the IRL (which does not) are not integrated.  Dkt. 601 at 2-4.  The Federal Reserve discount rate on December 31, 2017 was 2%,[12] making the applicable prejudgment interest rate 7%.  If November 30, 2018 is used, the Federal Reserve discount rate then was 2.75%,[13] making the relevant rate 7.75%.

*Fifth*, although older authority in Delaware awarded simple interest, more recent cases compound interest quarterly, and this Court should do the same.  *See, e.g.*, *Noramco*, 2023 WL 1765566, at *6 (compounding prejudgment interest quarterly); *Polychain Cap. LP v. Pantera*

[12] https://www.nasdaq.com/market-activity/fixed-income/disc/historical?page=17&rows_per_page=100&timeline=y10.
[13] *Id.*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

*Venture Fund II LP*, 2022 WL 2467778, *12 (Del. Ch. July 6, 2022) ("[i]nterest is ordinarily compounded quarterly" in Delaware); *CertiSign Holding, Inc. v. Kulikovsky*, 2018 WL 2938311, at *29–30 (Del. Ch. June 7, 2018) ("compound interest is a more accurate means of measuring the time value of money"); *ReCor Med., Inc. v. Warnking*, 2015 WL 535626, at *1 (Del. Ch. Jan. 30, 2015) (same).

The Court should therefore award $26 million in pre-judgment interest.  Below, Zunum sets forth the relevant interest amounts in case the Court adopts a different approach, using post-mitigation contract damages of $46.26 million.  *See also* Danner Decl. ¶¶32-35.

| Start Date | Rate | Compounded | Simple |
|---|---|---|---|
| December 31, 2017 | 7% | $26.01 million | $20.82 million |
| November 30, 2018 | 7.75% | $24.38 million | $19.77 million |

**IV.    The Court Should Award Zunum Exemplary Damages Under WUTSA**

Given the jury's well-supported finding of "willful and malicious" misappropriation, the Court should order Boeing and HorizonX to pay exemplary damages of $162.46 million (twice ordinary damages for trade secret misappropriation), in addition to ordinary damages.

Under WUTSA, "[i]f wil[l]ful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award" of damages.  RCW 19.108.030(2).  The purposes of awarding exemplary damages are "to punish the person doing the wrongful act and to deter him and others like him from similar conduct in the future." *Guidance Residential, LLC v. Mangrio*, 1 Wash. App. 2d 1048 (2017) (unpublished) (citing Restatement (Second) of Torts § 908(1) & comment a (Am. Law Institute 1979)); *see also* Unif. Trade Secrets Act § 4, cmt. (2005) (punitive damages under the UTSA serve two primary purposes: (1) to punish a party for egregious acts and (2) to deter future intentional acts).

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

In this case, the jury found the requisite predicate for awarding exemplary damages (i.e., a "willful and malicious" misappropriation), and the relevant baseline for calculating exemplary damages is $81.23 million (i.e., the unmitigated[14] loss to Zunum plus Boeing's unjust enrichment).  *A.H. Lundberg Assocs., Inc. v. TSI, Inc.*, Case No. C14-1160JLR (W.D. Wash. March 9, 2017), Dkt. 271 at 27, 31-32 (awarding exemplary damages of 1.3 times the amount of "actual damages and unjust enrichment"); *Boeing Co. v. Sierracin Corp*, 108 Wash. 2d 38, 61-2 (1987) ("RCW 19.108.030(2) allows the court to award up to twice the amount of actual damages as punitive damages."); *Guidance Residential*, 1 Wash. App. 2d at 1048 ("Given the jury's finding, here, that the misappropriation was 'willful and malicious,' as well as the court's finding that the actions were 'calculated and deliberate,' exemplary damages are proper.") (unpublished).

In determining the appropriate multiplier to serve WUTSA's purposes of punishment and deterrence, the Court in its discretion should consider factors such as (a) "the delay" "in being able to obtain compensation for the misappropriation"; (b) "expenses incurred" "in having to wage th[e] lawsuit that are not in any way covered by an award of court costs"; (c) "the stress and tension imposed on [the plaintiff] by the litigation"; (d) "the lack of good faith by [the defendant] in th[e] litigation"; (e) "benefits" which will be "retained" by the defendant due to its misappropriation; and (f) "the deterrent effect an award of exemplary damages should have on third parties who might be disposed to misappropriate trade secrets."  *McCormack & Dodge Corp. v. ABC Mgmt. Sys.*, 1983 WL 51859, at *9–10 (Wash. Super. Dec. 22, 1983) (considering these factors, and doubling damages for "willful and malicious" misappropriation found by jury); *Lundberg*, Case No. C14-1160JLR, Dkt. 271 at 32 (considering these factors).

Applying these factors, Zunum respectfully submits that the Court should order Boeing to pay $162.46 million in exemplary damages, in addition to the ordinary damages (of $81.23

---

[14] As set forth above in Point II, there is no duty to mitigate trade-secret damages if there is a willful and malicious misappropriation.

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 8*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    million).

2    ***First***, the jury found substantial losses to Zunum caused by misappropriation that was

3    willful and malicious, with Boeing obtaining substantial benefits.  As in *Lundberg*, Boeing was

4    aware of its confidentiality obligations, with executives acknowledging under oath they could

5    not use Zunum's information for competitive activities,[15] and noting in contemporaneous

6    documents their discomfort with giving access to engineers conducting a competitive assessment

7    of Zunum.[16]  *Compare Lundberg*, Dkt. 271 at 28-29.  As in *Lundberg*, Boeing "made minimal

8    effort to respect the confidentiality obligations," *id.* – it viewed its own investment, contrary to

9    the contracts it signed, as a way to access to low-cost R&D,[17] including information useful for its

10   competing programs and research-and-development initiatives,[18] while in the contract it

11   represented it would use Zunum information solely to "manage its investment."[19]  Boeing used

12   Zunum's confidential information for its own advantage, including to conduct competing R&D

13   programs and competitive assessments, and catching up in the HE aircraft space, where it had

14   fallen behind its competitors.  And Boeing was "aware of the legal risks," *Lundberg*, Dkt. 271 at

15   30 – for example, after Zunum was effectively out of business, Boeing proposed to start a new

16   business within HorizonX (that eventually became Electra Aero) and to include a review of

17   Zunum's IP, and the individual who would end up leading the effort requested an indemnity.[20]

18   Moreover, Boeing caused Zunum, a start-up and leader in HE aircraft, to suffer significant

19   losses—with start-ups progressing to commercialization valued from over half a billion to three-

20   and-a-half billion today, causing injury far more significant than in *Lundberg*.

