THE HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| ZUNUM AERO, INC., | Case No. 2:21-cv-00896-JLR |
| Plaintiff, | **DEFENDANTS THE BOEING COMPANY AND BOEING HORIZONX VENTURES, LLC'S OPPOSITION TO PLAINTIFF ZUNUM AERO, INC.'S MOTION TO STAY EXECUTION OF THE SECOND AMENDED JUDGMENT** |
| v. | |
| THE BOEING COMPANY; BOEING HORIZONX VENTURES, LLC, | |
| Defendants. | NOTE ON MOTION CALENDAR: December 18, 2024 |

Case No. 2:21-cv-00896
DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION TO STAY EXECUTION OF JUDGMENT

**Hueston Hennigan LLP**
523 West 6th St., Suite 400
Los Angeles, CA 90014
(213)788-4340

TABLE OF CONTENTS

                                                                    Page

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT ......................................................................................................... 2

      A. Legal Standards ......................................................................................... 2

      B. Zunum Offers No Competent Evidence to Support Its Motion .................. 2

      C. The *Dillon* Factors Weigh Against Waiving the Bond Requirement ........................................................................................... 5

            1. Zunum concedes Boeing's collection from Zunum will be a complex and time-consuming process ................................. 5

            2. Zunum concedes there is significant risk it will not be able to satisfy the judgment ..................................................... 6

            3. Zunum concedes that its ability to pay Boeing's judgment is not "plain." ....................................................... 7

            4. Requiring Zunum to post a bond would leave Zunum's creditors in no worse position than they are in now ................ 7

      D. Zunum's Appeal Cannot Justify a Stay of Execution ................................. 8

      E. Zunum's Proposed "Injunction" Would Not Adequately Protect Boeing's Interest ....................................................................................... 9

      F. If Zunum's Motion is Granted, Asset Discovery Should Not Be Stayed ..................................................................................................... 11

III. CONCLUSION ................................................................................................... 12

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bayside Vill. Mobilehome Owners Ass'n v. Gelfand*
2008 WL 11342780 (C.D. Cal. July 2, 2008) .................................................................. 6, 7, 10

*Azizian v. Federated Dep't Stores, Inc.*,
499 F.3d 950 (9th Cir. 2007) ...................................................................................................... 9

*Bolt v. Merrimack Pharms., Inc.*,
2005 WL 2298423 (E.D. Cal. Sept. 20, 2005) ..................................................................... 5, 7

*Consumer Fin. Prot. Bureau v. Glob. Fin. Support, Inc.*,
2021 WL 4895970 (S.D. Cal. Oct. 20, 2021) ........................................................................... 7

*Dillon v. City of Chicago*,
866 F.2d 902 (7th Cir. 1988) ...................................................................................................... 2

*Does v. Trump*,
328 F. Supp. 3d 1185 (W.D. Wash. 2018) ................................................................................ 3

*Edmo v. Idaho Dep't of Correction*,
2022 WL 17975984 (D. Idaho Dec. 28, 2022) ......................................................................... 5

*Erickson Prods. Inc. v. Kast*,
2016 WL 9115979 (N.D. Cal. July 22, 2016) ........................................................................... 7

*Erickson Prods. Inc. v. Kast*,
2022 WL 698148 (N.D. Cal. Feb. 10, 2022) ............................................................................ 11

*Farr Fin. Inc. v. Sentinel Mgmt. Grp. Inc.*,
2007 WL 9817960 (N.D. Ill. Aug. 17, 2007) ............................................................................ 8

*Gila River Indian Cmty. v. United States*,
2011 WL 1656486 (D. Ariz. May 3, 2011) ............................................................................... 9

*Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*,
2019 WL 2715616 (E.D. Cal. Jun 28, 2019) ............................................................................ 2

*Hoffman v. Markowitz*,
2017 WL 8292769 (C.D. Cal. Oct. 4, 2017) ............................................................................. 5

*In re Country Squire Assocs. of Carle Place, L.P.*,
203 B.R. 182 (B.A.P. 2d Cir. 1996) ........................................................................................... 8

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
2013 WL 361109 (C.D. Cal. Jan. 30, 2013) .............................................................................. 6

TABLE OF AUTHORITIES (cont.)