21           The jury's finding of a willful and malicious misappropriation, as well as the substantial

22   evidence supporting it, justifies entry of substantial exemplary damages.  *Lundberg*, Dkt. 271;

23

24   [15] Ex. B (Fernandes) 231:19-21 (re competing plane).
     [16] Ex. Y.
     [17] Exs. I at 2, Ex. W at 15; Ex. B (Fernandes) 246:15-21.
25   [18] Ex. D (Karimi) 186:12-14; Ex. O.
     [19] Ex. X ¶ 5.
     [20] Ex. ZZ.

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 9*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1   *Boeing*, 108 Wash. 2d at 61–62 (affirming exemplary damages award that doubled plaintiff's

2   recovery, because "[t]he record indicates that [defendant] knew its action to be of dubious

3   legality, and engaged in a massive effort to disguise its copying[.] The trial court did not believe

4   that Sierracin ever entertained any honest doubt as to the legality of its conduct, but took a

5   calculated risk and lost.").

6       ***Second***, the delay, expense, and stress of the litigation all favor a substantial award.

7   Zunum had to suffer (and still does, given the likely lengthy appeal that is to come) substantial

8   delay in obtaining compensation, substantial expenses in prosecuting the case, and significant

9   stress and tension from the suit.  *See McCormack & Dodge Corp.*, 1983 WL 51859, at *9–10.

10  The jury found that Boeing's misconduct was a proximate cause of the destruction of substantial

11  assets, and it has taken years to obtain a verdict from the jury, requiring litigation against an

12  industrial giant represented by one of the country's most accomplished trial law firms (and

13  before that, by Jones Day, one of the country's largest law firms).  Moreover, Zunum's costs of

14  prosecuting the suit will not be fully covered by an award of attorney's fees and costs, most

15  notably because Zunum was forced to finance the litigation using third-party funding, which

16  involves risk premiums at substantial added cost to Zunum, and spent millions of dollars on

17  experts and expert consultants, a category of expense not otherwise covered under WUTSA's

18  provision for attorney's fees.  Finally, Zunum's founders, Dr. Kumar and Mr. Knapp, both

19  testified at trial regarding the substantial stress they experienced on account of the losses Zunum

20  suffered and the litigation, and the harmful impact of the litigation on them personally was

21  evident.  Meanwhile, Zunum's numerous employees, creditors and shareholders have all suffered

22  as a result of Boeing's harmful conduct.[21]

23      ***Third***, regarding the defendant's conduct in the litigation, Boeing chose to litigate this

24  case throughout by sponsoring the narrative that Boeing either never used Zunum's information,

25  or only ever did so for a permitted purpose.  As this Court found on summary judgment, the jury

---

[21] *E.g.*, Ex. A (Knapp) 175:11-176:2; Ex. E (Kumar) 45:19-23, 60:9-19.

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 10*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    was entitled to reject this "self-serving" story, Dkt. 560 at 17 – and given the jury's finding that

2    Boeing's conduct was willful and malicious, the jury did so.

3         Meanwhile, Boeing witnesses continued to offer inconsistent testimony in support of its

4    self-serving narrative at trial. Thus, the trial testimony of Boeing's witnesses on material issues

5    contradicted the documentary record and/or the testimony of other Boeing witnesses. For

6    example, Mr. Fernandes testified that he never considered entering the thin-haul market without

7    Zunum (and "that always the propulsion system will come from Zunum"[22]), but

8    contemporaneous documents show he was indeed considering obtaining "propulsion" from

9    another.[23] Mr. Nordlund testified that Boeing never used Zunum's information in the thin-haul

10   study,[24] even though he was not involved in the study,[25] and those involved admitted that they

11   did use it,[26] consistent with contemporaneous documents.[27] Boeing's witnesses also changed

12   their testimony from deposition to trial on repeated occasions, with (for example) Mr. Jones

13   testifying at length on subjects that he had claimed not to remember at deposition,[28] and Messrs.

14   Shumate and Wong offering new explanations for their conduct when at deposition they did not

15   have "good answers."[29] This is all in keeping with Boeing's lack of candor at the time of the

16   misconduct—Boeing did not tell Zunum that it was using a working session to conduct a

17   competitive assessment of Zunum; Boeing told its own customers it was studying a cargo plane

18   when it was studying a passenger plane[30]; Boeing told Zunum it had a firewall team evaluating

---

[22] Ex. C (Fernandes) 96:22.
[23] Ex. R at 1 ("the majors will be all over us to use [Zunum's] propulsion system"); Ex. U at 2 (tree of options showing that one option was to partner with another propulsion company, not Zunum).
[24] Ex. E (Nordlund) 238:13-16.
[25] Ex. E (Nordlund) 240:2-4.
[26] *E.g.*, Ex. C (Shumate) 217:17-22; *id.*, at 210:15-18; Ex. C (Fernandes) 13:15-25; Ex. D (Wong) 116:9-17.
[27] Exs. P at 3, 5-12; V at 8, 86-90, 176-77.
[28] *Compare* Ex. F (Jones) 61:9-71:9 (testifying about what Boeing told Zunum about Thin Haul Study pre-November 2017), 73:10-74:1 (testifying about firewall), 103:6-18 (testifying about Thanksgiving incident) with *id.* at 102:9-103:1, 103:2-5, 103:6-18 (claimed not to remember those subjects at deposition).
[29] *Compare* Ex. D (Wong) 90:12-22 *with id.* at 90:23-91:10; *compare* Ex. C (Shumate) 183:4-184:25, *with id.* at 185:1-17, 215:20-216:8.
[30] Ex. C (Fernandes) 36:18-21; Ex. M.