Page(s)

*Lowery v. Rhapsody Int'l, Inc.*,
  2022 WL 267442 .................................................................................................. 6,7

*MDY Indus., LLC v. Blizzard Ent., Inc.*,
  2009 WL 649719 (D. Ariz. Mar. 10, 2009) ............................................................ 11

*Medina v. Pile Trucking, Inc.*,
  2013 WL 12081090 (C.D. Cal. Feb. 22, 2013) ......................................................... 6

*Mills v. Zeichner*,
  2024 WL 1255783 (W.D. Wash. Mar. 25, 2024) ............................................... 1, 2, 4

*Olympia Equip. Leasing Co. v. W. Union Tel. Co.*,
  786 F.2d 794 (7th Cir. 1986) ................................................................................... 8

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*,
  2014 WL 12669557 (S.D. Cal. Aug. 28, 2014) ......................................................... 8

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*,
  307 F.3d 1206 (9th Cir. 2002) ............................................................................... 11

*Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*,
  600 F.2d 1189 (5th Cir. 1979) ............................................................................... 10

*Sarver v. Hurt Locker LLC*,
  2012 WL 12892147 (C.D. Cal. Feb. 2, 2012) ........................................................... 6

*U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  2010 WL 384594 (D. Ariz. Jan. 29, 2010) ............................................................. 10

*United States v. Loftis*,
  2009 WL 10678613 (N.D. Tex. Aug. 3, 2009) ....................................................... 11

*Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*,
  2005 WL 8162980 (C.D. Cal. Mar. 14, 2005) ....................................................... 11

**Rules**
Fed. R. Civ. P. 62(b) .................................................................................................... 2

Rule 7 of the Federal Rules of Appellate Procedure ................................................... 9

**Other Authorities**
*Restatement (Second) of Judgments* at § 59(5) ......................................................... 4

## I. INTRODUCTION

In August 2024, after nearly four years of litigation, an eight-day jury trial, and hundreds of pages of post-trial briefing, the Court entered its final judgment holding plaintiff Zunum Aero, Inc. ("Zunum") liable in the amount of $9 million, plus interest. *See* Dkt. 754. When Zunum failed to post any security to stay execution of the judgment, defendants The Boeing Company and Boeing HorizonX Ventures, LLC (collectively, "Boeing") served asset discovery requests to ascertain the financial position of Zunum and its founders. Shortly thereafter, Zunum filed this Motion, seeking to stay judgment execution, claiming that execution would harm Zunum and its creditors by requiring a "fire sale" of Zunum's IP Assets for an "unfair price."

Zunum's Motion should be denied for three reasons.

*First*, Zunum failed to support its Motion with adequate evidence. There is no competent evidence indicating how much Zunum's IP Assets are worth; that an orderly sale of those assets would satisfy Zunum's liabilities; that Boeing's execution of the Court's judgment would result in a sale of the assets for an "unfair price"; or that the proceeds from this hypothetical "fire sale" would not satisfy Zunum's liabilities. Without such evidence, Zunum cannot meet its burden to justify waiver of the bond. *Mills v. Zeichner*, 2024 WL 1255783, at *2 (W.D. Wash. Mar. 25, 2024) (Robart, J.) (defendant "fail[ed] to carry his burden to establish that waiver is justified" where he provided no evidence "about his financial circumstances" aside from unsupported assertions).

*Second*, every one of the *Dillon* factors courts consider in this posture weighs against a stay. Zunum concedes that the judgment collection process will be complex and time consuming, and that it has no funds to pay the judgment. And there is no reason to believe that Zunum's other creditors will be adversely impacted without a stay.