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 11*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    options when no firewall was in place[31]; etc.

2        ***Fourth***, Boeing retains significant benefits as a result of misappropriating Zunum's trade

3    secrets and driving it out of business.  Boeing justified its investment on the grounds that it could

4    advance Boeing's R&D and HE-learning on the cheap, while protecting Boeing's immensely

5    valuable 737 franchise from competitive disruption by Zunum or another player in partnership

6    with Zunum.  Boeing obtained all those benefits, driving Zunum out and avoiding a nascent

7    competitive threat that could have offered cost-competitive HE aircraft in the early 2020s to

8    potentially open up the duopolistic market for commercial aircraft.  Instead, late comers,

9    including Electra (which the jury could find Boeing seeded with Zunum's IP) are targeting entry

10   in the late 2020s, while nevertheless enjoying immense opportunities that were lost to Zunum.

11   In the process, Boeing advanced its HE capabilities by years, which stand to benefit Boeing as

12   HE components have continued to improve and reach scale for Boeing-sized aircraft in the

13   coming years.

14       ***Fifth***, exemplary damages are appropriate to deter future conduct of this sort by Boeing

15   and other large companies with access to smaller or start-up company information by posing as

16   investors or by virtue of their dominant market positions.  This is not the first time Boeing

17   misused a smaller competitor's proprietary information to exclude it from the market.  For

18   example, in *Alabama Aircraft Indus., Inc. v. Boeing Co.*, a federal jury found that Boeing used

19   proprietary information Boeing learned under NDA with a small company (Pemco), to compete

20   with Pemco, contrary to the NDA, ultimately driving Pemco out of business.  2022 WL 433457,

21   at *2-6 (11th Cir. 2022).  *Alabama Aircraft* underscores the need for deterrence.[32]  *See also*

22   *Wilson Aerospace LLC v. The Boeing Co.*, Case 2:23-cv-00847-JHC (W.D. Wash.), Doc.102 at

23   18-19 (alleging RICO claims premised on pattern of similar conduct by Boeing, across cases

24   ---
[31] Ex. C (Fernandes) 33:2-34:18; Ex. Q.

25   [32] The district court dismissed the trade-secret claim on timeliness, and the Eleventh Circuit reversed.  *Id.* at *17.
On remand, the district court dismissed the trade-secret claim because damages would be duplicative, but noted that
"Boeing has not been exonerated" on the MUTSA claim.  2022 WL 14890184, at *8 (N.D. Ala. Oct. 26, 2022).  The
plaintiff has since appealed.  Meanwhile, the breach of contract verdict stands.

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 12*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    including Alabama Aircraft, Zunum, and Lockheed Martin).

2          The need for deterrence extends beyond Boeing.  Boeing told the U.S. Senate, advocating

3    for legal enhancements to protect its own trade secrets, that it relies upon trade-secret laws to

4    maintain its own competitive edge – that "[t]rade secret protections are vital to protecting

5    Boeing's substantial intellectual property" and "Boeing does not simply have one recipe for its

6    secret sauce; Boeing has thousands of trade secrets that are critical to maintaining its

7    unparalleled success."[33]  Boeing advocated that, "[g]iven the risk U.S. companies face every day,

8    more needs to be done to deter cyber thieves from attempting to steal our trade secrets."[34]  And

9    Boeing acknowledged that "[m]iddle- and small-size companies that rely on trade secrets have as

10   much or more to fear as [Boeing] do[es], particularly if their survival depends on a single

11   product or service."[35]  The jury's verdict here bears this out.

12         Indeed, the temptation to steal from start-ups is particularly strong, because large

13   companies, like Boeing, will inevitably argue that ordinary damages are low or non-existent,

14   because the start-up has not yet commercialized a product.  *See* Ex. A (Hueston Opening) 40:8-

15   17 (Boeing, making precisely this argument).  While the jury here rejected Boeing's damages

16   arguments (at least to the extent of the damages awarded), the superficial appeal of such

17   arguments, and their partial success here, underscore the need for a robust exemplary damages

18   award to deter large companies, like Boeing, who have stopped innovating and "fallen behind,"

19   from stifling innovation by stealing from (and driving out) in small and dynamic companies, like

20   Zunum.  Further, portfolio companies of a large company's corporate venture capital ("CVC")

21   arm (which have boomed over the past decade) are uniquely vulnerable to such theft.[36]

22

23   [33]Peter L. Hoffman, Senate Judiciary Committee on Crime and Terrorism, "Economic Espionage and Trade Secret Theft: Are Our Laws Adequate for Today's Threats?" (May 13, 2014) at 3, available at

24   https://www.judiciary.senate.gov/imo/media/doc/05-13-14HoffmanTestimony.pdf
     [34] *Id*. at 6.
     [35] *Id*. at 5.

25   [36] The State of CVC Report 2022, by the Silicon Valley Bank and Counterpart Ventures, available at https://www.svb.com/trends-insights/reports/state-of-cvc/state-of-cvc-report-2022/ (over 70% of Fortune 100 companies have CVC arms).