*Third*, the "injunction" Zunum proposes in lieu of a bond is not the type of alternative security courts have allowed, would not place any real restrictions Zunum, and would not secure Boeing's interest.

## II. ARGUMENT

### A. Legal Standards

To stay execution of a judgment, the party seeking the stay must "provid[e] a bond or other security." Fed. R. Civ. P. 62(b). Waiver of the bond is "reserved for unusual circumstances," and "[t]he party seeking waiver of the bond requirement bears the burden to show that waiver is justified." *Mills*, 2024 WL 1255783, at *2. When determining whether to waive bond, courts in the Ninth Circuit consider the five *Dillon* factors: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the [movant's] ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the [movant] is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position." *Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.*, 2019 WL 2715616, at *3 (E.D. Cal. Jun 28, 2019) (citing *Dillon v. City of Chicago*, 866 F.2d 902, 904 (7th Cir. 1988)).

### B. Zunum Offers No Competent Evidence to Support Its Motion

Zunum's Motion fails at the outset because it is not supported with competent evidence. Zunum's core contentions hinge on the following factual assertions about its financial state:

- Zunum has only "highly illiquid assets of uncertain value—the only ones of non-negligible value [being] a portfolio of patents and other patent intellectual property . . . and certain legal claims" (Mot. 3);

- Zunum's "third-party advisors" have stated that "maximizing the value of Zunum's IP Assets . . . would require an orderly and time-consuming sale process," which could "well result in a recovery of funds in excess of the debt currently owed to Boeing under the Court's judgment" and "in recoveries for Zunum's other creditors, even if Boeing's judgment is first fully satisfied" (*id.* at 5-6); and

- "[P]ermitting enforcement to proceed now would all but ensure a fire-sale process for Zunum's IP Assets, resulting in a lower recovery for everyone, including increasing the potential of some creditors receiving nothing." (*Id.* at 6.)

Zunum has failed to substantiate these assertions with adequate evidence. Zunum submitted no documentary evidence, only a bare-bones declaration from one of its founders, Matt Knapp, which is little more than a vessel for hearsay.

Specifically, Mr. Knapp asserts that he "[was] told" by unidentified "advisors" that an orderly sale of Zunum's IP Assets "could potentially result in a recovery of funds in excess" of Zunum's debts, whereas Zunum "would likely have to dispose of its assets in a fire-sale situation" for less value if Boeing were to enforce its judgment. But Zunum fails to identify these "advisors" or submit any declarations from them, and it does not even explain why the advisors reached the conclusions Mr. Knapp attributes to them. Such unreliable, conclusory hearsay cannot meet Zunum's burden to justify a stay of judgment execution. *Does v. Trump*, 328 F. Supp. 3d 1185, 1199 (W.D. Wash. 2018) (Robart, J.) (declining to give weight to a declaration that "contain[ed] hearsay within hearsay").[1]

In addition to relying on hearsay, Mr. Knapp's assertions also have no substance. He does not support, for instance, his assertion that Zunum's IP Assets cannot be readily sold, and he provides no reason to believe that Zunum has *even attempted* to sell them. *See* Dkt. 768 at ¶¶ 7, 17, 20. In fact, the evidence at trial suggests Zunum never made such an attempt because its IP Assets are worthless. *See, e.g.*, Dkt. 765 at 1444:13-15 ("Q. And you did nothing to determine whether Zunum could sell the trade secrets it has to other entities, right? A. [Zunum's damages expert]: No I assumed if they could have they would have.").[2] That is consistent with Zunum's own argument at trial that the value of Zunum and all its assets after December 2018 was "[e]ssentially, zero" dollars. *Id.* at 1421:18-23.

---

[1] This is not Zunum's first attempt to abuse the hearsay rule; at trial, the Court had to intervene. Dkt at 764 1090:25-1091:2 ("You do it again, I'm going to say no more testimony. You can't keep dropping in hearsay."). Zunum's closing suggested the hearsay rule kept the jury from hearing the truth. *See* Dkt. 695 at 56-57.