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 13*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1   ***Finally***, because the purpose of exemplary damages is punishment and deterrence, the

2   Court should consider the effects upon the parties of the misconduct and damages found by the

3   jury.  The misconduct and damages found were highly significant to Zunum, with the jury

4   crediting Zunum's claims that Boeing intentionally and maliciously destroyed its business and/or

5   core trade secrets.  Even so, the jury's award represents only approximately 40% of damages

6   Zunum sought.

7       By contrast, the amount of damages is immaterial to an enterprise like Boeing, which

8   generated nearly $78 billion of revenues in 2023,[37] and the impetus for Boeing's wrongs was

9   concern that Zunum would disrupt its 737 franchise,[38] a product that, in 2018, accounted for

10  almost a third of Boeing's revenues.[39]  Although the damages are significant from an absolute

11  perspective, given that the purpose is punishment and deterrence, the Court should consider the

12  appropriate multiplier in the context of the substantial revenues Boeing generates each year.

13                          *    *    *

14      The Court should enter an order imposing substantial exemplary damages upon Boeing,

15  in line with the law's punitive and deterrent purposes, with the jury's finding of a willful and

16  malicious misappropriation causing Zunum massive injury.  Multiple decisions order "doubled

17  exemplary damages" (i.e., exemplary damages equal to ordinary damages),[40] while this Court in

18

19  [37] Boeing Annual Report for the year ended Dec. 31, 2023, at 5, 51 available at
    https://s2.q4cdn.com/661678649/files/doc_financials/2023/ar/Boeing-2023-Annual-Report.pdf

20  [38] Exs. G at 14; H at 1; I at 9; W at 3.
    [39] https://www.statista.com/statistics/680130/revenue-of-boeing-globally-by-

21  region/#:~:text=The%20Boeing%20737%20series&text=The%20737%20family%20accounted%20for,grounded%2
    C%20sending%20Boeing%20shares%20tumbling.

22  [40] *Kassa Ins.*, 2014 WL 1746059, at *2, 5 (upholding award of "doubled exemplary damages, for willful and
    malicious misappropriation of trade secrets": "The record shows [defendant] knew he acted with dubious legality,

23  clandestinely obtained the client list, and intentionally took and used the client list for his own advantage.");
    *Boeing.*, 108 Wash. 2d at 38, 44 (upholding "exemplary damages which doubled Boeing's award"); *Span Alaska

24  Enterprises. v. Spurr*, 97 Wash. App. 1012 (Wash. Ct. App. 1999) (reinstating award of exemplary damages which
    doubled plaintiff's award, despite no explicit factual finding of "willful and malicious," given affidavit of Plaintiff's
    president, "which set forth that [Defendant], shortly before leaving, solicited over 100 [] customers and, after

25  resigning, willfully used confidential information obtained while employed by [Plaintiff]."); *Md Cote Med. Laser &
    Spa v. Massey*, Case No. 17-2-12187-8 KNT, LEXIS 18711 (Wash. Super. Ct. Aug. 30, 2017) (ordering "exemplary
    damages, pursuant to RCW 19.108.030(2), doubling the amount of lost income.").

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 14*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1   *Lundberg*, on facts less egregious than this case, used a multiplier of 1.3. In the circumstances of

2   the damages caused to Zunum and its business, the Court should order Boeing to pay $162.46

3   million in exemplary damages, in addition to ordinary damages.

4   **V.    The Court Should Award Zunum Attorneys' Fees**

5          Given the jury's finding of a willful and malicious misappropriation, the Court should

6   also award Zunum $24,739,029.18 in attorneys' fees for prosecuting the trade-secret claim, as

7   detailed in the enclosed declarations of Scott Danner and Steve Fogg, and for the reasons set

8   forth below. It should also set a schedule for the determination and award of post-verdict fees.

9          Under WUTSA, where "wil[l]ful and malicious misappropriation exists, the court may

10  award reasonable attorney's fees to the prevailing party." RCW 19.108.040; *Lundberg*, Case No.

11  C14-1160JLR, Dkt. 271 at 37 (awarding attorneys' fees). Although "[p]revailing on trade

12  secrets claims, in and of itself, is not a basis to award attorney's fees under this statute ... a

13  review of the Washington cases on this point suggests that the test is, in reality, little more

14  rigorous than simply prevailing[]." *Corbis v. InfoFlows and Steve Stone*, 2009 WL 3866136

15  (Wash. Super. Nov. 02, 2009) ("Viewed from the perspective the jury apparently took on the

16  evidence, Corbis' misappropriation of InfoFlows' trade secrets was willful and malicious.

17  InfoFlows and Stone are entitled to an award of attorney's fees related to litigation of the trade

18  secrets claims.").[41]

19         "In Washington, the lodestar method forms the basis for determining reasonable

20  attorneys' fees." *Lundberg*, Dkt. 271 at 32; *see also Dennings v. Clearwire Corp.*, 2013 WL

21  1858797, at *5 (W.D. Wash. May 3, 2013), *aff'd* (9th Cir., Sept. 9, 2013). Under this method, "a

22  court 'multipl[ies] the total number of hours reasonably expended in the litigation by the

23  reasonable hourly rate.'" *Id.* (alteration in original) (quoting *Clausen v. Icicle Seafoods, Inc.*,

24

25  [41] *See also Boeing*, 108 Wash. 2d at 64 (awarding attorney fees); Findings of Fact and Conclusions of Law, *Custom Choice Door LLC v. Compton*, No. 17-2-11663-2, 2018 WL 8335431, at *3 (Wash. Super. Ct. Dec. 20, 2018) ("[I]n accordance with RCW 19.108.040, Plaintiff is entitled to an award of costs and reasonable attorney fees in addition to the principle amount of the judgment.").

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 15*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

174 Wash. 2d 70, 81 (2012)).  In applying this method, the Court should consider "the time

expended, the difficulty of the questions involved, the skill required, customary charges of other

attorneys, the amount involved, the benefit resulting to the client, the contingency or certainty in

collecting the fee and the character of the employment."  *Scott Fetzer Co. v. Weeks*, 122 Wash.

2d 141, 150 (1993).  The lodestar may be adjusted upward "to reflect the contingent nature of the

litigation." *Bowers v. Transamerica Title Co.*, 100 Wash. 2d 581, 598, 601 (1983).