[2] In passing, the damages expert claimed Zunum "tried to license or sell their patents specifically." Dkt. 765 at 1420:16-19. Even if this counted as evidence of an attempted sale, its failure would show the IP Assets have no value.

- 3 -

In other words, Mr. Knapp's claim that Zunum's IP Assets could be sold for more than the many millions in debt that Zunum currently owes—if only for an "orderly and time-consuming sale process"—is both unsupported and belied by the trial record. For Mr. Knapp to present this hearsay claim now under the cloak of the opinions of unspecified "third-party advisors" is not credible and unfair. Zunum *already had* an outside valuation advisor in this case—its damages expert—and it consciously chose *not* to make it part of his mandate to assess the value of Zunum's IP Assets. *See* Dkt. 765 at 1443:25-144:2 ("Q: Sir you haven't even tried to determine the current value of Zunum's intellectual property, right? . . . . A: No, not at this point—not today."). After years of litigation, Zunum cannot use hearsay now to change course, sandbag Boeing, and stay execution of the judgment based on Mr. Knapp's say-so.**³**

Finally, Mr. Knapp's declaration omits any information regarding the assets of Zunum's founders. Because Zunum is a closely held corporation whose actions are directed by its two founders—Mr. Knapp and Dr. Kumar—the founders' assets may be recoverable to satisfy the judgment under a veil-piercing theory. *See Restatement (Second) of Judgments* at § 59(5) (where veil is pierced, "a judgment nominally against the corporation creates a binding obligation upon those who have acted in corporate dress"). The corporate veil may be pierced at the judgment enforcement stage because both Mr. Knapp and Dr. Kumar "had control of the litigation and occasion to conduct it with a diligence corresponding to the risk of personal liability that was involved." *Id*. Thus, even if Mr. Knapp's declaration were sufficient to substantiate Zunum's claims about *the company's* corporate assets, its omission of any information about the assets of *the company's founders and main shareholders* makes a stay of execution inappropriate.

Because Zunum failed to provide competent evidence to support its Motion, it cannot carry its burden to justify waiver of the bond. Courts in the Ninth Circuit—including this Court—have rejected waiver in analogous circumstances. *E.g.*, *Mills*, 2024 WL 1255783, at *2 (Robart, J.)

---

**³** Zunum's expert spent decades doing "a lot of valuation work for different types of intellectual property." Dkt. 765 at 1381:21-1382:5. But he needed *not to know* the IP Assets' value to be consistent with his claim that Zunum was worth $0 (which allowed Zunum to argue outsize damages to the jury).

- 4 -

(defendant "fail[ed] to carry his burden to establish that waiver is justified" where he "provid[ed] no information about his financial circumstances" aside from his unsupported assertions); *Bolt v. Merrimack Pharms., Inc.*, 2005 WL 2298423, at *4 (E.D. Cal. Sept. 20, 2005) (defendant failed to meet its burden where "[o]ther than defendant's conclusory statement that requiring a bond at this time would cause defendant financial hardship, it has failed to produce evidence of impracticability").

### C. The *Dillon* Factors Weigh Against Waiving the Bond Requirement

Even if the Court were to accept Zunum's unsubstantiated representations, all five *Dillon* factors weigh against waiving bond. In fact, Zunum concedes that four of the five factors weigh against waiver, and as to the fifth factor, Zunum mischaracterizes the law and misunderstands the relevant inquiry.