**A.  Reasonable Hours.**

The hours spent by Zunum's counsel on its trade-secret claim since their appearance in

October 2022 are reasonable.  (Zunum is not seeking any fees for prior counsel.)

The hours worked by HSG and Corr Cronin are prima facie reasonable, particularly as

HSG was working largely on a contingency basis.  *See* Danner Decl. ¶¶12–13.  As the Ninth

Circuit explained, "lawyers are not likely to spend unnecessary time on contingency fee cases in

the hope of inflating their fees," because "[t]he payoff is too uncertain, as to both the result and

the amount of the fee."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Thus, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to

how much time he was required to spend on the case; after all, he won, and might not have, had

he been more of a slacker."  *Id.*

Counsel's judgment is also borne out by the complicated nature of this case, which

reasonably necessitated substantial resources.  As the Court has observed, the technical and legal

issues in this case were complex.  Dkt. 691 at 1–2.  At trial, the parties put on the testimony of

eight fact witnesses and nine expert witnesses, including experts with substantial technical

background in specialized fields.  This necessitated substantial pre-trial disclosure and

preparation, including substantial fact and expert discovery.  And before that, Boeing filed a

technical and complex summary judgment brief spanning 17,000 words—most of which focused

on the trade-secret claim.  *See* Danner Decl. ¶¶14–17 (detailing complexity of the case).

In line with precedent, Zunum has sought to disaggregate its WUTSA-related fees from

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 16*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1  fees incurred on other claims.  As a general matter, "Washington courts instruct that a trial court

2  must segregate fees where possible, but may avoid doing so if the claims are 'so related that no

3  reasonable segregation ... can be made.'" *MKB Constructors*, 83 F. Supp. 3d at 1089 (alteration

4  in original) (quoting *Hume v. Am. Disposal Co.*, 124 Wash. 2d 656, 673 (1994)).  "[W]here 'the

5  plaintiff's claims for relief ... involve a common core of facts or [are] based on related legal

6  theories,' a lawsuit cannot be 'viewed as a series of discrete claims' and, thus, the claims should

7  not be segregated in determining an award of fees."  *Fiore v. PPG Indus., Inc.*, 169 Wash. App.

8  325, 352 (Wash. Ct. App. 2012) (second and third alteration in original) (quoting *Brand v. Dep't

9  of Labor & Indus.*, 139 Wash. 2d 659, 672-73 (1999)); *MP Medical Inc. v. Wegman*, 151 Wash.

10  App. 409, 426 (Wash. Ct. App. 2009) ("[S]egregation is not required if the claims are 'so related

11  that no reasonable segregation of successful and unsuccessful claims can be made.'") (quoting

12  *Hume v. Am. Disposal Co.*, 124 Wash. 2d 656, 673 (1994)).[42]

13      That is the situation here.  The trade-secret claim overlapped substantially (albeit not

14  entirely) with the contract and tort claims.  To address segregation concerns, however, Zunum

15  has undertaken to identify time entries and fees clearly relevant only to claims other than trade-

16  secret misappropriation.  *See* Danner Decl. ¶19.  In addition, Zunum proposes a further reduction

17  of 12.5% on remaining fees to account for entries relevant to the trade-secrets claim and other

18  claims.  *Id*.  These steps are a "very reasonable way" to resolve the segregation issue where the

19  claims were "intertwined."  *Lakoda, Inc. v. OMH Proscreen USA, Inc.*, 2016 WL 4727421, at

20  *14 (Wash. Ct. App. Sept. 8, 2016) (unpublished); *Lundberg*, Dkt. 271 at 37 ("Having reviewed

21  counsel for Lundberg's billing records, the court concludes that a 20 percent reduction is

22  appropriate.").  After all, "[t]he essential goal in shifting fees (to either party) is to do rough

23  justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838 (2011).

24  
25  ---
[42] S*ee also Bloor v. Fritz*, 143 Wash. App. 718, 747 (Wash. Ct. App. 2008) (trial court was not required to segregate fees where "claims arose out of the same set of facts" and it was "virtually impossible" to segregate fees); *Chuong Van Pham v. Seattle City Light*, 159 Wash. 2d 527, 538, (2007) ("[H]ours reasonably expended," to be recovered as part of a fee award, "must be spent on claims having a 'common core of facts and related legal theories'" to those for which the party is entitled to recover) (quoting *Martinez v. City of Tacoma*, 81 Wash. App. 228, 242-43 (1996)).

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 17*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    The result is a total number of approximately 26,000 hours for HSG, prior to any

2    adjustments.  This is a substantial number of hours, but it was a complicated case, and using this

3    number is a reasonable way to proceed.  *Id.*; *In re Heritage Bond Litig.*, 2005 WL 1594389, at *9

4    (C.D. Cal. June 10, 2005) ("approximately 35,000 hours of attorney and paralegal time"); *In re*

5    *Nortel Networks Corp. Securities Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) ("roughly 50,000

6    hours of attorney and paralegal time"); *In re Ikon Office Solutions, Inc., Securities Litig.*, 194

7    F.R.D. 180, 194 (E.D. Pa. May 9, 2000) (over 45,000 hours); *In re Worldcom, Inc. ERISA Litig.*,

8    2005 WL 3107725, at *5 (S.D.N.Y. Nov. 21, 2005) (over 22,300 hours); *Syntel Sterling Best*

9    *Shores Mauritius Ltd. v. TriZetto Group*, 2024 WL 1116090, at *7 (S.D.N.Y. Mar. 13, 2024)

10   (21,000 hours in trade-secret case).