#### 1. *Zunum concedes Boeing's collection from Zunum will be a complex and time-consuming process.*

As to the first two *Dillon* factors—the nature and duration of the collection process—Zunum concedes the collection process will be complex and time-consuming, weighing against waiving bond. Zunum asserts it can satisfy Boeing's judgment only by "maximiz[ing] the value of Zunum's IP Assets" via "an orderly and time-consuming sale process." Mot. 5. But such complexity "weighs against waiving the bond requirement, because the more complex the collection process, the more difficult it will be for [Boeing] to enforce the judgment after defending the appeal." *Edmo v. Idaho Dep't of Correction*, 2022 WL 17975984, at *5 (D. Idaho Dec. 28, 2022). "If [Boeing] cannot begin the time-consuming collection process" of a protracted sale of Zunum's IP Assets "until the appeal concludes, the already-lengthy delay in executing on the judgment would be substantially extended." *Id.*; *see also Hoffman v. Markowitz*, 2017 WL 8292769, at *3 (C.D. Cal. Oct. 4, 2017) (complexity of collection process weighed against waiver of bond where defendant's assets were "primarily illiquid").

        2.    *Zunum concedes there is significant risk it will not be able to satisfy the judgment.*

As to the third *Dillon* factor—whether Zunum will be able to satisfy the judgment—Zunum concedes that there is substantial risk that it will not have funds to pay the judgment. Zunum states that it "lacks any meaningful liquid assets," "has no ongoing sources of revenue," and "does not generate assets on a going-forward basis." Mot. 3. Because Zunum "claim[s] to have no funds now and there is nothing to suggest that [it] will have more money later," this factor weighs against waiving bond. *Medina v. Pile Trucking, Inc.*, 2013 WL 12081090, at *1 (C.D. Cal. Feb. 22, 2013) ("Defendants have not met their burden of establishing that the Court should eliminate the bond requirement."); *see also Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 2013 WL 361109, at *2 (C.D. Cal. Jan. 30, 2013) ("The fact that Inhale does not have sufficient liquid assets to cover the award . . . is precisely why it must post a supersedeas bond.") (internal quotations omitted).

Perplexingly, Zunum argues that the Court should waive the bond requirement because "posting of a bond 'would impose an undue financial burden' on Zunum." Mot. 7. But courts in the Ninth Circuit have repeatedly held that a defendant's financial precarity weighs *against* waiver. *See, e.g.*, *Lowery v. Rhapsody Int'l, Inc.*, at *2 (N.D. Cal. Jan. 28, 2022) ("Given that Defendant asserts that the judgment in this case presents an extreme financial burden, the Court believes a bond is necessary to protect Plaintiff's interest in eventual collection of the judgment."); *Sarver v. Hurt Locker LLC*, 2012 WL 12892147, at *3 (C.D. Cal. Feb. 2, 2012) ("The Court cannot place Defendants' statutory right to recovery at risk solely on the basis of Plaintiff's ability to pay.").

Zunum cites two cases for its argument that the "financial burden" of the bond would be "undue." Mot. 7. However, both of Zunum's cases *denied* a motion to waive the requirement of a bond or other security. In *Bayside Vill. Mobilehome Owners Ass'n v. Gelfand*, the defendant argued that "it ha[d] no financial capacity to post security, and therefore should not be required to post a supersedeas bond for any amount." 2008 WL 11342780, at *2 (C.D. Cal. July 2, 2008). The *Bayside* court rejected this argument, holding that it was "unwilling to order a stay on execution of the judgment that does not provide any security for" the plaintiffs, and authorizing the plaintiffs to

"obtain[] liens on [defendant's] property." *Id.* In *Bolt v. Merrimack Pharms., Inc.*, the court held that the defendant was "not entitled to a stay without posting a supersedeas bond," despite the defendant's argument that it "was not a liquid company." 2005 WL 2298423, at *4 (E.D. Cal. Sept. 20, 2005). Zunum quotes fragments of these cases out of context to stand for propositions that they do not support, while ignoring the holdings showing that Zunum's financial condition weighs against a stay.