11       **B.  Reasonable Rate.**

12       Next, the hourly rate of Zunum's counsel is also reasonable, because it is based on the

13   attorneys' standard rate, and this was a complicated case justifying the premium rate charged by

14   an elite litigation boutique.  "Where the attorneys in question have an established rate for billing

15   clients, that rate will likely be a reasonable rate." *Bowers*, 100 Wash. 2d at 597.  "In addition to

16   the usual billing rate, the court may consider the level of skill required by the litigation, time

17   limitations imposed on the litigation, the amount of the potential recovery, the attorney's

18   reputation, and the undesirability of the case." *Id.*

19       With respect to HSG's rates, as explained in the accompanying declaration of Scott

20   Danner, the rates used are actual rates charged by HSG for new clients during 2022-2024.  HSG

21   is an elite litigation boutique in New York.  It was formed in 2012 by Hon. Richard J. Holwell,

22   formerly a judge on the Southern District of New York, and his former colleagues from White &

23   Case.  The firm has since grown to include 19 partners and 35 associates, a rank that includes

24   another former judge and numerous former law clerks (including four who clerked for the United

25   States Supreme Court).  In its twelve years, the firm was twice recognized by *Benchmark* as the

     New York law firm of the year.  As the accompanying declaration of Hon. Robert Smith

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 18*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

explains, HSG's rates are competitive for nationally recognized and elite firms, and indeed below many firms operating in HSG's market.

Similarly, Corr Cronin's rates are at the standard charged in the market, and Mr. Fogg has not increased the rate charged to Zunum despite his rate having increased over the life of this matter.  Fogg Decl. ¶¶5–8.  The rate is reasonable.  *See* Baehr Decl. ¶¶8–11.

HSG's rates are likely above standard Seattle rates, but this is just one factor.  *Philips Oral Healthcare, Inc. v. Fed. Ins. Co.*, 2005 WL 3020014 (W.D. Wash. Nov. 10, 2005) (Robart, J.); *see also Crest Inc. v. Costco Wholesale Corp.*, 128 Wash. App. 760, 773–74 (2005) (reversing when trial court considered only rate charged in the locality).  And here, it is not a compelling factor.  ***First***, as noted, the relevant factors regarding the nature and complexity of the case favor finding reasonable the standard rates charged by a nationally recognized litigation boutique.  This was a complex dispute brought against one of the world's industrial giants, and "the time expended, the difficulty of the questions involved, [and] the skill required" favor finding the fees charged reasonable.  *Scott Fetzer Co.*, 122 Wash. 2d at 150; *Kreidler v. Pixler*, 2011 WL 39054, at *1-2 (W.D. Wash. Jan. 3, 2011) ("In evaluating the overall amount of fees sought, the Court also considers the fact that the litigation spanned five years, the issues were fact intensive and complex, dispositive motions were filed, and a lengthy jury trial was conducted.").

***Second***, the Washington Supreme Court directs courts to consider whether the rate proposed by the moving party is "very high in comparison to" opposing counsel's.  *Boeing*, 108 Wash. 2d at 64-65.  When Zunum retained HSG, Boeing was represented by Jones Day, a national law firm charging rates above Seattle standard rates.  *In re Aldrich Pump LLC*, Case No. 20-30608 (W.D.N.C. Bankr.), Dkt. 1649, at 3–5 (reflecting Jones Day rates in 2022 and 2023).  Boeing later retained Hueston Hennigan, a firm that has been recognized as one of the nation's leading litigation boutiques.  *See Monster Energy Co. v. Vital Pharmaceuticals, Inc.*, 18-cv-01882-JGB-SHK (C.D. Cal.), Doc. 929, at 2.  Hueston Hennigan's rates appear to be comparable

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    to HSG's, and are likely above standard rates in Seattle.  For example, one public filing identifies

2    as the hourly rate for Mr. Hueston, one of Boeing's leads at trial, as $1,329 per hour for a case

3    started in 2018,[43] a rate represented to reflect a "significant discount" to Mr. Hueston's then

4    "standard billing rate."[44]  This rate is comparable to Zunum's trial lead's rates in 2024, and to the

5    extent Mr. Hueston's current standard rates are higher than his discounted *Monster* rate, *id.*,

6    HSG's rates would be in line with (or below) those of opposing counsel.  *Boeing*, 108 Wash. 2d

7    at 64-65.

8        Moreover, as the Court ultimately takes the product of the rate and the hours, the Court

9    should count in Zunum's favor here that HSG staffed the matter comparatively leanly:  the HSG

10   trial team representing Zunum consisted of two partners and four associates, alongside Mr. Fogg,

11   while the Boeing trial team appeared to include three partners, two counsel, and seven associates

12   (along with local counsel at Perkins Coie).  *See* Danner Decl. ¶17.

13       ***Third***, the Court may consider whether "[i]t would [have] be[en] difficult to find law

14   firms in [the relevant locality] that would have the capability and capacity to deal with a case of

15   this nature," bearing in mind that "[p]laintiffs should not be unreasonabl[y] restricted from

16   choosing counsel."  *Broyles v. Thurston Cnty.*, 147 Wash. App. 409, 447 (2008).  Zunum had no

17   funds available to pursue its claims, and was constrained to seek counsel willing to handle a

18   complex dispute against Boeing largely or exclusively on a contingency basis.  *See* Kumar Decl.

19   ¶2.  Zunum found it difficult to find Seattle counsel to represent it, and ultimately settled upon

20   the Shlansky firm, another out of market firm.  *Id.* ¶3.  The Shlansky firm worked on a

21   contingency basis, but later resigned.  *Id.* ¶¶3-4.  Zunum was forced to seek alternate counsel, but

22   qualified counsel in the Seattle area (including with McNaul Ebel, K&L Gates, Davis Wright

23   Tremaine, and Cozen O'Connor) were unwilling or unable to take on the sort of risk necessary to

24   obtain litigating funding.  *Id.* ¶7.  Although the litigation funders were prepared to finance certain

25

---

[43] *Monster Energy Co.*, Doc. 928, at 46.
[44] *Id.*, Doc. 929, at 6.

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    fees and costs, they were not prepared to finance the entire case on an hourly basis, and pointed

2    Zunum toward national counsel charging premium rates and willing to take the work on a largely

3    contingency basis.  *Id.* ¶¶6-10.  All of this again counts in Zunum's favor.