                3.     *Zunum concedes that its ability to pay Boeing's judgment is not "plain."*

As to the fourth *Dillon* factor—whether the movant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money—Zunum concedes that its ability to pay the judgment is the opposite of "plain." Mot. 3 ("Zunum is not in a position to pay the Second Amended Judgment."). This factor thus weighs against waiver. *See, e.g.*, *Erickson Prods. Inc. v. Kast*, 2016 WL 9115979, at *1 (N.D. Cal. July 22, 2016) (rejecting waiver of bond requirement where "[defendant]'s ability to pay is not plain, and the cost of a bond would not be a waste of money"); *Lowery*, 2022 WL 267442 at *2 (same).

                4.     *Requiring Zunum to post a bond would leave Zunum's creditors in no worse position than they are in now.*

Having conceded that four of the five *Dillon* factors weigh against a stay of execution, Zunum's Motion centers on the fifth and final *Dillon* factor: potential harm to other creditors.

This contention fails. At the outset, even assuming that requiring a bond would adversely impact Zunum's other creditors, that alone would not justify a stay of execution. Courts considering the issue have repeatedly found that "[a]lthough requiring a bond might endanger other creditors," where a defendant is "in a precarious financial condition, the [*Dillon*] factors weigh in favor of requiring a bond." *Erickson Prods. Inc. v. Kast*, 2016 WL 9115979, at *1 (N.D. Cal. July 22, 2016); *see also Consumer Fin. Prot. Bureau v. Glob. Fin. Support, Inc.*, 2021 WL 4895970, at *3 (S.D. Cal. Oct. 20, 2021) (rejecting waiver where defendant's "arguments rest on the fifth *Dillon* factor: a precarious financial situation that puts other creditors in an insecure position").

Indeed, Zunum cites no case in which a court stayed judgment execution without a bond based solely on the fifth *Dillon* factor. Instead, in each of Zunum's cases, courts waived or modified the bond requirement in light of other circumstances not present here. Mot. 5. In *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Rsrv. v. California*, 2014 WL 12669557, at *3 (S.D. Cal. Aug. 28, 2014), the court found a bond was unnecessary because there was no question the defendant would be able to pay the judgment. *Id.* In *Olympia Equip. Leasing Co. v. W. Union Tel. Co.*, 786 F.2d 794, 796 (7th Cir. 1986), the Seventh Circuit affirmed a defendant posting $10 million in cash, $10 million in accounts receivable, and $70 million in securities to secure a $36 million judgment. *Id.* By contrast, Zunum admits there is a risk it will not be able to pay the judgment and has not offered *any* property to secure the judgment, let alone property worth more than two times the judgment. *See* Mot. 3-4.[4]

In any event, Zunum offers no evidence that its creditors would be worse off without a stay. Zunum asserts that it "presently lacks any meaningful liquid assets" and "makes no ongoing payments to any creditors," and thus will only be able to pay its debts or post a bond by selling its IP Assets. Mot. 3-4, 5-6. Accordingly, regardless of whether execution of Boeing's judgment is stayed, Zunum's creditors will remain in the same position they are in today: unpaid and waiting for the sale of Zunum's IP Assets to satisfy its debts.

### D. **Zunum's Appeal Cannot Justify a Stay of Execution**

Zunum also argues that the Court should waive bond because "if Zunum prevails on its appeal, there is a good chance the sale of IP Assets . . . would become unnecessary" and requiring a bond might allow "Boeing or other creditors [to] . . . seek to interfere with Zunum's prosecution of the Appeal." Mot. 7-8. This argument fails for several reasons.

*First*, Zunum does not cite any authority sanctioning a waiver of bond because a pending appeal may result in a reversal of the district court's judgment. None of the cases Zunum cites even addresses waiver of Rule 62(b)'s bond requirement. *See In re Country Squire Assocs. of Carle Place,*

---

[4] Zunum's other case, *Farr Fin. Inc. v. Sentinel Mgmt. Grp. Inc.*, 2007 WL 9817960, at *2 (N.D. Ill. Aug. 17, 2007), is equally inapposite. In *Farr*, the court denied a motion for a TRO because it was unclear whether the plaintiff would succeed on the merits. *Id.* Boeing already won judgment.