4    **C.  Multiplier for HSG Fees**

5        Finally, Washington law permits courts to adjust fees upward in contingency matters to

6    take account of the risks that attend contingency fees, including because "lawyers generally will

7    not provide legal representation on a contingent basis unless they receive a premium for taking

8    that risk."  *Bowers*, 100 Wash. 2d at 601 (upholding 50% premium); *Kingston v. IBM*, 2021 WL

9    2662219, at *5 (W.D. Wash. June 29, 2021) (applying multiplier of 1.1 in contingency

10   employment dispute).  HSG's fee arrangement consisted of a funded portion, but for the most

11   part was a contingency arrangement.  *See* Danner Decl. ¶¶12–13.  Given the complexity of the

12   case and the risks involved in litigating a trade-secret case of this nature, particularly against

13   Boeing and its highly qualified counsel, Zunum submits that it would be appropriate to apply a

14   50% premium to HSG's fees, after they are adjusted with the reductions proposed above.

15                                    *        *        *

16       Multiplying hourly rates with hours spent on the case yields fees for HSG of

17   $19,243,189.50.  *Id.* ¶¶19–20.  Removing clearly segregable fees, and then applying a proposed

18   12.5% reduction to the remaining fees, results in $16,376,631.12 fees attributable to the trade

19   secret claim.  *See id.*  Applying a multiplier of 1.5x on those fees leads a total for HSG of

20   $24,564,946.68 million.  *See id.*  After adding $174,082.50 for Corr Cronin's fees, the total

21   amount requested is $24,739,029.18.  *See id.* ¶21.

22       The Court should find these fees reasonable, and award them to Zunum.  Although the

23   numbers are high, they are reasonable given the complexities of the case, the amount in dispute

24   (Zunum sought nearly $200 million, pre-trebling).  *Kreidler v. Pixler*, 2011 WL 39054, at *1

25   (W.D. Wash. Jan. 3, 2011) (in "evaluating the reasonableness of a fee award, the Court may

     consider the relationship between the amount in dispute….").  In fact, Zunum owes its lawyers

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

more than this in legal fees on account of the trade-secret claim. Danner Decl. ¶19. And the fees are reasonable in the context of the substantial misappropriation damages awarded by the jury (over $80 million, subject to the increases sought herein). *Compare Lundberg,* Dkt. 271 at 31-32, 37 (awarding "$1,139,825.60 in attorneys' fees" on trade secret claim where jury awarded trade-secret damages of $769,551.00, and the Court awarded $1 million in exemplary damages).

In addition to awarding the foregoing fees, the Court should also grant Zunum its fees for post-verdict work, including (a) preparing and submitting the instant motion, (b) responding to Boeing's post-trial motions, and (c) any appeal by Boeing.[45] Given that these amounts will only be known later, the Court should allow Zunum to make a submission regarding further pre-appeal fees within 14 days of the Court's resolution of the post-verdict motions, and to make any submission regarding any appellate work following the Ninth Circuit's issuance of the mandate.

## VI.    The Court Should Award Zunum's Costs

The Court should also award Zunum taxable and non-taxable costs of $972,494.34, as detailed in the Danner Declaration, ¶¶23–30.

Rule 54 allows costs to the prevailing party "[u]nless a federal statute, these rules, or a court order provides otherwise," and none does so here. Rule 54(d)(1) "creates a presumption for awarding costs to prevailing parties; the losing party must show why costs should not be awarded." *Save our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003). The Ninth Circuit also allows "prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties," i.e., "reasonable out-of-pocket litigation expenses that would normally be charged to a fee paying client." *Grove v. Wells Fargo Fin. Cal.*, 606 F.3d 577, 580, 581 (9th Cir. 2010).

Since RCW 19.108.040 authorizes attorney's fees to prevailing parties where there is a finding of willfulness or maliciousness, the Court may award non-taxable costs here. *See, e.g.,*

---

[45] *Cerbert v. Kennedy*, 2020 WL 3533364 at *7 (Wash. Ct. App. June 30, 2020) (unpublished) ("A party prevailing in a trade secrets case is entitled to attorney fees both at trial and on appeal.").

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1    *Kassa Ins. Servs.*, 2014 WL 1746059, at *9-10 (affirming an award of costs as well as fees under

2    RCW 19.108.040) (unpublished); *ADA Motors, Inc. v. Butler*, 7 Wash. App. 2d 53, 68-69 (Wash.

3    Ct. App. 2018) (deferring to the trial court's inclusion of expenses other than attorney's fees

4    under RCW 19.108.040); *Eagle Grp., Inc. v. Pullen*, 114 Wash. App. 409, 424 (Wash. Ct. App.

5    2002) (awarding fees and expenses on appeal under RCW 19.108.040).

6            Zunum requests the following categories of costs:

7    - Costs mentioned in 28 U.S.C. § 1920, including "(1) the clerk's and marshal's

8       fee, (2) fees for printed or electronically recorded transcripts obtained for use in

9       the case, (3) printing and witness fees, (4) exemplification and copy costs if

10      obtained for use in the case, (5) docket fees, and (6) court-appointed expert and

11      interpreter compensation."  28 U.S.C. § 1920; *Crawford Fitting Co. v. J.T.*

12      *Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987) ("§ 1920 defines the term 'costs' as

13      used in Rule 54(d).  Section 1920 enumerates expenses that a federal court may

14      tax as a cost under the discretionary authority found in Rule 54(d).").

15   - Costs for database storage. *Mauss v. Nuvasive, Inc.*, 2018 WL 6421623, at *9

16      (S.D. Cal. Dec. 6, 2018).

17   - Mediation fees. *Gordon v. Virtumundo, Inc.*, 2007 WL 2253296, at *15 (W.D.