- 8 -

*L.P.*, 203 B.R. 182, 183 (B.A.P. 2d Cir. 1996) (considering whether to stay foreclosure proceeding pending appeal of bankruptcy decision); *Gila River Indian Cmty. v. United States*, 2011 WL 1656486, at *1 (D. Ariz. May 3, 2011) (considering whether to grant temporary injunction to maintain status quo pending appeal); *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 961 (9th Cir. 2007) (considering whether Rule 7 of the Federal Rules of Appellate Procedure requires a bond to secure attorney's fees).

*Second*, Zunum has not demonstrated a likelihood of success on appeal. The Court granted Boeing's post-trial motions and entered final judgment after carefully considering hundreds of pages of briefing and voluminous evidentiary materials. *See* Dkt. 734-737, 744-745. Zunum does not identify any reason the Court—having already heard Zunum's arguments at length—should now believe that Zunum will succeed in having the Court's judgment reversed on appeal.

*Third*, Zunum claims that "[i]f a stay is not entered, Zunum's claims would potentially be jeopardized . . . if Boeing or other creditors seek to interfere with Zunum's prosecution of the [a]ppeal." Mot. 7-8. But Zunum does not explain how any creditor could "interfere" with its appeal, why they would do so, or how a stay of execution could prevent such interference. Indeed, Zunum asserts that all of its creditors other than Boeing have already determined to "forbear[]" enforcement of their rights "while they await resolution of the Appeal." Mot. 4. And Boeing has not sought enforcement either; the most it has done is serve requests for asset discovery that *explicitly exclude* Zunum's alleged trade secrets and confidential information from their scope. *See* Ex. A (Boeing's First Set of Asset Discovery Interrogatories) at 3:1-5. None of this jeopardizes any appellate rights.

### E. **Zunum's Proposed "Injunction" Would Not Adequately Protect Boeing's Interest**

Finally, Zunum argues a self-imposed "injunction" could adequately protect Boeing's interest without any bond. The Court need not consider this contention given that Zunum failed to meet its burden to justify a stay, but Zunum's proposal would be inadequate regardless.

*First*, if Zunum's representations regarding its financial status are to be believed, then its proposed injunction is no real restraint. Zunum represents that it has "been largely non-operational"

since 2018, has no on-going business expenses, and "currently makes no ongoing payments to any creditors." Mot. 3-4. Zunum's only apparent expenses are the costs of prosecuting its failed claims against Boeing (and the appeal), paid only "through the provision of litigation funding" by a third-party and its contingent fee counsel. *Id.* These are the same expenses—plus some others that Mr. Knapp does not even address—that Zunum carves out of its proposed injunction. *Id.* at 8-9. Zunum thus proposes to enjoin itself from making transfers that it would never make in the first place, while allowing it to continue making payments to prosecute its appeal against Boeing. This injunction is meant to protect Zunum, its litigation funder, and its contingent fee counsel, not Boeing.

*Second*, it is not enough for Zunum to promise not to dissipate assets; Zunum must instead show that such an injunction would guarantee the judgment affirmatively. *See U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 2010 WL 384594, at *2 (D. Ariz. Jan. 29, 2010) (denying waiver of bond despite defendants "suggest[ion] [that] the Court enjoin dissipation of [defendant's] retirement funds" because defendant "ha[d] not established that enjoining dissipation of her retirement funds will guarantee [plaintiff's] judgment"). To establish that its proposed injunction would adequately protect Boeing's interest, Zunum would need, *inter alia*, to "provide [Boeing] with full disclosure of all assets" and demonstrate how "partial or alternate security will provide as adequate as possible security for [Boeing]." *Id.* (internal quotations omitted). Zunum has not satisfied these requirements. Quite the contrary: Zunum has *refused* to answer any asset discovery unless and until its request for a stay is denied. *See*, Ex. B (Zunum's Responses to Boeing's First Set of Asset Interrogatories) at 5 ("Zunum has moved to stay enforcement of the Judgment . . . and therefore Zunum will not provide a Response."); Ex. C (Zunum's Responses to Boeing's First Set of Asset Requests for Production) at 5-6 (same).