18      Wash. Aug. 1, 2007).

19   - Deposition and court reporting expenses. *See, e.g., Sunstone Behavioral Health,*

20      *Inc. v. Alameda Cnty. Med. Ctr.*, 646 F. Supp. 2d 1206, 1218–20 (E.D. Cal. Aug.

21      20, 2009).

22   - Deposition travel expenses and fees. *Gordon*, 2007 WL 2253296, at *15.

23   - Preparation of exhibits and graphics. *Apple Inc.*, 2014 WL 4745933, at *10–11.

24   - Lodging at trial. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (including

25      "hotel bills" among recoverable expenses).

    - Travel expenses incurred in the course of litigation. *Davis v. Mason Cnty.*, 927

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1        F.2d 1473, 1488 (9th Cir. 1991).

2        The Court should order Boeing to pay the foregoing costs, which are set forth in the

3    Danner declaration (¶¶23–30), and which total $972,494.34.

4    **VII.    The Court Should Award Postjudgment Interest**

5        Finally, the Court should award Zunum postjudgment interest on the total amount

6    ordered by the Court, effective on the date of the judgment.  Under 28 U.S.C. §1961,

7    postjudgment interest is "mandatory" on all claims.  *Olson Kundig, Inc. v. 12th Ave. Iron, Inc.*,

8    2023 WL 3269759, *15 (W.D. Wash. May 5, 2023) (Robart, J.).  The rate is 5.17%.[46]

---

[46] The applicable "weekly average 1-year constant maturity Treasury yield" for the week ending on May 24, 2024 was 5.17%.  *See* 28 U.S.C. § 1961(a); Board of Governors of the Federal Reserve System, Selected Interest Rates, *available at* (https://www.federalreserve.gov/datadownload/Chart.aspx?rel=H15&series=c3ec77dedd37c9aa112f71c9eba34b50 &lastobs=52&from=&to=&filetype=csv&label=include&layout=seriescolumn&type=package&pp=Download).

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 24*
*No. 2:21-cv-00896-JLR*

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

## VIII. Conclusion

The Court should enter an amended judgment.


DATED this 14th day of June, 2024

                                     */s/ Scott M. Danner*

                                     Vincent Levy, NY Bar #4712667
(admitted *pro hac vice*)
Scott Danner, NY Bar #4853016
(admitted *pro hac vice*)
Brian T. Goldman, NY Bar #5616891
(admitted *pro hac vice*)
Charlotte Baigent, NY Bar #5979224
(admitted *pro hac vice*)
**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue
New York, NY 10017
(646) 837-5151
Email: sdanner@hsgllp.com
bgoldman@hsgllp.com
cbaigent@hsgllp.com

                                     */s/ Steven W. Fogg*

                                     Steven W. Fogg, WSBA #23528
**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, WA 98104
(206) 625-8600
Email: sfogg@corrcronin.com

                                     ***Attorneys for Plaintiff***
***Zunum Aero, Inc.***

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1

<u>**CERTIFICATE OF COMPLIANCE**</u>

2

I certify that this memorandum contains 8,385 words, in compliance with the Local Civil

3

Rules.

4

DATED: June 14, 2024

5

_/s/ Scott M. Danner_

Scott Danner, NY Bar #4853016

6

(admitted *pro hac vice*)

Brian T. Goldman, NY Bar #5616891

7

(admitted *pro hac vice*)

Charlotte Baigent, NY Bar #5979224

8

(admitted *pro hac vice*)

9

**HOLWELL SHUSTER & GOLDBERG LLP**

10

425 Lexington Avenue, 14th Floor

New York, NY 10017

11

(646) 837-5151

12

Email: sdanner@hsgllp.com

13

_/s/ Steven W. Fogg_

14

Steven W. Fogg, WSBA #23528

**CORR CRONIN LLP**

15

1015 Second Avenue, Floor 10

16

Seattle, WA 98104

(206) 625-8600

17

Email: sfogg@corrcronin.com

18

19

***Attorneys for Plaintiff***
***Zunum Aero, Inc.***

20

21

22

23

24

25

**HOLWELL SHUSTER & GOLDBERG LLP**
425 Lexington Avenue, 14th Floor
New York, NY 10017
(646) 837-5151

1

2                               **<u>CERTIFICATE OF SERVICE</u>**

3         I hereby certify that on June 14, 2024 I caused the foregoing document to be

4   electronically filed with the Clerk of the Court using the CM/ECF system which will send

5   notification of the filing to all counsel of record.

6         DATED: June 14, 2024

7                                              _____/s/ Scott M. Danner_____

8
                                               Vincent Levy, NY Bar #4712667
9                                              (admitted *pro hac vice*)
                                               Scott Danner, NY Bar #4853016
10                                             (admitted *pro hac vice*)
                                               Brian T. Goldman, NY Bar #5616891
11                                             (admitted *pro hac vice*)
                                               Charlotte Baigent, NY Bar #5979224
12                                             (admitted *pro hac vice*)
                                               **HOLWELL SHUSTER & GOLDBERG LLP**
13
                                               425 Lexington Avenue, 14th Floor
14                                             New York, NY 10017
                                               (646) 837-5151
15                                             Email: sdanner@hsgllp.com

16
                                               /s/ *Steven W. Fogg*
17                                             Steven W. Fogg, WSBA #23528
18                                             **CORR CRONIN LLP**
                                               1015 Second Avenue, Floor 10
19                                             Seattle, WA 98104
                                               (206) 625-8600
20                                             Email: sfogg@corrcronin.com
21
                                               *Attorneys for Plaintiff*
22                                             *Zunum Aero, Inc.*
23

24

25

*PLAINTIFF'S MOTION FOR POST-TRIAL RELIEF - 27*        **HOLWELL SHUSTER & GOLDBERG LLP**
*No. 2:21-cv-00896-JLR*                                 425 Lexington Avenue, 14th Floor
                                                        New York, NY 10017
                                                        (646) 837-5151