Unsurprisingly, Zunum does not cite any case where a court found this type of proposed injunction to be adequate in lieu of a bond. *See, e.g., Poplar Grove Planting & Ref. Co. v. Bache Halsey Stuart, Inc.*, 600 F.2d 1189, 1190 (5th Cir. 1979) (instructing the district court to "establish some type of positive protection of the judgment creditor's rights" *in addition to*—not in lieu of—a reduced bond); *Bayside Vill. Mobilehome Owners Ass'n v. Gelfand*, 2008 WL 11342780, at *3 (C.D.

Cal. July 2, 2008) (allowing stay of execution without bond where plaintiff "obtain[ed] liens on the [defendant's] property"); *MDY Indus., LLC v. Blizzard Ent., Inc.*, 2009 WL 649719, at *5 (D. Ariz. Mar. 10, 2009) (requiring defendant to "place all profits obtained from the sale of Glider or other operations of [defendant] . . . in an escrow account approved by [plaintiff]" to secure judgment for damages); *United States v. Loftis*, 2009 WL 10678613, at *4 (N.D. Tex. Aug. 3, 2009) (finding writs of garnishment that rendered bank accounts inaccessible to defendant sufficient to secure government's interest in judgment). The Court should reject Zunum's baseless request to substitute Rule 62's bond requirement with an injunction that would give Boeing no protection and Zunum no meaningful restraint.

### F.  If Zunum's Motion is Granted, Asset Discovery Should Not Be Stayed

Even if Zunum's Motion were granted, post-judgment discovery should proceed. "A judgment creditor's right to conduct post-judgment discovery under Rule 69(a) is not conditioned on the judgment being immediately enforceable." *Warner Bros. Int'l Television Distrib. v. Golden Channels & Co.*, 2005 WL 8162980, at *5 (C.D. Cal. Mar. 14, 2005). To stay post-judgment discovery, Zunum must separately show good cause for the court to issue a protective order under Rule 26(b)(1). *See, e.g.*, *Erickson Prods. Inc. v. Kast*, 2022 WL 698148, at *3 (N.D. Cal. Feb. 10, 2022) (considering motion to stay execution and motion to stay post-judgment discovery separately). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

Zunum did not ask to stay asset discovery and cannot show any prejudice from participating in it; indeed the Knapp Declaration is already providing asset-related testimony (on inadequate and self-serving terms). Accordingly, Zunum should be required to respond to Boeing's asset discovery requests regardless.

## III. CONCLUSION

Zunum has failed to show that waiver of the bond requirement is justified or that its proposed injunction would adequately secure Boeing's interest. Boeing respectfully requests that the Court deny Zunum's Motion.

I certify that this memorandum contains 4200 words, in compliance with the Local Civil Rules.

Dated: December 12, 2024    Respectfully submitted,

/s/ Yegor Fursevich

John C. Hueston (Admitted *Pro Hac Vice*)
Email: jhueston@hueston.com
Moez M. Kaba (Admitted *Pro Hac Vice*)
Email: mkaba@hueston.com
Yegor Fursevich (Admitted *Pro Hac Vice*)
Email: yfursevich@hueston.com
**HUESTON HENNIGAN LLP**
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:    (213) 788-4340
Facsimile:    (888) 866-4825

/s/ David A. Perez
David A. Perez, WSBA No. 43959
Susan E. Foster, WSBA No. 18030
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101
(206)359-8000

**Attorneys for Defendants
THE BOEING COMPANY and
BOEING HORIZONX VENTURES,
LLC**